UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PETROBRAS SECURITIES LITIGATION | Civil Action No. 14-cv-9662 (JSR) |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE SKAGEN-DANSKE GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

**Page**

I. THE SKAGEN-DANSKE GROUP INDISPUTABLY POSSESSES THE LARGEST FINANCIAL INTEREST AND IS THE "MOST ADEQUATE PLAINTIFF"...................................................................................................................1

II. THE SKAGEN-DANSKE GROUP'S STATUS AS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED ...................................2

III. CONCLUSION...............................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Borochoff v. Glaxosmithkline PLC*,
    246 F.R.D. 201 (S.D.N.Y. 2007) .................................................................................................3, 4

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).................................................................................................8

*City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*,
    No. 13-cv-03325-MSK-MJW, 2014 WL 4799659 (D. Colo. Sept. 26, 2014) .........................3

*Dietrich v. Bauer*,
    192 F.R.D. 119 (S.D.N.Y. 2000) ..........................................................................................8

*DiRienzo v. Philip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002)...................................................................................................5

*In re DVI Inc. Sec. Litig.*,
    249 F.R.D. 196 (E.D. Pa. 2008) ...........................................................................................8

*Feder v. Elec. Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) ................................................................................................8

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ..........................................................................................3

*Glauser v. EVCI Career Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ..........................................................................................5

*In re Herald, Primeo, and Thema Sec. Litig.*,
    No. 09 Civ. 289(RMB), 2011 WL 5928952 (S.D.N.Y. Nov. 29, 2011)...................................6

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004)................................................................................................2, 6

*Hufnagle v. Rino Int'l Corp.*,
    No. CV 10-8695-VBF(VBKx), 2011 WL 710704 (C.D. Cal. Feb. 14, 2011).........................3

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001)....................................................................................................5

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
    762 F.3d 1248 (11th Cir. 2014) ............................................................................................8

*McGuire v. Dendreon Corp.*,
  No. C07-800MJP, 2008 WL 418122 (W.D. Wash. Feb. 13, 2008)............................................7

*In re Molson Coors Brewing Co. Sec. Litig.*,
  233 F.R.D. 147 (D. Del. 2005) ...............................................................................................4

*Moomjy v. HQ Sustainable Mar. Indus.*,
  No. C11-0726RSL, 2011 WL 4048796 (W.D. Wash. Sept. 12, 2011)..................................3, 4

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010)..................................................................................................................4

*OFI Risk Arbs. v. Cooper Tire & Rubber Co.*,
  No. 14-00068-RGA, 2014 WL 3886021 (D. Del. Aug. 6, 2014) .............................................4

*Porzio v. Overseas Shipholding Grp.*,
  No. 12 Civ. 7948, 2013 WL 407678 (S.D.N.Y. Feb. 1, 2013) .................................................6

*Sgalambo v. McKenzie*,
  268 F.R.D. 170 (S.D.N.Y. 2010) ........................................................................................3, 4

*Steinberg v. Ericsson LM Tel. Co.*,
  No. 07 Civ. 9615 (RPP), 2008 WL 1721484 (S.D.N.Y. Apr. 11, 2008) ..................................4

*Stone v. Agnico-Eagle Mines Ltd.*,
  280 F.R.D. 142 (S.D.N.Y. 2012) .............................................................................................3

*Takeda v. Turbodyne Techs., Inc.*,
  67 F. Supp. 2d 1129 (C.D. Cal. 1999) .....................................................................................3

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii) ........................................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)...................................................................................................2

SKAGEN AS ("SKAGEN"), Danske Invest Management A/S ("Danske Denmark"), and Danske Invest Management Company ("Danske Luxembourg") (collectively, the "SKAGEN-Danske Group"), respectfully submit this brief in response to the Court's February 20, 2015 Order and in further support of its motion for appointment as lead plaintiff [ECF No. 39].

I. **THE SKAGEN-DANSKE GROUP INDISPUTABLY POSSESSES THE LARGEST FINANCIAL INTEREST AND IS THE "MOST ADEQUATE PLAINTIFF"**

There is no dispute that the SKAGEN-Danske Group possesses the "largest financial interest" and is entitled to the strong presumption under the PSLRA as the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii). None of the competing movants challenge the fact that the SKAGEN-Danske Group—with losses exceeding ***$222 million*** on a last-in, first-out basis ("LIFO") and ***$267 million*** on a first-in, first-out ("FIFO") basis—has the largest financial interest in this case. Nor does any competing movant dispute that SKAGEN *alone* has a far larger financial interest than the State Retirement Systems or USS. Further, the SKAGEN-Danske Group has made a *prima facie* showing of adequacy and typicality under Rule 23 of the Federal Rules of Civil Procedure and has provided evidence and testimony demonstrating its adequacy and its members' ability and commitment to work together with their chosen proposed Co-Lead Counsel in an efficient manner to maximize the recovery on behalf of the class—as SKAGEN and Danske Denmark have done by serving as lead plaintiffs in five other cases prosecuted under the PSLRA. *See* Hr'g Tr. at 13:24-14:9; ECF No. 42-3, Joint Decl. at ¶12-15.[1] Accordingly, the SKAGEN-Danske Group has more than satisfied the requirements entitling it to

---

[1] The February 20, 2015 hearing transcript ("Hr'g Tr.") is attached hereto as Ex. A to the Second Supplemental Declaration of Max W. Berger ("Berger Decl."). Unless otherwise noted, all emphases herein are added and all internal citations are omitted. Defined terms have the same meaning as those in the SKAGEN-Danske Group's opposition brief. ECF No. 65.

1

the strong presumption as the "most adequate plaintiff," and should be appointed as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## II. THE SKAGEN-DANSKE GROUP'S STATUS AS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

Given the SKAGEN-Danske Group's superior financial interest in this litigation, it is unsurprising that the competing movants have attempted to rebut the presumption—and seek out a "niche" lead plaintiff role for themselves and their counsel—with speculation and innuendo.  These arguments fall far short of the "proof" required to rebut the presumption under the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As courts have recognized time and again, the lead plaintiff selection process is not a beauty contest but rather requires the Court to appoint the presumptive "most adequate plaintiff" to serve as lead plaintiff for the class "***as a whole***" unless and until that presumption is rebutted with "proof."  *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004).  Once the presumption attaches, as it has to the SKAGEN-Danske Group here, the PSLRA does not permit the Court to weigh competing movants, entertain requests to divide the case and appoint separate investors for specific securities, or to depart in any way from the sequential process mandated by statute.  Each of the challenges lodged against the SKAGEN-Danske Group by competing movants State Retirement Systems and USS is legally and factually incorrect and no movant comes close to establishing "proof" of inadequacy.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Accordingly, the SKAGEN-Danske Group should be appointed as lead plaintiff and its chosen counsel—Kessler Topaz Meltzer & Check LLP and Bernstein Litowitz Berger & Grossmann LLP—appointed as Co-Lead Counsel for the Class.

***First***, speculation that a judgment by this Court might not be afforded *res judicata* effect in the SKAGEN-Danske Group's home jurisdictions is a red herring.  The SKAGEN-Danske

2

Group has expressly submitted to this Court's jurisdiction and has (repeatedly) agreed to be bound by its ruling, thereby establishing that SKAGEN, Danske Denmark, and Danske Luxembourg could not seek to re-litigate their claims in Norway, Denmark, or Luxembourg. Hr'g Tr. at 22:9-23:10; *see also Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999) (concluding that *res judicata* concerns "are not an issue with respect to the selection of Lead Plaintiffs, since those persons will ***clearly*** be bound by the judgment of the court"). Indeed, Courts routinely reject *res judicata* arguments against foreign lead plaintiff movants—as illustrated by the appointment of foreign investors by this Court, as well as the appointment of investors from Norway, Denmark, and Luxembourg and other foreign jurisdictions in more than **65 PSLRA actions** in the past five years alone. See Berger Decl. Ex. B; *In re Duke Energy Corp. Sec. Litig.*, No. 02-cv-3960 (S.D.N.Y.) (Rakoff, J.) (appointing Dutch investor) (Berger Decl. Ex. C); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011) (Buchwald, J.) (rejecting *res judicata* argument with respect to Danish investor); *Sgalambo v. McKenzie*, 268 F.R.D. 170 (S.D.N.Y. 2010) (Scheindlin, J.) (rejecting *res judicata* argument as to Belgian investor); *Stone v. Agnico-Eagle Mines Ltd.*, 280 F.R.D. 142, 146 (S.D.N.Y. 2012) (Oetken, J.) (rejecting *res judicata* argument as to Swedish investor); *City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*, No. 13-cv-03325-MSK-MJW, 2014 WL 4799659, at *5 & n.3 (D. Colo. Sept. 26, 2014) (Krieger, J.) (rejecting *res judicata* concerns as to Luxembourgian investor as a "boogeyman"); *Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBF(VBKx), 2011 WL 710704, at *7 (C.D. Cal. Feb. 14, 2011) (rejecting *res judicata* challenge as to Luxembourgian investor); *Moomjy v. HQ Sustainable Mar. Indus.*, No. C11-0726-RSL,

2011 WL 4048796, at *2 (W.D. Wash. Sept. 12, 2011) ("*res judicata* concerns are speculative and insufficient to rebut the presumption that a foreign investor is the most adequate plaintiff").[2]

The *res judicata* argument advanced here improperly conflates the question of whether the members of the SKAGEN-Danske Group can re-litigate ***their*** claims in their home jurisdictions—despite explicitly agreeing to be bound by this Court's rulings—with the separate and distinct question of whether a class action judgment will be given preclusive effect as to ***absent*** class members in those countries.[3]  That issue, however, has nothing to do with the selection of the lead plaintiff, and will exist irrespective of whether the lead plaintiff appointed by the Court is from Norway, Denmark, England, Ohio, Idaho, or Hawaii.  As one court explained, whether a class action judgment is enforceable in another jurisdiction "is not a question unique" to a foreign lead plaintiff movant and "[t]o the extent there is any such *res*

---

[2]   *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201 (S.D.N.Y. 2007) (Stanton, J.), and *Steinberg v. Ericsson LM Tel. Co.*, No. 07 Civ. 9615 (RPP), 2008 WL 1721484 (S.D.N.Y. Apr. 11, 2008) (Patterson, J.), cited by the State Retirement Systems (ECF No. 67 at 18-19), are inapposite as each case was decided prior to the U.S. Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), and involved securities purchased on a foreign exchange.  By contrast, there is absolutely no question about this Court's jurisdiction over this action which solely involves claims arising out of domestic securities transactions.  *See McKenzie*, 268 F.R.D. 177, 178 (distinguishing *Borochoff* on the basis that it concerned "foreign-cubed" litigation); *Moomjy*, 2011 WL 4048796, at *3 (same).

[3]   The State Retirement Systems' counsel conceded that its argument did not concern SKAGEN, Danske Denmark, or Danske Luxembourg's ability to re-litigate their claims elsewhere, but rather "whether the defendants get the insulation that they need if they beat and defeat on the merits a certified class."  Hr'g Tr. at 44:16-46:1.  In fact, any resolution of this action would either take the form of settlement, which would be a contract that would unquestionably bind the members of the SKAGEN-Danske Group, or a judgment after trial as entered by the Court.  In either case, competing movants have offered no "proof" that this Court is incapable of enforcing a settlement or crafting a judgment to prevent SKAGEN, Danske Denmark, or Danske Luxembourg from re-litigating their claims abroad.  *See OFI Risk Arbs. v. Cooper Tire & Rubber Co.*, No. 14-00068-RGA, 2014 WL 3886021, at *7-9 (D. Del. Aug. 6, 2014).

*judicata* question, ***it would apply to any and all members of the putative class***." *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 153 (D. Del. 2005).

**Second**, there is no merit to the State Retirement Systems' argument that the SKAGEN-Danske Group is inadequate because U.S. plaintiffs from jurisdictions outside of New York purportedly deserve more "deference" for choosing to bring their claims in this Court under a *forum non conveniens* analysis. As a preliminary matter, speculation about potential arguments defendants may raise in a motion they have not yet filed is, by definition, insufficient to rebut the statutory presumption. *See Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006). In any event, the Second Circuit Court of Appeals has made clear that the *forum non* analysis turns on the extent to which "a domestic or ***foreign plaintiff's choice***…has been dictated by reasons ***that the law recognizes as valid***." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001). The reasons that make this forum appropriate for the SKAGEN-Danske Group are the exact same reasons that investors from Ohio, Idaho, and Hawaii are accorded deference for bringing suit here: Petrobras has consented to venue and jurisdiction in this Court; the Company's securities trade on an exchange in this District; substantial acts in furtherance of the fraud occurred here; and numerous defendants reside and/or are otherwise subject to personal jurisdiction in New York.[4] Moreover, SKAGEN-Danske Group's lead plaintiff motion was filed in this District in compliance with and in direct response to a notice and lead plaintiff appointment process governed by the PSLRA statutory scheme established by

---

[4] As the State Retirement Systems readily admit, Petrobras, through the ADS depositary agreement, has agreed that New York is a proper forum to litigate claims concerning the securities at issue here—revealing the obvious reason that no less than five U.S. resident investors filed actions in this District in the first place. ECF No. 67 at 15.

Congress.[5]  These are all "valid" reasons for bringing suit in this forum and apply equally to the State Retirement Systems and the SKAGEN-Danske Group.  Indeed, the State Retirement Systems have not offered a single fact, let alone "proof," to show that the SKAGEN-Danske Group's efforts to comply with the PSLRA—whose principal purpose was to encourage institutional investors like the members of the SKAGEN-Dankse Group to assume leadership roles in securities class actions—could be construed against the class of investors in this case.[6]

***Third***, USS's contention that SKAGEN-Danske is somehow unfit to serve as lead plaintiff in this case because its losses primarily arise from preferred ADS (as opposed to common stock ADS) is also without merit.[7]  This type of "niche" investor argument has been repeatedly rejected by courts in this District, runs counter to the Second Circuit's holding in *Hevesi*, and is especially misplaced here given that preferred ADS account for approximately 50% of all Petrobras securities that trade on the New York Stock Exchange.  *See Porzio v.*

---

[5]  *See, e.g., DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 29 (2d Cir. 2002) (holding the fact that Judicial Panel on Multi-district Litigation placed cases in the Southern District of New York was a factor "the law recognizes as valid" in assessing convenience of forum).

[6]  The State Retirement Systems' reliance on *In re Herald, Primeo, and Thema Securities Litigation*, No. 09 Civ. 289(RMB), 2011 WL 5928952 (S.D.N.Y. Nov. 29, 2011), illustrates the weakness of the State Retirement Systems' *forum non conveniens* challenge.  In *Herald*, unlike here, the class was limited solely to foreign class members, the foreign plaintiffs' choice of forum was motivated by the fact that litigation had already been brought by the same plaintiffs in their home countries, and other evidence of forum shopping were present.  *Id.* at 14.  No such facts exist here.

[7]  Contrary to counsel's suggestion at the hearing, Hr'g Tr. at 40:17-19, the SKAGEN-Danske Group suffered losses on every type of security at issue in this case—incurring significant losses on both common and preferred ADS as well as on Petrobras bonds (specifically, the SKAGEN-Danske Group invested in four separately-issued bonds, SKAGEN and Danske Denmark suffered losses on two separately-issued bonds but Danske Denmark had minor gains on two others).  *See* ECF No. 42-2.  Having suffered approximately a quarter of a billion dollars in losses, the SKAGEN-Danske Group is perfectly situated and particularly motivated to pursue all investors' claims—including those under the Securities Exchange Act of 1934 and the Securities Act of 1933—against all culpable parties.

*Overseas Shipholding Grp.*, No. 12 Civ. 7948, 2013 WL 407678, at *4 (S.D.N.Y. Feb. 1, 2013) (Scheindlin, J.) (rejecting argument that separate lead plaintiff was needed to represent common stockholders, noting that a "stockholder can adequately represent a bondholder and vice versa, even where one set of claims arises under the Securities Act and another under the Exchange Act").[8]  Moreover, the argument requires the Court to accept several layers of speculation. As an initial matter, the hypothetical conflict USS imagines could only possibly arise *if* Petrobras were to declare bankruptcy, an outcome that USS admits is not "imminent" nor, given the actual facts before the Court, appears even likely to occur. ECF No. 69 at 11. Moreover, even if Petrobras were to declare bankruptcy, USS's theoretical conflict would only arise *if* the SKAGEN-Danske Group still held preferred ADS at the unknown future date of the hypothetical bankruptcy, *if* Petrobras lacked sufficient assets to pay liquidation rights, and *if* Brazilian law would allow the type of payments suggested by USS. Further, even if this string of improbable events were to come to pass, USS would still be required to show that the SKAGEN-Danske Group's interests in obtaining a liquidation preference from any preferred ADS still held outweighed the motivation to recover the tens of millions of dollars in realized losses its members incurred on ADS that have already been sold. To the contrary, the SKAGEN-Danske Group has provided

---

[8] In *Overseas*, where the issuer was bankrupt, Judge Scheindlin rejected a common stock investor's attack on the bondholder movants that asserted the largest loss, as there was no evidence that "the bondholders' interests in OSG's bankruptcy estate will undermine their ability or willingness to forcefully advocate the PSLRA claims at issue in this litigation." 2013 WL 407678, at *4. Here, where there is no bankruptcy, the question is not even close. To the extent the decisions in *Fannie Mae* (where the issuer was in conservatorship and was no longer operating for the benefit of common shareholders) and in *Quanta* (where the issuer was in "run-off" mode) have any relevance (Hr'g Tr. 48:6-52:13), those cases are easily distinguishable given that the conflict between different shareholders had already materialized. *Cf.* ECF No. 70-6, *Quanta* Hr'g Tr. at 24:20-23 (conceding separate representation for common stock investors would not be necessary "if Quanta was not in runoff mode and was not going to liquidate").

direct evidence—rather than speculation—that it is committed to "maximiz[ing]" the recovery in this case.  Hr'g Tr. at 17:20-18:7.

*Last*, the fact that SKAGEN's portfolio managers made additional investments in Petrobras following corrective disclosures of the fraud does not render the SKAGEN-Danske Group atypical or somehow less motivated to prove the fraud alleged in this case.  Courts routinely reject the argument that post-class period investments render an investor atypical of the Class or suggest a lack of reliance on the integrity of the market.  *See McGuire v. Dendreon Corp.*, No. C07-800MJP, 2008 WL 418122, at *2 (W.D. Wash. Feb. 13, 2008) ("Courts have repeatedly rejected the argument that a plaintiff's post-class period transactions in a defendant company's securities are inconsistent with a claim of fraud or raise questions as to the plaintiff's adequacy and typicality.").  As explained by the Fifth Circuit, "[r]eliance on the integrity of the market prior to disclosure of alleged fraud (*i.e.*, during the class period) is unlikely to be defeated by post-disclosure reliance on the integrity of the market…particularly [] after the stock price has been 'corrected' by the market's assimilation of the new information." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 138 (5th Cir. 2005); *see also Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014) (rejecting argument that post-class period purchases raised typicality problems).[9]

Likewise, continued investment in Petrobras does not pose a conflict to the SKAGEN-Danske Group's representation of the class—even if one were to entertain the conjecture that a judgment in this case would have a negative impact Petrobras's stock price.  *See, e.g., In re*

---

[9] *See also Dietrich v. Bauer*, 192 F.R.D. 119, 125 (S.D.N.Y. 2000) (finding proposed class representative typical despite continuing to purchase after dissemination of negative publicity); *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 204 (E.D. Pa. 2008) ("[a]n investor who purchases a security after the disclosure of adverse information still relies on the fact that the newly released information will be absorbed by the market and therefore reflected in the post-disclosure price").

8

*Cendant Corp. Litig.*, 264 F.3d 201, 243-44 (3d Cir. 2001) (rejecting argument that a "huge" retained investment in defendant company posed a disabling conflict, as "Congress was aware that an institutional investor with enormous stakes in a company is highly unlikely to divest all of its holdings in that company, even after a securities class action is filed in which it is a class member"). Moreover, when questioned by the Court as to whether SKAGEN's post-class period purchases suggested potentially "mixed interests," Frances Eaton, SKAGEN's Manager of Business Support and Compliance, testified unequivocally that SKAGEN's "interests in this case is to maximize recovery both on behalf of our unitholders and on behalf of the class." Hr'g Tr. at 17:20-18:7.[10]

In sum, each of the competing movants' arguments fails to establish the "proof" sufficient to rebut the presumption entitling the SKAGEN-Danske Group to appointment as lead plaintiff.

## III. CONCLUSION

For the foregoing reasons, the SKAGEN-Danske Group, the presumptive "most adequate plaintiff," respectfully requests that the Court grant its Motion in all respects.

DATED: February 25, 2015                                Respectfully submitted,

                                                        **BERNSTEIN LITOWITZ BERGER &
                                                          GROSSMANN LLP**

                                                        */s/ Max W. Berger*
                                                        Max W. Berger
                                                        Gerald H. Silk
                                                        Katherine M. Sinderson
                                                        1285 Avenue of the Americas, 38th Floor
                                                        New York, NY 10019
                                                        Telephone: (212) 554-1400
                                                        Facsimile: (212) 554-1444

---

[10] Ms. Eaton and Mr. Bo Spanding, the client representative of Danske Denmark, are attorneys within the jurisdictions of Norway and Denmark, respectively.

mwb@blbglaw.com
jerry@blbglaw.com
katiem@blbglaw.com

**KESSLER TOPAZ
 MELTZER & CHECK, LLP**

*/s/ Naumon A. Amjed*
Gregory M. Castaldo
Naumon A. Amjed
Darren J. Check
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gcastaldo@ktmc.com
namjed@ktmc.com
dcheck@ktmc.com

*Counsel for the SKAGEN-Danske Group and Proposed Co-Lead Counsel for the Class*

10