UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PETROBRAS SECURITIES LITIGATION | Civil Action No. 14-cv-9662 (JSR) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE SKAGEN-DANSKE GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF COUNSEL**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ........................................................................................................................1

I.    The SKAGEN-Danske Group Is The "Most Adequate Plaintiff" .......................................2

II.    The SKAGEN-Danske Group Has Established Article III Standing..................................6

III.    Baseless Attacks and Speculation Are Not "Proof" and Are Insufficient to Rebut the Presumption ..........................................................................................................6

IV.    CONCLUSION..................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Albert Fadem Trust v. WorldCom, Inc.*,
   No. 01 Civ. 3299(DLC), 2002 WL 1880530 (S.D.N.Y. Aug. 15, 2002) ................................. 5

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) ................................................................................... 4

*In re Bank of Am. Corp. Sec. Deriv. & ERISA Litig.*,
   No. 09 MDL 2058, 2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010) ............................................ 3

*In re BP, PLC Sec. Litig.*,
   758 F. Supp. 2d 428 (S.D. Tex. 2010) ................................................................................... 4

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ................................................................................................ 10

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ................................................................................................... 8

*In re Delphi Corp. Sec. Deriv. & ERISA Litig.*,
   458 F. Supp. 2d 455 (E.D. Mich. 2006) ................................................................................. 3

*In re Doral Fin. Corp. Sec. Litig.*,
   414 F. Supp. 2d 398 (S.D.N.Y. 2006) .................................................................................... 3

*In re Enron Corp. Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002) ........................................................................................... 6

*Faris v. Longtop Fin. Techs. Ltd.*,
   No. 11 Civ. 3658(SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ................................... 6

*Glauser v. EVCI Career Colls. Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ......................................................................................... 10

*In re Global Crossing Ltd.*,
   313 F. Supp. 2d 189 (S.D.N.Y. 2003) .................................................................................... 5

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2004) ......................................................................................... 1, 3, 5, 10

*Ho v. NQ Mobile, Inc.*,
   No. 13 Civ. 7608(WHP), 2014 WL 1389636 (S.D.N.Y. Apr. 9, 2014) ................................. 7

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)..................................................................................................5

*Porzio v. Overseas Shipholding Grp.*,
   No. 12 Civ. 7948, 2013 WL 407678 (S.D.N.Y. Feb. 1, 2013) ..................................................3

*Seidel v. Noah Educ. Holdings Ltd.*,
   No. 08 Civ. 9203(RJS), 2009 WL 700782 (S.D.N.Y. Mar. 9, 2009) ........................................6

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) .............................................................................................4

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii) ..................................................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ........................................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(v) ..............................................................................................8

The SKAGEN-Danske Group respectfully submits this brief pursuant to the Court's February 20, 2015 Order and in further support of its motion for appointment as lead plaintiff.[1]

## ARGUMENT

The undeniable evidence demonstrates that the SKAGEN-Danske Group possesses by far the largest financial interest in the relief sought by the class and that the SKAGEN-Danske Group has made a *prima facie* showing of its adequacy and typicality. In the face of this evidence, the competing movants manufacture facts and misconstrue the law in a desperate attempt to avoid the result required under the PSLRA. These baseless arguments include:

- The State Retirement Systems contend – in direct contravention of the position the Ohio Public Employees Retirement System ("Ohio PERS") has taken in prior cases – that the PSLRA requires the lead plaintiff to have "substantial losses" on each security that is the subject of the class's claims. This is wrong and contradicts the plain language of the PSLRA and controlling Second Circuit law. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82-83 n.13 (2d Cir. 2004).

- The State Retirement Systems and USS contend that the SKAGEN-Danske Group did not suffer damages as a result of investments in Petrobras bonds. This is simply factually incorrect, as evidenced by the SKAGEN-Danske Group's certifications. *See* ECF Nos. 42-1, 42-2.

- USS speculates that members of the SKAGEN-Danske Group may not have Article III standing to prosecute claims in this Action. Not so. The SKAGEN-Danske Group's opening submission provided evidence of standing (ECF No. 42-1), its opposition submission demonstrated that SKAGEN and Danske Denmark obtained pre-motion assignments of claims (ECF No. 65 at 13-14), and the SKAGEN-Danske Group repeatedly offered to provide the Court these assignments during the February 20, 2015 hearing. *See* Hr'g Tr. 23:11-24:8. Although not required, the SKAGEN-Danske Group submits those assignments to conclusively moot USS's speculation. *See* Third Supplemental Declaration of Max W. Berger ("Berger Decl."), Ex. A.

- USS and the State Retirement Systems misinterpret the evidence presented at the February 20, 2015 hearing to claim that the SKAGEN-Danske Group did not formally retain Bernstein Litowitz. This is factually wrong. The retainer agreements submitted to the Court for *in camera* review make it clear that, prior to the filing of the lead plaintiff motions, the SKAGEN-Danske Group formalized their retention of both Kessler Topaz *and* Bernstein Litowitz to

---

[1] Defined terms used herein have the same meaning as set forth in SKAGEN-Danske's opposition submission. ECF No. 65. All emphasis is added and citations omitted unless otherwise noted. References to "Hr'g Tr." are to the February 20, 2015 hearing transcript at ECF No. 81-1.

1

prosecute this case as co-lead counsel, and did so on terms that were carefully considered. *See* Hr'g Tr. at 8:4-10:3; 12:4-22; 13:24-14:9; ECF No. 42-3, Joint Decl. at ¶¶8, 11-12.

Competing movants' remaining arguments rest exclusively on hypotheticals that do not constitute "proof" of inadequacy and, again, are wrong on the facts. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (requiring "proof" to rebut presumption). None of the competing movants' arguments have merit and nothing in the record rebuts the presumption entitling the SKAGEN-Danske Group to appointment as lead plaintiff. In fact, the SKAGEN-Danske Group's conduct here – including its oversight of proposed co-lead counsel's drafting of an amended complaint, its work with Brazilian counsel, and its approval of a Joint Prosecution Agreement requiring detailed time-keeping, regular reporting, and other measures to ensure efficient prosecution of the case – is exactly what the PSLRA intended. The motion should be granted.

## I. The SKAGEN-Danske Group Is The "Most Adequate Plaintiff"

The SKAGEN-Danske Group lost approximately a quarter of a billion dollars on its investments in Petrobras during the Class Period, and thus, the SKAGEN-Danske Group has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Rather than concede the obvious, the State Retirement Systems claim that the SKAGEN-Danske Group lacks the "financial incentive" to pursue claims on behalf of common stockholders (incorrectly characterizing the SKAGEN-Danske Group's $5 million common ADS loss as "*de minimus*") or investors in Petrobras bonds (incorrectly claiming the SKAGEN-Danske Group lacks standing to assert those claims). *See* ECF No. 82 at 2. For its part, USS clings to its argument that it should be entitled to a lead role because it is the investor with the largest common ADS loss (even though its total loss is less than half of the SKAGEN-Danske Group's). ECF No. 87 at 4. These arguments are meritless.

Under the Second Circuit Court of Appeals decision in *Hevesi* and legions of decisions

applying *Hevesi*, the presumptive lead plaintiff is the investor with the largest financial interest "in relief sought by the class." *Hevesi*, 366 F.3d at 81.  The Court is ***not*** required to assess "the value of claims in each type of security purchased" to make that determination (ECF No. 82 at 2).  To the contrary, courts consistently appoint the investor that lost the most money as a result of the alleged wrongdoing without regard to the particular security giving rise to that loss.  *See Porzio v. Overseas Shipholding Grp.*, No. 12 Civ. 7948, 2013 WL 407678, at *4 (S.D.N.Y. Feb. 1, 2013) (rejecting attempt to appoint lead plaintiff to represent stockholders, noting that "stockholder can adequately represent a bondholder and vice versa, even where one set of claims arises under the Securities Act and another under the Exchange Act").[2]  In fact, Ohio PERS has in prior cases vigorously advanced the precise opposite position it takes here, stating unequivocally that the financial interest analysis should not consider the financial interest of investors who purchased unique securities or have unique claims.  For example, in *Bank of America*, Ohio PERS argued that "[c]ourts have expressly rejected [these] very niche arguments…as contrary to the PSLRA, which was enacted 'to empower one or several investors…to exercise control over the litigation ***as a whole***.'"  Berger Decl. Ex. B at 10 (*citing Hevesi*); *see also In re Bank of Am. Corp. Sec. Deriv. & ERISA Litig.,* No. 09 MDL 2058, 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010) (Chin, J.) (accepting Ohio PERS' argument to deny motion by niche investors).

The competing movants' request that the Court depart from this well-established authority is particularly misplaced here, as the fraud involves a uniform course of criminal conduct and similar misrepresentations throughout the entire Class Period.  In fact, the competing movants fail

---

[2] *See also In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 401 (S.D.N.Y. 2006) (Owen, J.) (declining to appoint "[l]ead plaintiffs for separate 'niche' classes" of investors); *In re Delphi Corp. Sec. Deriv. & ERISA Litig.*, 458 F. Supp. 2d 455, 462 (E.D. Mich. 2006) (rejecting argument of niche investor "where the claims of both the common stock and preferred securities purchasers are all predicated upon the same allegedly false and fraudulent representations").

to identify *any* differences between the claims they argue the SKAGEN-Danske Group purportedly lacks the "financial incentive" to prosecute and the claims the competing movants admit that it does. *See, e.g., Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003) ("the idea that there should be multiple Lead Plaintiffs with standing to sue on all possible causes of action has been rejected by the Southern District"); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150-51 (N.D. Cal. 1999) ("one lead plaintiff can vigorously pursue *all* available causes of action against *all* possible defendants under *all* available legal theories") (italics in original). In fact, the speculation that the SKAGEN-Danske Group lacks the "financial incentive" to prosecute claims on behalf of common ADS and bond investors is contrary to the actual evidence, which is that SKAGEN-Danske Group is committed "to maximize recovery both on behalf of our unitholders and on behalf of the class." Hr'g Tr. at 17:20-18:7.[3]

The competing movants are not only wrong on the law, they misstate the facts as well: ***the SKAGEN-Danske Group has standing to assert the Securities Act claims at issue in this case***.[4] Specifically, Danske Denmark suffered losses on its investments in bonds issued pursuant to the nearly $8.5 billion March 17, 2014 offering, as calculated in accordance with the damages

---

[3] The one case cited by the State Retirement Systems in support of their argument, *In re BP, PLC Securities Litigation*, 758 F. Supp. 2d 428 (S.D. Tex. 2010), is entirely inapposite. In *BP*, the court appointed separate lead plaintiffs to represent investors during two distinct periods where two "divergent theories" warranted doing so under the unique facts of that case. *Id.* at 438-39. By contrast, neither the State Retirement Systems nor USS has even attempted to argue that "divergent theories" apply to the claims here. Instead, all Petrobras investors' claims are based on the same conduct and nearly identical misrepresentations during the entire Class Period.

[4] Given that it has standing to sue U.S.-based underwriters under the Securities Act, the State Retirement Systems' speculation that the SKAGEN-Danske Group is somehow more susceptible to a *forum non conveniens* motion because it only has claims against non-U.S. defendants is wrong. *See* ECF No. 82 at 4 n.5; *see also* ECF No. 65 at 5-6.

provisions of the Securities Act.  *See* 15 U.S.C. § 77k(e).[5]  This loss unquestionably provides standing for the SKAGEN-Danske Group to assert Securities Act claims as to that offering, and as to all offerings at issue in this litigation.[6]

Moreover, even if the SKAGEN-Danske Group did not have standing (which it does), the lead plaintiff has the authority and responsibility to address any standing issues by including additional plaintiffs.  *See Hevesi*, 366 F.3d at 83 ("the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class")[7]  Indeed, courts in the largest securities class actions in history denied the similar requests for separate representation that the competing movants ask for here – and the result in those cases demonstrates the wisdom in doing so.  *See, e.g., Albert Fadem Trust v. WorldCom, Inc.*, No. 01 Civ. 3299(DLC), 2002 WL 1880530, at *3 (S.D.N.Y. Aug. 15, 2002) (Cote, J.) (appointing lead plaintiff with losses on common stock in an action where majority of $6 billion recovery allocated to bonds); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) (denying niche investors' motion and appointing lead plaintiff with common stock losses in case resulting in large bond recovery).

---

[5] As noted in SKAGEN-Danske Group's loss chart, Danske Denmark had losses on two bonds of a total of $167,284 on either a FIFO or LIFO basis.  ECF No. 42-2 at 22-24.  When calculating damages on these two bonds pursuant to Section 13(e) of the Securities Act, Danske Denmark incurred losses of over $500,000 if today's date is the date of suit, or $42,793 if using the date of the filing of *City of Providence v. Petroleo Brasiliero-Petrobras*, No. 14-cv-10117 (S.D.N.Y. filed Dec. 24, 2014).  The State Retirement Systems misleadingly net losses and gains across all bonds to suggest that Danske Denmark made a "profit."  ECF No. 82 at 4.  The State Retirement Systems' approach is wrong and they provide no authority for the argument that gains on separate bonds can be netted to deprive an investor the ability to recover actual investment losses, as none exists.

[6] *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 163 (2d Cir. 2012) (noting that class standing would likely exist where "a series of corporate debt offerings…contained an identical misrepresentation" as Securities Act claims "brought by a purchaser of debt from one offering would raise a 'set of concerns' nearly identical to that of a purchaser from another offering").

[7] *In re Global Crossing Ltd.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) (Lynch, J.) (same).

## II.     The SKAGEN-Danske Group Has Established Article III Standing

Next, ignoring the facts before the Court, USS persists in arguing that the members of the SKAGEN-Danske Group lack standing to prosecute this action. That argument is also wrong. Each member of the SKAGEN-Danske Group possess statutory authority to prosecute the claims at issue in this case, and SKAGEN and Danske Denmark even obtained an assignment of claims to ensure there would be no question about their standing. These assignments – which were offered to the Court at the February 20, 2015 hearing – are nearly identical to the assignments Judge Scheindlin held "conclusively" established Danske Denmark's standing in the *Longtop* action, and the assignment SKAGEN received in the *Satyam* action, which was resolved for over $150 million.[8] The pre-motion assignments, which are governed by New York law, grant "all rights, title, and interests…in the Funds' claims, demands or causes of action" in this case to SKAGEN and Danske Denmark, and definitively establish Article III standing.[9]

## III.    Baseless Attacks and Speculation Are Not "Proof" and Are Insufficient to Rebut the Presumption

Last, both State Retirement Systems and USS contend they would be a "more adequate" lead plaintiff because they purportedly negotiated a "better" fee or were more "critical" or

---

[8] *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658, 2011 WL 4597553, at *5 (S.D.N.Y. Oct. 4, 2011) (holding assignments were "virtually identical" to the those in *Sprint Communications Co., L.P. v. APCC Services, Inc.* 554 U.S. 269 (2008)). Although the Court did not request to review them at the hearing, the assignments are respectfully submitted herewith. *See* Berger Decl. Ex. A.

[9] Notwithstanding a valid assignment and inherent statutory standing, USS argues that SKAGEN-Danske Group's motion should be denied because the appropriate evidence was not "timely" proffered. ECF No. 84 at 5. This argument turns the PSLRA's presumption on its head. The members of SKAGEN-Danske Group submitted sworn PSLRA certifications that provided evidence stating they have "full power and authority to bring suit to recover for investment losses" suffered by their constituent funds. ECF No. 42-1. Nothing more was required. *See, e.g., Seidel v. Noah Educ. Holdings Ltd.*, 2009 WL 700782, at *4 (S.D.N.Y. Mar. 9, 2009) (holding certification of authority was sufficient, there was no obligation to "provide detailed documentation in support of [that] authority," and refusing to impose duty to refute speculation to the contrary); *Ho v. NQ Mobile, Inc.*, 2014 WL 1389636, at *3-4 (S.D.N.Y. Apr. 9, 2014) (same).

"independent" of their proposed lead counsel. Again, these arguments invite a comparative analysis that is not permitted under the PSLRA. They are also flat out wrong on the facts.

*First*, both USS and State Retirement Systems argue that the SKAGEN-Danske Group is somehow unfit to lead the class in this case because they speculate that the SKAGEN-Danske Group "failed to even retain" Bernstein Litowitz (ECF No. 82 at 7) and that the group lacks "any formalized attorney-client relationship" with the firm (ECF No. 84 at 6). This is wrong. As set forth in the actual retainers submitted to the Court, the clients made Bernstein Litowitz's retention as proposed co-lead counsel for the class formal and explicit.

*Second*, the competing movants take their speculation a step further to argue that SKAGEN-Danske Group's retention of Kessler Topaz and Bernstein Litowitz as co-lead counsel was "uncritically accepted" (ECF No. 82 at 7) or based solely on the massive discovery effort that will be required to effectively litigate this case. Hr'g Tr. at 9:7-10:3; 13:24-14:9; 55:20-23; ECF No. 42-3, Joint Decl. at ¶¶7-9, 14-15. To the contrary, the SKAGEN-Danske Group's retention of co-lead counsel here was not just based on the extraordinary scope of the discovery, but also a careful and considered judgment about the substantial financial and human resources necessary to most effectively prosecute this action (i) arising out of a decade-long fraud involving one of the largest companies in the world; (ii) asserting numerous claims with different standards of liability; (iii) against approximately 50 defendants (some of whom have not yet been named) and who are or will be represented by several of the top law firms in the country; and (iv) which must be prosecuted under a litigation schedule that likely contemplates trial within a year. *See* Hr'g Tr. at 8:4-10:3; ECF No. 42-3, Joint Decl. at ¶¶8-15. The decision to retain Kessler Topaz and Bernstein Litowitz was also motivated by the clients' prior work with the firms in *Medtronic*, *SunPower*, and *Satyam*, as well as the results Kessler Topaz and Bernstein Litowitz have achieved in some of the

7

largest recoveries in securities class action history.[10] In other words, the very things a "traditional" client would consider in selecting counsel are what led the SKAGEN-Danske Group to believe that Kessler Topaz and Bernstein Litowitz would be the best lawyers to seek recovery of the quarter of a billion dollars in losses it suffered here. ECF No. 42-3, Joint Decl. at ¶¶12-13.

*Third*, ignoring the record and disregarding common sense, the State Retirement Systems and USS argue the representatives of the SKAGEN-Danske Group have somehow "relinquished" control over this case because, they claim, Danske Denmark "accepted" a fee proposed by their longtime counsel, Kessler Topaz, "rather than conducting any search for competitively-priced counsel." ECF No. 82 at 6-7. To the contrary, the SKAGEN-Danske Group's retention of Kessler Topaz and Bernstein Litowitz in this case embodies the traditional attorney-client relationship that the PSLRA sought to restore to securities class actions. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 254 (3d Cir. 2001) (noting the PSLRA was intended to restore traditional attorney-client relationships in which "clients choose lawyers with whom they are comfortable and in whose ability and integrity they have confidence").

Here, SKAGEN and Danske Denmark, have an attorney-client relationship with Kessler Topaz that spans eight years, during which the firm provided legal advice on an ongoing basis and representation as litigation counsel in at least five separate actions prosecuted under the PSLRA. In fact, Kessler Topaz represented Danske Denmark at trial and secured a plaintiff's verdict before Judge Scheindlin just three months ago – one of only seven plaintiffs' verdicts in PSLRA history – and is currently representing Danske Denmark as lead plaintiff in another case. In each of these

---

[10] These include, among others, the $2.4 billion recovery in *In re Bank of America Corp. Sec., Deriv. and ERISA Litig.*, No. 09-md-2058 (S.D.N.Y.) (Castel, J.); the $730 million recovery in *In re Citigroup Inc. Bond Litig.*, No. 08-cv-9522 (S.D.N.Y.) (Stein, J.); and the $615 million in recoveries in *In re Lehman Bros. Equity/Debt Sec. Litig.*, No. 08-cv-5523 (S.D.N.Y.) (Kaplan, J.).

8

cases, representation was governed by a retainer agreement that included substantially similar terms and attorneys' fees to those approved in this case. In fact, the fees actually sought in the successful actions prosecuted by SKAGEN and Danske Denmark as lead plaintiff (with Kessler Topaz and Bernstein Litowitz as lead counsel) – including the $150 million recovery in *Satyam*, the $85 million recovery in *Medtronic*, and the $20 million recovery in *SunPower* – were approved by federal judges who scrutinized counsel's work and determined those fees were fair, reasonable and appropriate. *See, e.g., Satyam* Hr'g Tr. 31:18-33:16 (Berger Decl. Ex. C) (approving SKAGEN's requested fee, noting it was on the "lower end of the range of percentage fees awarded by courts in this circuit").[11]

Given these facts, there is no basis to argue that the PSLRA required the SKAGEN-Danske Group to set up an auction, renegotiate the rates they had agreed to in prior successful cases, or hire an outside lawyer to assess the qualifications of their chosen counsel. Rather, as with any longstanding client, the members of the SKAGEN-Danske Group were eminently reasonable in relying on their own experience with their proposed co-lead counsel in selecting them to represent investors on the terms and under the fee schedule they approved here.[12]

---

[11] It is important to note that, as the retainer makes clear, the retainer provides a maximum cap on the fee percentage counsel may request. Given that the SKAGEN-Danske Group will regularly receive and review counsel's time records and will be intimately involved in overseeing the prosecution of this action, the Court can be assured that any actual fee that is submitted for this Court's approval will have been carefully scrutinized, reviewed and approved by the SKAGEN-Danske Group, and will reflect its members' informed judgment that the proposed fee is reasonable and fair in light of the risks, effort and result achieved.

[12] Misguided criticism of Mr. Spanding's response to the Court's inquiry about the negotiation of the retainer as somehow "abdicating" the responsibilities of a lead plaintiff should be rejected. ECF No. 84 at 8. Mr. Spanding's acknowledgment that the Court would be the ultimate arbiter of the fee does not reflect a lack of concern over the fee's appropriateness. To the contrary, Mr. Spanding's response demonstrated his familiarity with the class action process and this Court's reputation for scrutinizing the attorneys' fees awarded in securities class actions. Hr'g Tr. at 54:18-55:11; *see also In re Cavanaugh*, 306 F.3d 726, 733-34 (9th Cir. 2002) ("Aware that actual fees paid will be subject to close judicial scrutiny based on counsel's actual work done and results

Moreover, the SKAGEN-Danske Group has continued to demonstrate its suitability to represent the class including through its approval a Joint Prosecution Agreement (which was provided to the Court *in camera*) that requires the keeping and reporting of detailed time records, regular updates and frequent communication between the firms and the clients about the progress of the case, and designates specific attorneys with responsibility for ensuring the litigation is managed efficiently. ECF No. 42-3, Joint Decl. at ¶13. The SKAGEN-Danske Group has also continued to oversee counsel's drafting of an amended complaint, has conferred with Brazilian counsel and engaged other experts to assist in the investigation, and has otherwise fulfilled the duties expected of a lead plaintiff. *See id.* ¶14. The competing movants' arguments that this record establishes "proof" of inadequacy is baseless.[13]

## IV. CONCLUSION

For the foregoing reasons, the SKAGEN-Danske Group, the presumptive "most adequate plaintiff," respectfully requests that the Court grant its motion in all respects.

DATED: February 27, 2015

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Max W. Berger*
Max W. Berger

---

achieved, an adequate plaintiff could rationally be less concerned with negotiating an advantageous fee schedule and more concerned with securing the services of the lawyer that he believes is likely to obtain an excellent result"). As Mr. Spanding correctly testified, any concern over the fee here – in light of the risks, result achieved, and work by counsel – will be addressed by the Court at the appropriate time.

[13] The request by movant Ms. Freitas Da Silva for a niche role to represent individual investors should also be denied. ECF No. 86. With respect to the Court's inquiry as to whether Ms. Freitas Da Silva should play a role in any settlement discussions (Hr'g Tr. at 95:6-12), the SKAGEN-Danske Group respectfully submits that appointing a lead plaintiff and counsel for that purpose would contravene *Hevesi* and the PSLRA. *See, e.g., Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (McMahon, J.).

Gerald H. Silk
Katherine M. Sinderson
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
mwb@blbglaw.com
jerry@blbglaw.com
katiem@blbglaw.com

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**

*/s/ Naumon A. Amjed*
Gregory M. Castaldo
Naumon A. Amjed
Darren J. Check
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
gcastaldo@ktmc.com
namjed@ktmc.com
dcheck@ktmc.com

*Counsel for the SKAGEN-Danske Group and
Proposed Co-Lead Counsel for the Class*