UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Petrobras Securities Litigation | No. 14-cv-9662 (JSR) |

**APPLICATION FOR THE ISSUANCE OF
INTERNATIONAL LETTERS OF REQUEST (LETTERS ROGATORY)**

Defendants Petróleo Brasileiro S.A. – Petrobras ("Petrobras"), Petrobras Global Finance

B.V. ("PGF") and Theodore M. Helms (collectively, the "Petrobras Defendants" or the

"Applicants"), respectfully petition this Court pursuant to the provisions of the Hague

Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial

Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 (the "Hague Evidence

Convention"), for the issuance of Letters of Request in the form annexed hereto as Exhibits B

through F, addressed to the Senior Master of the High Court (Queen's Bench Division) acting as

the Competent Judicial Authority of the United Kingdom, requesting that the Senior Master

cause the Letters of Request to be served upon the designated recipients, who are representatives

of (1) Baillie Gifford Overseas Ltd., (2) BlueBay Asset Management LLP, (3) Insight

Investment, (4) Rogge Global Partners plc, and (5) Walter Scott & Partners Ltd.  In support

thereof, the Applicants respectfully represent as follows:

**BACKGROUND**

1.     On October 16, 2015, the Boeing Company Employee Retirement Plans Master

Trust and the Boeing Company Employee Savings Plans Master Trust (together, the "Boeing

Retirement Trusts"), Nova Scotia Public Service Superannuation Fund and Nova Scotia

Teachers' Pension Fund (together, "Nova Scotia Pension Services"), National Pension Services

and certain other plaintiffs (collectively, the "Plaintiffs") filed a complaint in this Court against

the Petrobras Defendants and certain other named defendants (collectively, the "Defendants") asserting claims under the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act"), and alleging, *inter alia*, that the Petrobras Defendants "engaged in a fraudulent scheme that artificially inflated the price of Petrobras Securities" and made material misstatements in the offering documents issued in connection with certain debt offerings.  (Dkt. No. 1.)  Plaintiffs filed an amended complaint ("AC") with substantially similar allegations on November 6, 2015.  (Dkt. No. 47.)   Plaintiffs' allegations stem from "a money-laundering scandal in which Petrobras's contractors colluded with Petrobras executives to inflate bids and provide kick-backs to the executives, Brazilian politicians, and money launderers."  (AC ¶ 8.)  The Petrobras Defendants deny the allegations against them.

2.      Plaintiffs face significant issues on reliance, loss causation and damages, as well as on the location at which they incurred irrevocable liability, which they must prove in order to prevail on their claims.  "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action."  Stoneridge Inv. Partners, LLC v. Scientific-Atlanta Inc., 552 U.S. 148, 159 (2008).  Under the fraud-on-the-market presumption, reliance is presumed where a plaintiff proves that a defendant made materially misleading statements, that the security traded in an efficient market, and that the material misrepresentation affected the price of the securities.  Id.; see also Halliburton Co. v. Erica P. John Fund, Inc., 134 S. Ct. 2398, 2408 (2014).  Even if Plaintiffs are able to show that there were materially misleading statements and that the Petrobras Securities trade in an efficient market, the Petrobras Defendants are entitled to rebut that presumption and show that there was no individual, actual reliance.  Plaintiffs' disclosures identified certain foreign asset managers, including those that are the subject of these Letters of Request.  As a result, information about the investment strategies

used by each of the investment managers and the information on which the investment manager relied in making investment decisions is central to the question of whether the presumption of reliance should apply to each plaintiff.

3.      The alleged misstatements also present individualized issues regarding damages that the Petrobras Defendants will present at trial.  Whether an investor would have made a different investment decision if not for the alleged misstatement requires a case-by-case individualized inquiry.  And where the plaintiff delegated discretion to make and manage their investments in Petrobras Securities, the information relevant to that inquiry is uniquely within the knowledge of the asset manager.

4.      In light these facts, the information requested from these foreign asset managers is likely to be relevant to the Petrobras Defendants' defenses.  In their First Supplemental Initial Disclosures, Plaintiffs identified the following asset managers as likely to have relevant information concerning purchases and sales of Petrobras Securities:  (1) Baillie Gifford Overseas Ltd., (2) BlueBay Asset Management LLP, (3) Insight Investment, (4) Rogge Global Partners plc and (5) Walter Scott & Partners Ltd.  Plaintiffs indicated that these asset managers "had full authority to make and manage, and were responsible for making and managing, investments in Petrobras Securities on behalf of [Plaintiffs]."  (See Plaintiffs' First Supplemental Initial Disclosures ¶ 23.)  The information requested thus will bear substantially on the Petrobras Defendants' defenses.

5.      In the first meet and confer with counsel for Plaintiff regarding the discovery requests, Plaintiffs explained that certain Plaintiffs—including the Boeing Retirement Trusts, Nova Scotia Pension Services and National Pension Services—had delegated investment authority to their third-party asset managers, and as a result did not consider these documents

regarding investment strategy and reliance to be within their possession, custody or control. Although the Petrobras Defendants reserve their rights on that position pending a production of the investment advisory agreements that govern the relationship between each plaintiff and their asset manager, and an analysis of the entitlement to information such plaintiff has both under law and under the investment advisory agreements, the Petrobras Defendants accordingly submit these Letters of Request to obtain documents that will be used to test the merits of Plaintiffs' claims and to present evidence at trial.

6.      Furthermore, it is a plaintiff's burden to plead and prove that it engaged in a domestic securities transaction subject to the federal securities laws.  See Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 70 (2d Cir. 2012).  The federal securities laws only cover conduct "in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States."  See Morrison v. Nat'l Austl. Bank Ltd., 561 U.S. 247, 273 (2010).  For transactions in securities that are not traded on a U.S. exchange (like the Petrobras Notes),[1] a plaintiff can only satisfy this burden by affirmatively proving that (a) it incurred irrevocable liability in the U.S., or (b) title was transferred in the U.S.  See Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 210-12 (2d Cir. 2014) (citing Absolute Activist, 677 F.3d at 69).  Meeting this standard requires allegations "including, but not limited to, facts concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money," all of which are uniquely within knowledge of Plaintiffs or, in cases where discretion was delegated, Plaintiffs' asset managers or investment advisors.  Absolute Activist, 677 F.3d at 70.  The Court

---

[1]  Even for those securities that are listed on a U.S. exchange, the question is not solely whether those securities are available for purchase and sale through such exchange, but whether the specific transaction made by the plaintiff occurred through a U.S. exchange.  *City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 180 (2d Cir. 2014).

has held that where, as here, title is immobilized and held in the form of a global note, the only means by which a plaintiff can show a domestic transaction for a security that is not purchased on a U.S. exchange is to show that the act by which that plaintiff incurred irrevocable liability to the seller occurred in the United States.  (Opinion on Motion to Dismiss, Dkt. No. 374).

7.      Plaintiffs represented that their "investment managers were located in the United States, placed purchase orders for the Petrobras Securities in the United States and thereby irrevocably bound the client in the United States to take the Petrobras Securities, and executed the trades in the Petrobras Securities in the United States."[2]  (AC ¶¶ 63, 76).  The information sought is likely to be relevant to testing the merits of that claim, particularly in respect to foreign asset managers operating in the United Kingdom, and the Petrobras Defendants accordingly submit these Letters of Request to obtain documents that will be used to test the merits of those claims.

**RELIEF REQUESTED**

1.      The Petrobras Defendants therefore request that this Court issue an Order in the form attached hereto as Exhibit A:

(a)      Providing for this Court to sign the Letters of Request and affix the seal of the United States District Court for the Southern District of New York over said signature in each of Letters of Request;

(b)      Requiring that the Clerk of the District Court return the original, signed Letters of Request to the Petrobras Defendants, so that said Letters of Request may be delivered to the Senior Master of the High Court (Queen's Bench Division) acting

---

[2] The fact that, notwithstanding this sworn allegation, Plaintiffs have now identified asset managers located abroad only underscores the importance of the information sought by this application.

as the Competent Judicial Authority of the United Kingdom, which is the

domicile of the designated recipients from whom evidence is sought; and

(c)    Directing counsel for the Petrobras Defendants to transmit the original, signed

Letters of Request to the Competent Judicial Authority of the United Kingdom; so

that the Petrobras Defendants may obtain for use at trial potential evidence

material to the claims and defenses at issue in the above-captioned litigation.

2.    The persons from whom evidence is sought by the Letters of Request are asset managers, which Plaintiffs have said had full authority to make and manage, and were responsible for making and managing, Plaintiffs' investments in Petrobras Securities.  The asset managers and their representatives have knowledge of facts bearing on the central issues of this case, and the documents and testimony sought are material to Plaintiffs' asserted claims and the Petrobras Defendants' defenses.

3.    The Petrobras Defendants have considered the requirements of the Courts of England and Wales in respect of letters of request, including the form in which the Letters of Request should be presented to the English Court and their permissible content.  The Petrobras Defendants believe that these Letters of Request are consistent with these requirements, as contained in the UK Evidence (Proceedings in Other Jurisdictions) Act 1975 and Part 34 of the Civil Procedure Rules.  This Court is requested to issue these Letters of Request on this basis.

4.    The Petrobras Defendants requests that after this Court has signed the Letters of Request, they be returned to the Petrobras Defendants for forwarding to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom, Royal Courts of Justice, Strand London WC2A 2LL, United Kingdom (for the attention of the Foreign Process Section, Room E16).

WHEREFORE, the Petrobras Defendants respectfully request that the Court enter the attached form of order (i) providing for this Court to sign the Letters of Request and affix the seal of the United States District Court for the Southern District of New York over said signature in each of the Letters of Request; (ii) directing that the Clerk of the District Court return the original, signed Letters of Request to counsel for the Petrobras Defendants, so that said Letters of Request may be issued to the Competent Judicial Authority of the United Kingdom; (iii) directing counsel for the Petrobras Defendants to transmit the original, signed Letters of Request to the Competent Judicial Authority of the United Kingdom; and (iv) granting such other relief as the Court deems just and proper.

Dated: New York, New York         CLEARY GOTTLIEB STEEN & HAMILTON LLP

      January 5, 2016


                                     _____
                                     Lewis J. Liman
                                     Roger A. Cooper
                                     Luke A. Barefoot
                                     Elizabeth Vicens
                                     One Liberty Plaza
                                     New York, New York 10006
                                     Telephone: (212) 225 2000
                                     Facsimile: (212) 225 3999

                                     *Counsel for the Petrobras Defendants*

# EXHIBIT A

# (DRAFT ORDER)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Petrobras Securities Litigation | No. 14-cv-9662 (JSR) |

## ORDER GRANTING APPLICATION FOR
## ISSUANCE OF INTERNATIONAL LETTERS OF REQUEST (LETTERS ROGATORY)

Upon the Application for the Issuance of International Letters of Request (Letter Rogatory) (the "Application") filed by Petróleo Brasileiro S.A. – Petrobras ("Petrobras"), Petrobras Global Finance B.V. ("PGF") and Theodore M. Helms (collectively, the "Petrobras Defendants" or the "Applicants"), requesting the issuance of international letters of request (the "Letters of Request") pursuant to the provisions of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 (the "Hague Evidence Convention"); and upon the record of the above-captioned matter;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

The Application is **GRANTED**.

This Court shall sign the Letters of Request attached to the Application as Exhibits B through F and affix the seal of the United States District Court for the Southern District of New York over said signature in each of the Letters of Request.

The Clerk of the District Court is directed to return the original, signed Letters of Request to counsel for the Petrobras Defendants so that said Letters of Request may be issued to the Senior Master of the High Court (Queen's Bench Division) acting as the Competent Judicial Authority of the United Kingdom.

The Petrobras Defendants are directed to transmit the original, signed Letters of Request to the Competent Judicial Authority of the United Kingdom.

The Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this order.

Dated: _____, 2016
      New York, New York


_____
THE HONORABLE JED S. RAKOFF
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

# (LETTER OF REQUEST TO
# BAILLIE GIFFORD OVERSEAS LTD.)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Petrobras Securities Litigation | No. 14-cv-9662 (JSR) |
|---|---|

**Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

The United States District Court for the Southern District of New York presents its compliments to the judicial authorities of the United Kingdom of Great Britain and Northern Ireland and requests international judicial assistance to obtain documentary and testimonial evidence from a non-party witness located in the United Kingdom of Great Britain and Northern Ireland ("the United Kingdom") to be used for civil trial before this Court ("Letter of Request"). Based on the Petrobras Defendants' application, this Court finds that there are sufficient grounds to obtain documentary and testimonial evidence from Baillie Gifford Overseas Ltd. ("Baillie Gifford") in the above-referenced action and should be produced in the interest of justice.

This Letter of Request is made pursuant to, and in conformity with, Chapter I of the *Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*, opened for signature March 18, 1970, 947 U.N.T.S. 241 (the "Hague Convention"), to which both the United States and the United Kingdom are parties.

Based on information contained in disclosures made by plaintiffs the Boeing Company Employee Retirement Plans Master Trust and the Boeing Company Employee Savings Plans Master Trust (together, the "Boeing Retirement Trusts"), this Court finds that there are sufficient grounds to obtain documentary and testimonial evidence sought through this Letter of Request that is likely to be relevant to the issues in dispute and is not pre-trial discovery within the meaning of the declaration made by the United Kingdom regarding Article 23 of the Hague

1

Convention.  This Letter of Request fully complies with the reservations under the Hague

Convention set forth by the United Kingdom.

The particulars of this Letter of Request follow:

**SECTION I**

1. **Sender**  
Luke A. Barefoot  
Cleary Gottlieb Steen & Hamilton LLP  
One Liberty Plaza  
New York, NY 10006  
USA  
Telephone: 212-225-2829  
Facsimile: 212-225-3999  
lbarefoot@cgsh.com  

*As authorized by:*  
The Honorable Jed S. Rakoff  
United States District Court  
Southern District of New York  
500 Pearl Street, Room 660  
New York, New York 10007  

2. **Central Authority of the Requested State**  
The Senior Master  
For the attention of the Foreign Process Section  
Room E16  
Royal Courts of Justice  
Strand  
London WC2A 2LL  

3. **Person to whom the executed request is to be returned**  
Luke A. Barefoot  
Cleary Gottlieb Steen & Hamilton LLP  
One Liberty Plaza  
New York, NY 10006  
lbarefoot@cgsh.com  

4. **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

The requesting authority respectfully requests that the response be provided as soon as

practicable in order to ensure that evidence may be obtained before the deadline for factual

discovery by defendants of the individual plaintiffs, which is May 30, 2016.

**SECTION II**

In conformity with Article 3 of the Hague Convention, the undersigned applicants have the honor to submit the following request:

| | | | |
|---|---|---|---|
| 5. | *a* | **Requesting judicial authority (Article 3,a)** | The Honorable Jed S. Rakoff<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 660<br>New York, New York 10007 |
| | *b* | **To the competent authority of (Article 3,a)** | United Kingdom of Great Britain and Northern Ireland<br><br>Central Authority<br><br>The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>London WC2A 2LL |
| | *c* | **Name of the case and any identifying number** | *In re Petrobras Securities Litigation*, No. 14-cv-9662(JSR), United States District Court for the Southern District of New York |
| 6. | | **Names and addresses of the Parties and their representatives (including representatives in the requested State) (Article 3,b)** | |
| | *a* | **Plaintiff** | **The Boeing Retirement Trusts** |
| | | **Representatives** | Harry A. Olivar, Jr.<br>Kristin Bird<br>Joseph C. Sarles<br>Ryan S. Landes<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100 |

3

| | | |
|---|---|---|
| *b*  **Defendants** | | **Petróleo Brasileiro S.A. – Petrobras, Petrobras Global Finance B.V., Petrobras International Finance Company S.A. and Theodore Marshall Helms** |
| **Representatives** | | Lewis J. Liman<br>Roger A. Cooper<br>Luke A. Barefoot<br>Elizabeth Vicens<br>Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225 2000<br>Facsimile: (212) 225 3999 |

7.    **Nature of the proceedings and summary of claims (Article 3,c)**

7.1    This action is a civil litigation proceeding pending before the Requesting Court asserting claims arising under Section 10(b) of the U.S. Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §78j) and sections 11 and 15 of the U.S. Securities Act of 1933 ("Securities Act") (15 U.S.C. §§77k and 77(o)) on behalf of certain persons who purchased Petrobras Securities between October 16, 2010 and May 15, 2015 (the "Relevant Period").  On November 6, 2015, the Boeing Retirement Trusts and certain other plaintiffs (collectively, the "Plaintiffs") filed the Amended Complaint (the "Complaint" or "AC").  (Dkt. No. 47.)

7.2    This case is one of dozens of actions that have been brought by similarly-situated plaintiffs who chose to file individual actions based on the same facts.  All of the individual cases are proceeding on a consolidated basis with the purported class action, and all are being handled by the Honorable Jed. S. Rakoff.

7.3    The schedule set for the case is expedited.  The deadline for discovery by defendants of the individual plaintiffs is May 30, 2016, and trial is set to begin no later than

September 19, 2016.  This short timeline underscores the urgency of this request and the Petrobras Defendants' interest in obtaining documents from Baillie Gifford as soon as possible.

7.4     Plaintiffs assert claims under the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act"), and alleging, *inter alia*, that the Petrobras Defendants "engaged in a fraudulent scheme that artificially inflated the price of Petrobras Securities" and made material misstatements in the offering documents issued in connection with certain debt offerings.  Plaintiffs' allegations stem from "a money-laundering scandal in which Petrobras's contractors colluded with Petrobras executive to inflate bids and provide kick-backs to the executives, Brazilian politicians, and money launderers."  (AC ¶ 8.) The Petrobras Defendants deny the allegations against them.  The Petrobras Defendants assert that the Petrobras executives who facilitated the inflated bids submitted by Petrobras's contractors, and who received kickbacks in exchange for doing so, acted contrary to the interest of Petrobras and caused harm to Petrobras, including in the form of inflated prices that Petrobras had to pay and that, accordingly, Petrobras was a victim of the scheme.

7.5     The Boeing Retirement Trusts, headquartered in Chicago, Illinois, United States, purchased or otherwise acquired Petrobras Securities at various times during the Relevant Period.

7.6     According to disclosures served by the Boeing Retirement Trusts, Baillie Gifford, which is headquartered in the United Kingdom, served as asset manager to the Boeing Retirement Trusts during the Relevant Period.

7.7     Petróleo Brasileiro S.A. – Petrobras ("Petrobras"), a Brazilian corporation, is an integrated oil and gas company that carries out crude oil and natural gas production and refining activities on behalf of the Brazilian government.  It is one of the largest energy companies in the

world. Petrobras is majority owned by the Brazilian federal government.  Its common and preferred shares are listed and traded on the Brazilian stock exchange, the BOVESPA, and it has American Depository Shares listed on the New York Stock Exchange ("NYSE").

7.8    Petrobras Global Finance B.V. ("PGF")  is a wholly-owned finance subsidiary of Petrobras, incorporated in The Netherlands.

7.9    Theodore M. Helms signed the 2012 Registration Statement.

7.10    Petrobras Securities are all securities issued by Petrobras, PGF or Petrobras International Finance Company S.A, another wholly-owned finance subsidiary of Petrobras.

7.11    In 2009, Brazilian federal prosecutors launched an investigation named Operation Lava Jato ("Lava Jato") aimed at criminal organizations in Brazil engaged in money laundering. AC ¶ 126.  In 2014, part of the investigation shifted to focus on irregularities involving certain Brazilian contractors and suppliers to Petrobras, including some of Brazil's largest construction and engineering firms.  AC ¶ 129.  This investigation uncovered an unlawful cartel formed by companies that had contracted with Petrobras on certain large-scale projects (the "Cartel").  AC ¶ 130.  The Cartel ran a widespread bribery scheme by imposing a hidden overcharge on Petrobras contracts.  AC ¶ 131.  The Cartel companies then used the overcharged amounts to make payments to Brazilian political parties, public officials, and money launderers and to make kickback payments to four corrupt, now-former, Petrobras employees (the "Payment Scheme"). AC ¶ 137.

7.12    The AC identifies the four former Petrobras employees alleged to have been involved in the Payment Scheme.  They are Paulo Roberto Costa (former Chief Downstream Officer and Director of Supply from May 14, 2004 through April 2012, AC ¶¶ 126-27), Pedro Barusco (former manager of the Engineering Services area until July 2011, AC ¶ 133), Renato de

Souza Duque (former Chief Services Officer from January 31, 2003 through February 2012, AC ¶¶ 125, 291) and Nestor Cervero (former director of the International Division until March 2014, AC ¶ 309) (together, the "Co-Conspirators").

7.13    The Brazilian investigation into the Cartel has been directed not at Petrobras, but at Cartel member companies, Brazilian political parties, public officials, money launderers and the Co-Conspirators.  There have been over 40 indictments for conspiracy, bribery and money laundering, including of top executives employed by Cartel member companies.  AC ¶ 129. Prosecutors have asked the Brazilian Supreme Court to investigate dozens of sitting politicians for receiving bribes and have filed charges against one party official.  *Id*.

7.14    The Petrobras Defendants argue that the Brazilian investigation has demonstrated that Petrobras was a victim of the Cartel's unlawful acts and also that the scheme was concealed from Petrobras.  The Brazilian prosecutors have treated Petrobras as a victim and Petrobras is assisting in the prosecutions of those involved in the Cartel in order to reclaim monies that it was deprived of through inflated bids.  Petrobras itself never paid any bribes to anyone.  Rather, all payments were secretly made by Cartel members or their agents with the overpayments they covertly obtained.  As recognized in the Complaint, the Payment Scheme existed to benefit Cartel members, "the campaign coffers of " political parties, and the Co-Conspirators who participated in the Payment Scheme.  AC ¶ 7.

8.    **Evidence to be obtained or other judicial act to be performed (Article 3,d)**

8.1    Plaintiffs' claims rest, in part, on (1) reliance, (2) causation and (3) damages. They also rest on the notion that they purchased Petrobras securities in U.S. domestic transactions.  Documents reviewed by the Applicants, including disclosures provided by the Boeing Retirement Trusts, identify Amy Dymock as a Representative of Baillie Gifford who had

full authority to make and manage, and was responsible for making and managing, investments in Petrobras Securities on behalf of the Boeing Retirement Trusts during the Relevant Period and has knowledge of facts that bear on the issues of this case.

8.2     The evidence sought from the asset manager identified below, which includes evidence of the trading strategy, the basis on which the decision to transact in Petrobras Securities was made and alleged reliance, is material to the resolution of these disputes.  The evidence bears on the Petrobras Defendants' defenses, as well as the merits of Plaintiffs' claims and the quantification of damages.  Plaintiffs have indicated that they lack control over or ability to require production of these documents from the asset manager without an order from a court, and therefore there is no other way to obtain this important evidence.

8.3     It is accordingly requested that, for the purpose of justice and for due determination of the matters in dispute between the parties, you direct Amy Dymock (the "Witness") to provide oral testimony for use at trial (if appropriate) to counsel for the Applicants subject to any applicable privileges that may apply under the rules and procedures of the Requesting Court or the courts of England and Wales.  The Witness's unique importance to the claims and defenses is described both above and in the subject matters as to which the Witness is to be examined, detailed in Section 10 below.  Absent voluntary cooperation, evidence from the Witness is available only by an order of the High Court.

9.     **Identity and address of**          Amy Dymock
       **any person to be**               + 44 (0) 131 275 2205
       **examined (Article 3,e)**

10.    **Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Article 3,f)**

It is requested that the Witness be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may

apply under the rules and procedures of the Requesting Court or the courts of England and Wales, on:

Baillie Gifford's investment advice to the Boeing Retirement Trusts regarding Petrobras Securities, and more specifically (i) the transactions in Petrobras Securities on behalf of the Boeing Retirement Trusts in the period between October 16, 2010 and May 15, 2015; (ii) the location of the transactions in Petrobras Securities on behalf of the Boeing Retirement Trusts in the Period between October 16, 2010 and May 15, 2015, including where the purchase orders were placed, where the transaction was executed, where title passed, and whether the transaction took place on a U.S. exchange, (iii) the reasons for advising the Boeing Retirement Trusts to purchase, sell, short sell or hold Petrobras Securities in the period between October 16, 2010 and May 15, 2015; (iv) the investment policies, guidelines, and risk tolerances used relating to the Boeing Retirement Trusts' investments in Petrobras Securities in the period between October 16, 2010 and May 15, 2015; (v) the steps taken to monitor and supervise the Boeing Retirement Trusts' transactions in Petrobras Securities in the period between October 16, 2010 and May 15, 2015; and (vi) the calculation of the value of Petrobras Securities in the period between October 16, 2010 and May 15, 2015 and any damages claimed by the Boeing Retirement Trusts.

11.     **Documents or other property to be inspected (Article 3,g)**

It is requested that Baillie Gifford be required to produce the specified documents described herein as are believed to exist in its power, possession or control. Such documents are necessary for the purposes of justice and for the due determination of the matters in dispute between the parties.

        a.   The investment management agreement signed between you and the Boeing Retirement Trusts governing your relationship with the Boeing Retirement Trusts.

b.  The trade confirmations of your purchase, sale or short sale of Petrobras Securities between October 16, 2010 and May 15, 2015 for or on behalf of the Boeing Retirement Trusts, including the documents that reflect the location where the purchase order was placed, where the transaction was executed, and where title passed.

c.  The brokerage account statements for the Boeing Retirement Trusts that reflect your purchase, sale, short sale or holdings of Petrobras Securities between October 16, 2010 and May 15, 2015 for or on behalf of the Boeing Retirement Trusts.

d.  Correspondence dated from October 16, 2010 to May 15, 2015 between you and representatives of the Boeing Retirement Trusts concerning your purchase, sale, short sale or holdings of Petrobras Securities for or on behalf of the Boeing Retirement Trusts.

e.  Correspondence dated from October 16, 2010 to May 15, 2015 between you and the counterparty through which you effected your purchase, sale, short sale or holdings of Petrobras Securities for or on behalf of the Boeing Retirement Trusts.

f.  Correspondence dated from October 16, 2010 to May 15, 2015 between you and representatives of the Petrobras Defendants concerning the business affairs and financial condition of Petrobras.

g.  The investment model you used to analyze Petrobras Securities in the period between October 16, 2010 and May 15, 2015.

h.   The set of criteria you used to make decisions to purchase, sell, short sell or hold Petrobras Securities between October 16, 2010 and May 15, 2015 for or on behalf of the Boeing Retirement Trusts.

i.   The set of guidelines the Boeing Retirement Trusts imposed on the investments that were made on their behalf in the period between October 16, 2010 and May 15, 2015.

12.   **Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h)**

The Requesting Court requests that in the interest of justice you cause, by your proper and usual process, the Witness to appear to be examined under oath or affirmation at the office of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, or such other place as the parties may agree.

13.   **Special methods or procedure to be followed (Articles 3,i and 9)**

13.1   The Requesting Court further requests that (i) Lewis J. Liman and Luke A. Barefoot, who are representatives of the Petrobras Defendants, or such other persons later designated by the Petrobras Defendants; (ii) Ryan Landes, who is a representative of the Boeing Retirement Trusts, or such other persons later designated by the Boeing Retirement Trusts; (iii) John A. Kehoe, who is Class Counsel, or such other persons later designated by Class Counsel; and (iv) such other parties as would be entitled in the ordinary course to examine or cross examine a witness at trial in accordance with the requirements of U.S. procedural law and due process, be appointed as Commissioners pursuant to Article 17 of the Convention, and be authorized to question the Witness on the subjects identified above and elicit her sworn testimony.

13.2    Pursuant to Article 9 of the Convention, it is requested that the legal

representatives of the Petrobras Defendants and the Boeing Retirement Trusts be permitted to

conduct the examination of the Witness in England before an Examiner of the Court, to be

nominated by the Applicants, who, subject to approval by you, shall act as referee.  It is

requested that the Witness be placed under oath or solemn affirmation in accordance with

whatever procedure English law provides for in these matters before answering the oral

questions and cross-questions on the subjects identified above which are put to them by the legal

representatives referred to above.

13.3    The Requesting Court believes that the procedure of having these attorneys

appointed to take the testimony is appropriate and necessary.  These attorneys are familiar with

the relevant events and transactions in this complex matter.  Accordingly, they will be able to

elicit the relevant testimony in a manner as efficient and expeditious as possible.  If the

questioning were to be done by someone not familiar with the relevant facts, there is a strong

possibility that complete and accurate testimony would not be obtained.

13.4    The Requesting Court respectfully requests that the representatives of the

Petrobras Defendants and the Boeing Retirement Trusts be allotted a total of seven hours for the

examination to be divided evenly between the Petrobras Defendants and the Boeing Retirement

Trusts.

13.5    The Requesting Court also respectfully requests that the questions and the

responses of the Witness be recorded verbatim and that the Witness sign the verbatim transcript.

The verbatim transcript of the Witness's responses to questions under oath taken pursuant to the

Letter of Request issued or endorsed by the Courts will be admissible at trial in certain

circumstances to be agreed among the parties (or, failing agreement, as directed by the

Requesting Court), except to the extent that the content of such transcript of the examination would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Federal Rules of Evidence if the Witness were present at trial in the relevant jurisdiction.  The Requesting Court also respectfully requests that you cause the testimony of the Witness to be duly marked for authentication, and that you further authenticate the examination by the seal of your Court or in such other way in accordance with your procedure and return the written evidence and documents produced or identified to Jonathan Kelly of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, under cover duly sealed, and the Requesting Court shall be ready and willing to do the same for you in a similar case when required.

13.6     In the event the evidence cannot be taken in the manner requested above, the Requesting Court respectfully requests that the evidence be taken in the manner provided by the applicable law of England and Wales.

13.7     The appearance of the Witness for testimony is voluntary and no criminal prosecution in the United States will result from a failure to appear.  However, the Requesting Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel the Witness to give evidence in response to this Letter of Request if the Witness is uncooperative.

14.     **Request for notification of the time and place for the execution of the request and identity and address of any person to be notified (Article 7)[1]**

Jonathan Kelly
Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London EC2V 5EH

---

[1] For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by the Petrobras Defendants to the jurisdiction of the courts of England and Wales, nor is Cleary Gottlieb Steen & Hamilton LLP instructed by the Applicants to accept service of any proceedings in England and Wales.

15. **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the letter of request (Article 8)**

   None.

16. **Specification of privilege or duty to refuse to give evidence under the law of the state of origin (Article 11,b)**

The Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the United States or the United Kingdom, or would disclose a privileged communication.

17. **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention**

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of the Witness, the costs of the Examiner and the costs of the transcript of the evidence will be initially borne by the Petrobras Defendants.  The payment of any such fees and costs is without prejudice to the Applicants' right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.


   DATE OF REQUEST                    …………………………………….


   SIGNATURE AND SEAL OF            …………………………………….
   THE REQUESTING AUTHORITY

# EXHIBIT C

# (LETTER OF REQUEST TO
BLUEBAY ASSET MANAGEMENT LLP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Petrobras Securities Litigation | No. 14-cv-9662 (JSR) |

**Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

The United States District Court for the Southern District of New York presents its compliments to the judicial authorities of the United Kingdom of Great Britain and Northern Ireland and requests international judicial assistance to obtain documentary and testimonial evidence from a non-party witness located in the United Kingdom of Great Britain and Northern Ireland ("the United Kingdom") to be used for civil trial before this Court ("Letter of Request"). Based on the Petrobras Defendants' application, this Court finds that there are sufficient grounds to obtain documentary and testimonial evidence from BlueBay Asset Management LLP ("BlueBay") that is likely to be relevant for trial in the above-referenced action and should be produced in the interest of justice.

This Letter of Request is made pursuant to, and in conformity with, Chapter I of the *Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*, opened for signature March 18, 1970, 947 U.N.T.S. 241 (the "Hague Convention"), to which both the United States and the United Kingdom are parties.

Based on information contained in disclosures made by plaintiff National Pension System ("NPS"), this Court finds that there are sufficient grounds to obtain documentary and testimonial evidence sought through this Letter of Request that is likely to be relevant to the issues in dispute and is not pre-trial discovery within the meaning of the declaration made by the United Kingdom

1

regarding Article 23 of the Hague Convention.  This Letter of Request fully complies with the

reservations under the Hague Convention set forth by the United Kingdom.

The particulars of this Letter of Request follow:

**SECTION I**

| | | |
|---|---|---|
| 1. | **Sender** | Luke A. Barefoot |
| | | Cleary Gottlieb Steen & Hamilton LLP |
| | | One Liberty Plaza |
| | | New York, NY 10006 |
| | | USA |
| | | Telephone: 212-225-2829 |
| | | Facsimile: 212-225-3999 |
| | | lbarefoot@cgsh.com |
| | | |
| | | *As authorized by:* |
| | | The Honorable Jed S. Rakoff |
| | | United States District Court |
| | | Southern District of New York |
| | | 500 Pearl Street, Room 660 |
| | | New York, New York 10007 |
| | | |
| 2. | **Central Authority of the Requested State** | The Senior Master |
| | | For the attention of the Foreign Process Section |
| | | Room E16 |
| | | Royal Courts of Justice |
| | | Strand |
| | | London WC2A 2LL |
| | | |
| 3. | **Person to whom the executed request is to be returned** | Luke A. Barefoot |
| | | Cleary Gottlieb Steen & Hamilton LLP |
| | | One Liberty Plaza |
| | | New York, NY 10006 |
| | | lbarefoot@cgsh.com |

4.  **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

The requesting authority respectfully requests that the response be provided as soon as

practicable in order to ensure that evidence may be obtained before the deadline for factual

discovery by defendants of the individual plaintiffs, which is May 30, 2016.

**SECTION II**

In conformity with Article 3 of the Hague Convention, the undersigned Applicants have the honor to submit the following request:

| | | | |
|---|---|---|---|
| 5. | *a* | **Requesting judicial authority (Article 3,a)** | The Honorable Jed S. Rakoff<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 660<br>New York, New York 10007 |
| | *b* | **To the competent authority of (Article 3,a)** | United Kingdom of Great Britain and Northern Ireland<br><br>Central Authority<br><br>The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>London WC2A 2LL |
| | *c* | **Name of the case and any identifying number** | *In re Petrobras Securities Litigation*, No. 14-cv-9662(JSR), United States District Court for the Southern District of New York |
| 6. | | **Names and addresses of the Parties and their representatives (including representatives in the requested State) (Article 3,b)** | |
| | *a* | **Plaintiff** | **National Pension Services** |
| | | **Representatives** | Harry A. Olivar, Jr.<br>Kristin Bird<br>Joseph C. Sarles<br>Ryan S. Landes<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100 |

|   |   |   |
|---|---|---|
| *b* | **Defendants** | **Petróleo Brasileiro S.A. – Petrobras, Petrobras Global Finance B.V., Petrobras International Finance Company S.A. and Theodore Marshall Helms** |
|   | **Representatives** | Lewis J. Liman<br>Roger A. Cooper<br>Luke A. Barefoot<br>Elizabeth Vicens<br>Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225 2000<br>Facsimile: (212) 225 3999 |

7.     **Nature of the proceedings and summary of claims (Article 3,c)**

7.1     This action is a civil litigation proceeding pending before the Requesting Court asserting claims arising under Section 10(b) of the U.S. Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §78j) and sections 11 and 15 of the U.S. Securities Act of 1933 ("Securities Act") (15 U.S.C. §§77k and 77(o)) on behalf of certain persons who purchased Petrobras Securities between October 16, 2010 and May 15, 2015 (the "Relevant Period").  On November 6, 2015, NPS and certain other plaintiffs (collective, the "Plaintiffs") filed the Amended Complaint (the "Complaint").  (Dkt. No. 47.)

7.2     This case is one of dozens of actions that have been brought by similarly-situated plaintiffs who chose to file individual actions based on the same facts.  All of the individual cases are proceeding on a consolidated basis with the purported class action, and all are being handled by the Honorable Jed. S. Rakoff.

7.3     The schedule set for the case is expedited.  The deadline for discovery by defendants of the individual plaintiffs is May 30, 2016, and trial is set to begin no later than September 19, 2016.  This short timeline underscores the urgency of this request and the Petrobras Defendants' interest in obtaining documents from BlueBay as soon as possible.

7.4     Plaintiffs assert claims under the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act"), and alleging, *inter alia*, that the Petrobras Defendants "engaged in a fraudulent scheme that artificially inflated the price of Petrobras Securities" and made material misstatements in the offering documents issued in connection with certain debt offerings.  Plaintiffs' allegations stem from "a money-laundering scandal in which Petrobras's contractors colluded with Petrobras executives to inflate bids and provide kick-backs to the executives, Brazilian politicians, and money launderers."  (AC ¶ 8.) The Petrobras Defendants deny the allegations against them.  The Petrobras Defendants assert that the Petrobras executives who facilitated the inflated bids submitted by Petrobras's contractors, and who received kickbacks in exchange for doing so, acted contrary to the interest of Petrobras and caused harm to Petrobras, including in the form of inflated prices that Petrobras had to pay and that, accordingly, Petrobras was a victim of the scheme.

7.5     NPS, headquartered in South Korea, purchased or otherwise acquired Petrobras Securities at various times during the Relevant Period.

7.6     According to disclosures served by NPS and information provided by counsel for NPS, BlueBay, headquartered in the United Kingdom, served as asset manager to NPS during the Relevant Period.

7.7     Petróleo Brasileiro S.A. – Petrobras ("Petrobras"), a Brazilian corporation, is an integrated oil and gas company that carries out crude oil and natural gas production and refining activities on behalf of the Brazilian government.  It is one of the largest energy companies in the world. Petrobras is majority owned by the Brazilian federal government.  Its common and preferred shares are listed and traded on the Brazilian stock exchange, the BOVESPA, and it has American Depository Shares listed on the New York Stock Exchange ("NYSE").

7.8     Petrobras Global Finance B.V. ("PGF") is a wholly-owned finance subsidiary of Petrobras, incorporated in The Netherlands.

7.9     Theodore M. Helms signed the 2012 Registration Statement.

7.10     Petrobras Securities are all securities issued by Petrobras, PGF or Petrobras International Finance Company S.A, another wholly-owned finance subsidiary of Petrobras.

7.11     In 2009, Brazilian federal prosecutors launched an investigation named Operation Lava Jato ("Lava Jato") aimed at criminal organizations in Brazil engaged in money laundering. AC ¶ 126.  In 2014, part of the investigation shifted to focus on irregularities involving certain Brazilian contractors and suppliers to Petrobras, including some of Brazil's largest construction and engineering firms.  AC ¶ 129.  This investigation uncovered an unlawful cartel formed by companies that had contracted with Petrobras on certain large-scale projects (the "Cartel").  AC ¶ 130.  The Cartel ran a widespread bribery scheme by imposing a hidden overcharge on Petrobras contracts.  AC ¶ 131.  The Cartel companies then used the overcharged amounts to make payments to Brazilian political parties, public officials, and money launderers and to make kickback payments to four corrupt, now-former, Petrobras employees (the "Payment Scheme"). AC ¶ 137.

7.12     The AC identifies the four former Petrobras employees alleged to have been involved in the Payment Scheme.  They are Paulo Roberto Costa (former Chief Downstream Officer and Director of Supply from May 14, 2004 through April 2012, AC ¶¶ 126-27), Pedro Barusco (former manager of the Engineering Services area until July 2011, AC ¶ 133), Renato de Souza Duque (former Chief Services Officer from January 31, 2003 through February 2012, AC ¶¶ 125, 291) and Nestor Cervero (former director of the International Division until March 2014, AC ¶ 309) (together, the "Co-Conspirators").

7.13    The Brazilian investigation into the Cartel has been directed not at Petrobras, but at Cartel member companies, Brazilian political parties, public officials, money launderers and the Co-Conspirators.  There have been over 40 indictments for conspiracy, bribery and money laundering, including of top executives employed by Cartel member companies.  AC ¶ 129. Prosecutors have asked the Brazilian Supreme Court to investigate dozens of sitting politicians for receiving bribes and have filed charges against one party official.  *Id*.

7.14    The Petrobras Defendants argue that the Brazilian investigation has demonstrated that Petrobras was a victim of the Cartel's unlawful acts and also that the scheme was concealed from Petrobras.  The Brazilian prosecutors have treated Petrobras as a victim and Petrobras is assisting in the prosecutions of those involved in the Cartel in order to reclaim monies that it was deprived of through inflated bids.  Petrobras itself never paid any bribes to anyone.  Rather, all payments were secretly made by Cartel members or their agents with the overpayments they covertly obtained.  As recognized in the Complaint, the Payment Scheme existed to benefit Cartel members, "the campaign coffers of" political parties, and the Co-Conspirators who participated in the Payment Scheme.  AC ¶ 7.

8.    **Evidence to be obtained or other judicial act to be performed (Article 3,d)**

8.1    Plaintiffs' claims rest, in part, on (1) reliance, (2) causation and (3) damages. They also rest on the notion that they purchased Petrobras securities in U.S. domestic transactions.  Documents reviewed by the Applicants, including disclosures provided by counsel to NPS, identify James Brace as a Representative of BlueBay who had full authority to make and manage, and was responsible for making and managing, investments in Petrobras Securities on behalf of NPS during the Relevant Period and has knowledge of facts that bear on the issues of this case.

8.2      The evidence sought from the asset manager identified below, which includes

evidence of the trading strategy, the basis on which the decision to transact in Petrobras

Securities was made and alleged reliance, is material to the resolution of these disputes.  The

evidence bears on the Petrobras Defendants' defenses, as well as the merits of Plaintiffs' claims

and the quantification of damages.  Plaintiffs have indicated that they lack control over or ability

to require production of these documents from the asset manager without an order from a court,

and therefore there is no other way to obtain this important evidence.

8.3      It is accordingly requested that, for the purpose of justice and for due

determination of the matters in dispute between the parties, you direct James Brace (the

"Witness") to provide oral testimony for use at trial (if appropriate) to counsel for the Applicants

subject to any applicable privileges that may apply under the rules and procedures of the

Requesting Court or the courts of England and Wales.  The Witness's unique importance to the

claims and defenses is described both above and in the subject matters as to which the Witness is

to be examined, detailed in Section 10 below.  Absent voluntary cooperation, evidence from the

Witness is available only by an order of the High Court.

| 9. | **Identity and address of any person to be examined (Article 3,e)** | James Brace<br>+44 (0) 20 7389 3700 |
|---|---|---|

10.      **Questions to be put to the persons to be examined or statement of the subject
matter about which they are to be examined (Article 3,f)**

It is requested that the Witness be questioned according to the procedure set out below in

Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may

apply under the rules and procedures of the Requesting Court or the courts of England and

Wales, on:

8

BlueBay's investment advice to NPS regarding Petrobras Securities, and more specifically (i) the transactions in Petrobras Securities on behalf of NPS in the period between October 16, 2010 and May 15, 2015; (ii) the location of the transactions in Petrobras Securities on behalf of NPS in the Period between October 16, 2010 and May 15, 2015, including where the purchase orders were placed, where the transaction was executed, where title passed, and whether the transaction took place on a U.S. exchange, (iii) the reasons for advising NPS to purchase, sell, short sell or hold Petrobras Securities in the period between October 16, 2010 and May 15, 2015; (iv) the investment policies, guidelines, and risk tolerances used relating to NPS's investments in Petrobras Securities in the period between October 16, 2010 and May 15, 2015; (v) the steps taken to monitor and supervise NPS's transactions in Petrobras Securities in the period between October 16, 2010 and May 15, 2015; and (vi) the calculation of the value of Petrobras Securities in the period between October 16, 2010 and May 15, 2015 and any damages claimed by NPS.

11.    **Documents or other property to be inspected (Article 3,g)**

It is requested that BlueBay be required to produce the specified documents described herein as are believed to exist in its power, possession or control.  Such documents are necessary for the purposes of justice and for the due determination of the matters in dispute between the parties.

a.  The investment management agreement signed between you and NPS governing your relationship with NPS.

b.  The trade confirmations of your purchase, sale, and short sale of Petrobras Securities between October 16, 2010 and May 15, 2015 for or on behalf of NPS,

including the documents that reflect the location where the purchase order was placed, where the transaction was executed, and where title passed.

c.   The brokerage account statements for NPS that reflect your purchase, sale, short sale or holdings of Petrobras Securities between October 16, 2010 and May 15, 2010 for or on behalf of NPS.

d.   Correspondence dated from October 16, 2010 to May 15, 2015 between you and representatives of NPS concerning your purchase, sale, short sale or holdings of Petrobras Securities for or on behalf of NPS.

e.   Correspondence dated from October 16, 2010 to May 15, 2015 between you and the counterparty through which you effected your purchase, sale, short sale or holdings of Petrobras Securities for or on behalf of NPS.

f.   Correspondence dated from October 16, 2010 to May 15, 2015 between you and representatives of the Petrobras Defendants concerning the business affairs and financial condition of Petrobras.

g.   The investment model you used to analyze Petrobras Securities in the period between October 16, 2010 and May 15, 2015.

h.   The set of criteria you used to make decisions to purchase, sell, short sell or hold Petrobras Securities between October 16, 2010 and May 15, 2015 for or on behalf of NPS.

i.   The set of guidelines NPS imposed on the investments that were made on its behalf in the period between October 16, 2010 and May 15, 2015.

12.    **Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h)**

The Requesting Court requests that in the interest of justice you cause, by your proper and usual process, the Witness to appear to be examined under oath or affirmation at the office of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, or such other place as the parties may agree.

13.    **Special methods or procedure to be followed (Articles 3,i and 9)**

13.1    The Requesting Court further requests that (i) Lewis J. Liman and Luke A. Barefoot, who are representatives of the Petrobras Defendants, or such other persons later designated by the Petrobras Defendants; (ii) Ryan Landes, who is a representative of NPS, or such other persons later designated by NPS; (iii) John A. Kehoe, who is Class Counsel, or such other persons later designated by Class Counsel; and (iv) such other parties as would be entitled in the ordinary course to examine or cross examine a witness at trial in accordance with the requirements of U.S. procedural law and due process, be appointed as Commissioners pursuant to Article 17 of the Convention, and be authorized to question the Witness on the subjects identified above and elicit his sworn testimony.

13.2    Pursuant to Article 9 of the Convention, it is requested that the legal representatives of the Petrobras Defendants and NPS be permitted to conduct the examination of the Witness in England before an Examiner of the Court, to be nominated by the Applicants, who, subject to approval by you, shall act as referee.  It is requested that the Witnesses be placed under oath or solemn affirmation in accordance with whatever procedure English law provides for in these matters before answering the oral questions and cross-questions on the subjects identified above which are put to them by the legal representatives referred to above.

11

13.3     The Requesting Court believes that the procedure of having these attorneys appointed to take the testimony is appropriate and necessary.  These attorneys are familiar with the relevant events and transactions in this complex matter.  Accordingly, they will be able to elicit the relevant testimony in a manner as efficient and expeditious as possible.  If the questioning were to be done by someone not familiar with the relevant facts, there is a strong possibility that complete and accurate testimony would not be obtained.

13.4     The Requesting Court respectfully requests that the representatives of the Petrobras Defendants and NPS allotted a total of seven hours for the examination to be divided evenly between the Petrobras Defendants and NPS.

13.5     The Requesting Court also respectfully requests that the questions and the responses of the Witness be recorded verbatim and that the Witness sign the verbatim transcript. The verbatim transcript of the Witness's responses to questions under oath taken pursuant to the Letter of Request issued or endorsed by the Courts will be admissible at trial in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Requesting Court), except to the extent that the content of such transcript of the examination would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Federal Rules of Evidence if the Witness were present at trial in the relevant jurisdiction.  The Requesting Court also respectfully requests that you cause the testimony of the Witness to be duly marked for authentication, and that you further authenticate the examination by the seal of your Court or in such other way in accordance with your procedure and return the written evidence and documents produced or identified to Jonathan Kelly of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall

Street, London EC2V 5EH, under cover duly sealed, and the Requesting Court shall be ready and willing to do the same for you in a similar case when required.

13.6    In the event the evidence cannot be taken in the manner requested above, the Requesting Court respectfully requests that the evidence be taken in the manner provided by the applicable law of England and Wales.

13.7    The appearance of the Witness for testimony is voluntary and no criminal prosecution in the United States will result from a failure to appear.  However, the Requesting Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel the Witness to give evidence in response to this Letter of Request if the Witness is uncooperative.

14.    **Request for notification of the time and place for the execution of the request and identity and address of any person to be notified (Article 7)[1]**

Jonathan Kelly
Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London EC2V 5EH

15.    **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the letter of request (Article 8)**

None.

16.    **Specification of privilege or duty to refuse to give evidence under the law of the state of origin (Article 11,b)**

The Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the United States or the United Kingdom, or would disclose a privileged communication.

---

[1] For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by the Petrobras Defendants to the jurisdiction of the courts of England and Wales, nor is Cleary Gottlieb Steen & Hamilton LLP instructed by the Applicants to accept service of any proceedings in England and Wales.

17.    **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention**

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of the Witness, the costs of the Examiner and the costs of the transcript of the evidence will be initially borne by the Petrobras Defendants.  The payment of any such fees and costs is without prejudice to the Applicants' right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.


DATE OF REQUEST                        ……………………………………….


SIGNATURE AND SEAL OF                  ……………………………………….
THE REQUESTING AUTHORITY

14

# EXHIBIT D

# (LETTER OF REQUEST TO
# INSIGHT INVESTMENT)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Petrobras Securities Litigation | No. 14-cv-9662 (JSR) |

**Request for International Judicial Assistance Pursuant to the Hague Convention of 18
March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

The United States District Court for the Southern District of New York presents its
compliments to the judicial authorities of the United Kingdom of Great Britain and Northern
Ireland and requests international judicial assistance to obtain documentary and testimonial
evidence from a non-party witness located in the United Kingdom of Great Britain and Northern
Ireland ("the United Kingdom") to be used for civil trial before this Court ("Letter of Request").
Based on the Petrobras Defendants' application, this Court finds that there are sufficient grounds
to obtain documentary and testimonial evidence from Insight Investment that is likely to be
relevant for trial in the above-referenced action and should be produced in the interest of justice.

This Letter of Request is made pursuant to, and in conformity with, Chapter I of the
*Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial
Matters*, opened for signature March 18, 1970, 947 U.N.T.S. 241 (the "Hague Convention"), to
which both the United States and the United Kingdom are parties.

Based on information contained in disclosures made by plaintiff National Pension System
("NPS"), this Court finds that there are sufficient grounds to obtain documentary and testimonial
evidence sought through this Letter of Request that is likely to be relevant to the issues in dispute
and is not pre-trial discovery within the meaning of the declaration made by the United Kingdom
regarding Article 23 of the Hague Convention.  This Letter of Request fully complies with the
reservations under the Hague Convention set forth by the United Kingdom.

The particulars of this Letter of Request follow:

**SECTION I**

1.  **Sender**                      Luke A. Barefoot
                                     Cleary Gottlieb Steen & Hamilton LLP
                                     One Liberty Plaza
                                     New York, NY 10006
                                     USA
                                     Telephone: 212-225-2829
                                     Facsimile: 212-225-3999
                                     lbarefoot@cgsh.com

                                     *As authorized by:*
                                     The Honorable Jed S. Rakoff
                                     United States District Court
                                     Southern District of New York
                                     500 Pearl Street, Room 660
                                     New York, New York 10007

2.  **Central Authority of**        The Senior Master
    **the Requested State**         For the attention of the Foreign Process Section
                                     Room E16
                                     Royal Courts of Justice
                                     Strand
                                     London WC2A 2LL

3.  **Person to whom the**          Luke A. Barefoot
    **executed request is**         Cleary Gottlieb Steen & Hamilton LLP
    **to be returned**              One Liberty Plaza
                                     New York, NY 10006
                                     lbarefoot@cgsh.com

4.  **Specification of the date by which the requesting authority requires receipt
    of the response to the Letter of Request**

The requesting authority respectfully requests that the response be provided as soon as

practicable in order to ensure that evidence may be obtained before the deadline for factual

discovery by defendants of the individual plaintiffs, which is May 30, 2016.

**SECTION II**

In conformity with Article 3 of the Hague Convention, the undersigned Applicants have

the honor to submit the following request:

| | | | |
|---|---|---|---|
| 5. | *a* | **Requesting judicial authority (Article 3,a)** | The Honorable Jed S. Rakoff<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 660<br>New York, New York 10007 |
| | *b* | **To the competent authority of (Article 3,a)** | United Kingdom of Great Britain and Northern Ireland<br><br>Central Authority<br><br>The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>London WC2A 2LL |
| | *c* | **Name of the case and any identifying number** | *In re Petrobras Securities Litigation*, No. 14-cv-9662(JSR), United States District Court for the Southern District of New York |
| 6. | | **Names and addresses of the Parties and their representatives (including representatives in the requested State) (Article 3,b)** | |
| | *a* | **Plaintiff** | **National Pension Services** |
| | | **Representatives** | Harry A. Olivar, Jr.<br>Kristin Bird<br>Joseph C. Sarles<br>Ryan S. Landes<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100 |

|  *b*  **Defendants** | **Petróleo Brasileiro S.A. – Petrobras, Petrobras Global Finance B.V., Petrobras International Finance Company S.A. and Theodore Marshall Helms** |
| **Representatives** | Lewis J. Liman<br>Roger A. Cooper<br>Luke A. Barefoot<br>Elizabeth Vicens<br>Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225 2000<br>Facsimile: (212) 225 3999 |

7. **Nature of the proceedings and summary of claims (Article 3,c)**

7.1     This action is a civil litigation proceeding pending before the Requesting Court asserting claims arising under Section 10(b) of the U.S. Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §78j) and sections 11 and 15 of the U.S. Securities Act of 1933 ("Securities Act") (15 U.S.C. §§77k and 77(o)) on behalf of certain persons who purchased Petrobras Securities between October 16, 2010 and May 15, 2015 (the "Relevant Period").  On November 6, 2015, NPS and certain other plaintiffs (collective, the "Plaintiffs") filed the Amended Complaint (the "Complaint").  (Dkt. No. 47.)

7.2     This case is one of dozens of actions that have been brought by similarly-situated plaintiffs who chose to file individual actions based on the same facts.  All of the individual cases are proceeding on a consolidated basis with the purported class action, and all are being handled by the Honorable Jed. S. Rakoff.

7.3     The schedule set for the case is expedited.  The deadline for discovery by defendants of the individual plaintiffs is May 30, 2016, and trial is set to begin no later than September 19, 2016.  This short timeline underscores the urgency of this request and the

Petrobras Defendants' interest in obtaining documents from Insight Investment as soon as possible.

7.4     Plaintiffs assert claims under the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act"), and alleging, *inter alia*, that the Petrobras Defendants "engaged in a fraudulent scheme that artificially inflated the price of Petrobras Securities" and made material misstatements in the offering documents issued in connection with certain debt offerings.  Plaintiffs' allegations stem from "a money-laundering scandal in which Petrobras's contractors colluded with Petrobras executives to inflate bids and provide kick-backs to the executives, Brazilian politicians, and money launderers."  (AC ¶ 8.) The Petrobras Defendants deny the allegations against them.  The Petrobras Defendants assert that the Petrobras executives who facilitated the inflated bids submitted by Petrobras's contractors, and who received kickbacks in exchange for doing so, acted contrary to the interest of Petrobras and caused harm to Petrobras, including in the form of inflated prices that Petrobras had to pay and that, accordingly, Petrobras was a victim of the scheme.

7.5     NPS, headquartered in South Korea, purchased or otherwise acquired Petrobras Securities at various times during the Relevant Period.

7.6     According to disclosures served by NPS, Insight Investment, headquartered in the United Kingdom, served as asset manager to NPS during the Relevant Period.

7.7     Petróleo Brasileiro S.A. – Petrobras ("Petrobras"), a Brazilian corporation, is an integrated oil and gas company that carries out crude oil and natural gas production and refining activities on behalf of the Brazilian government.  It is one of the largest energy companies in the world. Petrobras is majority owned by the Brazilian federal government.  Its common and

preferred shares are listed and traded on the Brazilian stock exchange, the BOVESPA, and it has American Depository Shares listed on the New York Stock Exchange ("NYSE").

7.8     Petrobras Global Finance B.V. ("PGF") is a wholly-owned finance subsidiary of Petrobras, incorporated in The Netherlands.

7.9     Theodore M. Helms signed the 2012 Registration Statement.

7.10    Petrobras Securities are all securities issued by Petrobras, PGF or Petrobras International Finance Company S.A, another wholly-owned finance subsidiary of Petrobras.

7.11    In 2009, Brazilian federal prosecutors launched an investigation named Operation Lava Jato ("Lava Jato") aimed at criminal organizations in Brazil engaged in money laundering. AC ¶ 126.  In 2014, part of the investigation shifted to focus on irregularities involving certain Brazilian contractors and suppliers to Petrobras, including some of Brazil's largest construction and engineering firms.  AC ¶ 129.  This investigation uncovered an unlawful cartel formed by companies that had contracted with Petrobras on certain large-scale projects (the "Cartel").  AC ¶ 130.  The Cartel ran a widespread bribery scheme by imposing a hidden overcharge on Petrobras contracts.  AC ¶ 131.  The Cartel companies then used the overcharged amounts to make payments to Brazilian political parties, public officials, and money launderers and to make kickback payments to four corrupt, now-former, Petrobras employees (the "Payment Scheme"). AC ¶ 137.

7.12    The AC identifies the four former Petrobras employees alleged to have been involved in the Payment Scheme.  They are Paulo Roberto Costa (former Chief Downstream Officer and Director of Supply from May 14, 2004 through April 2012, AC ¶¶ 126-27), Pedro Barusco (former manager of the Engineering Services area until July 2011, AC ¶ 133), Renato de Souza Duque (former Chief Services Officer from January 31, 2003 through February 2012, AC

¶¶ 125, 291) and Nestor Cervero (former director of the International Division until March 2014, AC ¶ 309) (together, the "Co-Conspirators").

7.13    The Brazilian investigation into the Cartel has been directed not at Petrobras, but at Cartel member companies, Brazilian political parties, public officials, money launderers and the Co-Conspirators.  There have been over 40 indictments for conspiracy, bribery and money laundering, including of top executives employed by Cartel member companies.  AC ¶ 129. Prosecutors have asked the Brazilian Supreme Court to investigate dozens of sitting politicians for receiving bribes and have filed charges against one party official.  *Id*.

7.14    The Petrobras Defendants argue that the Brazilian investigation has demonstrated that Petrobras was a victim of the Cartel's unlawful acts and also that the scheme was concealed from Petrobras.  The Brazilian prosecutors have treated Petrobras as a victim and Petrobras is assisting in the prosecutions of those involved in the Cartel in order to reclaim monies that it was deprived of through inflated bids.  Petrobras itself never paid any bribes to anyone.  Rather, all payments were secretly made by Cartel members or their agents with the overpayments they covertly obtained.  As recognized in the Complaint, the Payment Scheme existed to benefit Cartel members, "the campaign coffers of " political parties, and the Co-Conspirators who participated in the Payment Scheme.  AC ¶ 7.

8.    **Evidence to be obtained or other judicial act to be performed (Article 3,d)**

8.1    Plaintiffs' claims rest, in part, on (1) reliance, (2) causation and (3) damages. They also rest on the notion that they purchased Petrobras securities in U.S. domestic transactions.  Documents reviewed by the Applicants, including disclosures provided by NPS, identify Timothy Benjamin as a Representative of Insight Investment who had full authority to make and manage, and was responsible for making and managing, investments in Petrobras

Securities on behalf of NPS during the Relevant Period and has knowledge of facts that bear on the issues of this case.

8.2     The evidence sought from the asset manager identified below, which includes evidence of the trading strategy, the basis on which the decision to transact in Petrobras Securities was made and alleged reliance, is material to the resolution of these disputes.  The evidence bears on the Petrobras Defendants' defenses, as well as the merits of Plaintiffs' claims and the quantification of damages.  Plaintiffs have indicated that they lack control over or ability to require production of these documents from the asset manager without an order from a court, and therefore there is no other way to obtain this important evidence.

8.3     It is accordingly requested that, for the purpose of justice and for due determination of the matters in dispute between the parties, you direct Timothy Benjamin (the "Witness") to provide oral testimony for use at trial (if appropriate) to counsel for the Applicants subject to any applicable privileges that may apply under the rules and procedures of the Requesting Court or the courts of England and Wales.  The Witness's unique importance to the claims and defenses is described both above and in the subject matters as to which the Witness is to be examined, detailed in Section 10 below.  Absent voluntary cooperation, evidence from the Witness is available only by an order of the High Court.

| | | |
|---|---|---|
| 9. | **Identity and address of any person to be examined (Article 3,e)** | Timothy Benjamin<br>+ 44 (0) 207 321 1762 |

10.     **Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Article 3,f)**

It is requested that the Witness be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may

apply under the rules and procedures of the Requesting Court or the courts of England and Wales, on:

Insight Investment's investment advice to NPS regarding Petrobras Securities, and more specifically (i) the transactions in Petrobras Securities on behalf of NPS in the period between October 16, 2010 and May 15, 2015; (ii) the location of the transactions in Petrobras Securities on behalf of NPS in the Period between October 16, 2010 and May 15, 2015, including where the purchase orders were placed, where the transaction was executed, where title passed, and whether the transaction took place on a U.S. exchange, (iii) the reasons for advising NPS to purchase, sell, short sell or hold Petrobras Securities in the period between October 16, 2010 and May 15, 2015; (iv) the investment policies, guidelines, and risk tolerances used relating to the NPS's investments in Petrobras Securities in the period between October 16, 2010 and May 15, 2015; (v) the steps taken to monitor and supervise NPS's transactions in Petrobras Securities in the period between October 16, 2010 and May 15, 2015; and (vi) the calculation of the value of Petrobras Securities in the period between October 16, 2010 and May 15, 2015 and any damages claimed by NPS.

11.   **Documents or other property to be inspected (Article 3,g)**

It is requested that Insight Investment be required to produce the specified documents described herein as are believed to exist in its power, possession or control.  Such documents are necessary for the purposes of justice and for the due determination of the matters in dispute between the parties.

      a.   The investment management agreement signed between you and NPS governing your relationship with NPS.

b. The trade confirmations of your purchase, sale, and short sale of Petrobras Securities between October 16, 2010 and May 15, 2015 for or on behalf of NPS, including the documents that reflect the location where the purchase order was placed, where the transaction was executed, and where title passed.

c. The brokerage account statements for NPS that reflect your purchase, sale, short sale or holdings of Petrobras Securities between October 16, 2010 and May 15, 2010 for or on behalf of NPS.

d. Correspondence dated from October 16, 2010 to May 15, 2015 between you and representatives of NPS concerning your purchase, sale, short sale or holdings of Petrobras Securities for or on behalf of NPS.

e. Correspondence dated from October 16, 2010 to May 15, 2015 between you and the counterparty through which you effected your purchase, sale, short sale or holdings of Petrobras Securities for or on behalf of the NPS.

f. Correspondence dated from October 16, 2010 to May 15, 2015 between you and representatives of the Petrobras Defendants concerning the business affairs and financial condition of Petrobras.

g. The investment model you used to analyze Petrobras Securities in the period between October 16, 2010 and May 15, 2015.

h. The set of criteria you used to make decisions to purchase, sell, short sell or hold Petrobras Securities between October 16, 2010 and May 15, 2015 for or on behalf of NPS.

i. The set of guidelines NPS imposed on the investments that were made on its behalf in the period between October 16, 2010 and May 15, 2015.

12.     **Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h)**

The Requesting Court requests that in the interest of justice you cause, by your proper and usual process, the Witness to appear to be examined under oath or affirmation at the office of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, or such other place as the parties may agree.

13.     **Special methods or procedure to be followed (Articles 3,i and 9)**

13.1     The Requesting Court further requests that (i) Lewis J. Liman and Luke A. Barefoot, who are representatives of the Petrobras Defendants, or such other persons later designated by the Petrobras Defendants; (ii) Ryan Landes, who is a representative of NPS, or such other persons later designated by NPS; (iii) John A. Kehoe, who is Class Counsel, or such other persons later designated by Class Counsel; and (iv) such other parties as would be entitled in the ordinary course to examine or cross examine a witness at trial in accordance with the requirements of U.S. procedural law and due process, be appointed as Commissioners pursuant to Article 17 of the Convention, and be authorized to question the Witness on the subjects identified above and elicit his sworn testimony.

13.2     Pursuant to Article 9 of the Convention, it is requested that the legal representatives of the Petrobras Defendants and NPS be permitted to conduct the examination of the Witness in England before an Examiner of the Court, to be nominated by the Applicants, who, subject to approval by you, shall act as referee.  It is requested that the Witnesses be placed under oath or solemn affirmation in accordance with whatever procedure English law provides for in these matters before answering the oral questions and cross-questions on the subjects identified above which are put to them by the legal representatives referred to above.

13.3     The Requesting Court believes that the procedure of having these attorneys appointed to take the testimony is appropriate and necessary.  These attorneys are familiar with the relevant events and transactions in this complex matter.  Accordingly, they will be able to elicit the relevant testimony in a manner as efficient and expeditious as possible.  If the questioning were to be done by someone not familiar with the relevant facts, there is a strong possibility that complete and accurate testimony would not be obtained.

13.4     The Requesting Court respectfully requests that the representatives of the Petrobras Defendants and NPS be allotted a total of seven hours for the examination to be divided evenly between the Petrobras Defendants and NPS.

13.5     The Requesting Court also respectfully requests that the questions and the responses of the Witness be recorded verbatim and that the Witness sign the verbatim transcript. The verbatim transcript of the Witness's responses to questions under oath taken pursuant to the Letter of Request issued or endorsed by the Courts will be admissible at trial in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Requesting Court), except to the extent that the content of such transcript of the examination would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Federal Rules of Evidence if the Witness were present at trial in the relevant jurisdiction.  The Requesting Court also respectfully requests that you cause the testimony of the Witness to be duly marked for authentication, and that you further authenticate the examination by the seal of your Court or in such other way in accordance with your procedure and return the written evidence and documents produced or identified to Jonathan Kelly of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall

Street, London EC2V 5EH, under cover duly sealed, and the Requesting Court shall be ready and

willing to do the same for you in a similar case when required.

13.6    In the event the evidence cannot be taken in the manner requested above, the

Requesting Court respectfully requests that the evidence be taken in the manner provided by the

applicable law of England and Wales.

13.7    The appearance of the Witness for testimony is voluntary and no criminal

prosecution in the United States will result from a failure to appear.  However, the Requesting

Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel the

Witness to give evidence in response to this Letter of Request if the Witness is uncooperative.

14.    **Request for notification of the time and place for the execution of the request and identity and address of any person to be notified (Article 7)**[1]

> Jonathan Kelly
> Cleary Gottlieb Steen & Hamilton LLP
> City Place House
> 55 Basinghall Street
> London EC2V 5EH

15.    **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the letter of request (Article 8)**

> None.

16.    **Specification of privilege or duty to refuse to give evidence under the law of the state of origin (Article 11,b)**

The Witness may refuse to answer any question asked during the examination if such

answer would subject the Witness to a real and appreciable danger of criminal liability in the

United States or the United Kingdom, or would disclose a privileged communication.

---

[1] For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by the Petrobras Defendants to the jurisdiction of the courts of England and Wales, nor is Cleary Gottlieb Steen & Hamilton LLP instructed by the Applicants to accept service of any proceedings in England and Wales.

17.    **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention**

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of the Witness, the costs of the Examiner and the costs of the transcript of the evidence will be initially borne by the Petrobras Defendants.  The payment of any such fees and costs is without prejudice to the Applicants' right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.


DATE OF REQUEST                             ………………………………….


SIGNATURE AND SEAL OF                ………………………………….
THE REQUESTING AUTHORITY

# EXHIBIT E

# (LETTER OF REQUEST TO
# ROGGE GLOBAL PARTNERS PLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Petrobras Securities Litigation | No. 14-cv-9662 (JSR) |

**Request for International Judicial Assistance Pursuant to the Hague Convention of 18
March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

The United States District Court for the Southern District of New York presents its

compliments to the judicial authorities of the United Kingdom of Great Britain and Northern

Ireland and requests international judicial assistance to obtain documentary and testimonial

evidence from a non-party witness located in the United Kingdom of Great Britain and Northern

Ireland ("the United Kingdom") to be used for civil trial before this Court ("Letter of Request").

Based on the Petrobras Defendants' application, this Court finds that there are sufficient grounds

to obtain documentary and testimonial evidence from Rogge Global Partners plc ("Rogge") that

is likely to be relevant for trial in the above-referenced action and should be produced in the

interest of justice.

This Letter of Request is made pursuant to, and in conformity with, Chapter I of the

*Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial

Matters*, opened for signature March 18, 1970, 947 U.N.T.S. 241 (the "Hague Convention"), to

which both the United States and the United Kingdom are parties.

Based on information contained in disclosures made by plaintiff National Pension System

("NPS"), this Court finds that there are sufficient grounds to obtain documentary and testimonial

evidence sought through this Letter of Request that is likely to be relevant to the issues in dispute

and is not pre-trial discovery within the meaning of the declaration made by the United Kingdom

regarding Article 23 of the Hague Convention.  This Letter of Request fully complies with the

reservations under the Hague Convention set forth by the United Kingdom.

The particulars of this Letter of Request follow:

**SECTION I**

| | | |
|---|---|---|
| 1. | **Sender** | Luke A. Barefoot |
| | | Cleary Gottlieb Steen & Hamilton LLP |
| | | One Liberty Plaza |
| | | New York, NY 10006 |
| | | USA |
| | | Telephone: 212-225-2829 |
| | | Facsimile: 212-225-3999 |
| | | lbarefoot@cgsh.com |
| | | |
| | | *As authorized by:* |
| | | The Honorable Jed S. Rakoff |
| | | United States District Court |
| | | Southern District of New York |
| | | 500 Pearl Street, Room 660 |
| | | New York, New York 10007 |
| | | |
| 2. | **Central Authority of the Requested State** | The Senior Master |
| | | For the attention of the Foreign Process Section |
| | | Room E16 |
| | | Royal Courts of Justice |
| | | Strand |
| | | London WC2A 2LL |
| | | |
| 3. | **Person to whom the executed request is to be returned** | Luke A. Barefoot |
| | | Cleary Gottlieb Steen & Hamilton LLP |
| | | One Liberty Plaza |
| | | New York, NY 10006 |
| | | lbarefoot@cgsh.com |

4. **Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

The requesting authority respectfully requests that the response be provided as soon as

practicable in order to ensure that evidence may be obtained before the deadline for factual

discovery by defendants of the individual plaintiffs, which is May 30, 2016.

**SECTION II**

In conformity with Article 3 of the Hague Convention, the undersigned Applicants have the honor to submit the following request:

5.  *a*  **Requesting judicial authority (Article 3,a)**

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 660
New York, New York 10007

*b*  **To the competent authority of (Article 3,a)**

United Kingdom of Great Britain and Northern Ireland

Central Authority

The Senior Master
For the attention of the Foreign Process Section
Room E16
Royal Courts of Justice
Strand
London WC2A 2LL

*c*  **Name of the case and any identifying number**

*In re Petrobras Securities Litigation*, No. 14-cv-9662(JSR), United States District Court for the Southern District of New York

6.  **Names and addresses of the Parties and their representatives (including representatives in the requested State) (Article 3,b)**

*a*  **Plaintiff**

**National Pension Services**

**Representatives**

Harry A. Olivar, Jr.
Kristin Bird
Joseph C. Sarles
Ryan S. Landes
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

3

| | | |
|---|---|---|
| *b* | **Defendants** | **Petróleo Brasileiro S.A. – Petrobras, Petrobras Global Finance B.V., Petrobras International Finance Company S.A. and Theodore Marshall Helms** |
| | **Representatives** | Lewis J. Liman<br>Roger A. Cooper<br>Luke A. Barefoot<br>Elizabeth Vicens<br>Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225 2000<br>Facsimile: (212) 225 3999 |

7.      **Nature of the proceedings and summary of claims (Article 3,c)**

7.1      This action is a civil litigation proceeding pending before the Requesting Court asserting claims arising under Section 10(b) of the U.S. Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §78j) and sections 11 and 15 of the U.S. Securities Act of 1933 ("Securities Act") (15 U.S.C. §§77k and 77(o)) on behalf of certain persons who purchased Petrobras Securities between October 16, 2010 and May 15, 2015 (the "Relevant Period").  On November 6, 2015, Plaintiffs filed the Amended Complaint (the "Complaint").  (Dkt. No. 47.)

7.2      This case is one of dozens of actions that have been brought by similarly-situated plaintiffs who chose to file individual actions based on the same facts.  All of the individual cases are proceeding on a consolidated basis with the purported class action, and all are being handled by the Honorable Jed. S. Rakoff.

7.3      The schedule set for the case is expedited.  The deadline for discovery by defendants of the individual plaintiffs is May 30, 2016, and trial is set to begin no later than September 19, 2016.  This short timeline underscores the urgency of this request and the Petrobras Defendants' interest in obtaining documents from Rogge as soon as possible.

7.4     Plaintiffs assert claims under the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act"), and alleging, *inter alia*, that the Petrobras Defendants "engaged in a fraudulent scheme that artificially inflated the price of Petrobras Securities" and made material misstatements in the offering documents issued in connection with certain debt offerings.  Plaintiffs' allegations stem from "a money-laundering scandal in which Petrobras's contractors colluded with Petrobras executives to inflate bids and provide kick-backs to the executives, Brazilian politicians, and money launderers."  (AC ¶ 8.) The Petrobras Defendants deny the allegations against them.  The Petrobras Defendants assert that the Petrobras executives who facilitated the inflated bids submitted by Petrobras's contractors, and who received kickbacks in exchange for doing so, acted contrary to the interest of Petrobras and caused harm to Petrobras, including in the form of inflated prices that Petrobras had to pay and that, accordingly, Petrobras was a victim of the scheme.

7.5     NPS, headquartered in South Korea, purchased or otherwise acquired Petrobras Securities at various times during the Relevant Period, purchased or otherwise acquired Petrobras Securities at various times during the Relevant Period.

7.6     According to disclosures served by NPS, Rogge, headquartered in the United Kingdom, served as asset manager to NPS during the Relevant Period.

7.7     Petróleo Brasileiro S.A. – Petrobras ("Petrobras"), a Brazilian corporation, is an integrated oil and gas company that carries out crude oil and natural gas production and refining activities on behalf of the Brazilian government.  It is one of the largest energy companies in the world. Petrobras is majority owned by the Brazilian federal government.  Its common and preferred shares are listed and traded on the Brazilian stock exchange, the BOVESPA, and it has American Depository Shares listed on the New York Stock Exchange ("NYSE").

7.8     Petrobras Global Finance B.V. ("PGF") is a wholly-owned finance subsidiary of Petrobras, incorporated in The Netherlands.

7.9     Theodore M. Helms signed the 2012 Registration Statement.

7.10     Petrobras Securities are all securities issued by Petrobras, PGF or Petrobras International Finance Company S.A, another wholly-owned finance subsidiary of Petrobras.

7.11     In 2009, Brazilian federal prosecutors launched an investigation named Operation Lava Jato ("Lava Jato") aimed at criminal organizations in Brazil engaged in money laundering. AC ¶ 126.  In 2014, part of the investigation shifted to focus on irregularities involving certain Brazilian contractors and suppliers to Petrobras, including some of Brazil's largest construction and engineering firms.  AC ¶ 129.  This investigation uncovered an unlawful cartel formed by companies that had contracted with Petrobras on certain large-scale projects (the "Cartel").  AC ¶ 130.  The Cartel ran a widespread bribery scheme by imposing a hidden overcharge on Petrobras contracts.  AC ¶ 131.  The Cartel companies then used the overcharged amounts to make payments to Brazilian political parties, public officials, and money launderers and to make kickback payments to four corrupt, now-former, Petrobras employees (the "Payment Scheme"). AC ¶ 137.

7.12     The AC identifies the four former Petrobras employees alleged to have been involved in the Payment Scheme.  They are Paulo Roberto Costa (former Chief Downstream Officer and Director of Supply from May 14, 2004 through April 2012, AC ¶¶ 126-27), Pedro Barusco (former manager of the Engineering Services area until July 2011, AC ¶ 133), Renato de Souza Duque (former Chief Services Officer from January 31, 2003 through February 2012, AC ¶¶ 125, 291) and Nestor Cervero (former director of the International Division until March 2014, AC ¶ 309) (together, the "Co-Conspirators").

6

7.13    The Brazilian investigation into the Cartel has been directed not at Petrobras, but at Cartel member companies, Brazilian political parties, public officials, money launderers and the Co-Conspirators.  There have been over 40 indictments for conspiracy, bribery and money laundering, including of top executives employed by Cartel member companies.  AC ¶ 129. Prosecutors have asked the Brazilian Supreme Court to investigate dozens of sitting politicians for receiving bribes and have filed charges against one party official.  *Id*.

7.14    The Petrobras Defendants argue that the Brazilian investigation has demonstrated that Petrobras was a victim of the Cartel's unlawful acts and also that the scheme was concealed from Petrobras.  The Brazilian prosecutors have treated Petrobras as a victim and Petrobras is assisting in the prosecutions of those involved in the Cartel in order to reclaim monies that it was deprived of through inflated bids.  Petrobras itself never paid any bribes to anyone.  Rather, all payments were secretly made by Cartel members or their agents with the overpayments they covertly obtained.  As recognized in the Complaint, the Payment Scheme existed to benefit Cartel members, "the campaign coffers of " political parties, and the Co-Conspirators who participated in the Payment Scheme.  AC ¶ 7.

8.    **Evidence to be obtained or other judicial act to be performed (Article 3,d)**

8.1    Plaintiffs' claims rest, in part, on (1) reliance, (2) causation and (3) damages. They also rest on the notion that they purchased Petrobras securities in U.S. domestic transactions.  Documents reviewed by the Applicants, including disclosures provided by NPS, identify David Witzer as a Representative of Rogge who had full authority to make and manage, and was responsible for making and managing, investments in Petrobras Securities on behalf of NPS during the Relevant Period and has knowledge of facts that bear on the issues of this case.

8.2     The evidence sought from the asset manager identified below, which includes evidence of the trading strategy, the basis on which the decision to transact in Petrobras Securities was made and alleged reliance, is material to the resolution of these disputes.  The evidence bears on the Petrobras Defendants' defenses, as well as the merits of Plaintiffs' claims and the quantification of damages.  Plaintiffs have indicated that they lack control over or ability to require production of these documents from the asset manager without an order from a court, and therefore there is no other way to obtain this important evidence.

8.3     It is accordingly requested that, for the purpose of justice and for due determination of the matters in dispute between the parties, you direct David Witzer (the "Witness") to provide oral testimony for use at trial (if appropriate) to counsel for the Applicants subject to any applicable privileges that may apply under the rules and procedures of the Requesting Court or the courts of England and Wales.  The Witness's unique importance to the claims and defenses is described both above and in the subject matters as to which the Witness is to be examined, detailed in Section 10 below.  Absent voluntary cooperation, evidence from the Witness is available only by an order of the High Court.

9.     **Identity and address of         David Witzer
        any person to be                + 44 20 7842 8420
        examined (Article 3,e)**

10.    **Questions to be put to the persons to be examined or statement of the subject
        matter about which they are to be examined (Article 3,f)**

It is requested that the Witness be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of the Requesting Court or the courts of England and Wales, on:

8

Rogge's investment advice to NPS regarding Petrobras Securities, and more specifically (i) the transactions in Petrobras Securities on behalf of NPS in the period between October 16, 2010 and May 15, 2015; (ii) the location of the transactions in Petrobras Securities on behalf of NPS in the Period between October 16, 2010 and May 15, 2015, including where the purchase orders were placed, where the transaction was executed, where title passed, and whether the transaction took place on a U.S. exchange, (iii) the reasons for advising NPS to purchase, sell, short sell or hold Petrobras Securities in the period between October 16, 2010 and May 15, 2015; (iv) the investment policies, guidelines, and risk tolerances used relating to NPS's investments in Petrobras Securities in the period between October 16, 2010 and May 15, 2015; (v) the steps taken to monitor and supervise NPS's transactions in Petrobras Securities in the period between October 16, 2010 and May 15, 2015; and (vi) the calculation of the value of Petrobras Securities in the period between October 16, 2010 and May 15, 2015 and any damages claimed by NPS.

11. **Documents or other property to be inspected (Article 3,g)**

It is requested that Rogge be required to produce the specified documents described herein as are believed to exist in its power, possession or control.  Such documents are necessary for the purposes of justice and for the due determination of the matters in dispute between the parties.

a. The investment management agreement signed between you and NPS governing your relationship with NPS.

b. The trade confirmations of your purchase, sale, and short sale of Petrobras Securities between October 16, 2010 and May 15, 2015 for or on behalf of NPS, including the documents that reflect the location where the purchase order was placed, where the transaction was executed, and where title passed.

    c.   The brokerage account statements for NPS that reflect your purchase, sale, short sale or holdings of Petrobras Securities between October 16, 2010 and May 15, 2015 for or on behalf of NPS.

    d.   Correspondence dated from October 16, 2010 to May 15, 2015 between you and representatives of NPS concerning your purchase, sale, short sale or holdings of Petrobras Securities for or on behalf of NPS.

    e.   Correspondence dated from October 16, 2010 to May 15, 2015 between you and the counterparty through which you effected your purchase, sale, short sale or holdings of Petrobras Securities for or on behalf of NPS.

    f.   Correspondence dated from October 16, 2010 to May 15, 2015 between you and representatives of the Petrobras Defendantsconcerning the business affairs and financial condition of Petrobras.

    g.   The investment model you used to analyze Petrobras Securities in the period between October 16, 2010 and May 15, 2015.

    h.   The set of criteria you used to make decisions to purchase, sell, short sell or hold Petrobras Securities between October 16, 2010 and May 15, 2015 for or on behalf of National Pension Services.

    i.   The set of guidelines NPS imposed on the investments that were made on its behalf in the period between October 16, 2010 and May 15, 2015.

12.    **Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h)**

The Requesting Court requests that in the interest of justice you cause, by your proper and usual process, the Witness to appear to be examined under oath or affirmation at the office of

Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, or such other place as the parties may agree.

13. **Special methods or procedure to be followed (Articles 3,i and 9)**

13.1    The Requesting Court further requests that (i) Lewis J. Liman and Luke A. Barefoot, who are representatives of the Petrobras Defendants, or such other persons later designated by the Petrobras Defendants; (ii) Ryan Landes, who is a representative of NPS, or such other persons later designated by NPS; (iii) John A. Kehoe, who is Class Counsel, or such other persons later designated by Class Counsel; and (iv) such other parties as would be entitled in the ordinary course to examine or cross examine a witness at trial in accordance with the requirements of U.S. procedural law and due process, be appointed as Commissioners pursuant to Article 17 of the Convention, and be authorized to question the Witness on the subjects identified above and elicit his sworn testimony.

13.2    Pursuant to Article 9 of the Convention, it is requested that the legal representatives of the Petrobras Defendants and NPS be permitted to conduct the examination of the Witness in England before an Examiner of the Court, to be nominated by the Applicants, who, subject to approval by you, shall act as referee.  It is requested that the Witnesses be placed under oath or solemn affirmation in accordance with whatever procedure English law provides for in these matters before answering the oral questions and cross-questions on the subjects identified above which are put to them by the legal representatives referred to above.

13.3    The Requesting Court believes that the procedure of having these attorneys appointed to take the testimony is appropriate and necessary.  These attorneys are familiar with the relevant events and transactions in this complex matter.  Accordingly, they will be able to elicit the relevant testimony in a manner as efficient and expeditious as possible.  If the

questioning were to be done by someone not familiar with the relevant facts, there is a strong possibility that complete and accurate testimony would not be obtained.

13.4    The Requesting Court respectfully requests that the representatives of the Petrobras Defendants and NPS be allotted a total of seven hours for the examination to be divided evenly between the Petrobras Defendants and NPS.

13.5    The Requesting Court also respectfully requests that the questions and the responses of the Witness be recorded verbatim and that the Witness sign the verbatim transcript. The verbatim transcript of the Witness's responses to questions under oath taken pursuant to the Letter of Request issued or endorsed by the Courts will be admissible at trial in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Requesting Court), except to the extent that the content of such transcript of the examination would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Federal Rules of Evidence if the Witness were present at trial in the relevant jurisdiction.  The Requesting Court also respectfully requests that you cause the testimony of the Witness to be duly marked for authentication, and that you further authenticate the examination by the seal of your Court or in such other way in accordance with your procedure and return the written evidence and documents produced or identified to Jonathan Kelly of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, under cover duly sealed, and the Requesting Court shall be ready and willing to do the same for you in a similar case when required.

13.6    In the event the evidence cannot be taken in the manner requested above, the Requesting Court respectfully requests that the evidence be taken in the manner provided by the applicable law of England and Wales.

13.7     The appearance of the Witness for testimony is voluntary and no criminal

prosecution in the United States will result from a failure to appear.  However, the Requesting

Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel the

Witness to give evidence in response to this Letter of Request if the Witness is uncooperative.

14.     **Request for notification of the time and place for the execution of the request and identity and address of any person to be notified (Article 7)[1]**

Jonathan Kelly
Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London EC2V 5EH

15.     **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the letter of request (Article 8)**

None.

16.     **Specification of privilege or duty to refuse to give evidence under the law of the state of origin (Article 11,b)**

The Witness may refuse to answer any question asked during the examination if such

answer would subject the Witness to a real and appreciable danger of criminal liability in the

United States or the United Kingdom, or would disclose a privileged communication.

17.     **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention**

The fees and costs incurred which may be reimbursable under the second paragraph of

Article 14 of the Convention and the fees and costs occasioned by the use of the special

procedure requested in Article 26 of the Convention, being the fees and costs in connection with

the execution of this Letter of Request, for the service of process necessary to secure the

appearance of the Witness, the costs of the Examiner and the costs of the transcript of the

---

[1] For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by the Petrobras Defendants to the jurisdiction of the courts of England and Wales, nor is Cleary Gottlieb Steen & Hamilton LLP instructed by the Applicants to accept service of any proceedings in England and Wales.

evidence will be initially borne by the Petrobras Defendants.  The payment of any such fees and costs is without prejudice to the Applicants' right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.

 

DATE OF REQUEST         ………………………………….

 

SIGNATURE AND SEAL OF     ………………………………….
THE REQUESTING AUTHORITY

14

# EXHIBIT F

# (LETTER OF REQUEST TO
# WALTER SCOTT & PARTNERS LTD.)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Petrobras Securities Litigation | No. 14-cv-9662 (JSR) |

**Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

The United States District Court for the Southern District of New York presents its compliments to the judicial authorities of the United Kingdom of Great Britain and Northern Ireland and requests international judicial assistance to obtain documentary and testimonial evidence from a non-party witness located in the United Kingdom of Great Britain and Northern Ireland ("the United Kingdom") to be used for civil trial before this Court ("Letter of Request"). Based on the Petrobras Defendants' application, this Court finds that there are sufficient grounds to obtain documentary and testimonial evidence from Walter Scott & Partners Ltd. ("Walter Scott") that is likely to be relevant for trial in the above-referenced action and should be produced in the interest of justice.

This Letter of Request is made pursuant to, and in conformity with, Chapter I of the *Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*, opened for signature March 18, 1970, 947 U.N.T.S. 241 (the "Hague Convention"), to which both the United States and the United Kingdom are parties.

Based on information contained in disclosures made by plaintiffs Nova Scotia Public Service Superannuation Fund and Nova Scotia Teachers' Pension Fund (together, "Nova Scotia Pension Services"), this Court finds that there are sufficient grounds to obtain documentary and testimonial evidence sought through this Letter of Request that is likely to be relevant to the issues in dispute and is not pre-trial discovery within the meaning of the declaration made by the

United Kingdom regarding Article 23 of the Hague Convention.  This Letter of Request fully

complies with the reservations under the Hague Convention set forth by the United Kingdom.

The particulars of this Letter of Request follow:

**SECTION I**

1.  **Sender**                       Luke A. Barefoot
                                      Cleary Gottlieb Steen & Hamilton LLP
                                      One Liberty Plaza
                                      New York, NY 10006
                                      USA
                                      Telephone: 212-225-2829
                                      Facsimile: 212-225-3999
                                      lbarefoot@cgsh.com

                                      *As authorized by:*
                                      The Honorable Jed S. Rakoff
                                      United States District Court
                                      Southern District of New York
                                      500 Pearl Street, Room 660
                                      New York, New York 10007

2.  **Central Authority of**         The Senior Master
    **the Requested State**          For the attention of the Foreign Process Section
                                      Room E16
                                      Royal Courts of Justice
                                      Strand
                                      London WC2A 2LL

3.  **Person to whom the**           Luke A. Barefoot
    **executed request is**          Cleary Gottlieb Steen & Hamilton LLP
    **to be returned**               One Liberty Plaza
                                      New York, NY 10006
                                      New York, New York 10007
                                      lbarefoot@cgsh.com

4.  **Specification of the date by which the requesting authority requires receipt**
    **of the response to the Letter of Request**

The requesting authority respectfully requests that the response be provided as soon as

practicable in order to ensure that evidence may be obtained before the deadline for factual

discovery by defendants of the individual plaintiffs, which is May 30, 2016.

**SECTION II**

In conformity with Article 3 of the Hague Convention, the undersigned Applicants have

the honor to submit the following request:

| | | | |
|---|---|---|---|
| 5. | *a* | **Requesting judicial authority (Article 3,a)** | The Honorable Jed S. Rakoff<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 660<br>New York, New York 10007 |
| | *b* | **To the competent authority of (Article 3,a)** | United Kingdom of Great Britain and Northern Ireland<br><br>Central Authority<br><br>The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>London WC2A 2LL |
| | *c* | **Name of the case and any identifying number** | *In re Petrobras Securities Litigation*, No. 14-cv-9662(JSR), United States District Court for the Southern District of New York |
| 6. | | **Names and addresses of the Parties and their representatives (including representatives in the requested State) (Article 3,b)** | |
| | *a* | **Plaintiff** | **Nova Scotia Pension Services** |
| | | **Representatives** | Harry A. Olivar, Jr.<br>Kristin Bird<br>Joseph C. Sarles<br>Ryan S. Landes<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100 |

| | | |
|---|---|---|
| *b* | **Defendants** | **Petróleo Brasileiro S.A. – Petrobras, Petrobras Global Finance B.V., Petrobras International Finance Company S.A. and Theodore Marshall Helms** |
| | **Representatives** | Lewis J. Liman<br>Roger A. Cooper<br>Luke A. Barefoot<br>Elizabeth Vicens<br>Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225 2000<br>Facsimile: (212) 225 3999 |

7.    **Nature of the proceedings and summary of claims (Article 3,c)**

7.1    This action is a civil litigation proceeding pending before the Requesting Court asserting claims arising under Section 10(b) of the U.S. Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §78j) and sections 11 and 15 of the U.S. Securities Act of 1933 ("Securities Act") (15 U.S.C. §§77k and 77(o)) on behalf of certain persons who purchased Petrobras Securities between October 16, 2010 and May 15, 2015 (the "Relevant Period").  On November 6, 2015, Plaintiffs filed the Amended Complaint (the "Complaint").  (Dkt. No. 47.)

7.2    This case is one of dozens of actions that have been brought by similarly-situated plaintiffs who chose to file individual actions based on the same facts.  All of the individual cases are proceeding on a consolidated basis with the purported class action, and all are being handled by the Honorable Jed. S. Rakoff.

7.3    The schedule set for the case is expedited.  The deadline for discovery by defendants of the individual plaintiffs is May 30, 2016, and trial is set to begin no later than September 19, 2016.  This short timeline underscores the urgency of this request and the Petrobras Defendants' interest in obtaining documents from Walter Scott as soon as possible.

7.4     Plaintiffs assert claims under the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act"), and alleging, *inter alia*, that the Petrobras Defendants "engaged in a fraudulent scheme that artificially inflated the price of Petrobras Securities" and made material misstatements in the offering documents issued in connection with certain debt offerings.  Plaintiffs' allegations stem from "a money-laundering scandal in which Petrobras's contractors colluded with Petrobras executives to inflate bids and provide kick-backs to the executives, Brazilian politicians, and money launderers."  (AC ¶ 8.) The Petrobras Defendants deny the allegations against them.  The Petrobras Defendants assert that the Petrobras executives who facilitated the inflated bids submitted by Petrobras's contractors, and who received kickbacks in exchange for doing so, acted contrary to the interest of Petrobras and caused harm to Petrobras, including in the form of inflated prices that Petrobras had to pay and that, accordingly, Petrobras was a victim of the scheme.

7.5     Nova Scotia Pension Services, headquartered in Canada, purchased or otherwise acquired Petrobras Securities at various times during the Relevant Period.

7.6     According to disclosures served by Nova Scotia Pension Services, Walter Scott, headquartered in the United Kingdom, served as asset manager to Nova Scotia Pension Services during the Relevant Period.

7.7     Petróleo Brasileiro S.A. – Petrobras ("Petrobras"), a Brazilian corporation, is an integrated oil and gas company that carries out crude oil and natural gas production and refining activities on behalf of the Brazilian government.  It is one of the largest energy companies in the world. Petrobras is majority owned by the Brazilian federal government.  Its common and preferred shares are listed and traded on the Brazilian stock exchange, the BOVESPA, and it has American Depository Shares listed on the New York Stock Exchange ("NYSE").

7.8     Petrobras Global Finance B.V. ("PGF") is a wholly-owned finance subsidiary of Petrobras, incorporated in The Netherlands.

7.9     Theodore M. Helms signed the 2012 Registration Statement.

7.10    Petrobras Securities are all securities issued by Petrobras, PGF or Petrobras International Finance Company S.A, another wholly-owned finance subsidiary of Petrobras.

7.11    In 2009, Brazilian federal prosecutors launched an investigation named Operation Lava Jato ("Lava Jato") aimed at criminal organizations in Brazil engaged in money laundering. AC ¶ 126.  In 2014, part of the investigation shifted to focus on irregularities involving certain Brazilian contractors and suppliers to Petrobras, including some of Brazil's largest construction and engineering firms.  AC ¶ 129.  This investigation uncovered an unlawful cartel formed by companies that had contracted with Petrobras on certain large-scale projects (the "Cartel").  AC ¶ 130.  The Cartel ran a widespread bribery scheme by imposing a hidden overcharge on Petrobras contracts.  AC ¶ 131.  The Cartel companies then used the overcharged amounts to make payments to Brazilian political parties, public officials, and money launderers and to make kickback payments to four corrupt, now-former, Petrobras employees (the "Payment Scheme"). AC ¶ 137.

7.12    The AC identifies the four former Petrobras employees alleged to have been involved in the Payment Scheme.  They are Paulo Roberto Costa (former Chief Downstream Officer and Director of Supply from May 14, 2004 through April 2012, AC ¶¶ 126-27), Pedro Barusco (former manager of the Engineering Services area until July 2011, AC ¶ 133), Renato de Souza Duque (former Chief Services Officer from January 31, 2003 through February 2012, AC ¶¶ 125, 291) and Nestor Cervero (former director of the International Division until March 2014, AC ¶ 309) (together, the "Co-Conspirators").

7.13     The Brazilian investigation into the Cartel has been directed not at Petrobras, but at Cartel member companies, Brazilian political parties, public officials, money launderers and the Co-Conspirators.  There have been over 40 indictments for conspiracy, bribery and money laundering, including of top executives employed by Cartel member companies.  AC ¶ 129. Prosecutors have asked the Brazilian Supreme Court to investigate dozens of sitting politicians for receiving bribes and have filed charges against one party official.  *Id*.

7.14     The Petrobras Defendants argue that the Brazilian investigation has demonstrated that Petrobras was a victim of the Cartel's unlawful acts and also that the scheme was concealed from Petrobras.  The Brazilian prosecutors have treated Petrobras as a victim and Petrobras is assisting in the prosecutions of those involved in the Cartel in order to reclaim monies that it was deprived of through inflated bids.  Petrobras itself never paid any bribes to anyone.  Rather, all payments were secretly made by Cartel members or their agents with the overpayments they covertly obtained.  As recognized in the Complaint, the Payment Scheme existed to benefit Cartel members, "the campaign coffers of " political parties, and the Co-Conspirators who participated in the Payment Scheme.  AC ¶ 7.

8.       **Evidence to be obtained or other judicial act to be performed (Article 3,d)**

8.1     Plaintiffs' claims rest, in part, on (1) reliance, (2) causation and (3) damages. They also rest on the notion that they purchased Petrobras securities in U.S. domestic transactions.  Documents reviewed by the Applicants, including disclosures provided by Nova Scotia Pension Services, identify Steve Smith as a Representative of Walter Scott who had full authority to make and manage, and was responsible for making and managing, investments in Petrobras Securities on behalf of Nova Scotia Pension Services during the Relevant Period and has knowledge of facts that bear on the issues of this case.

8.2     The evidence sought from the asset manager identified below, which includes evidence of the trading strategy, the basis on which the decision to transact in Petrobras Securities was made and alleged reliance, is material to the resolution of these disputes.  The evidence bears on the Petrobras Defendants' defenses, as well as the merits of Plaintiffs' claims and the quantification of damages.  Plaintiffs have indicated that they lack control over or ability to require production of these documents from the asset manager without an order from a court, and therefore there is no other way to obtain this important evidence.

8.3     It is accordingly requested that, for the purpose of justice and for due determination of the matters in dispute between the parties, you direct Steve Smith (the "Witness") to provide oral testimony for use at trial (if appropriate) to counsel for the Applicants subject to any applicable privileges that may apply under the rules and procedures of the Requesting Court or the courts of England and Wales.  The Witness's unique importance to the claims and defenses is described both above and in the subject matters as to which the Witness is to be examined, detailed in Section 10 below.  Absent voluntary cooperation, evidence from the Witness is available only by an order of the High Court.

9.     **Identity and address of**          Steve Smith
       **any person to be**                 + 44 131 225 1357
       **examined (Article 3,e)**

10.    **Questions to be put to the persons to be examined or statement of the subject**
       **matter about which they are to be examined (Article 3,f)**

It is requested that the Witness be questioned according to the procedure set out below in Section 13 under oath or solemn affirmation, and subject to any applicable privileges as may apply under the rules and procedures of the Requesting Court or the courts of England and Wales, on:

8

Walter Scott's investment advice to Nova Scotia Pension Services regarding Petrobras Securities, and more specifically (i) the transactions in Petrobras Securities on behalf of Nova Scotia Pension Services in the Period between October 16, 2010 and May 15, 2015; (ii) the location of the transactions in Petrobras Securities on behalf of Nova Scotia Pension Services in the Period between October 16, 2010 and May 15, 2015, including where the purchase orders were placed, where the transaction was executed, where title passed, and whether the transaction took place on a U.S. exchange, (iii) the reasons for advising Nova Scotia Pension Services to purchase, sell, short sell or hold Petrobras Securities in the period between October 16, 2010 and May 15, 2015; (iv) the investment policies, guidelines, and risk tolerances used relating to Nova Scotia Pension Services' investments in Petrobras Securities in the period between October 16, 2010 and May 15, 2015; (v) the steps taken to monitor and supervise Nova Scotia Pension Services' transactions in Petrobras Securities in the period between October 16, 2010 and May 15, 2015; and (vi) the calculation of the value of Petrobras Securities in the period between October 16, 2010 and May 15, 2015 and any damages claimed by Nova Scotia Pension Services.

11.     **Documents or other property to be inspected (Article 3,g)**

It is requested that Walter Scott be required to produce the specified documents described herein as are believed to exist in its power, possession or control.  Such documents are necessary for the purposes of justice and for the due determination of the matters in dispute between the parties.

    a.   The investment management agreement signed between you and Nova Scotia Pension Services governing your relationship with Nova Scotia Pension Services.

    b.   The trade confirmations of your purchase, sale or short sale of Petrobras Securities between October 16, 2010 and May 15, 2015 for or on behalf of Nova

Scotia Pension Services, including the documents that reflect the location where the purchase order was placed, where the transaction was executed, and where title passed.

c.  The brokerage account statements for Nova Scotia Pension Services that reflect your purchase, sale or short sale of Petrobras Securities between October 16, 2010 and May 15, 2015 for or on behalf of Nova Scotia Pension Services.

d.  Correspondence dated from October 16, 2010 to May 15, 2015 between you and representatives of Nova Scotia Pension Services concerning your purchase, sale or short sale of Petrobras Securities for or on behalf of Nova Scotia Pension Services.

e.  Correspondence dated from October 16, 2010 to May 15, 2015 between you and the counterparty through which you effected your purchase, sale, short sale or holdings of Petrobras Securities for or on behalf of Nova Scotia Pension Services.

f.  Correspondence dated from October 16, 2010 to May 15, 2015 between you and representatives of the Petrobras Defendants concerning the business affairs and financial condition of Petrobras.

g.  The investment model you used to analyze Petrobras Securities in the period between October 16, 2010 and May 15, 2015.

h.  The set of criteria you used to make decisions to purchase, sell, short sell or hold Petrobras Securities between October 16, 2010 and May 15, 2015 for or on behalf of Nova Scotia Pension Services.

    i.   The set of guidelines Nova Scotia Pension Services imposed on the investments that were made on its behalf in the period between October 16, 2010 and May 15, 2015.

12.    **Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3,h)**

The Requesting Court requests that in the interest of justice you cause, by your proper and usual process, the Witness to appear to be examined under oath or affirmation at the office of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall Street, London EC2V 5EH, or such other place as the parties may agree.

13.    **Special methods or procedure to be followed (Articles 3,i and 9)**

13.1    The Requesting Court further requests that (i) Lewis J. Liman and Luke A. Barefoot, who are representatives of the Petrobras Defendants, or such other persons later designated by the Petrobras Defendants; (ii) Ryan Landes, who is a representative of Nova Scotia Pension Services, or such other persons later designated by Nova Scotia Pension Services; (iii) John A. Kehoe, who is Class Counsel, or such other persons later designated by Class Counsel; and (iv) such other parties as would be entitled in the ordinary course to examine or cross examine a witness at trial in accordance with the requirements of U.S. procedural law and due process, be appointed as Commissioners pursuant to Article 17 of the Convention, and be authorized to question the Witness on the subjects identified above and elicit his sworn testimony.

13.2    Pursuant to Article 9 of the Convention, it is requested that the legal representatives of the Petrobras Defendants and Nova Scotia Pension Services be permitted to conduct the examination of the Witness in England before an Examiner of the Court, to be nominated by the Applicants, who, subject to approval by you, shall act as referee.  It is

11

requested that the Witnesses be placed under oath or solemn affirmation in accordance with whatever procedure English law provides for in these matters before answering the oral questions and cross-questions on the subjects identified above which are put to them by the legal representatives referred to above.

13.3    The Requesting Court believes that the procedure of having these attorneys appointed to take the testimony is appropriate and necessary.  These attorneys are familiar with the relevant events and transactions in this complex matter.  Accordingly, they will be able to elicit the relevant testimony in a manner as efficient and expeditious as possible.  If the questioning were to be done by someone not familiar with the relevant facts, there is a strong possibility that complete and accurate testimony would not be obtained.

13.4    The Requesting Court respectfully requests that the representatives of the Petrobras Defendants and Nova Scotia Pension Services be allotted a total of seven hours for the examination to be divided evenly between the Petrobras Defendants and Nova Scotia Pension Services.

13.5    The Requesting Court also respectfully requests that the questions and the responses of the Witness be recorded verbatim and that the Witness sign the verbatim transcript. The verbatim transcript of the Witness's responses to questions under oath taken pursuant to the Letter of Request issued or endorsed by the Courts will be admissible at trial in certain circumstances to be agreed among the parties (or, failing agreement, as directed by the Requesting Court), except to the extent that the content of such transcript of the examination would, for reasons other than the fact that it was obtained in an out-of-court examination, otherwise be inadmissible under the Federal Rules of Evidence if the Witness were present at trial in the relevant jurisdiction.  The Requesting Court also respectfully requests that you cause

12

the testimony of the Witness to be duly marked for authentication, and that you further

authenticate the examination by the seal of your Court or in such other way in accordance with

your procedure and return the written evidence and documents produced or identified to

Jonathan Kelly of Cleary Gottlieb Steen & Hamilton LLP, City Place House, 55 Basinghall

Street, London EC2V 5EH, under cover duly sealed, and the Requesting Court shall be ready and

willing to do the same for you in a similar case when required.

13.6     In the event the evidence cannot be taken in the manner requested above, the

Requesting Court respectfully requests that the evidence be taken in the manner provided by the

applicable law of England and Wales.

13.7     The appearance of the Witness for testimony is voluntary and no criminal

prosecution in the United States will result from a failure to appear.  However, the Requesting

Court respectfully requests that, if necessary, appropriate compulsion be exercised to compel the

Witness to give evidence in response to this Letter of Request if the Witness is uncooperative.

14.     **Request for notification of the time and place for the execution of the request and identity and address of any person to be notified (Article 7)[1]**

Jonathan Kelly
Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London EC2V 5EH

15.     **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the letter of request (Article 8)**

None.

---

[1] For the avoidance of doubt, nothing in this Letter of Request should be construed as a submission by the Petrobras Defendants to the jurisdiction of the courts of England and Wales, nor is Cleary Gottlieb Steen & Hamilton LLP instructed by the Applicants to accept service of any proceedings in England and Wales.

16. **Specification of privilege or duty to refuse to give evidence under the law of the state of origin (Article 11,b)**

The Witness may refuse to answer any question asked during the examination if such answer would subject the Witness to a real and appreciable danger of criminal liability in the United States or the United Kingdom, or would disclose a privileged communication.

17. **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention**

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention and the fees and costs occasioned by the use of the special procedure requested in Article 26 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, for the service of process necessary to secure the appearance of the Witness, the costs of the Examiner and the costs of the transcript of the evidence will be initially borne by the Petrobras Defendants.  The payment of any such fees and costs is without prejudice to the Applicants' right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.


DATE OF REQUEST                    ……………………………………


SIGNATURE AND SEAL OF            ……………………………………
THE REQUESTING AUTHORITY

14