UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PETROBRAS SECURITIES LITIGATION<br><br>This Document Applies To:<br><br>*In re Petrobras Securities Litigation*, 14-cv-9662 (JSR) | No. 14-cv-9662 (JSR) |

**REPLY MEMORANDUM OF LAW OF PRICEWATERHOUSECOOPERS
AUDITORES INDEPENDENTES IN FURTHER SUPPORT OF ITS MOTION TO
DISMISS THE CONSOLIDATED FOURTH AMENDED CLASS ACTION COMPLAINT**

Dated:  New York, New York
       January 25, 2016

KING & SPALDING LLP

James J. Capra, Jr.
Israel Dahan
Lauren W. Mitchell
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

Michael R. Pauzé (admitted *pro hac vice*)
Kenneth Y. Turnbull (admitted *pro hac vice*)
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737

*Attorneys for Defendant
PricewaterhouseCoopers Auditores
Independentes*

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................. 1

    I.    Plaintiffs Fail to State a Claim Under Section 10(b) of the
Exchange Act. ................................................................................... 1

        A.    Plaintiffs ignore the demanding standard for pleading
auditor scienter. ................................................................. 1

        B.    Plaintiffs do not plead any facts relating to PwC Brazil's
2014 audit opinion. ............................................................ 2

        C.    Plaintiffs' mere repetition of defective allegations fails to
show scienter as to PwC Brazil's 2012 and 2013 audit
opinions. ............................................................................. 3

        D.    Plaintiffs have not identified any corrective disclosure
regarding PwC Brazil's 2012 or 2013 audit opinions. ......... 6

    II.    Plaintiffs Fail to State a Claim Under Section 11 of the Securities
Act. ................................................................................................... 6

CONCLUSION ............................................................................................................ 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amorosa v. Ernst & Young LLP*,
    682 F. Supp. 2d 351, 363 (S.D.N.Y. 2010)..................................................................6

*Athale v. SinoTech Energy Ltd.*,
    2014 WL 687218, at *8 (S.D.N.Y. Feb. 21, 2014)......................................................2

*Coronel v. Quanta Capital Holdings Ltd.*,
    2009 WL 174656, at *13 (S.D.N.Y. Jan. 26, 2009)...................................................10

*Dutton v. Harris Stratex Networks Inc.*,
    270 F.R.D. 171, 178 (D. Del. 2010) ..........................................................................8

*Fait v. Regions Fin. Corp.*,
    655 F.3d 105, 113 (2d Cir. 2011)..............................................................................10

*In re Advanced Battery Technologies, Inc.*,
    781 F.3d 638, 644 (2d Cir. 2015)................................................................................1

*In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*,
    2013 WL 1787567, at *5 (S.D.N.Y. Apr. 26, 2013)....................................................8

*In re AOL Time Warner, Inc. Sec. Litig.*,
    503 F. Supp. 2d 666, 674-75 (S.D.N.Y. 2007) ...........................................................8

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    763 F. Supp. 2d 423, 510, 512 (S.D.N.Y. 2011).........................................................5

*In re Lehman Bros. Sec. & ERISA Litig.*,
    2015 WL 5514692, at *11 (S.D.N.Y. Sept. 18, 2015).................................................8

*In re Parmalat Sec. Litig.*,
    501 F. Supp. 2d 560, 587 (S.D.N.Y. 2007)................................................................3

*In re Philip Servs. Corp. Sec. Litig.*,
    383 F. Supp. 2d 463, 472, 475 (S.D.N.Y. 2004)........................................................5

*In re Puda Coal Sec. Inc., Litig.*,
    30 F. Supp. 3d 230, 236, 259-60 (S.D.N.Y. 2014) .....................................................8

*Limited, Inc. v. McCrory Corp.*,
    683 F. Supp. 387, 394 (S.D.N.Y. 1988).....................................................................4

*Maxwell v. KPMG LLP*,
    520 F.3d 713, 716 (7th Cir. 2008) ........................................................................9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pen. Fund*,
    135 S. Ct. 1318, 1327-29, 1332 (2015)..............................................................7, 10

*S.E. Pa. Transp. Auth. v. Orstown Fin. Servs., Inc.*,
    2015 WL 3833849, at *1, 34 (M.D. Pa. June 22, 2015)....................................8, 10

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401, 427 (S.D.N.Y. 2014) .............................................................4

**Statutes**

Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b)...........................................1, 2, 6

Section 11 of the Securities Act, 15 U.S.C. § 77k ................................................ *passim*

**Auditing & Accounting Standards**

International Accounting Standard 16 ............................................................................8

PricewaterhouseCoopers Auditores Independentes ("PwC Brazil") submits this reply memorandum of law in further support of its motion to dismiss all claims directed against it in the Consolidated Fourth Amended Class Action Complaint ("Compl.") [ECF 342].

## ARGUMENT

I.      **Plaintiffs Fail to State a Claim Under Section 10(b) of the Exchange Act.**

A.      **Plaintiffs ignore the demanding standard for pleading auditor scienter.**

As set forth in PwC Brazil's Motion ("Motion" or "Mot.") [ECF 377], the standard for pleading an independent auditor's scienter is demanding (Mot. at 7-9), as recently reaffirmed by the Second Circuit (*In re Advanced Battery Techs., Inc.*, 781 F.3d 638 (2d Cir. 2015)).  Plaintiffs largely ignore these auditor-specific pleading requirements, and rehash allegations that fall short.

Specifically, having failed to allege PwC Brazil's motive to commit fraud,[1] Plaintiffs must plead PwC Brazil's conscious recklessness, *i.e.*, non-conclusory facts showing that PwC Brazil "conduct[ed] an audit so deficient as to amount to no audit at all, or disregard[ed] signs of fraud so obvious that the defendant must have been aware of them."  *In re Advanced Battery*, 781 F.3d at 644.  Plaintiffs fail to engage with PwC Brazil's showing that their allegations do not meet this standard.

Plaintiffs do not dispute or even address the point that Costa's testimony on which they rely shows that the payment scheme was virtually undetectable to an independent auditor:  the surcharges were not separately identifiable within individual contracts, and the bribe payments were made by third parties and thus not reflected in Petrobras' accounting records, which necessarily were the basis of PwC Brazil's audits.  Mot. at 3, 5-6.  Nor do Plaintiffs address cases

---

[1]  Plaintiffs reiterate in a footnote that PwC Brazil had "every motivation" to commit fraud because it received fees (Opp. at 4 n.6), but they do not address the case law squarely holding that the receipt of professional fees is insufficient to show motive.  Mot. at 9.

holding that, under these circumstances—*i.e.*, when a scheme is only "discovered through investigation of third-party entities"—plaintiffs "cannot show even negligence, let alone the degree of recklessness required to adequately plead auditor scienter under the PSLRA." *Athale v. SinoTech Energy Ltd.*, 2014 WL 687218, at *8 (S.D.N.Y. Feb. 21, 2014) (Mot. at 18).

Additionally, Plaintiffs purport to acknowledge that the inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts as alleged." Opp. at 9 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). But Plaintiffs never address the stronger competing inference that arises from their own allegations: that PwC Brazil did not detect the payment scheme, not because of recklessness, but because the scheme was collusively hidden by rogue employees and third parties. Mot. at 17-18.

Instead, Plaintiffs assert that their Section 10(b) claim encompasses PwC Brazil's *2014* audit opinion—despite not having pleaded *any* scienter allegations as to the 2014 audit (Opp. at 9-13). Plaintiffs then simply regurgitate their insufficient allegations as to the 2012 and 2013 audits, many of which are unconnected to PwC Brazil (*id.* at 13-18). This is distraction, not a response to the demanding auditor scienter standard.

**B.      Plaintiffs do not plead any facts relating to PwC Brazil's 2014 audit opinion.**

Contrary to Plaintiffs' contention (Opp. at 9), PwC Brazil did argue that Plaintiffs fail to allege "any scienter allegations concerning the 2014 audit." Mot. at 18 n.15. PwC Brazil spent little time addressing this point because it is obvious. In their Complaint, Plaintiffs have a lengthy section titled "PwC's Purposeful Blind Eye to the Fraud," which contains the purported "red flags" that PwC Brazil allegedly ignored in connection with its *2012 and 2013* audit opinions. *See* Compl. ¶¶ 182-201. Nowhere in that section—or anywhere else in the *Fourth Amended Complaint*—do Plaintiffs allege any purported "red flags" ignored by PwC Brazil when issuing its *2014* audit opinion. Plaintiffs now point to ¶¶ 168-79 as their 2014 scienter

allegations.  Opp. at 9 n.8.  Those paragraphs, however, do not mention PwC Brazil and are not incorporated within the subsequent PwC "red flag" section of the Complaint.

Instead, in these paragraphs, Plaintiffs contend that the Company's $2.53 billion write-down of its PP&E assets was understated and that a few Petrobras board members disagreed with the methodology used for calculating the write-down amount and voted against release of the Company's 2014 financial statements.  But Plaintiffs do not tie these allegations to *any* conduct by PwC Brazil, much less to "facts constituting strong circumstantial evidence of conscious misbehavior or recklessness" by PwC Brazil.  *In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 587 (S.D.N.Y. 2007).  For example, there are no allegations that PwC Brazil failed to consider the dissenting directors' views, or that these views demonstrated that the majority position on complex accounting issues was an obvious sign of fraud.[2]  In sum, Plaintiffs chose not to make any scienter allegations relating to PwC Brazil's 2014 audit, and the allegations to which they now point do not even mention PwC Brazil, much less satisfy the demanding scienter standard.

### C.   Plaintiffs' mere repetition of defective allegations fails to show scienter as to PwC Brazil's 2012 and 2013 audit opinions.

PwC Brazil demonstrated that the "red flags" alleged by Plaintiffs with respect to the 2012 and 2013 audit opinions were insufficient to establish a strong inference of scienter.  Mot. at 10-16.  Plaintiffs' Opposition does nothing to undermine this conclusion.

As an initial matter, Plaintiffs try to overwhelm with a repetition of their payment scheme allegations.  Opp. at 4-8.  But Plaintiffs do so without connecting these allegations to PwC Brazil.  For example, Plaintiffs rehash their allegations about a Petrobras "whistleblower" (Castro Sá) (Opp. at 6-7; citing Compl. ¶¶ 65-79), but the cited paragraphs do not even mention

---

[2] As discussed further below, the write down was itself necessarily an *estimate*.  *See* 2014 20-F at F-10 (Capra Decl. Ex. A) ("Petrobras developed a methodology to estimate the aggregate amount that it overpaid under the payment scheme[.]").

PwC Brazil.  And the standard for pleading auditor scienter is not whether a plaintiff can create an atmospheric that the auditor must have known about bad things at the company.  *See Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387, 394 (S.D.N.Y. 1988) ("There is no indication of how or when Touche became aware of facts that made the financial statements materially misleading.  Touche was not an insider at [the Company], and its knowledge cannot be inferred solely from the fact that it was [the Company's] auditor.").

Plaintiffs take a similar approach on their so called red-flag allegations.  With respect to the 2012 audit opinion, Plaintiffs do not dispute that they have not alleged that PwC Brazil reviewed a June 2012 internal audit report or a November media report (Compl. ¶ 185).  *See Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 427 (S.D.N.Y. 2014) ("plaintiff must allege that the auditor had actual awareness of the red flags").  And, regardless of PwC Brazil's awareness, Plaintiffs have nothing to say regarding the deficiencies in these allegations that PwC Brazil identified.  Specifically, Plaintiffs do not allege that the internal audit report identified cost overruns as anything other than just that.  Mot. at 12.  Nor do they explain how a media report regarding the price Petrobras had paid for a refinery in 2006, years before PwC Brazil's audits, showed that the Company's 2012 financial statements were materially misstated.  *Id.* at 12-13.  Instead, Plaintiffs merely repeat their allegations, and then breathlessly refer to others that are unconnected to PwC Brazil.  Opp. at 14-15.

With respect to PwC Brazil's 2013 audit opinion, Plaintiffs' purported red-flags consist of media reports—some of which were released *after* the issuance of the audit opinion—that discussed investigations of Petrobras.  Even assuming PwC Brazil was aware of such media reports, they are not enough to give rise to a strong inference of scienter.  As PwC Brazil noted, Plaintiffs have not pleaded any facts showing that these announcements of the *beginnings* of

4

Petrobras investigations provided reliable evidence that illegal acts had caused the amounts in the Company's previously-audited financial statements to be materially misstated—much less that PwC Brazil recklessly disregarded such evidence.  Once again, Plaintiffs do not address this point.  Nor do they distinguish or even mention the cases in which courts generally reject attempts to plead scienter based on contemporaneous media reports.  *See* Mot. at 13 & n.12.[3]

Plaintiffs also do not respond to the competing inference that PwC Brazil identified in this context:  that once appropriate evidence came to light through the publication of Costa's testimony, PwC Brazil delayed issuing its review report on the Company's third-quarter financial statements for five months.  Mot. at 15 (citing Compl. ¶ 418).  In this light, Plaintiffs' reliance on *In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463 (S.D.N.Y. 2004) (Opp. at 18), is particularly misplaced.  In that case, plaintiffs sufficiently alleged scienter based on red flags and the audit firm's desire "to avoid antagonizing" the company.  *Id.* at 475.  Here, by contrast, Plaintiffs have alleged no such facts with respect to PwC Brazil.  In fact, PwC Brazil reasonably delayed review of the Company's third-quarter financial statements.  Compl. ¶ 418.[4]

---

[3]  Plaintiffs contend that PwC Brazil disregarded media reports of illegal activity when it "reaffirmed" its 2013 audit opinion as part of its June 30, 2014 quarterly review.  *See* Opp. at 15-16.  But Plaintiffs' claim is based on PwC-Brazil's audit opinions on *year-end* 2012 and 2013 financial statements.  *See* Compl. ¶¶ 52, 182, 183.  Plaintiffs also fail to allege facts showing that PwC Brazil was aware of such media reports and, in any event, those reports were not a red flag and basis for PwC Brazil to believe at that time that Petrobras' previously reported financial statements were materially misstated.

[4]  Additionally, unlike here, the *Philip* red flags consisted of particularized allegations showing conscious recklessness, such as that an individually-named auditor had advised the company that its revenue recognition practices violated GAAP, but the auditor did not require the company to correct its financial statements.  *Philip*, 383 F. Supp. 2d at 472.  Also misplaced is Plaintiffs' reliance on *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423 (S.D.N.Y. 2011) (Opp. at 13 & n.16).  That court found scienter adequately alleged based on the auditor's "*awareness* of red flags," *id.* at 512, and the red flags were actually colorful, such as "warn[ings] by the SEC that [the Company's] VaR models failed to reflect key indicators in the housing market," *id.* at 510.  Plaintiffs here make no such allegations.

Accordingly, the Section 10(b) claim against PwC Brazil should be dismissed for failure to plead scienter.

> **D.     Plaintiffs have not identified any corrective disclosure regarding PwC Brazil's 2012 or 2013 audit opinions.**

In its Motion (at 18-19), PwC Brazil demonstrated that in order to establish loss causation against an auditor, plaintiffs must plead that "the market reacted negatively to some disclosure correcting the falsity *in the . . . auditor's statements* (and not simply the underlying fraud)." *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 363 (S.D.N.Y. 2010) (emphasis added) (citing *Lentell*, 396 F.3d at 175).  The Complaint fails to identify any such corrective disclosure with respect to any public statement made by PwC Brazil.  In fact, the only article or report that even mentions PwC Brazil concerns its deferring the issuance of a review report on Petrobras' third quarter 2014 financial statements, which is obviously not a corrective disclosure.  In their Opposition, Plaintiffs still fail to identify any corrective disclosure with respect to PwC Brazil's statements.  Instead, Plaintiffs allude to loss resulting from disclosure-correcting statements made by *Petrobras*.  Even assuming that were enough with respect to Petrobras, that is not enough to establish loss causation against PwC Brazil.  Accordingly, Plaintiffs' Section 10(b) claim should be dismissed for this additional reason.

## II.     Plaintiffs Fail to State a Claim Under Section 11 of the Securities Act.

Plaintiffs' Opposition confirms that the remaining Section 11 claims of North Carolina and Hawaii should be dismissed for failure to plead a material misstatement or omission of *fact* as to PwC Brazil.[5]  *See* 15 U.S.C. § 77k.

---

[5]  Plaintiffs do not dispute that the Section 11 claims of lead Plaintiff USS and Union, and all claims based on 2014 Note-purchases after May 15, 2015, must be dismissed.  *See* Mot. at 20.

PwC Brazil showed that Plaintiffs have failed to plead facts showing that the 2012 and 2013 audit *opinions* were false or misleading *factual* statements.  Mot. at 20-25.  Plaintiffs barely address PwC Brazil's audit opinions and do not dispute that: (1) these are *opinions*; (2) Plaintiffs' disclaimer of scienter forecloses any claim of subjective falsity; (3) PwC Brazil did not supply any untrue *fact* as the basis for its opinions; and, accordingly, (4) Plaintiffs have not pleaded a misstatement.  *See* Mot. at 23-24; *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015).

Instead, Plaintiffs argue that PwC Brazil's opinions "*omitted* numerous material facts." Opp. at 24 (emphasis added).  But that is not what Plaintiffs originally pleaded.  *See* Compl. ¶ 652 (alleging misstatements, not omissions).  In any event, this unpleaded contention fails: an opinion statement is only actionable as an omission when plaintiffs "identify particular (and material) facts going to the basis for the [speaker's] opinion—facts about the inquiry the [speaker] did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading."  *Omnicare*, 135 S. Ct. at 1332.  Plaintiffs claim they have done so based on Complaint paragraphs 185-87 and 632-47.  Opp. at 24.  But Plaintiffs have explicitly *excluded* the first set of allegations (¶¶ 185-87) from their Securities Act claims. *See* Compl. ¶ 502.[6]  And the second set of allegations (¶¶ 632-47) are wholly conclusory, *e.g.*: "PwC failed to exercise sufficient professional care in its audits of Petrobras' financial statements, and thus violated GAAS General Standard No. 3[.]"  *Id.* ¶ 635.  A plaintiff may not allege an omission "merely by means of conclusory assertions."  *Omnicare*, 135 S. Ct. at 1332 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

---

[6]  Plaintiffs inconsistently assert that these allegations (¶¶ 185-187) are both excluded and included in their Securities Act claims.  *Compare* Opp. at 24 (citing Compl. ¶ 637) *with* Compl. ¶ 502.  But even if included, these allegations—concerning an internal audit report and media reports—hardly show that PwC lacked a reasonable basis for its opinions.  *See* Mot. at 11-15, 25.

Shifting gears, Plaintiffs focus on *Petrobras'* statements in the financial statements—despite acknowledging that their Section 11 claim is not clearly addressed to them.  Opp. at 22 n.24.  In any event, Plaintiffs argue that: (1) they have alleged that Petrobras' PP&E assets were overstated "due to inflated costs and improper payments" (Opp. at 22); (2) the alleged PP&E overstatements were "verifiable facts—not opinions" (*id.*); and (3) PwC Brazil "certified" the Section 11 financial statements and thus is "strictly liable" for these alleged errors (*id.* at 22-23).

As an initial matter, an audit opinion does not "certify" a company's financial statements, in the sense of guaranteeing their accuracy, because an audit provides only reasonable, not absolute, assurance.  *See* Mot. at 21 & nn.17-18.  But even if the Court accepts that PwC Brazil may be liable for *factual* misstatements or omissions in the Company's audited financial statements, Plaintiffs' argument falls flat.[7]  As is apparent from the accounting principles cited, Petrobras' alleged accounting misstatements implicate matters of opinion, not fact.  *See In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*, 2013 WL 1787567, at *5 (S.D.N.Y. Apr. 26, 2013) (the court decides whether "accounting principles" implicate matters of fact or opinion).

Specifically, Plaintiffs allege that Petrobras' PP&E assets were overstated because it capitalized inflated payments it made to acquire or develop certain assets.  Compl. ¶¶ 97, 163, 168-69, 171.  Plaintiffs themselves, however, acknowledge that Petrobras actually paid these amounts to third parties and that, under IAS 16, the costs to purchase such assets are capitalized. *Id.* ¶ 160 (IAS 16 "requires an asset be measured at its cost").  Whether the cost the company

---

[7]  While Plaintiffs are correct that some courts have held an auditor responsible for factual misstatements in a company's audited financial statements (*In re Lehman Bros. Sec. & ERISA Litig.*, 2015 WL 5514692, at *11 (S.D.N.Y. Sept. 18, 2015)), other courts have disposed of Section 11 claims based solely on the auditor's *own* opinions, which PwC Brazil submits is the better view.  *See S.E. Pa. Transp. Auth. v. Orstown Fin. Servs., Inc.*, 2015 WL 3833849, at *1, 34 (M.D. Pa. June 22, 2015); *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 236, 259-60 (S.D.N.Y. 2014); *Dutton v. Harris Stratex Networks Inc.*, 270 F.R.D. 171, 178 (D. Del. 2010); *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 674-75 (S.D.N.Y. 2007).

decided to pay, in its business judgment, was too much or too little is not itself an *accounting* issue, because auditors do not opine on whether a company made a good deal.[8]  Instead, auditors are concerned with whether a company's financial statement assertions materially comply with the applicable accounting principles or standards.

In this regard, the entire thrust of Plaintiffs' accounting allegations is that Petrobras' PP&E assets were overstated because they should have been written-down in amounts greater than the Company recognized after revelation of the scheme, and that the impairment charges ultimately taken in the fourth quarter of 2014 represent the additional amounts that should have been written-down.  *Id.* ¶ 171 (alleging that "impairment charges" "provide a glimpse into the real magnitude of the scheme").  But whether an asset is impaired, and the amount of any impairment, depends on a complex *estimation*: an impairment is recognized if the asset's "value in use"—*i.e.*, "the discounted present value of the future cash flows expected from the continued use of the asset"—is lower than its PP&E carrying value.  *Id.* ¶ 161.  As the Company disclosed, the "assessment of the value in use of an asset involves the use of *estimates* on *uncertain assumptions*," such as: "future commodity prices"; an "estimate of the useful life of the assets"; and "budgets, forecasts and assumptions approved by management," among others.  *See* Petrobras 2013 20-F at 103, F-20, F-43 (Capra Supp. Decl. Ex. A).[9]

In other words, from an accounting perspective, whether the Company's PP&E assets were impaired as to 2012 and 2013 was a matter of *opinion*.  And, unless the auditor disbelieves

---

[8] *See Maxwell v. KPMG LLP*, 520 F.3d 713, 716 (7th Cir. 2008) ("It was not [the auditor's] duty to give the company business advice, such as advice on whether to acquire another company.").

[9] Indeed, the impairment analysis is even more complex because Petrobras performed it on its cash-generating units as a whole, not on each individual unit.  Therefore, even an alleged overpayment as to a particular asset would not itself be a basis for recoding an impairment if estimated future cash flows as a whole continued to exceed the recorded PP&E assets.  *See* Petrobras 2013 20-F at F-25, F-26, F-43 (Capra Supp. Decl. Exh. A).

its own opinions, it cannot be held strictly liable for a Company's *opinions* that turn out to be wrong.  *See Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011) (dismissing Section 11 claim against auditor based on company's loan loss reserve estimates); *see also Omnicare*, 135 S. Ct. at 1328 ("Reasonable investors do not understand [opinion] statements as guarantees[.]").

Plaintiffs may argue that the portions of the overpayments used by third parties to pay bribes, *i.e.*, the "three percent political adjustment" (Compl. ¶ 82), should undoubtedly have been written down (as they subsequently were, in an immaterial amount).  But such an assertion is based on the subsequent discovery of these third-party payments and hindsight is no basis for a Section 11 claim against an auditor.  *See S.E. Pa. Transp. Auth.*, 2015 WL 3833849, at *34 (dismissing claim because confidential witness allegations were unknown to auditor and "omissions or statements that create a misleading impression in hindsight" do not provide basis for Section 11 liability); *see generally Omnicare*, 135 S. Ct. at 1329 (opinion statement is not false when it "fairly aligns with the information in the [speaker's] possession *at the time*") (emphasis added); *Coronel v. Quanta Capital Holdings Ltd.*, 2009 WL 174656, at *13 (S.D.N.Y. Jan. 26, 2009) (plaintiff must allege facts showing "that the Company knew or had reason to believe, *at the time* the Prospectus and Registration Statement were filed, that the statement was untrue").  The Court should dismiss the Section 11 claim as to PwC Brazil.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss all claims directed against PwC Brazil in the Consolidated Fourth Amended Class Action Complaint.

Dated:  New York, New York
        January 25, 2016

                          Respectfully submitted,

                          KING & SPALDING LLP


                          By:   /s/ James J. Capra, Jr.
                                James J. Capra, Jr.
                                Israel Dahan
                                Lauren W. Mitchell
                                1185 Avenue of the Americas
                                New York, NY 10036-4003
                                Telephone:  (212) 556-2100
                                Facsimile:  (212) 556-2222

                                Michael R. Pauzé (admitted *pro hac vice*)
                                Kenneth Y. Turnbull (admitted *pro hac vice*)
                                1700 Pennsylvania Avenue, NW
                                Washington, DC 20006-4707
                                Telephone:  (202) 737-0500
                                Facsimile:  (202) 626-3737

                                *Attorneys for Defendant*
                                *PricewaterhouseCoopers Auditores*
                                *Independentes*