```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :   14-cv-9662 (JSR)
In re: PETROBRAS SECURITIES         :
LITIGATION                          :   MEMORANDUM ORDER
                                    :
This Document Applies to: ALL CASES :
                                    :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

    Plaintiffs in the consolidated class action against Brazilian oil company Petróleo Brasileiro S.A. – Petrobras ("Petrobras") and related defendants, including Petrobras's independent auditor PricewaterhouseCoopers Auditores Independentes ("PwC"), request leave to amend their Complaint to revive their § 10(b) claim against PwC. Previously, the Court had granted PwC's motion to dismiss the § 10(b) claim in plaintiffs' Fourth Amended Complaint on February 19, 2016. See Memorandum Order dated Feb. 19, 2016, ECF No. 461. The Court has now received letter briefing on plaintiffs' new request. Having considered the parties' submissions, the Court denies plaintiffs' request.

    As a threshold matter, the parties dispute what standard applies to plaintiffs' request. Plaintiffs argue that the Court should "freely" give them leave to amend under Fed. R. Civ. P. 15. Defendants respond that Rule 16(b)(4)'s requirement of "good cause" applies instead. "When a motion for leave to amend is brought after the time for making such motions set forth in the

district court scheduling order passes, . . . Fed. R. Civ. P. 16(b) governs. Under Fed. R. Civ. P. 16(b), district court scheduling orders 'shall not be modified except upon a showing of good cause.'" Lowry v. Eastman Kodak Co., 14 Fed. Appx. 27, 30 (2d Cir. 2001) (Summ. Order) (citations omitted). On June 20, 2015, the Court entered a scheduling order stating that amended pleadings could be filed after September 1, 2015, "only upon good cause shown." Civil Case Management Plan dated July 20, 2015, ECF No. 192. In light of this scheduling order, plaintiffs must show good cause to prevail on their present request.[1]

Plaintiffs have failed to show good cause for several reasons. First, allowing plaintiffs to amend their complaint at this very late stage would either unfairly prejudice defendants or unduly delay the case. Although plaintiffs claim that they would not seek any further fact discovery in support of their revived § 10(b) claim and that any additional expert discovery could be limited to "short supplemental" expert reports, see Letter dated April 27, 2016, at 2, PwC participated in discovery

---

[1] Even if the Court were to apply Rule 15's more permissive standard, plaintiffs' request would still fail. The showing of lack of good cause here amounts to the showing of prejudice or undue delay that would bar amendment under Rule 15. See Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) ("While Federal Rule of Civil Procedure 15(a) states that leave to amend should be granted 'when justice so requires,' motions to amend should generally be denied in instances of futility, undue delay, . . . or undue prejudice to the non-moving party.").

under the impression that it faced only a § 11 claim. Were plaintiffs' § 10(b) claim revived, PwC would face a significantly different claim as well as, in effect, somewhat different plaintiffs: plaintiffs' § 11 claim is based only on purchases of Petrobras debt securities offered in 2013 and 2014, whereas plaintiffs' a § 10(b) claim is based on purchases of Petrobras equity securities as well. See Fourth Amended Complaint ¶¶ 494, 650, App. A, ECF No. 342. The legal issues, in particular the calculation of damages, associated with a § 11 claim are significantly different from those associated with a § 10(b) claim. As such, it would be unfair not to give PwC a meaningful opportunity to take fact discovery and expert discovery beyond supplemental reports on a § 10(b) claim.

Fact discovery closed in this case on April 29, 2016; plaintiffs' expert disclosures are due on May 6, 2016 and defendants' expert disclosures are due on May 27, 2016. Amended Civil Case Management Plan dated Jan. 11, 2016, ECF No. 391. Trial will begin on September 19, 2016. Order dated Nov. 18, 2015, ECF No. 311. Especially after taking into account briefing on PwC's expected motion to dismiss any revived § 10(b) claim, there would be no reasonable way to cure the unfairness to PwC without severely disrupting this schedule. Moreover, the Court has repeatedly informed the parties that this case will not be delayed. Because plaintiffs have failed to show the Court a

3

Ulyssean path between the Scylla of prejudice and the Charybdis of delay, their request must be denied.

It also seems likely that plaintiffs are unable to show that their amendments would not be futile. To adequately plead a claim under § 10(b), plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The required state of mind is "a mental state embracing intent to deceive, manipulate, or defraud." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007). The "strong inference" required by the PSLRA "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id. at 314. In the absence of allegations of motive beyond compensation, plaintiffs must allege "facts . . . constituting strong circumstantial evidence of conscious misbehavior or recklessness." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). "[F]or an independent auditor, [reckless] conduct 'must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company.'" In re Advanced Battery Techs., Inc., 781 F.3d 638, 644 (2d Cir. 2015).

Plaintiffs offer materials acquired during discovery, primarily from PwC's audit work papers, that plaintiffs argue support a strong inference of scienter against PwC.

4

Specifically, plaintiffs principally proffer: (a) lists prepared by PwC of investigations into irregularities and corruption at Petrobras by Brazilian authorities, as well as reports from those authorities, see Letter dated April 27, 2016, Apps. A, E, G, H; (b) minutes of a Petrobras board meeting and an Audit Committee presentation, of which PwC was allegedly aware, where accusations of bribery and corruption were considered, see id. Apps. I, K; (c) an internal Petrobras audit regarding an inflated contract with Odebrecht, an alleged cartel member, of which PwC was also allegedly aware, see id. App. B; and (d) emails from a PwC partner discussing how to account for Petrobras's losses from the alleged fraud, id. App. L. But even aside from the fact that some of these items were included in the allegations made in support of their dismissed § 10(b) claim,[2] these materials, while showing that PwC was aware of accusations of fraud at Petrobras and, later, had some reservations about the methodology used to quantify losses from the alleged fraud, do not likely establish "an actual intent to aid in the fraud." In re Advanced Battery Technologies, Inc., 781 F.3d 638, 644 (2d Cir. 2015). For instance, plaintiffs point to an internal PwC document that reviews fraud risk factors at

---

[2] Compare id. App. D (August 2013 Época magazine article reporting on payments of kickbacks) with Fourth Amended Complaint ¶ 185, ECF No. 342 (describing August 2013 Época magazine article reporting on payments of kickbacks).

Petrobras and concludes that "[w]e believe that there are few opportunities for the occurrence of fraud within the [sic] Petrobras. The control environment and the entity's governance are very strong and active." Letter dated April 27, 2016, App. J. Even taken in the light most favorable to plaintiffs, such statements appear to show at most that PwC was foolish, but not that PwC's foolishness amounted to an intent to aid in any alleged fraud.

Moreover, it appears that none of the documents offered by plaintiffs meaningfully undercuts an inference that, although PwC might not have been as conscientious as it should have been in monitoring fraud at Petrobras, PwC did take some action once it understood the scale of the alleged fraud. Under the PSLRA, the scienter inquiry is "inherently comparative," and "the court must take into account plausible opposing inferences." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007).By no later than November 1, 2014, PwC allegedly refused to sign off on Petrobras's third quarter financial statements in light of the money-laundering and bribery investigations. Fourth Amended Complaint ¶ 414, ECF No. 342. The documents offered by plaintiffs do not appear to meaningfully call into question the "nonculpable explanation" for PwC's actions that the Court credited when granting PwC's motion to dismiss the initial §

10(b) claim. See Memorandum Order dated Feb. 19, 2016, at 6-7, ECF No. 461.

Nevertheless, while it would appear that plaintiffs' amendments to their Complaint would be futile, the Court need not reach that conclusion here. Instead, the controlling inquiry is whether plaintiffs have shown "good cause" for the Court to conclude that their amendments would not be futile. Despite having had the full benefit of discovery, plaintiffs have failed to do so, and so their request for leave to amend must be denied.

Plaintiffs' request must also be denied because granting it would frustrate the purposes of the Private Securities Litigation Reform Act ("PSLRA"). The Second Circuit has explained that "Congress . . . enacted the PSLRA to filter out potential strike suits. Instrumental to achieving this objective was imposition of more stringent pleading requirements and mandatory discovery stays for securities fraud class actions filed in federal court." Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 332 F.3d 116, 122 (2d Cir. 2003); see Romano v. Kazacos, 609 F.3d 512, 517, 519 n.2 (citing Spielman in discussion of purposes of PSLRA, although recognizing that Spielman's holding regarding the Securities Litigation Uniform Standards Act has been abrogated by the Supreme Court). Thus, "the PSLRA effectively shifted the burden to plaintiffs to

7

acquire particularized knowledge of a party's scienter prior to obtaining discovery." In re Bisys Sec. Litig., 496 F. Supp. 2d 384, 387 (S.D.N.Y. 2007) (emphasis omitted) (citing Medehkar v. U.S. Dist. Court for the N. Dist. of Cal., 99 F.3d 325, 328 (9th Cir. 1996) ("Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed.")). Accordingly, granting plaintiffs' request would amount to an end run around the PSLRA. Plaintiffs would receive the benefits of discovery without adequately pleading scienter before discovery began. The PSLRA does not allow this arrangement, and so, again, the Court must deny plaintiffs' request.

For the foregoing reasons, plaintiffs' request for leave to amend their Fourth Amended Complaint is hereby denied. The parties' redacted letter briefing will be filed contemporaneously with this Memorandum Order.

SO ORDERED.

Dated:   New York, NY
         May 4, 2016                          _____
                                              JED S. RAKOFF, U.S.D.J.