**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE PETROBRAS SECURITIES LITIGATION | Case No. 14-cv-9662 (JSR) **CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**POMERANTZ LLP**
Jeremy A. Lieberman
Marc I. Gross
Emma Gilmore
John A. Kehoe
Brenda Szydlo
600 Third Avenue
New York, NY 10016
Tel: (212) 661-1100
Fax: (212) 661-8665

*Counsel for Class Representatives and the
Settlement Class*

## TABLE OF CONTENTS

I.     SUMMARY ................................................................................................ 1

II.    SUMMARY OF THE LITIGATION AND SETTLEMENT ............................................ 3

       A.    Procedural History of the Litigation ........................................................ 3

       B.    Settlement Discussions ........................................................................ 8

       C.    Summary of Key Terms of The Proposed Settlement ................................ 9

             1.    *Relief to Class Members* .......................................................... 9

             2.    *Class Notice and Settlement Administration* .............................. 10

             3.    *Opt-Out and Exclusionary Provisions* ...................................... 11

             4.    *Release Provisions* ................................................................ 11

             5.    *Reimbursement Award and Attorneys' Fees and Expenses* ............. 11

III.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
       APPROPRIATE ........................................................................................ 12

       A.    The Settlement Should Be Preliminarily Approved Because It Falls Within
             the Range of Reasonableness ............................................................. 12

       B.    The Settlement Negotiated by the Parties Enjoys a Presumption of Fairness ........ 12

       C.    The Settlement Benefit Falls Within the Range of Possible Approval ................ 13

             1.    *The Complexity, Expense and Likely Duration of the Litigation* .............. 13

             2.    *Stage of Proceedings and Amount of Discovery Completed* ................... 15

             3.    *The Risks of Establishing Liability & Damages* ..................................... 15

             4.    *The Risks of Maintaining the Class Action Through Trial* ...................... 16

             5.    *Reasonableness of the Settlement Fund* .............................................. 17

IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
       SETTLEMENT PURPOSES ........................................................................... 19

V.     THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF
       CLASS NOTICE .......................................................................................... 24

i

VI.    PROPOSED SCHEDULE OF EVENTS ........................................................................... 25

VII.   CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................................................19, 21

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981)..................................................................................................................12

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...................................................................................................13

*City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*,
    954 F. Supp. 2d 276 (S.D.N.Y. 2013) ....................................................................................2

*Clark v. Ecolab Inc.*, Nos. 07-cv-8623, 04-cv-4488, 06-cv-5672 (PAC),
    2010 WL 1948198 (S.D.N.Y. May 11, 2010) .......................................................................12

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)....................................................................................................23

*Diaz v. E. Locating Serv. Inc.*, No. 10-cv-4082 (JCF),
    2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010).......................................................................13

*George v. China Auto. Sys., Inc.*, No. 11-cv-7533 (KBF),
    2013 WL 3357170 (S.D.N.Y. July 3, 2013) .........................................................................16

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)............................................................................................22, 23

*Haddock v. Nationwide Fin. Servs., Inc.*,
    262 F.R.D. 97 (D. Conn. 2009)..............................................................................................20

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11-cv-4209 (KBF),
    2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) .......................................................................16

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) .........................................................................................2

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98-cv-4318 (HB),
    2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000).....................................................23

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM),
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) .......................................................................12

*In re Facebook, Inc.*, *IPO Sec. & Derivative Litig.*,
 312 F.R.D. 332 (S.D.N.Y. 2015) ........................................................................23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 574 F.3d 29 (2d Cir. 2009)................................................................................20, 21

*In re Global Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................20

*In re Interpublic Sec. Litig.*, No. 02-cv- 6527 (DLC),
 2003 U.S. Dist. LEXIS 19784 (S.D.N.Y. Nov. 6, 2003) ........................................23

*In re Marsh ERISA Litig.*,
 265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................24

*In re MetLife Demutualization Litig.*,
 229 F.R.D. 369 (E.D.N.Y. 2005) ......................................................................23

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 191 F.R.D. 369 (S.D.N.Y. 2000) ......................................................................20

*In re Petrobras Sec. Litig.*,
 862 F.3d 250 (2d Cir. 2017).......................................................................7, 8, 22

*In re Rite Aid Corp. Sec. Litig.*,
 146 F. Supp. 2d 706 (E.D. Pa. 2001) .................................................................2

*In re Salomon Analyst Metromedia Litig.*,
 544 F.3d 474 (2d Cir. 2008)..........................................................................21, 22

*In re Smart Techs., Inc. S'holder Litig.*,
 295 F.R.D. 50 (S.D.N.Y. 2013) ........................................................................23

*In re Vivendi Universal, S.A. Sec. Litig.*,
 242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................................20

*Katz v. Image Innovations Holdings, Inc.*, No. 06-cv-3707 (JGK),
 2010 U.S. Dist. LEXIS 73929 (S.D.N.Y. July 21, 2010) ......................................23

*Marisol A. v. Giuliani*,
 126 F.3d 372 (2d Cir. 1997)..............................................................................19

*Menkes v. Stolt-Nielsen S.A.*,
 270 F.R.D. 80 (D. Conn. 2010)....................................................................19, 23

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
 135 S. Ct. 1318 (2015).........................................................................................9

*Palacio v. E*TRADE Fin. Corp.*, No. 10-cv-4030 (LAP) (DCF),
 2012 WL 2384419 (S.D.N.Y. June 22, 2012) .................................................................12, 13

*Police & Fire Ret. Sys. v. Safenet, Inc.*,
 645 F. Supp. 2d 210 (S.D.N.Y. 2009)................................................................................15

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
 277 F.R.D. 97 (S.D.N.Y. 2011) ...................................................................................22, 23

*Spann v. AOL Time Warner, Inc.*, No. 02-cv-8238 (DLC),
 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ...................................................................12

*TBK Partners, Ltd. v. W. Union Corp.*,
 675 F.2d 456 (2d Cir. 1982)...............................................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005)..................................................................................................12

*Weinberger v. Kendrick*,
 698 F.2d 61 (2d Cir. 1982)..................................................................................................19

## Statutes

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b).....................................3, 5, 9

Securities Exchange Act of 1934, Section 20(a), 15 U.S.C. § 78t(a) .............................................3

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7) ................................24

Securities Act of 1933, Section 11, 15 U.S.C. § 77k........................................................3, 4, 5, 9

## Rules

Fed. R. Civ. P. 23 ......................................................................................................6-7, 19-21, 24

Lead Plaintiff Universities Superannuation Scheme Ltd., acting as sole corporate trustee of Universities Superannuation Scheme ("USS"), and named plaintiffs North Carolina Department of State Treasurer ("North Carolina") and the Employees' Retirement System of the State of Hawaii ("Hawaii") (collectively, "Class Representatives" or "Plaintiffs"), individually and on behalf of each Settlement Class Member, respectfully submit this memorandum in support of Plaintiffs' unopposed motion seeking: (i) Preliminary Approval of the Proposed Settlement (the "Settlement"); (ii) conditional certification of the Settlement Class; (iii) approval of the proposed Notice to the Settlement Class; and (iv) a date for a Settlement Hearing and deadlines for the mailing and publication of the Notice, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, the filing of Plaintiffs' motion for Final Approval of the Settlement, and the filing of Class Counsel's application for attorneys' fees and expenses and for an incentive award to Plaintiffs.[1]

## I.      SUMMARY

Plaintiffs are pleased to present to the Court the largest securities class action settlement in a decade, for an amount of $3 billion, $2.95 billion to be paid by the Petrobras Defendants and $50 million to be paid by defendant PricewaterhouseCoopers Auditores Independentes ("PwC Brazil"). The Settlement is an excellent result for the Settlement Class. Plaintiffs estimate that the Settlement returns approximately (i) 22.3% of the likely recoverable damages suffered by the Class, using corrective disclosures accompanied by price declines at a 95% statistical significant level; or (ii) 18.6 percent of the likely recoverable damages suffered by the Class, using corrective disclosures accompanied by price declines at a 90% statistical significant level—well above the

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Petrobras Stipulation.

1

median settlement for securities class actions.  *See* Cornerstone Research, *Securities Class Action Settlements: 2013 Review and Analysis*, at 8-9 (2014) ("Cornerstone") (noting that in 2013, securities settlements overall returned a median of 2.1% of damages, with 4.3% where damages are between $50-124 million); *see also* Order,  *In re Silvercorp Metals, Inc. Sec. Litig.*, No. 12-cv-9456 (S.D.N.Y. Nov. 12, 2014), ECF Nos. 60, 63 (Rakoff, J.) (granting preliminary approval of settlement that was just over 10% of the likely recoverable damages); *City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 280 (S.D.N.Y. 2013) (Rakoff, J.) (granting final approving of settlement that was "10% of the plaintiff's best-case damages model"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5% – 6.2% of estimated losses); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (approving settlement that was 10% of estimated maximum recovery).

Significantly, this settlement represents the largest single payout by a foreign issuer in a securities class action in history, as well as the largest securities class action settlement involving a foreign Lead Plaintiff.  Even more impressive, based upon the charges recognized to date by the Petrobras Defendants with respect to the settlements of the Individual Actions, the Class's recovery in this Action represents a significant premium over those recoveries.  Thus, by any metric, the recovery achieved by Plaintiffs is an excellent result.  In addition, while securing an extraordinary result for the Settlement Class, Plaintiffs secured important precedent favorable to class members in securities and other types of class actions.  Indeed, the Second Circuit's favorable rulings regarding ascertainability and predominance will form the bedrock of class action jurisprudence for decades to come.

## II.   SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.   Procedural History of the Litigation

This action was commenced with a complaint filed on December 8, 2014, asserting securities fraud claims under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 USC § 78j(b) and Rule 10b-5 promulgated thereunder (17 C.F.R. 240.10b-5). (ECF No. 1.)  Several motions were filed for appointment of Lead Plaintiff.  (ECF Nos. 14, 17, 22, 24, 28, 31, 34, 36, 39).  On March 4, 2015, the Court appointed USS as Lead Plaintiff. (ECF No.  99).

Lead Plaintiff USS and then-named plaintiffs Hawaii and Union Asset Management Holding AG ("Union") filed an Amended Class Action Complaint on March 27, 2015, and a corrected Amended Class Action Complaint on March 31, 2015, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, and several Brazilian law claims. (ECF Nos. 109, 110).  On April 17, 2015, Defendants moved to dismiss the Amended Class Action Complaint, which the Court largely denied on July 10, 2015. (ECF No. 189; *see also* ECF No. 194).  The Court granted with prejudice Defendants' motion to dismiss Plaintiffs' Section 11 claims with respect to the 2012 Note Offerings on the ground that such claims were barred by the statute of repose, and granted Defendants' motion to compel arbitration with respect to claims under Brazilian law, but sustained Plaintiffs' Section 10(b) and 20(a) claims and granted Plaintiffs leave to amend their complaint to cure some deficiencies with respect to their remaining Securities Act claims based on the 2013 and 2014 Note Offerings.  On July 16, 2015, Lead Plaintiff USS and named plaintiffs Hawaii and Union filed a Second Amended Complaint, addressing the issues raised by the Court with respect to the 2013 and 2014 Note Offerings. (ECF No. 191).  On July 20, the Court entered a Civil Case Management Plan, directing that any amended complaint be filed by September 1, 2015. (ECF No. 192).  On September 1, 2015, a Third Amended Complaint was filed, adding North Carolina as

named plaintiff, expanding the class period, adding additional defendants, and pleading additional misstatements and omissions. (ECF No. 205).  On October 1, 2015, Defendants moved to dismiss several of the additional allegations made in the Third Amended Complaint. (ECF No. 224).  On November 30, 2015, Plaintiffs filed a Fourth Amended Complaint.  (ECF No. 342).  Within the confines of the Court's earlier rulings allowing most of the case to proceed, Defendants moved to dismiss certain claims, or portions of claims, in the Fourth Amended Complaint that raised narrower issues than were previously dealt with.  (ECF No. 374).  On December 21, 2015, the Court issued an Opinion and Order regarding Defendants' motion to dismiss the Third Consolidated Amended Complaint and regarding Defendants' amended motion to dismiss the Third Consolidated Amended Complaint and the Fourth Consolidated Amended Complaint.  (ECF No. 374).  The Court dismissed under *Morrison* the claims of Union and USS based on Notes purchases but refused to dismiss the Notes claims of North Carolina and Hawaii and the non-Notes claims of Union and USS.  *Id*.  Moreover, the Court rejected Defendants' objection to the Fourth Amended Complaint's four-month extension of the Class Period based on allegations that Petrobras misreported the total overcharges related to the scandal.  *Id*.  The Court dismissed Plaintiffs' § 11 claims based on purchases of the 2014 Notes made after May 15, 2015 but denied Defendants' motion to dismiss in all other respects.  *Id*.

On November 18, 2015, the Court ordered that the trial would begin on September 19, 2016.  (ECF No. 311).

On October 15, 2015, Plaintiffs moved to certify the class. (ECF No. 255.)  Defendants opposed that motion.  (ECF No. 295).  On February 2, 2016, the Court granted Plaintiffs' motion for class certification, certified a Securities Act Class and an Exchange Act Class, appointed North Carolina and Hawaii as class representatives for the Securities Act Class and USS as class

representative for the Exchange Act Class, and appointed Pomerantz as Class Counsel for both Classes.  (ECF No. 428).  The Court certified two classes: (1) a class under the Exchange Act of 1934 of all purchasers who, between January 22, 2010, and July 28, 2015, inclusive, purchased the securities of Petroleo Brasileiro S.A. ("Petrobras" or "the Company"), including debt securities issued by Petrobras International Finance Company S.A. ("PifCo") and/or Petrobras Global Finance B.V. ("PGF") on the New York Stock Exchange or pursuant to other domestic transactions, and were damaged thereby; and (2) a class under the Securities Act of 1933 of all purchasers who purchased or otherwise acquired debt securities issued by Petrobras, PifCo, and/or PGF directly in, pursuant, and/or traceable to a May 15, 2013, public offering and/or a March 11, 2014, public offering, both registered in the United States.  *Id*.

Defendants moved before the Second Circuit Court of Appeals for leave to appeal the District Court's order granting Plaintiffs' motion for class certification, and the Second Circuit granted that request on June 15, 2016.  (ECF No. 608).  The Second Circuit ordered that the appeal proceed on an expedited basis.  *Id*.

On December 23, 2015, PwC Brazil moved to dismiss the claims against it in the Fourth Amended Class Action Complaint.  The Court granted PwC Brazil's motion to dismiss the securities fraud claim under Section 10(b) of the Exchange Act by Order dated February 19, 2016. The Court denied the motion to dismiss the claim under Section 11 of the Securities Act, which did not make any allegation of fraud.  Later, on April 27, 2016, Lead Plaintiff requested leave to amend the complaint to re-assert a Section 10(b) securities fraud claim against PwC Brazil.  The Court denied that request by Order dated May 5, 2016.

On June 20, 2016, Plaintiffs moved for partial summary judgment.  (ECF No. 615).  The same day, the following defendants moved for summary judgment: Petrobras Global Finance,

B.V., Petroleo Brasileiro S.A. (ECF No. 616); Almir Guilherme Barbassa, Jose Carlos Cosenza, Guillherme de Oliveira Estrella, Jose Miranda Formigli Filho (ECF No. 617); Maria das Gracas Silva Foster (ECF No. 618); the Underwriter Defendants (ECF No. 619); Jose Sergio Gabrielli (ECF No. 620); and PwC Brazil.  (ECF No. 621).

Defendants moved before the Second Circuit for a stay of the District Court's proceedings, including argument on the summary judgment motions and the trial scheduled for September 19, 2016, pending the Second Court's resolution of the appeal, and on July 12, 2016, the Second Circuit referred that motion to the three-judge panel sitting on July 26, 2016.  (ECF No. 689).  The Second Circuit granted a temporary stay of the District Court proceedings pending determination of the motion for a stay pending appeal by the panel.  *Id*.  On August 2, 2016, the Second Circuit issued an Order granting Defendants' motion for a stay pending the expedited interlocutory appeal. (ECF No. 701).

On July 7, 2017, the Second Circuit affirmed in part and vacated in part the District Court's decision certifying the classes and remanded the case to the District Court.  (ECF No. 754).  With respect to ascertainability, the Second Circuit held that "a freestanding administrative feasibility requirement is neither compelled by precedent nor consistent with Rule 23."  *Id*. at 28.  The Court explained that "[t]he ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries."  *Id*. Applying this doctrine, the Court held that "ascertainability is not an impediment to certification of the Classes as currently defined."  *Id*.  As for predominance, the Second Circuit observed that the District Court failed to undertake an analysis on *Morrison*'s impact on this requirement and, for this reason, it vacated the certification of the Classes insofar as they include all otherwise eligible class members who acquired their Securities in "domestic transactions."  *Id*. at 53-54.  But

the Second Circuit took "no position as to whether, on remand, the district court might properly certify one or more classes that capture some or all of the Securities holders who fall within the Classes as currently defined. Our purpose is merely to outline the contours of the robust predominance inquiry that Rule 23 demands." *Id*. The Second Circuit "le[ft] the adjudication thereof to the district court in the first instance." *Id*. The Second Circuit acknowledged that there was a "wide range of conceivable circumstances in which plaintiffs may assert class claims in connection with foreign-issued securities that do not trade on a domestic exchange":

> For instance, a district court might find that the transaction records for a particular security among particular parties display certain common indicia of domesticity. Class plaintiffs may propose a mechanism for assembling a representative sample of the manner in which a given security will trade, with an emphasis on the domesticity factors highlighted in *Absolute Activist*. A district court could also carefully weigh the relationship between common and individual questions in the case and determine that any variation across plaintiffs is, on balance, insufficient to defeat predominance. *Id*. at n.27.

Regarding Defendants' challenges to market efficiency, the Second Circuit held that "the district court properly considered a combination of direct and indirect evidence in reaching its conclusion that Petrobras ADS and Notes both trade in efficient markets." *Id*. at 65. The Second Circuit found that the district court "conducted a rigorous analysis of the parties' proffered evidence and objections." *Id*. It also found that "[t]he district court properly declined to view direct and indirect evidence as distinct requirements, opting instead for a holistic analysis based on the totality of the evidence presented." *Id*. at 61. The Second Circuit faulted Defendants for improperly "attempting to relabel a *sufficient* condition [*i.e.*, satisfaction of Cammer factor five] as a *necessary* one" and emphasized that the Supreme Court's "opinions consistently suggest that the burden [to show market efficiency] is not an onerous one." *In re Petrobras Sec. Litig.*, 862 F.3d 250, 278 (2d Cir. 2017) (citing *Halliburton II*, *Amgen*, and *Basic*) (emphasis in original). The Second Circuit further observed that Defendants' "proposed evidentiary hierarchy unreasonably

discounts the potential probative value of indirect evidence of market efficiency." *Id*.  The Court explained that "indirect evidence is particularly valuable in situations where direct evidence does *not* entirely resolve the question.  Event studies offer the seductive promise of hard numbers and dispassionate truth, but methodological constraints limit their utility in the context of single-firm analyses." *Id*. (citing commentators and academic studies) (emphasis in original).  The Second Circuit appreciated that "it can be extremely difficult to isolate the price impact of any one piece of information in the presence of confounding factors, such as other simultaneously released news about the company, the industry, or the geographic region." *Id*. at 279.  These realities counseled against singular reliance on directional event studies.  *Id*.

On November 1, 2017, Defendants filed a petition for a writ of certiorari with the United States Supreme Court, which Plaintiffs opposed on November 14, 2017.  *See Petroleo Brasileiro S.A. – Petrobras, et al. v. Universities Superannuation Scheme Ltd., et al.*, No. 17-664.  The briefs were distributed for a conference scheduled to be held on January 5, 2018.  On December 31, 2017, Plaintiffs and the Petrobras Defendants reached a settlement in principle and on January 3, 2018, Defendants filed with the Supreme Court a Joint Emergency Motion to Defer Consideration of Petition for a Writ of Certiorari, which the Supreme Court granted on January 16, 2018.

### B.    Settlement Discussions

Counsel for Plaintiffs and the Petrobras Defendants engaged in extensive efforts and negotiations to resolve this Action since early December 2015.  Among other things, Plaintiffs and the Petrobras Defendants prepared and exchanged extensive mediation statements outlining their settlement positions and engaged in five in-person mediation sessions before a respected and experienced mediator, former U.S. District Judge Layn R. Phillips.  Counsel for Plaintiffs and defendant PwC Brazil also held a mediation session in July 2016 before Judge Phillips.  In addition

to these in-person mediation sessions, the participants in the mediation expressed their positions in dozens of hours of telephonic follow-ups.

Throughout this hard-fought litigation, Defendants have consistently denied any wrongdoing.  For example, Petrobras claimed it was the victim of the fraudulent scheme rather than the perpetrator.  Following the dismissal of the Section 10(b) securities fraud claim against it, PwC Brazil was prepared to defend the remaining Section 11 claim on the grounds that no PwC Brazil personnel were alleged to have been involved in any corruption and that its audits complied with the professional standards.  PwC Brazil also maintained that its properly-performed audits could not have identified overcharges or improper payments that were not reflected in company records.  Among other attacks, Defendants also challenged falsity and materiality, maintaining that the money diverted for unlawful payments included only the bribes themselves, but not the billions of dollars in overpriced contracts awarded to cartel members and other corrupt contractors.  Defendants also assailed Plaintiffs' expert's damages analysis and launched various loss causation attacks.   And PwC Brazil argued that Plaintiffs failed to plead that PwC Brazil's opinions were false statements under Section 11 and the Supreme Court's decision in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318 (2015).  An agreement with defendant PwC Brazil was reached on August 2, 2016.  After many attempts to settle, Plaintiffs also reached an agreement in principle with the Petrobras Defendants, which was formalized on December 31, 2017.

### C.  Summary of Key Terms of The Proposed Settlement

#### 1.  *Relief to Class Members*

In full and final settlement of all claims asserted or referred to in this Action, and all claims that have been or could have been asserted by Settlement Class Members or Plaintiffs against any of the Defendants in the Action, the Petrobras Defendants agree to pay a total of $2.95 billion U.S.

dollars (USD$2,950,000,000.00) in cash, and defendant PwC Brazil agrees to pay a total of $50 million U.S. dollars (USD$50,000,000.00) in cash (the "Settlement Consideration").

2.     *Class Notice and Settlement Administration*

Class Counsel shall cause the proposed Notice and the Proof of Claim, substantially in the forms attached as Exhibits I-B-1 and I-B-1-Y to the Petrobras Stipulation, respectively, to be mailed, by first class mail, postage prepaid, on or before ten (10) business days after this Order is entered, to all Settlement Class Members at the address of those members of the Settlement Class who may be identified through reasonable effort.  The Notices and Proof of Claim shall also be posted on the Settlement Administrator's website, http://www.petrobrassecuritieslitigation.com. Class Counsel shall cause the proposed Publication Notice, substantially in the form attached as Exhibit I-B-2 to the Petrobras Stipulation, to be published at least twice in the national edition of Investor's Business Daily and by electronic publication at least twice over the Business Wire, and will be published in newspapers and sources in circulation in foreign countries, including the International Herald Tribune, the Financial Times, through Bloomberg News, and the additional publications listed in Exhibit I-B-3 to the Petrobras Stipulation within ten (10) calendar days of the mailing of the Notice.

Garden City Group will administer distribution of the Net Settlement Fund pursuant to the Stipulations.  Upon deposit in the Petrobras Escrow Account of the first installment of the Settlement Amount, the Escrow Agent may transfer one million five hundred thousand dollars (US$1,500,000.00) from the Petrobras Escrow Account to the Settlement Administration Account, as described in the Petrobras Stipulation, in order to pay reasonable and necessary notice and administration costs related to the Settlement.

3.     *Opt-Out and Exclusionary Provisions*

Unless otherwise ordered by the Court, any person who does not submit a timely request for exclusion shall be bound by the Stipulations.  The deadline for submitting requests for exclusion shall be 35 calendar days before the Settlement Hearing.

4.     *Release Provisions*

Upon the Effective Date noted in the Stipulations, Plaintiffs and each Settlement Class Member who does not timely exclude himself/herself from the Settlement Class, including any other person acting on his/her behalf or for his/her benefit, shall be deemed to have released, waived, and discharged the Released Parties from the released claims as defined in the Stipulations, and expressly waived and relinquished the released claims, including any Unknown Claims.

5.     *Reimbursement Award and Attorneys' Fees and Expenses*

The Notice informs the Class that Plaintiffs shall seek an incentive award not to exceed $400,000.00 in the aggregate.  This payment shall be compensation and consideration for the time devoted by Lead and Named Plaintiffs in prosecuting this Action and procuring a benefit for the Settlement Class.  Among other things, Lead and Named Plaintiffs reviewed drafts of each of the complaints before filing, responded to Defendants' interrogatories and document requests, produced responsive documents, provided oversight regarding the mediation and settlement process, authorized entry into the Settlements, and reviewed drafts of the Settlement papers before they were filed with the Court.

For their services rendered on behalf of the Settlement Class, Class Counsel intends to seek an attorneys' fee award not to exceed 9.5% of the Settlement Consideration, as well as the reimbursement of reasonable expenses not to exceed $18 million U.S. dollars (US$18,000,000.00).

## III.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A.   The Settlement Should Be Preliminarily Approved Because It Falls Within the Range of Reasonableness

The law favors settlement, particularly in class actions and other complex cases because they tie up substantial judicial resources, use up the parties' time and money, and in such cases, litigated resolution is usually significantly delayed – here, for instance, the Class Period at issue began eight years ago and ended over two and a half years ago.  *Palacio v. E\*TRADE Fin. Corp.*, No. 10-cv-4030 (LAP) (DCF), 2012 WL 2384419, at \*2 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also Spann v. AOL Time Warner, Inc.*, No. 02-cv-8238 (DLC), 2005 WL 1330937, at \*6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (*Fourth*) (2002) § 11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at \*4 (S.D.N.Y. July 27, 2007).  More explicitly, the Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

### B.   The Settlement Negotiated by the Parties Enjoys a Presumption of Fairness

"In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."  *Clark v. Ecolab Inc.*, Nos. 07-

12

cv-8623, 04-cv-4488, 06-cv-5672 (PAC), 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (quotations omitted).   Courts also give weight to the parties' judgment that the settlement is fair and reasonable.   *See Palacio*, 2012 WL 2384419, at *2 (citations omitted); *Diaz v. E. Locating Serv. Inc.*, No. 10-cv-4082-JCF, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010).

The settlement was reached through arm's-length negotiation over an extended period of time, before an experienced mediator.   In advance of the mediation, the parties to the mediation exchanged substantive mediation statements and exhibits.   Lead Counsel and attorneys for Petrobras attended all mediations, joined by USS General Counsel and Petrobras's executives.   In negotiating the Stipulations, Plaintiffs had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of the case.   *See* Pomerantz LLP Firm Resume, attached as Exhibit III to the Declaration of Jeremy A. Lieberman.

### C.    The Settlement Benefit Falls Within the Range of Possible Approval

At this juncture, the Court need not determine whether the settlement should be approved. Rather, if the Court finds that the settlement is "within the range of possible approval" that might be approved under *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), it should then order that the Class be notified of the Settlement and given an opportunity to be heard and that the Settlement Hearing be held.   *See Manual for Complex Litigation (Second)*§ 40.42 (1985) (model preliminary approval order).   Here, the Settlement substantially satisfies the test announced by *Grinnell*.   Therefore, the Court should grant preliminary approval.

#### 1.    *The Complexity, Expense and Likely Duration of the Litigation*

A securities class action is an inherently complex and lengthy litigation to prosecute.   Here, Defendants recently filed a writ of certiorari seeking Supreme Court review of the Second Circuit's decision.   If the Supreme Court were to grant the petition, and if the case were to be argued during the 2017-2018 term, the earliest the Supreme Court would have decided the case would have been

by the end of June 2018.  Cases granted by mid-January, however, on some occasions, are not heard until the next term, which means that there remained a possibility that the Supreme Court would not have decided the case until the 2018-2019 term.  It was also possible that, instead of granting or denying Petrobras's petition, the Supreme Court could have issued an order inviting the Solicitor General to provide the views of the United States (known as a "Call for the Views of the Solicitor General" or "CVSG").  In that instance, the Supreme Court would have waited until the Solicitor General filed its amicus brief.  There is no deadline for the Solicitor General to file and, on several occasions, the Solicitor General took nearly a year to file.  Accordingly, if the parties did not agree to settle this case, they would have been subject to further undue delays and risks.

The parties also would have faced further litigation—particularly a trial—that would have been expensive and risky.  Among other things, the jury would have had to determine whether Petrobras was a victim or the perpetrator of the fraud, and whether the culpable individual defendants acted adversely to Petrobras or at least partially in pursuit of Petrobras's interests.  The jury would have had to decide a battle of the experts, determining whether Petrobras's securities traded on an efficient market, entitling Plaintiffs to a presumption of reliance, but permitting Defendants' now-inevitable rebuttal evidence on price impact under *Halliburton*.  The jury would then have had to decide other expert-dependent issues—what was the artificial inflation of Petrobras's securities and how much of the price declines were attributable to what Plaintiffs allege were the disclosures of information correcting Defendants' false statements.

And, not only would any recovery be very much more uncertain, it would inevitably be delayed by years, particularly when potential appeals are taken into consideration.

2.      *Stage of Proceedings and Amount of Discovery Completed*

The proceedings in this Action were sufficiently advanced to provide Plaintiffs with a thorough understanding of the strengths and weaknesses of the Class's claims.  Fact and expert discovery were completed by the time the parties agreed to settle.  The discovery has been particularly robust.  For example, the Petrobras Defendants produced over 7 million pages of documents; the Underwriter Defendants produced over 2.5 million pages of documents; PwC Brazil produced approximately 2 million pages of documents; in response to subpoenas issued by Plaintiffs, relevant third parties produced approximately 400,000 pages of documents; and in response to subpoenas issued by Defendants, relevant third parties produced over 9.4 million pages of documents.  The Parties also obtained testimony from witnesses through more than 65 depositions of Plaintiffs, Defendants, third parties, and experts, many of which were taken in Portuguese and required certified translators.

3.      *The Risks of Establishing Liability & Damages*

As discussed above, in addition to establishing falsity, materiality and scienter, Plaintiffs would have encountered potentially fatal loss causation defenses at the summary judgment phase, as well as trial.  For example, Plaintiffs may have been forced to disaggregate the portion of the alleged price declines that arose from the disclosures that corrected the fraud alleged by Plaintiffs from those that pertained to other issues not directly relevant to the Action and from other information on business trends affecting Petrobras.  *See, e.g.*, *Police & Fire Ret. Sys. v. Safenet, Inc.*, 645 F. Supp. 2d 210, 228-29 (S.D.N.Y. 2009) (dismissing claims based on stock drop following press release because the complaint failed to "explain why the disclosure on page eight—as opposed to all the other information in the extended 12-page press release—caused the price decline").

15

4. *The Risks of Maintaining the Class Action Through Trial*

While certification of securities class action remains the norm, it is by no means automatic. *See, e.g.*, *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11-cv-4209 (KBF), 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) (denying motion for certification of class of U.S. purchasers of large foreign bank's Global Registered Shares); *George v. China Auto. Sys., Inc.*, No. 11-cv-7533 (KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013) (denying motion for certification of class of purchasers of stock of China-based U.S.-listed company).

To be entitled to class certification, Plaintiffs must show that common issues predominate over individual ones. Plaintiffs can meet their burden by showing that Petrobras's securities traded on an efficient market, entitling purchasers to the presumption of reliance on Defendants' materially false statements. Under *Halliburton II*, Defendants are permitted to rebut the presumption of reliance by proving the absence of price impact from the alleged misstatements, thereby defeating class certification. In their petition for writ of certiorari, the Petrobras Defendants argued that the Second Circuit committed a "fundamental error" by "excus[ing] plaintiffs from offering any empirical proof of even indirect price impact." Pet. at 15. The Petrobras Defendants maintained that to invoke the presumption of reliance, Plaintiffs needed to demonstrate that Petrobras's securities reacted in a directionally predictable manner to new, material information. *Id.* at 16. The Petrobras Defendants also argued that the Second Circuit "not only eliminated the 'essential precondition' [of empirical proof] to the presumption of reliance in the first place, [but] it also deprived defendants of the ability to introduce empirical evidence to rebut the presumption of reliance." *Id*. at 15-16. Moreover, at the Supreme Court level, Defendants also challenged the Second Circuit's refusal to adopt a heightened ascertainability standard. If the Supreme Court agreed with Defendants, potentially all or a significant portion of the Petrobras notes would be thrown out, and the court's class certification decision with respect

16

to the ADS would be overturned, reducing the amount of recoverable damages significantly. Thus, without a settlement, the risk remained of maintaining the Class Action through trial.

5. *Reasonableness of the Settlement Fund*

The Settlement Stipulation provides for Settlement Consideration of US$3 billion to be paid into the Settlement Fund. The Settlement is historic. It represents the largest securities class action settlement in a decade. It is also the largest settlement ever in a class action involving a foreign issuer and it is the fifth-largest securities class action settlement ever achieved in the United States. The Settlement is the largest class action settlement involving no restatement. It is also the biggest settlement achieved by a foreign lead plaintiff. Based on the $448 million in charges taken by Petrobras relating to the opt-out settlements to date, the class settlement represents a significant premium over those recoveries.

Commentators are hailing the result not only for the "stunning [settlement] sum" it extracted but also for the precedent-setting decisions it achieved. For example, the Wall Street Journal observed that "[i]f approved, the settlement would likely rank as the fifth-largest on record for securities class-action suits, according to Stanford Law School and Cornerstone Research, which jointly track such cases." Paul Kiernan, *Petrobras to Pay $2.95 Billion to Settle U.S. Suit Over Corruption*, Wall St. J., Jan. 3, 2018. Sean Griffith, an expert in corporate and securities laws at Fordham University's law school, remarked that "the plaintiffs must have been able to prove their damages case pretty convincingly in order to move the defendants to the negotiating table and to get them to settle around such a large number." *Id.* Similarly, Kevin LaCroix, executive vice president of RT ProExec, an insurance intermediary that specializes in management liability issues, who is also the publisher of D&O Diary, a blog that covers securities litigation matters, referred to the settlement as "huge." Ed Beeson, *$3B Petrobras Accord To Fuel More Shareholder Class Actions*, Law360, Jan. 5, 2018 (noting the "blockbuster payday" for investors).

17

The Settlement is nearly three times the amount predicted by some scholars.  Peter Henning, a law professor at Detroit's Wayne State University, envisioned that the settlement would cost Petrobras around $1 billion.  *See* Linda Sandler, Patricia Hurtado, & Sabrina Valle, *Petrobras Tries to Halt Investor Suits as Bribery Probe Widens*, Bloomberg, June 25, 2015.  Commentators applauded the precedent-setting rulings in the case.  For example, Ed Beeson of Law360 observed that a "key legal ruling" from the Second Circuit that "Petrobras had asked the U.S. Supreme Court to review and overturn will remain the law of the land in New York, a worry to defense lawyers who say the ruling has made it incrementally easier for plaintiffs to secure class certification in shareholder suits."  Beeson, *supra*.

Plaintiffs' consultation with their expert indicated that maximum Class-wide damages were likely (i) USD$13.43 billion, using corrective disclosures accompanied by price declines at a 95% statistical significance level, or (ii) USD$16.116 billion, using corrective disclosures accompanied by price declines at a 90% statistical significance level.  Accordingly, the Settlement returns (i) approximately 22.3 percent (22.3%) of the likely recoverable damages suffered by the Class, using corrective disclosures followed by price declines at a 95% statistical significant level; or (ii) 18.6% of the likely recoverable damages suffered by the Class, using corrective disclosures followed by price declines at a 90% statistical significant level—well above the median settlement for securities class actions.  However, Lead Plaintiffs' damages model was particularly aggressive, alleging no less than 85 corrective disclosures, with their damages expert opining that at least 21 of those disclosures were statistically significant at the 95% Confidence Interval level.  By comparison, when price inflation is estimated using the allegations of the individual plaintiffs[2], the

---

[2] *See*, *e.g.*, *State Street Cayman Trust Company, Ltd. v. Petróleo Brasileiro S.A. – Petrobras*, No. 15-cv-10158 (JSR) (ECF No. 1); *Washington State Inv. Bd. v. Petróleo Brasileiro S.A. – Petrobras*, No. 15-cv-3923 (JSR) (ECF No. 74).

aggregate damages for the ADSs and Notes are estimated to be approximately $5.68 billion for the remaining Class members (*i.e.*, for those who have not opted out of the Class). This implies that the settlement of $3 billion represents a recovery of 52% for the remaining Class. Therefore, the settlement falls well within the range of possible approval. *See supra* at 2.[3]

## IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Before granting preliminary approval of a class action settlement, however, the Court should determine that the proposed Class is a proper class for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual*, *supra* § 21.632. Here, the proposed Class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).[4]

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23 (a)(1). "Joinder is generally presumed to be impracticable when a putative class exceeds 40 members." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 90 (D. Conn. 2010) (citing *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997)). On average during the Class Period, there were 756.1 million common ADRs outstanding and 741.8 million preferred ADRs outstanding, and the total face value of the bonds was $41.4 billion. Feinstein Expert Report ¶¶ 33, 93 193.[5] With such large numbers outstanding, individual joinder is impracticable and the numerosity requirement is clearly satisfied.

---

[3] In fact, "there is no reason why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 464 (2d Cir. 1982) (quotations omitted).

[4] This Court has already found that the proposed Class meets the class certification elements under Rule 23(a) (ECF No. 428), and that holding was not challenged by Defendants on appeal.

[5] Report on Market Efficiency, Prof. Steven P. Feinstein, Ph.D., CFA (ECF No. 257-1).

The proposed Class also meets the commonality requirement of Rule 23(a).  Commonality is generally easily satisfied, and "is established so long as the plaintiffs can identify some unifying thread among the [class] members' claims."  *Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 116 (D. Conn. 2009) (citation and quotations omitted).  The requirement is met "if there are questions of fact and law which are common to the class."  Fed. R. Civ. P. 23(a)(2).  "Securities-fraud cases generally meet Rule 23(a)(2)'s commonality requirement."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451-52 (S.D.N.Y. 2004).  Securities fraud class actions are "essentially course of conduct cases because the nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action, either by written or oral communication."  *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) (quotation marks omitted).

Plaintiffs also meet Rule 23(a)'s typicality requirement.  A plaintiff's claim is typical if it arises from "the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  Here, Plaintiffs' claims are typical of the claims of the Class.  Like other members of the Class, Plaintiffs' claims are based on material misstatements and omissions concerning Petrobras's undisclosed participation in meetings with ABEMI, and Petrobras's financial statements, its internal controls, its procurement practices, and its compliance with various ethics, anti-corruption and anti-bribery policies.  The legal and factual arguments Plaintiffs advance regarding Defendants' liability are the same as the arguments that other Class members would advance in support of their claims.  Accordingly, the typicality requirement is satisfied.  *See*, *e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007) ("[P]laintiffs will necessarily seek to develop facts relating to . . . the dissemination of allegedly false or misleading

statements . . . . Such allegations . . . generally . . . satisfy the typicality requirement.").

Rule 23(a)'s last requirement is that the class representative must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23 (a) (4).  This inquiry focuses "on uncovering 'conflicts of interest between named parties and the class they seek to represent.'"  *In re Flag Telecom*, 574 F.3d at 35 (quoting *Amchem*, 521 U.S. at 625).  Plaintiffs adequately represent the Class since they have no individual interests or claims that are antagonistic to the Class and have zealously represented the interests of the Class to date, including by closely monitoring the pleadings, motions, and major developments of the litigation, responding to Defendants' discovery requests, propounding discovery requests and actively participating in discovery, and monitoring and authorizing Lead Counsel's mediation and settlement efforts.

Additionally, Rule 23(g) states that the adequacy of Lead Plaintiff's counsel is determined by four factors: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).  Lead Counsel Pomerantz LLP has extensive experience and a stellar reputation in class actions and securities litigation. *See* Exhibit III.  It has been appointed as lead or co-lead counsel in many complex securities class actions and has recovered substantial monies for clients and class members.  It has prosecuted hundreds of such cases to successful resolution in its 80-year history.  Lead Counsel will continue to commit adequate resources to ensure that the Class is properly represented in this Action.

Finally, the proposed Class meets the requirements of Rule 23(b)(3).  To satisfy predominance, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *In re Salomon*

*Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008).  This inquiry "tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation."  *Id.* (quotations omitted).  There are questions of law and fact common to the Class that predominate over any individual questions, specifically whether Defendants' alleged actions, which were centralized and uniform, violated federal securities laws and whether those violations were knowing or reckless.  These common issues predominate over any individual issues.  See *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.,* 277 F.R.D. 97, 111 (S.D.N.Y. 2011) (Rakoff, J.) ("'individual issues will likely arise in this case as in all class action cases,' and to allow 'various secondary issues of plaintiffs' claim[s] to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws.'") (citation omitted) (alteration in original).  Here, as explained above, the Second Circuit acknowledged that even if the *Morrison* determination would involve individualized issues, common issues can still predominate, warranting class certification.  *In re Petrobras,* 862 F.3d at 274 n.27.  The Second Circuit explained that the "district court could . . . carefully weigh the relationship between common and individual questions in the case and determine that any variation across plaintiffs is, on balance, insufficient to defeat predominance."  *Id.*  That is precisely the case here, where liability turns primarily on whether Defendants made misstatements and omissions, an issue subject to generalized proof.

The Second Circuit long ago held that in class actions claiming violations of the U.S. federal securities laws, as here, where certain misrepresentations and omissions "are common to all . . . prospectuses," where the fraudulent background is common to all those who might have been injured, and where proof of intent by a defendant to manipulate is an element of the claim, necessarily presenting a common question, predominance is easily met.  *Green v. Wolf Corp.*, 406 F.2d 291, 299-301 (2d Cir. 1968).  In *Green*, the Second Circuit found that common questions

predominated despite potential individual issues of reliance.  *Id.*  Courts in this Circuit routinely find that common issues such as the falsity and materiality of statements in offering materials or other publications overwhelmingly predominate over individual questions.  *See Merrill Lynch & Co.,* 277 F.R.D. at 101, 116-18 (predominance met where "[t]he instant action depends, more than anything else, on establishing that certain statements and omissions common to all the offerings were material misrepresentations," despite individual issues of knowledge); *In re Facebook, Inc.*, *IPO Sec. & Derivative Litig.,* 312 F.R.D. 332, 346-52 (S.D.N.Y. 2015) (predominance met despite individualized inquiries of knowledge and despite issues of traceability to domestic transactions).[6] Particularly where, as here, the case "is of a staggering size, involving a very great number of potential claimants," "[t]he presence of common questions and answers is therefore an extremely heavy counterweight to any individualized questions."  *Id.* at 346.

"Together with predominance, the superiority requirement 'ensures that the class will be certified only when it would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Menkes*, 270 F.R.D. at 99-100 (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)).  Class treatment is often deemed superior in "negative value" cases, in which each individual class member's interest in the litigation is less than the anticipated cost of litigating individually.  *Id.* at 100.

A class action is also superior to other methods available for the fair and efficient

---

[6] *See also In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 61 (S.D.N.Y. 2013); *Katz v. Image Innovations Holdings, Inc.*, No. 06-cv-3707 (JGK), 2010 U.S. Dist. LEXIS 73929, at *16-17 (S.D.N.Y. July 21, 2010); *In re MetLife Demutualization Litig.*, 229 F.R.D. 369, 380 (E.D.N.Y. 2005); *In re Interpublic Sec. Litig.*, No. 02-cv- 6527 (DLC), 2003 U.S. Dist. LEXIS 19784, at *13 (S.D.N.Y. Nov. 6, 2003); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98-cv-4318 (HB), 2000 U.S. Dist. LEXIS 13469, at *31 (S.D.N.Y. Sept. 19, 2000).

adjudication of this controversy.  Members of the Class are not likely to prosecute, and many do

not have an interest or means to prosecute, an individual case against Petrobras, a massive multi-

national corporation, which along with its executives is represented by a top-tier, well-staffed law

firm expert in the field of securities litigation.  Additionally, efficiency and economy support

resolving the issues in one suit before this Court now.

## V.      THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

In securities class actions, it is customary to provide notice by (a) publishing a summary

notice in a major publication, (b) publishing this same summary notice in a press release, (c)

mailing long-form notice to all individual shareholders who can be found, and (d) publishing notice

on a website.  *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010).  The

notice must inform each class member that "the court will exclude anyone from the class if he so

requests [by a specified date]; the judgment will include all members who do not request exclusion

and any member not requesting exclusion may, if he desires, enter an appearance through counsel."

Fed. R. Civ. P. 23(c)(2).  The proposed Notice, which will be published and also sent to class

members by first class mail, is attached as Exhibit I-B-1 to the Petrobras Stipulation.  The proposed

Notice sets forth the terms and effect of the Stipulations, including the proposed Plan of Allocation

and Class Counsel's request for attorneys' fees and expenses; Class Plaintiffs' request for a

compensatory award; the date and time of the Settlement Hearing; the right to object to the

Settlement; the right to appear at the Settlement Hearing; and the right to request exclusion from

the Settlement Class.  The proposed Notice has been drafted to comply with the provisions of the

PSLRA, 15 U.S.C. § 78u-4(a)(7).  With the Court's approval, the proposed Notice will be mailed

to Settlement Class Members identified by Petrobras's transfer agent within ten (10) business days

of approval and mailed to shareholders identified in response to requests to nominees promptly

upon receipt of such information. The Notice will also be published in newspapers and sources in circulation in 32 foreign countries, in their respective language.

## VI.     PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events leading to the Settlement Hearing:

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Hearing. | At a date to be determined by the Court (Preliminary Approval Order ¶ 6) |
| Mailing of Notice and Proof of Claim and Release. | No later than 10 business days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 10) |
| Publication of Summary Notice. | No later than 10 calendar days after the Notice Date (Preliminary Approval Order ¶ 11) |
| Filing deadline for requests for exclusion. | Received no later than 35 calendar days before the Final Approval Hearing. (Preliminary Approval Order ¶ 18) |
| Date for Lead Plaintiff to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | 42 calendar days before the Final Approval Hearing. (Preliminary Approval Order ¶ 17) |
| Filing deadline for objections. | 35 calendar days before the Settlement Hearing. (Preliminary Approval Order ¶¶ 20-22) |
| Date for Lead Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | 7 calendar days before the Final Approval Hearing. (Preliminary Approval Order ¶ 17) |

## VII.    CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court enter an Order: (1) preliminarily approving the Settlement; (2) certifying the Settlement Class; (3) certifying Plaintiffs as Class Representatives and Lead Counsel as Class Counsel; and (4) setting a date for a Settlement Hearing and deadlines for the mailing and publication of the Notices, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, and the filing of Lead Counsel's application for attorneys' fees and expenses and for an incentive award to Plaintiffs.

25

Dated:  February 1, 2018

Respectfully submitted,

**POMERANTZ LLP**

/s/ *Jeremy A. Lieberman*

Jeremy A. Lieberman
Marc I. Gross
Emma Gilmore
John A. Kehoe
Brenda Szydlo
600 Third Avenue
New York, NY 10016
Tel: (212) 661-1100
Fax: (212) 661-8665

*Counsel for Class Representatives and the*
*Settlement Class*

26