# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

D: +1 212 225 2550
lliman@cgsh.com

VICTOR I. LEWKOW
LESLIE N. SILVERMAN
LEE C. BUCHHEIT
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
EDWARD J. ROSEN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C. LOPEZ
JAMES L. BROMLEY
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN

CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON

JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
   RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
RAHUL MUKHI
NEIL R. MARKEL
HUMAYUN KHALID
KENNETH S. BLAZEJEWSKI
ANDREA M. BASHAM
LAURA BAGARELLA
SHIRLEY M. LO
   RESIDENT COUNSEL

LOUISE M. PARENT
   OF COUNSEL

May 7, 2018

**VIA ECF & HAND DELIVERY**

Hon. Jed S. Rakoff, U.S.D.J.
United States District Court
 for the Southern District of New York
500 Pearl Street, Courtroom 14B
New York, New York 10007

    Re: *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (JSR)

Dear Judge Rakoff:

  This firm represents the Petrobras Defendants in the above-captioned matter.[1]  Pursuant to the Court's request at the preliminary approval hearing on February 23, 2018, we have reviewed Class Counsel's time sheets in order to assist the Court in its assessment of Class Counsel's application for attorneys' fees.  We agree with Class Counsel that Class Counsel, led by Pomerantz, made a substantial contribution to achieving a very good result for the Settlement Class.  Class Counsel drafted the operative complaint, took virtually all of the relevant depositions, prepared the expert reports that set forth substantial damages calculations, conducted all of the settlement negotiations, achieved substantial victories on appeal, and—to

---

[1] Unless otherwise noted, all capitalized terms have the same meanings assigned to them in the Stipulation of Settlement and Release (Feb. 1, 2018), ECF No. 767-1.  As used in this letter, "Class Counsel" refers to the three firms whose time sheets we reviewed and who seek attorneys' fees pursuant to the motion originally filed on April 20, 2018: Pomerantz LLP ("Pomerantz"), Labaton Sucharow LLP ("Labaton") and Motley Rice LLC ("Motley Rice").  ECF Nos. 789–91.  In that motion, Class Counsel requests a total of $284,500,000.00 in attorneys' fees, which represents a total combined lodestar of $159,496,169.50 from the three firms, times a multiplier of 1.78.  Mem. of Law in Supp. of Class Counsel's Mot. for an Award of Attorneys' Fees & Reimbursement of Litigation Expenses 16 (Apr. 23, 2018), ECF No. 791.

our knowledge—was responsible for the Plaintiffs' strategy. Nonetheless, we have identified issues and entries that we believe deserve the Court's attention.

In addition to Class Counsel, the following firms in the Individual Actions have submitted applications for attorneys' fees: Wolf Popper LLP ("Wolf Popper") and Brazilian counsel, Almeida Advogados "Almeida") (collectively, "Wolf Popper and Almeida");[2] Kahn Swick & Foti, LLC ("KSF");[3] and Bernstein Litowitz Berger & Grossman LLP ("Bernstein Litowitz") (collectively, the "Individual Counsel").[4] The application for Wolf Popper and Almeida seeks $307,629.00 in fees and $1,219.66 in expenses.[5] The application for KSF requests $589,915.50 in fees and $2,650.59 in expenses.[6] The application for Bernstein Litowitz seeks "an award of reasonable attorneys' fees to be allocated by Lead Counsel relative to its lodestar of $2,114,085" and litigation expenses in the amount of $1,146,873.[7] We agree with the assertion in these applications that the conduct of Individual Counsel in the Class Action and discovery in the Individual Actions made a substantial contribution to the settlement outcome for the Settlement Class in this case, including in connection with the depositions that were cross-noticed in the Class Action and in Individual Actions and that defendants took for the purposes of introducing testimony in the Class Action and in connection with the extensive document discovery that defendants took in the individual cases to use in the Class Action. However, we have not reviewed the proposed fees for Individual Counsel.

Pursuant to the Court's instructions, we enclose a DVD containing an electronic markup of Class Counsel's time sheets, indicating the time entries that we believe—based on our review—warrant the Court's attention. As noted below, there are limitations to our review, and we do not mean to suggest that the items we have identified are exclusive of any that the Court might identify or that the items we have identified will necessarily not stand up to the Court's scrutiny. The items may or may not be appropriate. In this letter, we set forth the methodology we used to review Class Counsel's time sheets and summarize the most significant issues that we identified during our review. Because of the high volume of data contained in these entries and the element of subjectivity inherent in interpreting the entries, all calculations and figures are approximate unless specifically noted otherwise.

In sum, as set forth in more detail below, we have the following observations:

---

[2] (Apr. 20, 2018), ECF Nos. 777–780-2.

[3] (Apr. 20, 2018), ECF Nos. 781–783-2. To be clear, "KSF is not seeking reimbursement from the Settlement Fund for any time or expenses primarily incurred in the individual case it filed on behalf of its client[.]" Kahn Swick & Foti, LLC's Application for Award of Attorneys' Fees & Expenses and Memorandum in Support, at 5 (Apr. 20, 2018), ECF No. 782. Lead Counsel invited KSF to submit an application for reimbursement of fees based on the work it performed in coordination with Lead Counsel. *Id.*

[4] (Apr. 20, 2018), ECF Nos. 784–786-28.

[5] Decl. of Chet B. Waldman, at 1 (Apr. 20, 2018), ECF No. 779; *see also* Decl. of Andre de Almeida Rodrigues, at 1 (Apr. 20, 2018), ECF No. 780.

[6] Decl. of Kim Miller, at 2 (Apr. 20, 2018), ECF No. 783.

[7] Decl. of Benjamin Galdston, at 2 (Apr. 20, 2018), ECF No. 786.

- *First*, Class Counsel has billed over $125 million in fees solely to time incurred by more than 170 "staff attorneys" and "project attorneys," and then seeks to apply a multiplier to these fees. Class Counsel is charging the Settlement Class fees for these attorneys that range up to $625 per hour. The Court might wish to inquire about the justification for these costs associated with staff attorneys and project attorneys, as well as the appropriateness of the rates that Class Counsel is charging the Settlement Class.

- *Second*, Class Counsel has charged the Settlement Class for a significant number of hours purportedly billed by these staff and project attorneys for the translations of documents, at proposed hourly rates between $325 and $625. The Court might inquire regarding the choice to charge the Settlement Class for the use of staff and project attorneys as opposed to translation vendors who employ non-attorneys and are typically more cost effective, charging between $0.21 and $0.22 per word, or roughly $52.50 to $66 per standard page, for example.

- *Third*, we have also attempted to identify particular instances in which the Court might inquire whether attorney time was properly billed or charged to the Settlement Class, as well as particular instances when the time sheets do not provide enough information for us, or perhaps the Court, to assess whether or not they warrant closer scrutiny or can be justified.

**A. Methodology**

We timely received Microsoft Excel spreadsheets containing time entries from Class Counsel. The entries spanned roughly three and a half years, from filing of the initial complaints in September 2014 to the month after Court's preliminary approval of the settlement in March 2018. The Pomerantz time sheets contained 35,351 entries ($146,585,044),[8] the Labaton time sheets contained 4,126 entries ($10,760,889),[9] and the Motley Rice time sheets contained 1,577 entries ($1,905,230).[10]

The spreadsheets generally included the timekeeper, the timekeeper's position, the timekeeper's billing rate, the date the work was performed, and a narrative description of the work. The entries ranged in level of detail, with many listing time spent on different tasks in the

---

[8] We note that total amounts billed by several Pomerantz attorneys is lower in the Pomerantz Time Sheets than in Exhibit 16 to the Lieberman Declaration. We received the Pomerantz Time Sheets on March 29, 2018, and Exhibit 16 to the Lieberman Declaration was filed on April 20, 2018. Exhibit 16 purports to include time billed "[f]rom inception through April 17, 2018." Ex. 16: Fee and Expense Schedules (Apr. 23, 2018), ECF No. 789-16. We presume that the discrepancy in amounts billed results from work performed between March 29 and April 17, 2018, but note to the Court that we do not have time entries for this work and thus cannot make observations with respect to it.

[9] We note that Labaton has applied for a slightly lower total lodestar amount of $10,681,114.50. *See* Mem. of Law in Supp. of Class Counsel's Mot. for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, at 9 n.5 (Apr. 23, 2018), ECF No. 791.

[10] This is consistent with what Motley Rice requests as its total lodestar amount. *Id.*

Hon. Jed S. Rakoff, p. 4

same entry ("block billing") and others including only a cursory description of the work performed.

Our review included an entry-by-entry assessment and certain sampling, flagging any entries we believed warranted the Court's attention.

As part of our review, we added four columns to each enclosed spreadsheet of timesheets in order to provide our comments to the Court. The "Potentially Excessive Translation Cost" column indicates with an "x" where a timekeeper entered time related to translation at a cost about which the Court may wish to inquire (*e.g.*, voluminous translations by staff and contract attorneys). The "Potentially Excessive Document Review Cost" column indicates with an "x" where a timekeeper with a billing rate above $350 per hour billed time to first-level document review. The "Potentially Excessive Time" column indicates with an "x" where a timekeeper appeared to spend excessive time on a single task, project, or assignment. We entered any explanatory comments or questions raised in the "CGSH Comments/Questions" column. We also reviewed a sample of roughly 21,000 rows to identify instances where we lacked sufficient information to determine whether time billed to the Settlement Class was excessive. For ease of reference, where an entry has been flagged in any of the four columns, that row is highlighted.

We discuss our observations by firm, below.

**B.    Pomerantz Time Sheets**

Pomerantz's time sheets included over 299,000 billable hours, totaling 35,351 entries. *See* Pomerantz Petrobras Time.xlsx (hereinafter, "Pomerantz Time Sheets") on the enclosed DVD. The entries reflect hours billed by 31 Pomerantz attorneys, including 11 partners, 5 counsel, and at least 15 associates.[11] The total Pomerantz attorney time is approximately 42,317 hours (or $27,395,085), although the majority of these attorneys worked fewer than 190 hours. The vast majority of the entries reflect hours worked by staff attorneys (approx. 14,743 hours) and project attorneys (approx. 239,162 hours) hired by Pomerantz.[12]

Set forth below are more detailed discussions of the primary categories of issues we identified, as summarized above. These discussions are intended to provide the Court with an

---

[11] The Pomerantz Time Sheets list 17 timekeepers as associates. Pomerantz Time Sheets rows 2781–6928. At least one staff attorney and one project attorney are classified as associates, *id.* rows 3179–3465, 4482–4566, and one associate who billed 0.5 hours does not appear on Exhibit 16 to the Lieberman Declaration, *id.* rows 6378–80. Our calculations for associate time include the associate who did not appear on Exhibit 16 to the Lieberman Declaration, but do not include the staff attorney and project attorney who were apparently misclassified as associates, whose hours we instead included in our calculations for staff attorney time and project attorney time, respectively. Likewise, at least one staff attorney identified as such in the Lieberman Declaration is classified as a project attorney in the Pomerantz Time Sheets, *id.* rows 16258–16560. This attorney has been classified as a staff attorney for purposes of our calculations.

[12] It is unclear based on Class Counsel's submissions what distinguishes their staff attorneys from project attorneys. Case law indicates that "staff attorney" typically refers to a full-time employee of a firm, whereas a "project attorney" may be hired temporarily for a particular assignment. *See Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 26 (S.D.N.Y. 2016) (describing differences between staff attorneys and "contract attorneys") (citing *In re Citigroup Bond Litig.*, 988 F. Supp. 2d 371, 377 (S.D.N.Y. 2013)). However, Exhibit 23 to the

overview of each issue. Although they do not necessarily reflect all of the entries flagged, the discussions do include illustrative examples and attempt to quantify the issue where feasible. The spreadsheet provided on the DVD contains the most granular analysis, and the Court may wish to reference this document to supplement its understanding.

### 1. Total Staff Attorney and Project Attorney Time

Just over 80% of the total lodestar amount requested is composed of time billed by staff attorneys and project attorneys. Specifically, staff attorneys and project attorneys billed over 250,000 hours, or over $118 million of the lodestar amount. Pomerantz states that, at its peak, it retained 149 project attorneys, which is "admittedly high." Lieberman Decl. ¶ 396.

Although staff attorneys and project attorneys are most typically used for document review, Pomerantz's lodestar figure also includes approximately 32,305 hours ($15,257,314) billed by staff and project attorneys before September 30, 2015, prior to significant document production in this case. Although we understand that some of this pre-production time pertains to reviewing documents for production pursuant to the Petrobras Defendants' requests for production, fact investigation, and/or briefing the Petrobras Defendants' motion to dismiss, we observed several entries in which staff and project attorneys charged for general tasks during this time period such as reading news articles and summarizing and translating publicly available information. The Court may wish to inquire regarding the nature of that work and whether the amount of work performed during this period was appropriate.

The lodestar figure also includes approximately 17,661 hours ($10,040,522) billed by all Pomerantz professionals (including partners, counsel, associates, staff attorneys, project attorneys, and other legal professionals) for the one-year period from August 3, 2016, the day after the Second Circuit issued a stay pending appeal,[13] to July 7, 2017, when the Second Circuit issued its decision on class certification.[14] While some portion of this amount would represent reasonable work performed in connection with the Second Circuit appeal and preparing for return of the case to the District Court, the Court may wish to inquire regarding the nature of that work and whether the amount of work performed during these periods was appropriate. For example, Class Counsel's opposition to the Gabrielli and other Individual Defendants' motion was due two days after the Second Circuit's temporary stay was granted in July 2016 (which was then extended in August 2016), suggesting that the opposition was necessarily nearly complete at that time, but nevertheless Pomerantz attorneys spent as many as approximately 2,100 hours working on their opposition over the next year while the case was stayed.

Moreover, the Court might wish to inquire into the hourly rates that Pomerantz charged the Settlement Class for the work performed by staff attorneys and project attorneys. Pomerantz

---

Lieberman Declaration shows that four out of five staff attorneys who billed time to the case are no longer employed by Pomerantz. Table of Attorney Qualifications, at 5 (Apr. 23, 2018), ECF No. 789-23.

[13] Order, *In re Petrobras Sec.*, No. 16-1914-cv (2d Cir. Aug. 2, 2016), ECF No. 169.

[14] Order, *In re Petrobras Sec.*, No. 16-1914-cv (2d Cir. July 7, 2017), ECF No. 325.

Hon. Jed S. Rakoff, p. 6

charged the Settlement Class billing rates ranging from $325 per hour to $635 per hour.[15] In some cases, attorneys billing as high as $625 per hour were used for first-level document review (the lowest level of review). The Court may wish to inquire to into these rates. *See, e.g., Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 26 (S.D.N.Y. 2016).

We note that the percentage of time billed for project and staff attorneys is comparable to those in some cases, generally where the total lodestar amounts were lower: $37,348,940.00 in *Residential Capital* and $2,502,956.25 in *CNOVA*,[16] and greater than that in other cases, generally where the lodestar amounts are greater. *See, e.g.*, Decl. of Max W. Berger, at 142–44, *In re Merck & Co. Sec., Derivative & ERISA Litig.*, No. 2:05-cv-2367-SRC-CLW (D.N.J. May 4, 2016), ECF No. 994 (time billed by "staff associates" and "staff attorneys" was roughly 54% of the total lodestar amount of co-lead counsel).

### 2.   Staff Attorney and Project Attorney Translations

Pomerantz's records contain numerous entries for translation work performed by staff attorneys and project attorneys,[17] and billed out to the Settlement Class at rates between $325 and $625 per hour, for a total approximate cost of $13,174,549.[18] In total, Class Counsel billed at least 26,884 hours for the time of staff and project attorneys on translation.[19]

The Court might wish to inquire about the decision to charge the Settlement Class for the use of attorneys to provide these services as opposed to lower-cost alternatives. *See, e.g.*, Lieberman Decl. ¶¶ 106, 153, 162, 397. From our review, it appears certified translation of "more than 750 key documents" accounts for $1,180,654.10 in litigation expenses, compared to over $13 million charged for translations by staff attorneys and project attorneys. *Id.* ¶ 106. In our view it may be appropriate under certain circumstances to use higher-cost attorneys for translation work (*e.g.*, for urgent matters and/or to substantively check translations by vendors),

---

[15] These are comparable to the billing rates for associates, which ranged from $300 per hour to $705 per hour. *See* Ex. 16 to Lieberman Decl.

[16] Decl. of Joel P. Laitman, ¶¶ 79–80, *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-8781 (S.D.N.Y. June 22, 2015), ECF No. 349; Memorandum, at 22, *In re CNOVA N.V. Sec. Litig*, No. 16-cv-444 (S.D.N.Y. Dec. 22, 2017), ECF No. 139.

[17] The Lieberman Declaration uses the term "project associate," whereas the Pomerantz Time Sheets use the term "project attorney."

[18] Because many entries include the time spent on translation work in addition to other work (so-called "block billing"), these figures include only those entries that consisted entirely of translation work and ignores the approximately 5,300 entries in which translation work was block billed with other work. These figures are therefore likely significantly lower than the actual totals.

[19] *See* n.17, *supra*.

but the Court might inquire whether it is justified to charge the Class at project attorney or staff attorney rates for the number of translations reflected in the time sheets.

   3.   **Particular Entries That May Warrant the Court's Attention or Require Additional Information**

In addition to making these overall observations concerning the amount of time billed by staff and project attorneys, and in particular their use to perform significant translation work, we also identified various specific timesheet entries where the Court may wish to inquire as to whether the Settlement Class was properly billed for the attorney time. The examples below are not meant to be exhaustive, but rather are illustrative of the types of entries we flagged during our review and are reflected in the enclosed electronic spreadsheet.

- We identified instances in the time sheets where staff attorneys and project attorneys, in between translation and document review assignments, billed full days to activities such as reading Petrobras-related news and the plaintiffs' own pleadings, as well as other tasks that may warrant further inquiry. For example:

    o One project attorney spent approximately 23 consecutive billable days reading news articles on Petrobras, on most days purportedly for exactly 8.0 hours or 9.0 hours, totaling approximately 185 hours, *see* Pomerantz Time Sheets rows 13320–42. *See also id.* rows 12816–17, 12823, 12825 (35 hours reading updated case news from local and international newspapers); *id.* rows 16631–61, 16663–67 (over 294 hours spent updating "cast of characters").

    o One project attorney spent seven consecutive days reviewing the Consolidated Third Amended Class Action Complaint for at least 48 hours of time (after it had been filed), *see id.* rows 10655–61; *see also* Pomerantz Time Sheets rows 25414–18 (five days spending 50 hours reading Third Amended Complaint); *id.* rows 12411–13 (four days spending approximately 31 hours reviewing case updates and reading Fourth Amended Complaint).

    o One project attorney spent approximately six straight weeks (approximately 264 hours) working on a spreadsheet apparently cataloguing decisions from the TCU, *see id.* rows 18960–92.

    o On November 26 and 27, 2015 (Thanksgiving and the following day), a project attorney billed eight hours each day at $450 per hour, but listed only "[o]ffice closed" as the work description, *see id.* rows 21317–18;

    o On June 28, 2016, a project attorney billed 10 hours attending an International Corporate Governance Network event, *see id.* row 23902.

    o One project attorney spent approximately 52 hours "renaming" documents on Relativity, *see id.* rows 18929–33, 18936–37;

Hon. Jed S. Rakoff, p. 8

- In certain instances, time sheets revealed occasions when individual attorneys appeared to spend a large number of hours translating a single document or small portion of a document. For example:

    - The time sheets reflect that it took one project attorney 50 hours to translate a single article on Operation Lava Jato. *See*, *e.g.*, Pomerantz Time Sheets rows 10400–06.

    - Another project attorney spent 65 hours (or six and a half hours per page) to translate 10 pages. *See id.* rows 25442–48.

- We also noted several instances of Pomerantz attorney time (*i.e.*, that of partners, counsel, and associates) of which the Court might wish to inquire:

    - A partner billed 23 consecutive billable days and over 200 hours (or $186,850) preparing for and handling the Second Circuit oral argument on November 2, 2016. *See* Pomerantz Time Sheets rows 383–405.

    - Over a period of time from August 6, 2015, to October 1, 2015, a partner regularly billed time organizing, preparing for, and conducting potential client outreach ahead of a Council of Institutional Investors conference at which Pomerantz apparently discussed this litigation, *see id.* rows 1410–11, 1417–18, 1420–27,1433, 1437–42, 1444.

    - An associate billed up to approximately 528 hours on an opposition to Individual Defendant José Sergio Gabrielli's 30-page summary judgment motion, most of which were billed after the case was stayed, *see id.* rows 4389–4401, 4403, 4405–45. Another associate billed up to 570 hours in connection with motions for summary judgment by Gabrielli and by other Individual Defendants, all of which was entirely incurred after the case was stayed, *see id.* rows 5145–5228.[20]

As part of our markup, we also sampled approximately 21,000 rows to determine whether there was sufficient information for us to provide an observation to the Court and in some instances found that there was not. For example:

- One project attorney billed approximately 584 hours as largely "Review Documents and News updates," without any further elaboration, *see id.* rows 17510–29, 17531–54, 17557–70.

- A counsel billed up to 329 hours over the course of approximately two months working on motions in limine (while the case was stayed), without clearly

---

[20] Because a small number of entries pertaining to these associates' work relating to the motions for summary judgment were "block billed" and included other work, we cannot ascertain the exact number of hours that the associates spent working on these motions.

Hon. Jed S. Rakoff, p. 9

> indicating the number of such motions, *see id.* rows 2093–2115, 2123–2139, 2165–66.
>
> - Similarly, a project attorney billed 40 hours to "Edit Assignment #1," *see id.* rows 18612–15.
>
> - A project attorney billed at least 41 hours to "Read Assignment," *see id.* rows 20718–22.
>
> - A project attorney billed 184 hours to "Relativity Document Review," without providing batch numbers or volume of documents reviewed, *see id.*, rows 24521–24540.

\*   \*   \*

We note that prior to filing this letter we shared orally with Pomerantz only our general observations regarding their billing of staff and project attorneys, including for translation work, and that generally we had identified billing instances that we would bring to the Court's attention as potentially warranting further inquiry. We did *not*, however, previously share those instances or our more detailed comments with Class Counsel (including Pomerantz), nor did we provide Class Counsel a draft of this letter or the spreadsheets containing our comments, which we believed to be more consistent with the Court's request to us.

**B.   Labaton**

Labaton's time sheets included approximately 19,700 billable hours ($10,760,889),[21] totaling 4,126 entries. We also conducted a review of these time sheets. At the outset, we note that Labaton's requested lodestar represents a small fraction of the total lodestar amount (roughly 6.7%). Our review of Labaton's time sheets also revealed that, following the preliminary approval hearing before the Court, Labaton partners reviewed their firm's time records and submitted only those entries where the description was adequate to show work for their client Employees' Retirement System of the State of Hawaii or for the Class Action.

Like Pomerantz, Labaton used a combination of full-time attorneys and temporary staff attorneys for the litigation. *See* Decl. of Thomas A. Dubbs 7–8, Ex. 17 to Lieberman Decl., ECF No. 789-17. Staff attorneys were billed to the Settlement Class at rates from $350 to $625 per hour, *id.*, and performed as many as approximately 5,733 hours of translation work ($2,900,453) and 2,878 hours of first-level document review at billing rates above $350 per hour ($1,510,838). There is approximately 457 hours' worth ($248,735) of overlap (*i.e.*, entries in which staff attorneys billed for both translation and first-level document review at rates above $350/hour). As such, staff attorneys billed up to approximately $4,162,555 for translation and first-level

---

[21] *See* n.10, *supra*.

document review at rates above $350/hour, which represents roughly 39% of their requested lodestar.

The total amount of staff attorney time was approximately 12,647 hours ($6,375,370), or roughly 60% of their requested lodestar. We also note that the median billing rate for both Labaton staff attorneys and for Pomerantz staff and project attorneys is $450, although the weighted average billing rates are approximately $504 and $466, respectively.

We also observed that Labaton staff attorneys billed approximately 728 hours ($416,765) prior to September 30, 2015, when the Petrobras Defendants sent their first response to the Plaintiffs' first request for production. Labaton professionals billed a total of approximately 528 hours ($296,203) to the Settlement Class during time in which the litigation was stayed.

Finally, we observed some instances that raised further questions. For example: one staff attorney spent 10 hours translating a single news article, *see* Labaton Petrobras Time Sheets.xlsx row 2263; another staff attorney spent nine hours translating a single news article, *id.* row 3358; one staff attorney spent approximately 91 hours translating testimony, *id.* rows 2199–2201, 2205–2211; one staff attorney spent approximately 86 hours translating a Brazilian statute, *id.* rows 3119–3124, 3129–3132; and one staff attorney spent up to 180 hours translating the testimony of "several informants," *id.* rows 1992–98, 2002–09, 2014–17.

C.    **Motley Rice**

Motley Rice's time sheets included approximately 3,957 billable hours ($1,905,230), totaling 1,577 entries. Motley Rice's requested lodestar represents a small fraction of the total lodestar amount (roughly 1.2%). We also note that Motley Rice did not bill time to the matter after February 16, 2016. Decl. of Gregg S. Levin ¶ 6, Ex. 18 to Lieberman Decl., ECF No. 789-18 ("Levin Decl.").

Like Pomerantz, Motley Rice used a combination of full-time attorneys, staff attorneys, and temporary project attorneys in the litigation. *See* Levin Decl. 6–7. Project attorneys were billed to the Settlement Class at rates from $350 to $450 per hour, *id.*, and performed as many as approximately 1,890 hours of translation work ($774,248) and 979 hours of first-level document review at rates of over $350 per hour ($440,595). There is approximately 494 hours' worth ($222,435) of overlap (*i.e.*, entries in which staff and project attorneys billed for both translation and first-level document review). As such, project attorneys billed up to approximately $992,408 for translation and first-level document review at rates above $350/hour, which represents roughly 52% of their requested lodestar.

The total amount of staff and project attorney time was approximately 2,954 hours ($1,201,798), or roughly 63% of their requested lodestar.

We also observed that Motley Rice staff and project attorneys billed approximately 167 hours ($66,690) before September 30, 2015, when the Petrobras Defendants sent their first response to the Plaintiffs' first request for production. Motley Rice did not submit time entries

after February 2016 and therefore billed no time to the Settlement Class during the year or so in which the litigation was stayed.

      Finally, we observed only a small handful of instances that raised further questions. For example, one project attorney spent approximately 48 hours translating a newspaper article. *See* Motley Rice Pomerantz Time Sheets.xlsx rows 245–57.

* * *

      We hope that the Court finds these observations useful as it considers Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.

Respectfully submitted,

Lewis J. Liman

Cc:    Class Counsel (via e-mail)

Enclosures (by hand):

DVD containing time sheets of Pomerantz LLP, Labaton Sucharow LLP, and Motley Rice LLC