UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PETROBRAS SECURITIES LITIGATION | 14-cv-9662 (JSR) |

# PETROBRAS DEFENDANTS' AND UNDERWRITER DEFENDANTS' REPLY IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999

Attorneys for the Petrobras Defendants

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
T: 212-735-3000
F: 212-735-2000

Attorneys for the Underwriter Defendants

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT .......................................................................................................................1

I.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE FOR THE SETTLEMENT CLASS MEMBERS ........................................................................1

II.   THE NOTICE DISCLOSED ALL RELEVANT INFORMATION TO SETTLEMENT CLASS MEMBERS ...........................................................................8

CONCLUSION ...................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Absolute Activist Master Fund Ltd. v. Ficeto,
677 F.3d 60 (2d Cir. 2012) .................................................................................................... 2

Amchem Prods., Inc. v. Windsor,
521 U.S. 591 (1997) ........................................................................................................... 4, 7

Charron v. Wiener,
731 F.3d 241 (2d Cir. 2013) .................................................................................................. 8

Davenport v. Elite Model Mgmt. Corp.,
No. 1:13-cv-01061-AJN, 2014 WL 12756756 (S.D.N.Y. May 12, 2014) ............................ 4

Denney v. Deutsche Bank AG,
443 F.3d 253 (2d Cir. 2006) ..........................................................................................passim

Evans v. Jeff D.,
475 U.S. 717 (1986) .............................................................................................................. 1

In re Am. Int'l Grp., Inc. Sec. Litig.,
689 F.3d 229 (2d Cir. 2012) ...................................................................................... 3-4, 6, 7

In re APA Assessment Fee Litig.,
311 F.R.D. 8 (D.D.C. 2015) .................................................................................................. 4

In re Literary Works in Elec. Databases Copyright Litig.,
654 F.3d 242 (2d Cir. 2011) .................................................................................................. 7

In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.,
827 F.3d 223 (2d Cir. 2016), cert. denied, 137 S. Ct. 1374 (2017) (mem.) ....................... 7-8

Joel A. v. Giuliani,
218 F.3d 132 (2d Cir. 2000) .................................................................................................. 7

Morrison v. Nat'l Austl. Bank,
561 U.S. 247 (2010) ...................................................................................................... 2, 3, 5

O'Brien v. Nat'l Prop Analysts Partners,
739 F. Supp. 896 (S.D.N.Y. 1990) ........................................................................................ 8

Sullivan v. DB Invs., Inc.,
667 F.3d 273 (3d Cir. 2011) ................................................................................................... 3, 5

**Other Authorities**

Brief for Plaintiffs-Appellees, Univs. Superannuation Scheme Ltd. v. Petróleo
Brasileiro S.A. Petrobras, No. 16-1914-cv (2d Cir. Aug. 25, 2016), ECF No. 189 ...................... 6

Petition for a Writ of Certiorari, Petróleo Brasileiro S.A. – Petrobras v.
Univs. Superannuation Scheme Ltd., No. 17-664 (S. Ct. docketed Nov. 3, 2017) ....................... 5

Stipulation and Agreement of Settlement, In re Merrill Lynch & Co., Inc. Sec.,
Derivative and ERISA Litig., No. 07-cv-9633 (JSR)(DFE) (S.D.N.Y. Mar. 3, 2009),
ECF No. 210 ............................................................................................................................ 9

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1279
(3d ed. 1998) ........................................................................................................................... 3

# ARGUMENT

The Petrobras Defendants and Underwriter Defendants respectfully submit this Reply (i) in support of Class Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation, ECF No. 790, and (ii) to respond to the objections regarding certification of the Settlement Class defined as Persons who purchased Petrobras Securities in Covered Transactions, which is a material term of the Settlement, Stip. ¶ 57(d), and which this Court should not modify.[1]  See, e.g., Evans v. Jeff D., 475 U.S. 717, 726 (1986) ("Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed.").  The Petrobras Defendants and Underwriter Defendants take no position with respect to the Plan of Allocation or request for attorneys' fees, or any of the objections thereto.[2]

## I.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE FOR THE SETTLEMENT CLASS MEMBERS

At the preliminary hearing, the Court certified a Settlement Class defined as all Persons who purchased Petrobras Securities in Covered Transactions, defined as:

---

[1]  Unless otherwise noted, all capitalized terms have the same meanings assigned to them in the Stipulation of Settlement and Release, ECF No. 767-1 ("Stip.").

[2]  See Stip. ¶¶ 1(t), 23, 41, 57(e).  The Court has six objections before it.  ECF Nos. 797 ("Haynes Obj."), 803 ("Bueno Obj."), 806 ("Martinez Obj."), 811 ("Bishop Obj."), 812 ("Formenti Obj."), 813 ("Gielata Obj.").  This Reply addresses certain objections of William Thomas Haynes ("Haynes") and of Richard and Emelina Gielata (the "Gielatas"), as well as to a limited extent of Spencer R. Bueno, but not of the other objectors.  In addition, we do not respond to, and the Court can disregard, the document submitted by Battea Class Action Services, LLC ("Battea"), ECF No. 810, which seeks to hold up the Settlement and to obtain a two-month extension of the opt-out period.  Battea lacks standing because it does not claim:  (i) to be a Settlement Class Member; (ii) to object to any part of the Settlement; (iii) to have satisfied the requirements set forth in the Notice; or (iv) to be permitted to make an appearance in this Court; and the application of the release necessarily will turn upon the facts alleged in a case where the release is asserted as a defense.

>any transaction that satisfies any of the following criteria: (i) any transaction in a Petrobras Security listed for trading on the New York Stock Exchange ("NYSE"); (ii) any transaction in a Petrobras Security that cleared or settled through the Depository Trust Company's book-entry system; or (iii) any transaction in a Petrobras Security to which the United States securities laws apply, including as applicable pursuant to the Supreme Court's decision in <u>Morrison v. National Australia Bank</u>, 561 U.S. 247 (2010).

Stip. ¶ 1(j); <u>see also</u> Order at 2 (Mar. 1, 2018), ECF No. 770 ("March 1 Decision") (preliminarily certifying the Settlement Class). The Settlement Class definition solves for any ascertainability problems and is intended to provide for the maximum possible recovery. It does so by permitting Settlement Class Members to recover for their alleged injuries, without the expensive and time-consuming exercise of collecting the necessary documents and determining that every transaction satisfies the literal terms of <u>Morrison</u> and spending settlement money to make those determinations. It also permits Defendants to determine their aggregate exposure and eliminates the unacceptable risk—for the Defendants—that they would agree to a settlement only to have Settlement Class Members claim in a foreign court that they did not have a <u>Morrison</u> transaction and were not bound by the settlement (thus imposing burdens on Defendants that could not easily or inexpensively be met). Moreover, it permits effective notice to Settlement Class Members.

Objectors Haynes and the Gielatas nonetheless argue that, as defined, the Settlement Class is objectionable because it will include some undefined number of persons who do not have claims under the United States securities laws since they did not purchase a Petrobras Security either on a domestic exchange or in a domestic transaction as defined by <u>Morrison</u> and <u>Absolute Activist Master Fund Ltd. v. Ficeto</u>, 677 F.3d 60 (2d Cir. 2012). In the words of Haynes, which are echoed by the Gielatas, the inclusion of persons who did not transact on a domestic exchange or in a domestic transaction "harm[s]" persons who did transact on a

domestic exchange or in a domestic transaction "by having their recovery diluted by such claims."  Haynes Obj. at 1; see also id. at 5-7; Gielata Obj. at 1, 4-5.

This objection is squarely foreclosed by the Second Circuit's decisions in In re American International Group, Inc. Securities Litigation (AIG), 689 F.3d 229 (2d Cir. 2012) and Denney v. Deutsche Bank AG, 443 F.3d 253 (2d Cir. 2006), which are consistent with the Third Circuit's decision in Sullivan v. DB Investments, Inc., 667 F.3d 273 (3d Cir. 2011).  A settlement class may include parties whose claims may not have survived a motion to dismiss under Rule 12(b)(6), provided each member has Article III standing.  See AIG, 689 F.3d at 243-44; Sullivan, 667 F.3d at 308; Denney, 443 F.3d at 265.  Here, objectors do not dispute that the question of domesticity goes to the adequacy of the claims and not to the Court's jurisdiction.  Morrison, 561 U.S. at 254.  In other words, domesticity is an element of a violation, just like reliance, a misstatement, and scienter, that—if contested by the defendant—must be proven for the plaintiff to obtain relief, but proof as to which may be waived by the defendant.  5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1279 (3d ed. 1998).  Nor do objectors dispute that all Settlement Class Members (as defined) have Article III standing; each has suffered an alleged injury regardless of whether she transacted domestically or offshore.

Accordingly, the Settlement Class definition and March 1 Decision fall well within the bounds of what is permitted by AIG and Denney.  In AIG, the district court refused to certify a settlement class because plaintiffs had not introduced evidence to satisfy the fraud-on-the-market presumption; accordingly, there was no evidence that all or any of the class members satisfied the reliance element of Section 10(b) of the Securities Exchange Act of 1934.  689 F.3d at 232-33.  The district court reasoned that reliance—just like domesticity—is an element of the violation, and that the inclusion of persons who did not rely on a misstatement—just like the

inclusion of persons who did not purchase domestically—would frustrate predominance. Id. at 237. The Second Circuit vacated the district court's order, holding that "[d]efendants in class action suits are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless." Id. at 243-44. As the Second Circuit explained, satisfaction of the predominance requirement under Rule 23 differs between the trial and the settlement contexts. Id. at 241 ("[W]ith a settlement class, the manageability concerns posed by numerous individual questions of reliance disappear."); see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). While a class including purchasers in foreign transactions may have created manageability problems and other challenges at trial, here, in the settlement context, such concerns are irrelevant, and the predominance requirement is satisfied.[3]

Denney also supports the Settlement Class definition and March 1 Decision. There, the Second Circuit confronted a class that—as defined—included both persons who had federal RICO claims and those who did not but had only state law claims over which there would be no federal jurisdiction. Denney, 443 F.3d at 259. The objectors argued that the class improperly included members who lacked statutory standing under RICO, rendering it overbroad. Id. Both the district court and the Second Circuit nonetheless approved class certification, finding that all members of the class met the essential requirement of Article III standing, which is all that was required. Id. at 266-68. The Second Circuit first observed the rule that "no class may be certified that contains members lacking Article III standing." Id. at 264. It then found that "[t]he

---

[3] This reasoning has been adopted within and outside districts in the Second Circuit. See Davenport v. Elite Model Mgmt. Corp., No. 1:13-cv-01061-AJN, 2014 WL 12756756, at *4 (S.D.N.Y. May 12, 2014) (finding predominance satisfied "without considering the 'manageability concerns posed by numerous individual questions' . . . , which are irrelevant in this case because 'the proposal is that there be no trial'") (quoting AIG, 689 F.3d at 241, and Amchem, 521 U.S. at 620); see also In re APA Assessment Fee Litig., 311 F.R.D. 8, 18 (D.D.C. 2015) (adopting the Second Circuit's reasoning in AIG in finding predominance satisfied).

future-risk members of the Denney class have suffered injuries-in-fact . . . irrespective of whether their injuries are sufficient to sustain any cause of action." Id. at 265.

The logic of those decisions is explained by Sullivan. As the court there explained, looking at both the plain language of the Federal Rules of Civil Procedure and at the case law and policies animating those rules, "the Rule 23 inquiry does not, and should not, involve a Rule 12(b)(6) inquiry." 667 F.3d at 308. Indeed, the en banc panel in Sullivan recognized that if class certification required courts to test the validity of claims at this stage, "[n]o class would ever be certified because it would be impossible to demonstrate that every class member has a 'colorable legal claim.'"[4] Id. at 310. Such a test, moreover, "would effectively rule out the ability of a defendant to achieve 'global peace' by obtaining releases from all those who might wish to assert claims, meritorious or not." Id.[5]

---

[4] Indeed, were the Court to adopt objectors' proposal to draw a bright-line rule limiting certification to persons who purchased in domestic transactions as defined by Morrison, few if any class actions involving over-the-counter purchases, especially those involving parties outside the United States, could ever be settled. As Petrobras Defendants and Underwriter Defendants argued in the still pending certiorari petition, "unlike in class actions like ConAgra—where the class is confined to a known volume of products the defendant sold—there is no way to determine in advance the number of investors who engaged in 'domestic transactions,' and no way for a defendant to estimate its exposure." Petition for a Writ of Certiorari at 39, Petróleo Brasileiro S.A. – Petrobras v. Univs. Superannuation Scheme Ltd., No. 17-664 (S. Ct. docketed Nov. 3, 2017). Moreover, even if the parties could estimate aggregate exposure, the global peace Plaintiffs would be offering, and Defendants buying, through a collective resolution (and the efficiencies thereby generated), would be defeated by the ability of "a potential plaintiff unsatisfied with the class result [to] bring suit in a foreign court on the same transaction and force the defendant to attempt to prove the transaction was 'domestic'" (constrained by the limitations on discovery against third parties necessary for defendant to satisfy that burden). Id.

[5] In Sullivan, the en banc majority responded to the dissent's argument that it had impermissibly considered the policy goals of settlement in its Rule 23 inquiry: "From a practical standpoint, . . . achieving global peace is a valid, and valuable, incentive to class action settlements. Settlements avoid future litigation with all potential plaintiffs—meritorious or not. If the dissent's position were adopted, there would be no settlements, collusive or otherwise." 667 F.3d at 311.

Thus, under <u>AIG</u> and <u>Denney</u>, the only remaining questions for the Court at this stage should be adequacy and typicality.  We believe those questions were answered when the Court certified the classes at the preliminary hearing stage.  <u>See</u> March 1 Decision at 2.  We simply note, *first*, that there should be no question that Class Counsel adequately represented the Settlement Class both throughout the litigation and in achieving the very favorable aggregate settlement in this case.  <u>See, e.g.</u>, Brief for Plaintiffs-Appellees at 22, <u>Univs. Superannuation Scheme Ltd. v. Petróleo Brasileiro S.A. Petrobras</u>, No. 16-1914-cv (2d Cir. Aug. 25, 2016), ECF No. 189; Mem. Law Supp. Pls.' Unopposed Mot. Prelim. Approval of Settlement (Feb. 1, 2018), ECF No. 766.  *Second*, there should be no question that the Class Representatives' claims were typical of those of the class sufficient to represent them in negotiating against Defendants.  <u>See</u> Consolidated Fourth Am. Class Action Compl. ¶¶ 538-560 (Nov. 30, 2015), ECF No. 342; Op. & Order at 9 (Feb. 2, 2016), ECF No. 428 (designating USS a representative for the Exchange Act Class and designating other Class Representatives for the Securities Act Class).

In the end, objectors' arguments seem to be more about the Plan of Allocation, and not the Settlement itself.  As a threshold matter, "the Plan of Allocation is not a necessary term of this Stipulation or the Settlement. . . . The Plan of Allocation is to be considered by the District Court separately from its determination of the fairness, reasonableness, and adequacy of the Settlement as set forth in the Stipulation."  Stip. ¶ 23.  Moreover, "[i]t is not a condition of this Stipulation, the Settlement, or the releases provided herein that any particular plan of allocation be approved by the District Court, and any change, modification, or alteration to the Plan of Allocation by the District Court or by any appellate court shall not be grounds for termination of the Settlement."  <u>Id.</u>

No objector who complains about dilution also complains about the aggregate amount of the Settlement, which, by their objection, they would seek to strip from Settlement Class Members.[6] Indeed, they concede "[t]he release of claims arising from foreign transactions might command some settlement value" but contend merely that "the proper valuation should have been tested through arms-length negotiation by separate representatives." Haynes Obj. at 7.

The Petrobras Defendants and Underwriter Defendants do not take a position on the optimal allocation of the Settlement Amount among Settlement Class Members. Transactions in some jurisdictions may provide similar compensation to those in others, and one might argue that the administrative cost of distinguishing between potential differing types of Settlement Class Members outweighs the benefit of making such a distinction. Nor do we take a position whether, in assessing the Plan of Allocation, the Court should appoint subclass representatives (although we see no particular reason for that).

The Defendants would not have agreed to the Settlement Amount without the inclusion of all the Settlement Class Members as defined. Class Counsel vigorously pursued the claims of all Settlement Class Members throughout the litigation, and Lead Plaintiff USS was certainly both capable of and incentivized to represent foreign purchasers during settlement negotiations.[7]

---

[6] One objector argues that "in the absence of any public information about the ultimate damages calculations prepared by Dr. Nye, neither the Court nor the class members can evaluate the reasonableness of the settlement," including the aggregate Settlement Amount. Bueno Obj. at 3. However, this objector makes no claims regarding dilution. Moreover, the Plan of Allocation and its exhibits contain detailed loss and inflation calculations that provide all the information necessary to evaluate the Settlement. See ECF No. 789-2 Ex. 1 at 13-18.

[7] For these reasons, Amchem, upon which objectors rely, Gielata Obj. at 1-2; Haynes Obj. at 7-8, is easily distinguished. See, e.g., Denney, 443 F.3d at 269 (distinguishing scope of class in Amchem); AIG, 689 F.3d at 241 (distinguishing securities class action from "the sprawling asbestos class in Amchem"); Joel A. v. Giuliani, 218 F.3d 132, 139 (2d Cir. 2000) (distinguishing "obvious conflict" in Amchem).

Other cases cited by the objectors, including In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242 (2d Cir. 2011) and In re Payment Card Interchange Fee and

Therefore, regardless of whether the Plan of Allocation ultimately has the effect of diluting some persons relative to others, the Settlement should be approved as fair, reasonable, and adequate. See Charron v. Wiener, 731 F.3d 241, 253 (2d Cir. 2013) ("All class settlements value some claims more highly than others, based on their perceived merits, and strike compromises based on probabilistic assessments.").

## II.   THE NOTICE DISCLOSED ALL RELEVANT INFORMATION TO SETTLEMENT CLASS MEMBERS

The Gielatas claim that the Notice fails to disclose three categories of materially relevant information: (1) an "explanation of why a release is given to the underwriter defendants without any contribution"; (2) the "percentage of the settlement fund [that] is apportioned to the ADS versus the various debt securities"; and (3) "how much the claims administrator will be paid." Gielata Obj. at 9-10.  They argue that supplemental disclosure is needed to remedy these alleged defects. Id. at 10. None of the arguments is a basis for rejecting the Settlement.

As to the explanation of the Underwriters Defendants' release, settlement notices need only disclose the releases rather than the rationale behind them. See O'Brien v. Nat'l Prop Analysts Partners, 739 F. Supp. 896, 902 (S.D.N.Y. 1990) ("The Court does not believe that due process requires further explanation of the effects of the release provision in addition to the clear meaning of the words of the release."). Here, the Notice fully explained what claims were being released and against which parties, ECF No. 789-2 Ex. 1 at 6-8, and the reasons for the Settlement, id. at 3-6.  Furthermore, it is permissible for an issuer to provide underwriters that it indemnifies with a release in a settlement without contribution from the underwriters, a practice

---

Merch. Disc. Antitrust Litig., 827 F.3d 223 (2d Cir. 2016), cert. denied, 137 S. Ct. 1374 (2017) (mem.), are similarly distinguishable.  There is no evidence in this case that USS "trade[d] the interests of one class for another," Payment Card, 827 F.3d at 236, 238, for example by imposing "arbitrary harsher treatment" on one group of class members.  Id. at 239.

that this Court has previously approved.  <u>See</u> Stipulation and Agreement of Settlement, <u>In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.</u>, No. 07-cv-9633 (JSR)(DFE) (S.D.N.Y. Mar. 3, 2009), ECF No. 210.  As such, the Notice is sufficient as is, and the Court should deny the Gielatas' objection that the Notice be updated and reposted online to include an explanation of the Underwriter Defendants' release.

The percentage of the Settlement Amount that is apportioned to the ADS versus the various debt securities is subject to the calculations described in the Plan of Allocation.  <u>See</u> ECF No. 789-2 Ex. 1 at 12-18.  Accordingly, there is adequate disclosure.  And the amount of money paid to the Claims Administrator is a question of expenses more appropriately directed at Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses. ECF No. 791.

## CONCLUSION

For the foregoing reasons, the Petrobras Defendants and Underwriter Defendants respectfully request that the Court approve the Settlement.

Dated: May 25, 2018
       New York, New York

Respectfully submitted,

/s/ Roger A. Cooper
Roger A. Cooper
Lewis J. Liman
Jared Gerber
Rahul Mukhi
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999

Attorneys for the Petrobras Defendants

/s/ Jay B. Kasner
Jay B. Kasner
Scott D. Musoff
Jeremy A. Berman
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
T: 212-735-3000
F: 212-735-2000

Attorneys for the Underwriter Defendants