Anna St. John
COMPETITIVE ENTERPRISE INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1310 L Street NW, 7th Floor
Washington, DC 20005
Phone: (917) 327-2392
Email:  anna.stjohn@cei.org

*Attorney for Objector William Thomas Haynes,*
*as trustee for the benefit of W Thomas and Katherine Haynes*
*Irrevocable Trust for the benefit of Sara L. Haynes*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE PETROBRAS SECURITIES LITIGATION** | Case No. 14-CV-9662 (JSR)<br><br>**CLASS ACTION** |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES**

---

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................................. i

**TABLE OF AUTHORITIES** .......................................................................................................... ii

**INTRODUCTION** ..........................................................................................................................1

**ARGUMENT** ..................................................................................................................................2

    I.     Objector Haynes is entitled to fees for conferring a concrete benefit upon the class. ...............2

    II.    A total attorneys' fee of sub-0.5% of the benefit conferred is reasonable. ...............................6

    III.   Haynes's attorneys' lodestar of $117,316.50 provides a reasonable cross-check. .......................8

    IV.   Haynes's Attorneys' Fee Award Should Be Funded from Class Counsel's Fee Award. ............9

**CONCLUSION** .............................................................................................................................. 11

## TABLE OF AUTHORITIES

Cases

*In re Beacon Assocs. Litig.*,
　　No. 09 Civ. 777(CM), 2013 WL 2450960 (S.D.N.Y. May 9, 2013) ............................................. 6

*Blum v. Stenson*,
　　465 U.S. 886 (1984) ................................................................................................................... 8

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
　　MDL No. 09-2067, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) ............................................. 10

*In re Citigroup Inc. Secs. Litig.*,
　　No. 07-cv-9901 (SHS), 2017 WL 3842601 (S.D.N.Y. Sept. 1, 2017) .................................... 2, 7

*Denney v. Jenkens & Gilchrist*,
　　230 F.R.D. 317 (S.D.N.Y. 2005) .............................................................................................. 10

*Dewey v. Volkswagen of Am.*,
　　909 F. Supp. 2d 373 (D.N.J. 2012) ............................................................................................. 7

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
　　2 F. Supp. 2d 175 (D. Mass. 1998) ........................................................................................... 10

*Edwards v. Milk Producers Fed'n*,
　　No. 11-cv-04766, 2017 WL 4581926 (N.D. Cal. Sept. 13, 2017) ........................................... 2, 4

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
　　No. 02 Civ. 3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................................. 3

*Goldberger v. Integrated Res. Inc.*,
　　209 F.3d 43 (2d Cir. 2000) ..................................................................................................... 8, 11

*Great Neck Capital Appreciation Inv. P'ship v. PriceWaterhouseCoopers*,
　　212 F.R.D. 400 (E.D. Wis. 2002) ......................................................................................... 10, 11

*Hendricks v. Starkist Co.*,
　　No. 13-cv-729, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ................................................ 10

*In re Horizon/CMS Healthcare Corp. Sec. Litig.*,
　　3 F. Supp. 2d 1208 (D.N.M. 1998) ........................................................................................... 10

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
　　194 F.R.D. 166 (E.D. Pa. 2000) ................................................................................................ 10

*Lan v. Ludrof*,
　　No. 1:06-cv-114-SJM, 2008 WL 763763 (W.D. Pa. Mar. 21, 2008) ......................................... 7

*McDonough v. Toys "R" Us, Inc.*,
   80 F. Supp. 3d 626 (E.D. Pa. 2015) ...........................................................................6, 10

*Neslin v. Wells*,
   104 U.S. 428 (1882) ..............................................................................................................9

*NLRB v. Local 3, IBEW*,
   471 F.3d 399 (2d Cir. 2006) ..................................................................................................8

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
   322 F.3d 147 (2d Cir. 2003) ..................................................................................................9

*Park v. Thomson Corp.*,
   633 F. Supp. 2d 8 (S.D.N.Y. 2009) ...................................................................................2, 3

*Parker v. Time Warner Entm't Co.*,
   631 F. Supp. 2d 242 (E.D.N.Y. 2009) .................................................................................10

*In re Primus*,
   436 U.S. 412 (1978) ..............................................................................................................8

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   273 F. Supp. 2d 563 (D.N.J. 2003) ..................................................................................7, 10

*In re Puerto Rican Cabotage Antitrust Litig.*,
   815 F. Supp. 2d 448 (D.P.R. 2011) .......................................................................................7

*Reynolds v. Beneficial National Bank*,
   288 F.3d 277 (7th Cir. 2002) .............................................................................................2, 5

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012) .................................................................................................2

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................................4

*Rodriguez v. W. Publ'g Corp.*,
   602 Fed. Appx. 385 (9th Cir. 2015) ......................................................................................6

*Trans Union Corp. Privacy Litig.*,
   629 F.3d 741 (7th Cir. 2011) .................................................................................................5

*United Steelworkers of Am. v. Sadlowski*,
   435 U.S. 977 (1978) ..............................................................................................................9

*Vought v. Bank of Am.*,
   901 F. Supp. 2d 1071 (C.D. Ill. 2012) .................................................................................11

Memorandum in Support of Motion for an Award of Attorneys' Fees
Case No: 14-CV-9662 (JSR)                                iii

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) ..................................................................................................6

*White v. Auerbach*,
 500 F.2d 822, 828 (2d Cir. 1974) .....................................................................................1, 2

*Wilson v. SW Airlines*,
 880 F.2d 807 (5th Cir. 1989) ............................................................................................10

<u>Rules and Statutes</u>

42 U.S.C. § 1988 ...........................................................................................................................8

Rev. Proc. 92-59, 1992-2 C.B. 411 ...............................................................................................8

<u>Other Authorities</u>

Silver, Charles,
 *Due Process and the Lodestar Method: You Can't Get There From Here*,
 74 Tul. L. Rev. 1809 (2000) ..............................................................................................6

## INTRODUCTION

"[I]t is well settled that objectors have a valuable and important role to perform." *White v. Auerbach*, 500 F.2d 822, 829 (2d Cir. 1974). Accordingly, objectors who provide a material benefit to the class through their objections "are entitled to an allowance as compensation for attorneys' fees and expenses" as a matter of law. *Id.* Here, the objection of William Thomas Haynes, as trustee for the benefit of W Thomas and Katherine Haynes Irrevocable Trust for the benefit of Sara L. Haynes ("Haynes") resulted in a net gain for the class of approximately $94.9 million. Haynes requests $199,400 in attorneys' fees following this pecuniary improvement, an amount equaling a modest 0.21% of the benefit to the class.

Haynes's objection achieved this result—or, at the least, achieved a $46 million reduction in fees attributable to the Brazilian project attorneys and contributed materially to the additional $49 million reduction. Haynes argued that (1) the $49.6 million ($27.86 million x 1.78 lodestar multiplier) in fees that class counsel requested for Brazilian project attorneys should be rejected, with the cost of their work allowed only as an expense; (2) the $82.2 million requested for U.S. project associates should be significantly reduced due to (i) the excessive billing rates charged generally, and (ii) the excessive billing rates charged for non-legal work such as translating documents specifically; (3) the Court should not apply a lodestar multiplier higher than the 1.78 requested by class counsel after making these reductions to the lodestar; and (4) the more than 9% of the fund requested by class counsel was out-of-step with Circuit law and should be reduced. Objection, Dkt. 797, at 12-25. The Court's opinion reducing class counsel's fees adopted these arguments in whole or part and, as a result, increased the class recovery by nearly $95 million that otherwise would have been a windfall to the attorneys. Dkt. 834.

In bringing his objection, Haynes and his counsel were subjected to a litany of false accusations and overbroad discovery requests. Haynes fended off the most abusive requests, responded to a narrower set of requests, opposed class counsel's absurd request that the Court

impose sanctions *sua sponte* for nothing more than good-faith litigation positions supported by existing law, and corrected the record, all lest the Court—having only the inaccuracies in the record—discount Haynes's objection as a result, risking a less favorable result for the class. *See* Declaration of Anna St. John ¶¶ 18-20.

Haynes and his counsel undertook his objection and endured these attacks without any assurance that they would recover attorneys' fees. In fact, in the majority of objections that the Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF") files, including the successful ones, it does not recover attorneys' fees. Objectors cannot know in advance, when deciding whether to object, how a court would rule without the advantage of the objector's adversarial briefing or whether another class member will object on similar grounds. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002). Because "it is desirable to have as broad a range of participants in the class action fairness hearing as possible, … this participation is encouraged by permitting lawyers who contribute materially to the proceeding to obtain a fee." *Park v. Thomson Corp.*, 633 F. Supp. 2d 8, 11 (S.D.N.Y. 2009) (internal quotations omitted).

## ARGUMENT

**I.     Objector Haynes is entitled to fees for conferring a concrete benefit upon the class.**

Under the law of this Circuit, "[o]bjectors who provide a material benefit to the class through their objections are entitled to attorneys' fees as a matter of law." *White*, 500 F.2d at 828; *In re Citigroup Inc. Secs. Litig.*, No. 07-cv-9901 (SHS), 2017 WL 3842601, at *2 (S.D.N.Y. Sept. 1, 2017); *see also Rodriguez v. Disner*, 688 F.3d 645, 658-59 (9th Cir. 2012) (objectors are entitled to attorneys' fees when they confer a substantial benefit on the class). "Courts in this district have recognized that objectors' counsel are entitled to an award of fees even where the Court would have likely reached the same result, with or without the objectors' comments." *Park*, 633 F. Supp. 2d at 11 (citing cases); *see also Reynolds*, 288 F.3d at 288 ("lawyers who contribute materially to the proceeding" are entitled to a fee, even if the court would have *sua sponte* made the same finding without the objection); *Edwards v. Milk Producers Fed'n*, No. 11-

cv-04766, 2017 WL 4581926, at *1 (N.D. Cal. Sept. 13, 2017) (awarding objectors fees even though "the Court's own review would likely have resulted in a fee award to class counsel that was lower than the amount sought"). "Some courts have also rewarded objectors' counsel for advancing non-frivolous arguments and transforming the settlement hearing into a truly adversarial proceeding." *Park*, 633 F. Supp. 2d at 11 (internal quotation omitted). Fee awards to objectors, as with any litigant, thus "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," such as class counsel's attempt here to obtain an excessive portion of the class's damages. *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010).

      Haynes requests attorneys' fees because he realized a substantial pecuniary benefit to the class. Haynes made detailed arguments that, *inter alia*, (1) the $49.6 million ($27.86 million x 1.78 lodestar multiplier) in fees that class counsel requested for Brazilian attorneys who were not eligible for admission to practice in U.S. courts should be rejected and allowed only as a cost,[1] Dkt. 797 at 12-14; (2) the $82.2 million requested for U.S. project associates should be significantly reduced due to (i) the excessive billing rates charged generally, and (ii) the excessive billing rates charged for non-legal work such as translating documents specifically, *id*. at 14-16; and (3) the 9.48% of the fund requested by class counsel was out-of-step with Circuit precedent and should be reduced, regardless of the terms of their retainer agreement with the lead plaintiff, *id*. at 23-25. Haynes also objected to applying a lodestar multiplier higher than the 1.78 requested by counsel after the Court deducted such abusive amounts from the lodestar, rather than simply increasing the multiplier and awarding the full amount requested. *Id.* at 19-23.

      The amount that will be distributed to class members rather than as a windfall to the attorneys is $94,907,397, excluding interest earned. This figure is reached by taking the total fee and expense request of $299,015,235.24 ($284.5 million in fees plus $14,515,235.24 in costs),

---

[1] After Haynes filed his objection, class counsel subtracted about $287,412.50 from the time billed by these attorneys, but did not reduce their overall fee request. *See* Dkt. 834 at 33.

and subtracting the total fee and expense award of $204,107,838.24 ($186,544,000 in fees plus $14,515,235.24 in costs plus $3,048,603 in foreign attorney costs). *See* Dkts. 787 at 1, 834, 837.

Class counsel may argue that Haynes should not be credited with the entire improvement in class members' pecuniary recovery because some credit should go to the defendants and other objectors, and the Court may have reduced their fees as result of its own diligent review. Neither is a meritorious reason to deny Haynes attorneys' fees.

*First*, there is no basis to argue that Haynes should not be credited with *at least* the $46 million reduction due to the improper billing (at excessive hourly rates) of Brazilian attorneys not eligible to practice before this Court. Neither defendants nor any other objector raised this issue with the Court. Class counsel tried to bill the class over *nine times* the cost of these attorneys and then sought a multiplier of 1.78 on top of that, resulting in a charge to the class of over **sixteen times** their actual cost. Dkt. 797 at 14. Noting that class counsel did "not address the case law cited by Haynes," the Court reached the conclusion advocated by Haynes, deducting "the full amount billed by these individuals" from the lodestar, and allowing class counsel to recover as an expense "the actual costs they incurred compensating these attorneys." Dkt. 834 at 32-33. That amount turned out to be a mere $3 million. Dkt. 837.

When a court denies class counsel's fee request "[i]n the wake of [an] objection," the court should not hold "that [o]bjectors did nothing that increased the fund or substantially benefitted the class members." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). Provided that the court had not already been focused on the issue, it is "clearly erroneous" to deny objector fees on the ground that objector's counsel "did not add anything." *Id.* Further, even where the court at the time of preliminary approval evinces skepticism regarding the fee request, that is not good reason to deny fees to an objector who later develops his own successful argument against the request. *Edwards*, 2017 WL 4581926, at *1.

*Second*, Haynes could not have known in advance of the objection deadline if the Court would reduce attorneys' fees as significantly as it did on its own without the benefit of an

adversarial presentation. Haynes acknowledges that he was not the only one to identify certain of the overstated charges in class counsel's lodestar or the excessive percentage they requested. Nevertheless, Haynes identified a number of unique authorities and arguments, and he re-introduced an adversarial element. *See Reynolds*, 288 F.3d at 288 ("objectors must decide whether to object without knowing what objections may be moot because they have already occurred to the judge"); *cf.* Dkt. 793 (defendants' factual review focused on specific time entries without citing applicable case law). The Court stated in its order that it "spent a considerable amount of time" reviewing, *inter alia*, the objections and "agrees with objectors that a reduction is appropriate to account for the considerable time spent by [the project] attorneys on low level document review." Dkt. 834 at 32-33. The Court also held that "a further reduction [of 50%] is required" to the amounts billed by project attorneys for translating documents. *Id.* at 34. Once the Court adjusted the lodestar, it applied the 1.78 multiplier as Haynes advocated, Dkt. 797 at 19, rather than the higher one advocated by class counsel in the event the Court reduced its lodestar, Dkt. 814 at 29. The Court also rejected plaintiffs' argument that it should defer to the over 9% fee award allowed by its retainer agreement. Dkt. 834 at 36. Haynes should be credited with these additional fee reductions, as well as for his role in creating an adversarial proceeding.

*Third*, awarding objectors fees is often a matter of "wrestling with a problem of joint causation" of both objectors' and plaintiffs' counsel. *Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 747 (7th Cir. 2011). "[Class] counsel created an asset—the expected gain from the lawsuits—the value of which they did not realize. The efforts of the other lawyers enabled the full value to be obtained" by the class. *Id.* While class counsel obtained the gross settlement as an initial matter, they then fought to keep an excessive amount for themselves rather than distribute it to their clients who had been harmed by the securities fraud at issue. Haynes rightly contended that their request was excessive and expended time and effort to present the reasons to the Court. Because of this "joint causation," Haynes does not claim he is entitled to a full 6% of the $94.9 million (on par with the percentage awarded class counsel); though he might

reasonably claim entitlement to half of that amount. Instead of seeking what could be characterized as an excessive windfall, Haynes limits his request to a far more modest 0.21%.

In short, objection entails risk. *Rodriguez v. W. Publ'g Corp.*, 602 Fed. App'x 385, 387 (9th Cir. 2015) (reversing district court's conclusion that class action objection is a "matter which [has] little risk"). *See* St. John Decl. ¶ 21. There is no guarantee a court will honor objections and even a successful objection may merely scuttle a settlement without class benefit creating an entitlement to attorneys' fees; and class counsel often still challenge an objector's entitlement to fees even after an objection results in improvement in direct benefit to the class. *See, e.g.*, *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 660 (E.D. Pa. 2015). CCAF attorneys have billed thousands of hours in dozens of cases in which no fees were paid to the Center, even where the Center was successful on appeal. *See* Frank Decl., Dkt. 799, ¶ 36. Given the degree of success, the degree of risk, public policy, the efficiency of the lodestar, and the quality of counsel's representation, Haynes's $199,400 request is reasonable.

## II. A total attorneys' fee of sub-0.5% of the benefit conferred is reasonable.

For reasons discussed in *Wal-Mart Stores*, "the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method" of calculating fee awards, "reserving the traditional 'lodestar' calculation as a method of testing the fairness of the proposed percentage award." *In re Beacon Assocs. Litig.*, No. 09 Civ. 777(CM), 2013 WL 2450960, at *1 (S.D.N.Y. May 9, 2013); *see generally* Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809 (2000) (citing authorities that show a "broad consensus that percentage-based formulas harmonize the interests of agents and principles better than time-based formulas like the lodestar approach"). Awarding fees on a percentage of the benefit basis "directly aligns the interests of the class and its counsel" while avoiding pitfalls of the lodestar method. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (quotation omitted). As long as there is a lodestar crosscheck (see Section III, below), there is no reason not to align the interests of objectors' counsel with the class as well by

using the percentage method. If objectors' fees are not attuned to the benefit conferred, then it will become more lucrative for objectors to accept settlement offers from class counsel rather than litigate large-value objections in hopes of obtaining recompense for their work. This is not a deterrent to Haynes's attorneys with CCAF, which is non-profit, never withdraws objections for personal gain, and does not consider the possibility of fees when deciding whether to object. Frank Decl., Dkt. 799, ¶ 35. But it would be unfortunate and poor public policy if only non-profit organizations were in a position to protect class members from class action settlement abuse. In order to realize the promise of the critically valuable service that informed, good-faith objectors provide, those objectors who do confer material benefits upon the class should be encouraged and compensated.

The appropriate percentage that should be utilized for objectors is the same utilized for class counsel. *See, e.g.*, *Citigroup*, 2017 WL 3842601, at *3 (finding 8.25% of the pecuniary benefit to be reasonable); *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 396 (D.N.J. 2012) (awarding CCAF "10.5% of the benefit conferred, well within the range of acceptable percentages-of-recovery"); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011) (finding that "10% [of $3 million benefit conferred] is reasonable and appropriate to reflect Objectors' time, effort, ingenuity and success in increasing the kitty for the benefit of the Class"); *Lan v. Ludrof*, No. 1:06-cv-114-SJM, 2008 WL 763763, at *30 (W.D. Pa. Mar. 21, 2008) (awarding objector 25% of the increase in the benefit to the class); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563, 572 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695 (3d Cir. 2004) (awarding objector percentage of benefit conferred).

Here, Haynes requests merely a fraction of one percent of the benefit he conferred on the class. His request of $199,400 is less than 0.21% of the $94.9 million improvement in class recovery, which is facially reasonable and well below the approximately 6.2% awarded as fees to class counsel and the 3% that Haynes suggested in his objection. Even if one were to discount entirely all of the benefit he provided other than the $46 million attributable to the Brazilian

project attorney-overbilling, his request still amounts to a mere 0.43% of that benefit. While a larger percentage request by Haynes would be warranted, because his attorneys are non-profit and tax law limits how much they may collect in fees and expenses, he restricts his request a fraction of one percent and foregoes reimbursement of expenses as well as any incentive award.[2]

Given the degree of success, the degree of risk, the public policy reasons to award fees, and the efficiency of the lodestar (discussed in Section III), Haynes's $199,400 request—a fraction of 1% of the benefit conferred—is reasonable.

### III.    Haynes's attorneys' lodestar of $117,316.50 provides a reasonable cross-check.

While Haynes's request for a fee award is based on the percentage of recovery, courts use a lodestar cross-check to test the "reasonableness of the requested percentage." *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000). A lodestar cross-check confirms the reasonableness of Haynes's request. Haynes's lodestar of $117,316.50 includes 27.6 hours billed by Theodore H. Frank, 31.5 hours billed by Melissa Holyoak, 124.6 hours billed by Anna St. John, and 48 hours billed by Adam Schulman. The lodestar is conservative. It is based on below-market rates for attorneys of comparable skill and experience and rates that paying clients have actually paid for the attorneys' work, and the rates are less than hourly rates charged by class counsel's attorneys of equivalent experience (and likely defense counsel, too). *See* St. John Decl. ¶¶ 10-16. The lodestar excludes all expenses, time spent on the fee motion, and time after June 4,

---

[2] While the Competitive Enterprise Institute (of which CCAF is a sub-unit), as a non-profit, is limited in the total awards of fees it may receive in any given five-year period, Rev. Proc. 92-59, 1992-2 C.B. 411, its non-profit status does not preclude a request for attorneys' fees of the same size as that a for-profit firm could recover. *E.g.*, *In re Primus*, 436 U.S. 412, 429-31 (1978) (ACLU and NAACP); *Blum v. Stenson*, 465 U.S. 886, 894-95 (1984) (*pro bono public* representation not grounds for reducing attorneys' fees) (42 U.S.C. § 1988); *NLRB v. Local 3, IBEW*, 471 F.3d 399, 406 (2d Cir. 2006) (applying *Blum* beyond § 1988). Indeed, other non-profit organizations often report attorneys' fee awards totaling millions of dollars. *See, e.g.*, National Consumer Law Center, Inc. Form 990 for 2016, St. John Decl. Ex. 2 (showing attorney fee awards of over $5 million in 2016, out of total program service revenue of $8.1 million).

2018, the date of the fairness hearing.³ *See id.* ¶¶ 23-24. It also excludes the tens of hours that Haynes and his wife personally devoted to the objection and to locating nearly decade-old documents in response to class counsel's burdensome discovery requests. *Id.* ¶ 25.

Haynes's attorneys analyzed and objected to a $3 billion class-action settlement on multiple grounds; analyzed and objected to a nearly $300 million attorneys' fee and expense request on multiple grounds (including a 200 page fee declaration (Dkt. 789) accompanied by 25 exhibits); defended against an overly broad subpoena issued mere hours after Haynes filed his objection; responded to document requests with supplemental declarations and documentary evidence; responded to false *ad hominem* attacks with letters to the Court and a sur-reply to ensure the Court had an accurate record before it at the fairness hearing; and prepared for and attended a fairness hearing in a reasonable 231.7 hours. *See id.* ¶¶ 18-19.

Haynes' request reflects a multiplier of 1.70 of his attorneys' lodestar—a number below that sought by class counsel, below that recommended by Haynes for class counsel, and below the 2.7 multiplier class counsel described as "well within the range of acceptable multipliers in this Circuit … and awarded by this Court." *See* Dkt. 814 at 29.

**IV.    Haynes's Attorneys' Fee Award Should Be Funded from Class Counsel's Fee Award.**

"[T]he 'common benefit' theory is premised on a court's equity power." *United Steelworkers of Am. v. Sadlowski*, 435 U.S. 977, 979 (1978). As between class members and class counsel, "equity requires that the loss, which in consequence thereof must fall on one of the two, shall be borne by him by whose fault it was occasioned." *Neslin v. Wells*, 104 U.S. 428, 437 (1882). "While a court of equity will on swift wings fly to relieve the innocent from wrong and injury, it travels with leaded feet and turns a deaf ear, when called on to furnish a cloak of righteousness to cover sin." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v.*

---

³ The non-profit status of CEI precludes CCAF attorneys from personally profiting from any fee award. *See* St. John Decl. ¶ 6.

*Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (cleaned up). Haynes's fees thus should be borne by class counsel, who had complete responsibility for the excessive fee request. The class should not have to pay twice for a benefit they should have received at the outset. *See McDonough*, 80 F. Supp. 3d at 662 (debiting objector's fees from class counsel's award because class benefit was only achieved on the "second try").

Perhaps this is why many courts across the nation have held that an objector fee should be paid out of class counsel's award.  *E.g.*, *Hendricks v. Starkist Co.*, No. 13-cv-729, 2016 WL 5462423, at *16 (N.D. Cal. Sept. 29, 2016); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09-2067, 2014 WL 4446464, at *10 & n.1 (D. Mass. Sept. 8, 2014); *Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242, 277 (E.D.N.Y. 2009); *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 354 (S.D.N.Y. 2005), *aff'd in part, vacated in part on other grounds*, 443 F.3d 253 (2d Cir. 2006); *Prudential Ins. Co. of Am.*, 273 F. Supp. 2d at 573; *Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F. Supp. 2d 175, 176 (D. Mass. 1998); *In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208, 1215 (D.N.M. 1998). It would be highly inequitable to require the class to foot the bill for both class counsel and objector's counsel, when class counsel alone created the necessity of objection by tendering an unreasonable request in the first place. *Cf. Wilson v. SW Airlines*, 880 F.2d 807, 816 (5th Cir. 1989).

 It is not punitive when objectors' fees are paid from the same pot awarded to class counsel. Rather, doing so recognizes several realities, equities, and best practices of settlement and class representation. The court's opinion in *Great Neck Capital Appreciation Inv. P'ship v. PriceWaterhouseCoopers* provides pertinent discussion of this issue. 212 F.R.D. 400, 416-17 (E.D. Wis. 2002). There, the court recognized its equitable discretion to impose the burden of paying objector fees on the class but correctly declined to do so, based on its recognized fiduciary obligation to safeguard the class funds. *Id.* at 417. Instead, the court awarded the objector fees from "class counsel and the defendants as they may agree but without diminution of the sum awarded to the class." *Id.*; *accord In re Ikon Office Solutions, Inc. Sec. Litig.*, 194

F.R.D. 166, 197 (E.D. Pa. 2000) (Objectors' "fees and costs will be taken from class counsel's award to avoid dilution of the settlement fund.").

Awarding fees from class counsel's award is also good public policy. It provides a practical incentive for class counsel to avoid proffering excessive fee requests and settlements that have a high probability of being objectionable to class members and the courts. Plenty of unfavorable settlements and excessive fee requests are approved quickly, quietly, and unopposed, without a single objection filed. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey of several federal districts that reported between 42% and 64% of settlements engendered no filings by objectors). And, "why should [class members object]? They have no real incentive to mount a challenge that would result in only a 'minuscule' *pro rata* gain from a fee reduction" *Goldberger*, 209 F.3d at 53. Add to that the reality that non-profit watchdog groups cannot be everywhere at one time, and it is readily apparent why class counsel must be encouraged to submit good requests on their own. If they are not even responsible for paying the comparatively minimal fees of successful objectors, then there will be little if any incentive for them to request reasonable amounts of fees from the very outset.

## CONCLUSION

For the foregoing reasons, Objector Haynes respectfully asks the Court to award attorneys' fees of $199,400 to his counsel.

Dated: July 11, 2018

/s/ *Anna St. John*
Anna St. John
COMPETITIVE ENTERPRISE INSTITUTE
 CENTER FOR CLASS ACTION FAIRNESS
1310 L Street NW, 7th Floor
Washington, DC 20005
Phone: (917) 327-2392
Email: anna.stjohn@cei.org

*Attorney for Objector William Thomas Haynes,*
*as trustee for the benefit of W Thomas and Katherine*
*Haynes Irrevocable Trust for the benefit of Sara L. Haynes*

## Certificate of Service

The undersigned certifies she electronically filed the foregoing Memorandum in Support of Motion for Attorneys' Fees and associated declaration and exhibits via the CM/ECF system for the Southern District of New York, thus sending the Memorandum in Support of Motion for Attorneys' Fees, declaration, and exhibits to the Clerk of the Court and also effecting service on all attorneys registered for electronic filing.

Dated: July 11, 2018

                                          /s/ *Anna St. John*
                                          Anna St. John