Anna St. John
COMPETITIVE ENTERPRISE INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1310 L Street NW, 7th Floor
Washington, DC 20005
Phone: (917) 327-2392
Email:  anna.stjohn@cei.org

*Attorney for Objector William Thomas Haynes,
as trustee for the benefit of W Thomas and Katherine Haynes
Irrevocable Trust for the benefit of Sara L. Haynes*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE PETROBRAS SECURITIES LITIGATION** | Case No. 14-CV-9662 (JSR) |
| | **CLASS ACTION** |

**DECLARATION OF ANNA ST. JOHN**

Declaration of Anna St. John
Case No: 14-CV-9662 (JSR)

I, Anna St. John, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. My business address is Competitive Enterprise Institute, 1310 L Street NW, 7th Floor, Washington, DC 20005. My telephone number is (917) 327-2392. My email address is anna.stjohn@cei.org.

3. I represent William Thomas Haynes in his capacity as trustee of the W Thomas and Katherine Haynes Irrevocable Trust for the benefit of Sara L. Haynes ("Haynes"), a class member in this matter.

4. I am an attorney with the non-profit Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF" or the "Center"), based out of Washington, DC.

5. CCAF's mission is to litigate on behalf of class members against unfair class action procedures and settlements. *See* Declaration of Theodore H. Frank, Dkt. 799, ¶¶ 5-7. CCAF's track record of success in benefiting class members is set forth in detail in Mr. Frank's declaration, which I incorporate here by reference. *See generally id.*

6. The CCAF attorneys representing Haynes, including myself, are paid on a salary basis that does not vary with the result in any case. We do not receive a contingent bonus based on success in any case, a structure that would be contrary to I.R.S. restrictions.

**Haynes's Objection Created a Material Pecuniary Benefit for Class Members**

7. Haynes's objection argued that the fee request was excessive. *See* Objection, Dkt. 797, at 12-25. He argued that (1) the $49.6 million in fees that class counsel requested for Brazilian project attorneys should be rejected, with the cost of their work allowed only as an expense; (2) the $82.2 million requested for U.S. project associates should be significantly reduced due to (i) the excessive billing rates charged generally, and (ii) the excessive billing rates charged for non-legal work such as translating documents specifically; (3) the Court should not apply a lodestar multiplier higher than the 1.78 requested by class counsel after reducing the lodestar; and (4) the 9.48% of the fund requested by class counsel was out-of-step with Circuit law and should be

reduced regardless of what their retainer agreement specified. *Id.*

8. The Court's opinion reducing class counsel's fees adopted these arguments in whole or part and, as a result, increased the class recovery by nearly $95 million that otherwise would have been a windfall to the attorneys. Dkts. 834, 837.

9. Haynes argues that because he is jointly responsible for the $94.9 million pecuniary improvement to the class, he is entitled to attorneys' fees. *See* Haynes's Notice of Motion for an Award of Attorneys Fees and Memorandum in Support.

### Counsel's Skill, Experience, and Lodestar Cross-Check

10. In terms of counsel's skill and experience, I am a 2006 graduate of Columbia Law School, where I was a James Kent Scholar. After law school, I served as a law clerk for the Honorable Rhesa H. Barksdale on the U.S. Court of Appeals for the Fifth Circuit, and I worked as an associate in the Washington, DC, office of Covington & Burling LLP. While at Covington, I managed complex insurance litigation on behalf of policyholders and white collar investigations, in connection with which I engaged in nearly all forms of written and document discovery, deposed and defended witnesses, and authored various motions and briefs in state and federal courts. When I left Covington in May 2014, my billing rate exceeded the $465 rate I am seeking in this case. Since joining CCAF in March 2015, I have authored numerous briefs in federal and state courts and argued before both trial and appellate courts.

11. The lodestar includes 124.6 hours that I billed to this case. I had primary and day-to-day responsibility for the case. The bulk of my hours were split between (i) researching and drafting Haynes's objection to the settlement and declarations filed therewith, along with overall strategy and coordination, including responsibility for filing a cohesive, persuasive, and correct final objection (approximately 53 hours), and (ii) responding to class counsel's onslaught of abusive discovery requests and *ad hominem* attacks against Haynes and his counsel, which included drafting multiple letters, participating in multiple conference calls with the Court, collecting and producing documents from our client, drafting and filing a sur-reply, and drafting and filing supplemental declarations (approximately 51 hours). I also prepared for and appeared at

the fairness hearing, including by analyzing plaintiffs' filings in support of settlement approval and their fee request (approximately 20 hours, excluding travel time during which I did not do substantive work). It is my understanding and belief that the $465/hour billing rate I am seeking for lodestar in this case is less than the billing rate for attorneys with comparable skill and experience in the Washington, DC, legal market. $465/hour is also below the hourly rates at which class counsel bills its junior partners and likely also below what defense counsel bills. *See* Dkt. 789-16 at 2.

12.     Theodore H. Frank graduated from the University of Chicago Law School in 1994 with high honors and as a member of the Order of the Coif and Law Review, and where he had an Olin Fellowship in Law & Economics and Public Service Scholarship. He clerked for the Honorable Frank H. Easterbrook of the Seventh Circuit. He worked in prominent "BigLaw" firms in Washington, DC, and Los Angeles, CA, for ten years, handling complex litigation for plaintiffs and defendants. Mr. Frank also served as the first head of the AEI Legal Center for the Public Interest, and has testified before federal and state legislative subcommittees about class actions, class action settlements, and *cy pres*. Mr. Frank founded CCAF in 2009, and has won national acclaim for its work from the *New York Times*, *Wall Street Journal*, *Forbes*, the *ABA Journal*, the *Boston Globe*, and several other legal publications. Mr. Frank has spoken about class action settlements across the country, including, *inter alia*, to the ABA Annual National Institute on Class Actions; to the Federalist Society National Lawyers Convention; to the DRI Corporate Counsel Roundtable; to numerous law firms and student groups at law schools; and even in television and radio appearances.

13.     The lodestar includes 27.6 hours that Mr. Frank billed to this case. Mr. Frank received $900/hour for his private practice, which he last billed in 2015, and the Center is requesting that same rate in this case. $900/hour is lower than the $925-$1000/hour billed by senior partners at class counsel's firm and likely lower than senior defense counsel. *See* Dkt. 789-16 at 2. In this case, Mr. Frank devised overall strategy for the objection and discovery responses, supervised the overall litigation effort, submitted a lengthy declaration to the Court with the

objection, and edited multiple filings. He also worked closely with the client performing due diligence and on structuring complete and accurate responses to class counsel's extensive discovery requests, and performed factual investigations in response to class counsel's spurious allegations and the extraordinary and burdensome requirements for detailed disclosure of objectors' counsel's litigation history that class counsel asked for and received in the preliminary approval order as a prerequisite to any objection.

14. Senior attorney Melissa Holyoak graduated Order of the Coif from the University of Utah S.J. Quinney College of Law in May 2003. In the fall of 2003, she began working as an associate in the Washington, DC, office of O'Melveny & Myers LLP. While at O'Melveny, she managed complex commercial and financial services litigation, argued before the Fifth Circuit Court of Appeals and other federal and state courts, deposed witnesses, and authored various motions and briefs in state and federal trial and appellate courts. From 2008 until the present, she has been engaged as a consultant by professional services firms relating to strategic planning, as well as financial services-related projects. In addition, from December 2010 through April 2012, she worked as a contract attorney for Gunster, Yoakley & Stewart, P.A., in West Palm Beach, FL, on complex financial services matters. She was engaged to analyze contracts, develop defenses, and draft responses relating to secondary mortgage market investor repurchase demands for large financial services clients involving origination, servicing, and fraud allegations. She also assisted in federal litigation involving allegations of fraudulent practices relating to foreclosure proceedings. Ms. Holyoak joined CCAF in July 2012. While at CCAF, she has authored numerous briefs filed in trial and appellate courts and argued before federal district and appellate courts, including the Seventh and Eighth Circuits.

15. The lodestar includes 31.5 hours that Ms. Holyoak billed to this case. Her work entailed analyzing the settlement and fee request and drafting portions of the objection addressing class counsel's excessive fee request, and she provided extensive assistance with strategy and client relations. It is my understanding and belief that the $525/hour billing rate she is seeking for lodestar in this case is less than the billing rate for attorneys with comparable skill and experience

in the Washington, DC, legal market. $525/hour is also below what class counsel bills for its attorneys of comparable skill and experience and likely also below what defense counsel bills. *See* Dkt. 789-16 at 2.

16. Adam Schulman is a 2010 graduate of Georgetown University Law Center who has worked for CCAF since 2011. Unlike many attorneys of his seniority, he has made first-chair court appearances in the U.S. Court of Appeals for the Third, Sixth, and Eleventh Circuits, as well as numerous such appearances in district court. *See, e.g.*, *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013). The lodestar includes 48 hours that Mr. Schulman billed to this case. He has worked on the matter since it first came to CCAF's attention, providing extensive analysis of the settlement and fee request, with the bulk of his hours attributable to his work researching and drafting portions of the objection addressing class counsel's excessive fee request. It is my understanding and belief that the lodestar rate of $375/hour that CCAF is requesting for Mr. Schulman's work is below rates charged by attorneys with similar skills and experience in the Washington, DC, legal market. This rate has been approved in past fee requests by CCAF. *See, e.g.*, *In re Citigroup Inc. Securities Litig.*, 1:07-cv-09901-SHS, 2017 WL 3842601 (S.D.N.Y. Sept. 1, 2017) (awarding full attorneys' fee request); *id.* Dkt. 411; *In re Transpacific Air Transportation Antitrust Litig.*, No. C 07-05634 CRB, 2015 WL 4776946 (N.D. Cal. Aug. 13, 2015) (awarding full request for attorneys' fees to CCAF).

17. CCAF's lodestar is:

| Name | Hours | Billing Rate | Lodestar Amount |
| --- | --- | --- | --- |
| Frank | 27.6 | $900 | $24,840 |
| Holyoak | 31.5 | $525 | $16,537.50 |
| St. John | 124.6 | $465 | $57,939 |
| Schulman | 48 | $375 | $18,000 |
| **Total** | 231.7 | — | **$117,316.50** |

18. In terms of counsel's efficiency, CCAF litigated this case extremely efficiently with

231.7 hours of attorney time in its lodestar. (As described below, this does not include any time billed after June 4, 2018, the date of the fairness hearing, any time spent on this motion requesting attorneys' fees, any time traveling to or from the fairness hearing that did not involve substantive work, or any of the many hours that Haynes personally devoted to the objection and burdensome discovery requests.). I believe this is a reasonable amount of time for this case, which involved drafting a 25-page objection, five declarations, four detailed letters regarding discovery to class counsel or the Court, and a sur-reply; successfully opposing an abusively overbroad subpoena; engaging in telephonic conferences with the Court; producing discovery; and appearing at the fairness hearing.

19.   Class counsel's scorched-earth discovery tactics, which they undertook initially in violation of the Court's discovery stay, materially increased the amount of time that Haynes's counsel had to devote to the litigation. On May 10, 2018, less than three hours after Haynes filed his objection, class counsel sent me a subpoena demanding that Haynes sit for a deposition and respond to 18 document requests. A true and correct copy of the subpoena I received by email from Pomerantz on May 10, 2018, is attached hereto as Exhibit 1. The document requests were boilerplate and abusively overbroad. For example, they demanded "all documents" from Haynes relating to privileged communications with his counsel, documents showing the amount of his income from *all sources* over an 8-year period, and "all documents relating to [his] decision to invest in Petrobras Securities during the Class Period." Another request asked for "All documents relating to any Objection or subsequent appeal filed in the last ten years by you … or by any person or entity who is or has been involved or associated with the representation of you in the Petrobras Litigation," which would have required production of tens of thousands of documents relating to over a hundred CEI and CCAF cases. In another case, a class counsel who persisted with a similar subpoena against CCAF as retaliation for a meritorious objection was sanctioned for $100,000. *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAF, 2012 WL 3854501 (W.D. Wash. June 15, 2012). Haynes's counsel responded with a detailed letter of objections and a request to discuss a mutually agreeable reciprocal discovery schedule and stipulation, and agreed to voluntarily

produce a redacted copy of the retainer agreement and a brokerage statement showing the Petrobras Securities purchased by Haynes had not been sold. I also participated in a lengthy conference call with the Court on May 15, 2018, during which I and other objectors successfully advocated against enforcement of the subpoenas. That same day, class counsel raised "concerns" about Haynes's class membership, based in large part on the purchase price of the shares, which class counsel apparently did not realize included the commission fees. In a good-faith effort to address the unfounded concerns, I responded by letter the following day, and Mr. Haynes undertook a diligent search to find additional, nearly decades-old documents to put any further concerns to rest. Not satisfied with this response, class counsel proceeded to bring the issue before the Court, submitting a letter in which they made a series of outrageously false accusations against both Haynes and his counsel. I responded with a letter correcting the record and attaching a 2010 Form 1099 & Details establishing beyond doubt that the Trust had purchased Petrobras Securities during the class period. Haynes also provided additional documentary proof attached to a supplemental declaration, in which he reiterated his good-faith motive for objecting, and I also filed a supplemental declaration in response. Class counsel nevertheless repeated and expanded upon the *ad hominem* attacks in their reply in support of their motions for settlement approval and attorneys' fees (Dkt. 824), and even went so far as to ask the Court to impose sanctions under Rule 11 against Haynes's counsel *sua sponte*.[1]

20. I viewed class counsel's abusive discovery requests and personal attacks as an attempt to undermine the credibility of Haynes's objection and to deter him and future objectors from bringing meritorious objections to protect the interests of the class. As a result, responses were required to correct the record, protect against the risk of sanctions, and to shore up the

---

[1] Underscoring the baselessness of their attacks, class counsel cited a quote by Frank regarding the "perverse incentives" of contingent-fee attorneys who stand to benefit most from securities litigation, even as a similar concern has been noted by this Court. *See* Jed S. Rakoff, *The Cure for Corporate Wrongdoing: Class Actions vs. Individual Prosecutions*, N.Y. Review of Books (Nov. 19, 2015).

credibility of Haynes's objection so as to benefit all class members.

21. The risk of nonpayment was high: because the Center does not and cannot voluntarily agree to *quid pro quo* settlements to withdraw appeals or objections in exchange for cash payment, the Center could only receive payment if there is a court award after the Center's objection was successful. While CCAF ultimately prevails or partially prevails in the majority of its objections, it is less than 25% of the time that there ends up being improved pecuniary benefit to the class, as opposed to good precedent that will benefit future class members in future class litigation and settlement. For example, in nearly all of the appeals the Center has won, we generated substantive published precedent that courts have used to benefit class members and shareholders in numerous other settlements, but the class members in those particular class settlements did not receive improved pecuniary benefit entitling the Center to attorneys' fees. And even when we win a material improvement in a settlement, the Center does not seek attorneys' fees unless our role in the improvement in unambiguous and quantifiable, lest we generate an opinion criticizing us for our fee request.

22. The Center is relying on the percentage-of-the-benefit approach to justify its fees, so it is not including detailed time entries in its submission, which may require substantial time-consuming redaction to avoid breaching attorney-client privilege and work-product protections. We maintained detailed time records of the work performed in this case and are willing to share those with the Court *in camera* if they are at issue. However, we believe the fee should be awarded on the basis of a percentage of the class benefit achieved.

23. Our lodestar does not include any time spent on this fee application or any time spent on the case after June 4, 2018, the date of the fairness hearing.

24. Our fee request does not request reimbursement of any expenses incurred in connection with this case.

25. Our fee request does not request any incentive payment for Haynes, despite that he and his wife devoted at least 30 hours supporting the objection, including by searching through boxes of documents and years of monthly electronic financial statements in an effort to perform a

reasonable search for documents responsive to class counsel's discovery requests.

26. Attached as Exhibit 2 is a true and correct excerpted copy of the 2016 Form 990 for the National Consumer Law Center Inc.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 11, 2018, in New Orleans, LA.

                                                            */s/ Anna St. John*  
                                                            Anna St. John