**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE PETROBRAS SECURITIES LITIGATION | ) ) ) ) ) | No. 14-cv-9662 (JSR) ECF Case |

## MEMORANDUM OF LAW
## IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR SANCTIONS
## AGAINST JOSHUA R. FURMAN

**POMERANTZ LLP**
Jeremy A. Lieberman
Marc I. Gross
Emma Gilmore
John A. Kehoe
Brenda Szydlo
600 Third Avenue
New York, New York 10016
Tel: (212) 661-1100

jalieberman@pomlaw.com
migross@pomlaw.com
egilmore@pomlaw.com
jkehoe@pomlaw.com
bszydlo@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti
468 North Camden Drive
Beverly Hills, CA 90210
Tel: (310) 285-5330
jpafiti@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 North LaSalle
Suite 3505
Chicago, IL 60603
Tel: (312) 377-1181

*Lead Plaintiff's Lead Counsel*

**TABLE OF CONTENTS**

BACKGROUND ..........................................................................................................1

    I.      FURMAN IS A "PROFESSIONAL OBJECTOR"..........................................3

    II.     RULE 11 SANCTIONS SHOULD BE IMPOSED..............................................6

    III.    SANCTIONS SHOULD BE IMPOSED UNDER 28 U.S.C. § 1927...................10

    IV.    SIZE OF SANCTIONS.....................................................................................12

CONCLUSION........................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agee v. Paramount Commc'ns, Inc.*,
  114 F.3d 395 (2d Cir. 1997)..................................................................................10

*Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*,
  No. 01-cv-10135, 2003 U.S. Dist. LEXIS 19086 (S.D.N.Y. Oct. 23, 2003)....................10, 11

*Arnett v. Bank of Am., N.A.*,
  No. 11-cv-1372, 2014 U.S. Dist. LEXIS 130903 (D. Or. Sept. 18, 2014) ................................8

*Ashmore v. CGI Grp., Inc.*,
  860 F.3d 80 (2d Cir. 2017).......................................................................................3

*Barnes v. FleetBoston Fin. Corp.*,
  No. 01-cv-10395, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) .............................................4

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015)..................................8

*Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc.*,
  28 F.3d 259 (2d Cir. 1994)........................................................................................6

*Chemiakin v. Yefimov*,
  932 F.2d 124 (2d Cir. 1991)......................................................................................4

*Dennis v. Kellogg Co.*,
  No. 09-cv-1786-L, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ...........................................4

*Dewey v. Volkswagen of Am.*,
  909 F. Supp. 2d 373 (D.N.J. 2012), *aff'd, Dewey v. Volkswagen
  Aktiengesellschaft*, 558 F. App'x 91 (3d Cir. 2014) ................................................4

*Eisemann v. Greene*,
  204 F.3d 393 (2d Cir. 2000)....................................................................................10

*Eisen v. Carlisle & Jacquelin*,
  479 F.2d 1005 (2d Cir. 1973), *vacated*, 417 U.S. 156 (1974) ..................................................2

*Garber v. Office of Commissioner of Baseball*,
  No. 12-cv-03704 (VEC), 2017 WL 752183 (S.D.N.Y. Feb 27, 2017).....................................6

*Greene v. United States*,
  13 F.3d 577 (2d Cir. 1994).........................................................................................9

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
   293 F.R.D. 459 (S.D.N.Y. 2013) ............................................................................7

*In re Broadcom Corp. Sec. Litig.,*
   No. 01-cv-275, 2005 U.S. Dist. LEXIS 45656 (C.D. Cal. Dec. 5, 2005) ...............11

*In re Initial Pub. Offering Sec. Litig.,*
   721 F. Supp. 2d 210 (S.D.N.Y. 2010) ..................................................................4, 6

*In re Ivan F. Boesky Sec. Litig.,*
   948 F.2d 1358 (2d Cir. 1991) ................................................................................7

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
   187 F.R.D. 124 (S.D.N.Y. 1999) ..........................................................................7

*In re Online DVD-Rental Antitrust Litig.,*
   779 F.3d 934 (9th Cir. 2015) ................................................................................5

*In re Pharms. Indus. Average Wholesale Price Litig.,*
   520 F. Supp. 2d 274 (D. Mass. 2007) ...................................................................9

*In re Polyurethane Foam Antitrust Litig.,*
   No. 17-3361, 2017 U.S. App. LEXIS 25352 .......................................................11

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
   278 F.3d 175 (3d Cir. 2002) ...............................................................................11

*In re Royal Ahold N.V. Sec. & ERISA Litig.,*
   461 F. Supp. 2d 383 (D. Md. 2006) ......................................................................6

*In re UnitedHealth Grp. Inc. PSLRA Litig.,*
   643 F. Supp. 2d 1107 (D. Minn. 2009) .................................................................5

*In re Wal-Mart Wage & Hour Emp't Practices Litig.,*
   MDL No. 1735, 2010 WL 786513 (D. Nev. Mar. 8, 2010) ....................................5

*Kropelnicki v. Siegel,*
   290 F.3d 118 (2d Cir. 2002) ................................................................................6

*Oliveri v. Thompson,*
   803 F.2d 1265 (2d Cir. 1986) .............................................................................10

*Reichman v. Neumann,*
   553 F. Supp. 2d 307 (S.D.N.Y. 2008) .................................................................11

*Rodriguez v. Disner,*
   688 F.3d 645 (9th Cir. 2012) ................................................................................5

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................7

*Rosales v. El Rancho Farms*,
    No. 09-cv-00707, 2014 U.S. Dist. LEXIS 165711 (E.D. Cal. Nov. 26, 2014)..........................8

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ......................................................................7

*Tex. v. Organon USA Inc. (In re Remeron End-Payor Antitrust Litig.)*,
    No. 04-cv-5126, 2005 U.S. Dist. LEXIS 27011 (D.N.J. Sept. 13, 2005) ................................8

*TFT-LCD (Flat Panel) Antitrust Litig.* No. M 07-1827, 2013 U.S. Dist. LEXIS
    9904 (N.D. Cal. Jan. 23, 2013) ......................................................................5

*Vacco ex rel. People of State of N.Y. v. Operation Rescue Nat'l*,
    80 F.3d 64 (2d Cir. 1996) ......................................................................10

*Val-Land Farms, Inc. v. Third National Bank in Knoxville*,
    937 F.2d 1110 (6th Cir. 1991) ......................................................................4

*Vollmer v. Selden*,
    350 F.3d 656 (7th Cir. 2003) ......................................................................7

**Statutes**

28 U.S.C. § 1291 ......................................................................3

28 U.S.C. § 1927 ......................................................................10, 11, 12

**Rules**

Fed. R. Civ. P. 11 ...................................................................... *passim*

Lead Plaintiff Universities Superannuation Scheme Limited respectfully requests that the Court impose sanctions on Joshua R. Furman ("Furman") - objector Spencer R. Bueno's ("Bueno") counsel of record - for filing frivolous and vexatious objections to the hard-fought $3 billion settlement of this lawsuit, and for unabashedly continuing to advance his extortionist agenda in the Court of Appeals. Indeed, Furman is an active member of a cabal of "professional" objectors whose sole goal is to hold up class action settlements in order to earn themselves a nominal fee. As the Committee on Rules of Practice and Procedure noted in connection with the recently proposed amendments to Rule 23 of the Federal Rules of Civil Procedure, "some objectors may be seeking only personal gain, and using objections to obtain benefits for themselves rather than assisting in the settlement-review process. At least in some instances, it seems that objectors—or their counsel—have sought to extract tribute to withdraw their objections or dismiss appeals from judgments approving class settlements."

Lead Plaintiff requests that the following sanctions be awarded:

1. $23,000, representing the estimated time spent by Class Counsel to Furman's Objection;

2. $20,000 per month attributable to the costs for delaying distribution of Settlement to Settlement Class Members as a result of any appeal lodged by Furman to the Settlement;

3. Reasonable attorneys' fees and expenses for work performed by Class Counsel responding to Furman's appeal.

## BACKGROUND

On May 11, 2018, Furman filed an Objection to the settlement, plan of allocation, and fee request on behalf of Bueno. ECF No. 803. This was the last day for filing objections. Significantly, Furman did not bother to appear at the Settlement Hearing to defend the filing, despite Bueno's declaration prepared "under penalty of perjury," stating that "I intend to appear

by my attorney, Joshua R. Furman, at the hearing for final approval of class action settlement."

(ECF No. 803-1 ¶ 8).

In its Opinion and Order dated June 25, 2018 approving the settlement, the Court addressed Furman's "kitchen sink" objections to "over a dozen aspects" of the proposed settlement, finding they were without merit. Op. at 24. ECF No. 834.

- **Class Notice** – Furman asserted that "the Notice was deficient because, *inter alia*, the Plan of Allocation was not provided on the notice website and Class Plaintiffs have concealed the damages estimate provided by their expert." Furman failed to perform a good faith inquiry. Had he done so, he would have seen the Plan was posted on the website. http://www.petrobrassecuritieslitigation.com. The percentage of damages based on the expert's analysis was likewise disclosed. Not surprising, the Court gave short shrift. "These arguments are without factual basis." Op. at 23 at n.15.

- **Settlement Amount** – Furman asserted that "Class Plaintiffs overstate the risks of proceeding to trial, and that certain market analysts had expected settlement figures of between $5 billion and $10 billion." Soundly disagreeing, the Court noted that "[Furman's client] does not weigh the other Grinnell factors, or consider the fact that the settlement amount represents a 65% premium over the settlements reached by institutional plaintiffs in the previously-settled individual actions." Op. at 24.

- **Plan of Allocation** – Furman mischaracterized the Plan of Allocation as an "improper claimant fund-sharing scheme," that is "inappropriate to the extent that silent class members receive nothing and class members who submit claims do not receive anything approaching their actual damages." Op. at 24-25. As noted above, Furman provided no reasonable basis for his speculation regarding the amount recoverable from defendants. Moreover, allocation of the recovery among different categories of claimants is the means by which common fund settlements are always distributed. Furman's objection would equally apply to *all* securities and antitrust class action settlements. As the Court observed, "the only relevant authority cited by [Furman's client] for this proposition is entirely inapposite. *See Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005, 1018 (2d Cir. 1973), *vacated*, 417 U.S. 156 (1974) (finding "'fluid recovery' an 'illegal' solution to manageability problems)." Op. at 25.

- **Compensatory Awards** – Furman insisted that the Court could not "calculate the reasonableness of the [compensatory] amount as plaintiffs have not provided a break-down." Op. at 26. As the Court astutely observed, Furman had clearly failed to read Lead Plaintiff's submissions: "[E]ach Representative has provided sworn statements detailing the work performed, the people who performed it, and the time expended. The Representatives also calculated estimated hourly rates." Op. at 26-27. The Court further expressly found that "the work performed by named plaintiffs [as itemized in the submissions] was beneficial to the class and included reviewing drafts of the complaints, responding to defendants' interrogatories and document requests,

producing responsive documents, providing oversight of the mediation and settlement process, authorizing the settlements, and reviewing drafts of the settlements before they were filed with the Court." *Id.*

- **Cy Pres Distribution** – Furman objected to the *cy pres* designation in the proposed settlement. ECF No. 580 at 4. The Court did not rule on this issue, recognizing that the open question of who should receive any *cy pres* award is not "ripe for consideration." Final Approval Order at 23. Indeed, there may never be any *cy pres* distribution at all in this case—as the Court also acknowledged. *Id.* (deferring ruling until "further briefing on this issue, as appropriate, if and when the question becomes ripe"). The Court also retained jurisdiction on the *cy pres* determination. *Id.* Put simply, it is frivolous for Furman to appeal something that has not yet been decided, that need not be decided at this time, and on which the Court explicitly reserved judgment. "With only a limited number of exceptions, orders that allow the litigation to continue are not final for purposes of [28 U.S.C.] § 1291 and therefore are not immediately appealable." *Ashmore v. CGI Grp., Inc.*, 860 F.3d 80, 84 (2d Cir. 2017) (internal quotations omitted). Indeed, the only purpose of appealing the Settlement based upon the *cy pres* issue appears to be to hold up the distribution of the Settlement proceeds to class members until Furman can extract his tribute in exchange for dismissal. The Court recognized as much during a conference call held with the parties and Mr. Furman on August 1, 2018, where in response to the *cy pres* argument Furman contemplated making on appeal, the Court noted that the contention seemed "frivolous."

Although Furman appealed the entire Final Approval Order (*see* ECF No. 850, Notice of Appeal), he subsequently dismissed his appeal with respect to all but one of his objections—essentially ***conceding that the others were entirely meritless*** (*see* ECF No. 853, Notice of Partial Withdrawal of Objections). Furman retained only his unmeritorious objections as to *cy pres*. *Id.* at 2. Furman dropped the lion's share of his objection in response to Plaintiff's proposed Rule 11 motion, which was sent to Furman on July 17, 2018. Exhibit A, Declaration of Jeremy A. Lieberman dated August 10, 2018 ("Lieberman Decl.").

## I.     FURMAN IS A "PROFESSIONAL OBJECTOR"

As the Court observed at the June 4, 2018 hearing, the primary objective of certain objectors is not how best to benefit the class, but how to line their own pockets:

The third group of objectors, the ones to whom you were really referring to, the so-called professional objectors, are people who are seeking to extort monies on their own private behalf, not because they expect that their objections will receive any

3

weight at the district court level but because they can delay the entire process, can delay the doing of justice, can delay the payment to victims of monies that in some cases they sorely need and that, in any event, they're entitled to for months or even years on end.

Tr. at 55-56. Ex. B, Lieberman Decl.  The Court made clear that it reserved ongoing jurisdiction over such objectors:[1]

> I have expressly retained jurisdiction in this case over the objectors even after I issue my final rulings on the matters before me today if I am convinced that some discovery is needed because of extortionate motivations on the part of any of those objectors.

Op. 56.[2]  Furman's past conduct, mirrored in this case, demonstrates that he clearly falls within the "third category," *i.e.*, the extortionists.  In *Google Buzz Privacy Litigation,*[3] Furman objected to a settlement on behalf of Jon Zimmerman (an attorney who also happens to represent objectors). ███████████████████████ in connection with dropping the appeal, yielding no benefit to the class. Ex. C, Lieberman Decl.  Furman and Zimmerman collaborated in another matter,

---

[1] A district court maintains jurisdiction to entertain a motion for sanctions even after the filing of a notice of appeal.  *See Val-Land Farms, Inc. v. Third National Bank in Knoxville*, 937 F.2d 1110, 1117 (6th Cir. 1991); *cf. Chemiakin v. Yefimov*, 932 F.2d 124, 127 (2d Cir. 1991).

[2] See also *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) ("I concur with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients."); *Dennis v. Kellogg Co.*, No. 09-cv-1786-L (WMc), 2013 WL 6055326, at *4 n.2 (S.D. Cal. Nov. 14, 2013) ("[W]hen assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first.") (quoting *In re Law Office of Jonathan E. Fortman, LLC*, No. 13-mc-00042 AGF, 2013 WL 414476, at *5 (E.D. Mo. Feb. 1, 2013)); *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 396 n.24 (D.N.J. 2012) ("[C]ertain objectors are represented by attorneys who are in the profession of objecting to class action settlements, whether motivated by views of the law, ideology, or otherwise."), *aff'd, Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 91 (3d Cir. 2014); *see similarly Barnes v. FleetBoston Fin. Corp.*, No. 01-cv-10395, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006).

[3] No. 11-16642 (9th Cir. July 7, 2011).

representing an objector in *Pappas v. Naked Juice Co. of Glendora,*[4] ███████████
███████████████████████████ again providing no class-wide benefit.  Furman

has submitted similar meritless objections in other class actions.  *See, e.g., In re Online DVD-*

*Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) (affirming district court's order overruling all

of Furman's various objections); *Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012) (finding

that objectors, represented by Furman, "did not confer any material benefit on the class though

[sic] their appeals").

      Furman also has worked with other professional objectors' counsel, including the more

notorious Edward Cochran, who has been described by courts as a "remora[]" who "contributed

nothing" of value with his "laughable" objections and whose only "goal was, and is, to hijack as

many dollars for [himself] as [h]e can wrest from a negotiated settlement."[5]  Furman represented

Edward Cochran's daughter, Barbara Cochran, in *TFT-LCD (Flat Panel) Antitrust Litigation.*[6]

Cochran's fingerprints are evident in this case as well. John Pentz initially proposed filing

objections for Cochran's wife Anne, but backed off after Lead Counsel sent him advance copies

of subpoenas. Ex. D, Lieberman Decl.  Judge Shira A. Scheindlin described Pentz as a "serial

objector" engaged in "bad faith and vexatious conduct," when requiring that he post an appeal

---

[4] No. 14-55023 (9th Cir. Jan. 7, 2014).

[5] *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1108-09 (D. Minn. 2009)
(finding that Cochran's clients' objections "contributed nothing . . . in a pleading which may
charitably be described as disingenuous," denying his "outlandish fee request[]," and noting that
the objections were motivated by an attempt to "hijack as many dollars . . . as they can wrest from
a negotiated settlement"); *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, MDL No. 1735,
2010 WL 786513, at *1-*2 (D. Nev. Mar. 8, 2010) (finding objection was "without merit" and
would "most certainly be rejected by the Ninth Circuit," noting that Cochran and other attorneys
representing objectors have a "documented history of filing notices of appeal . . . and thereafter
dismissing said appeals when [he] and [his] clients were compensated by the settling class or
counsel for the settling class," and ordering Cochran's client to pay an appeal bond of $500,000).

[6] No. M 07-1827, 2013 U.S. Dist. LEXIS 9904, at *36 (N.D. Cal. Jan. 23, 2013).

bond in *In re Initial Public Offering Securities Litigation.*[7]

Given this pattern of prior misconduct and association with other serial objectors, sanctions are clearly warranted to protect not only this class, but those in future cases where Furman and his ilk might try their luck again.

## II.  RULE 11 SANCTIONS SHOULD BE IMPOSED

A pleading, motion, or other paper such as objections violates Rule 11 either when it "has been interposed for any improper purpose, or where after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002).  The Rule is aimed at "deter[ring] baseless filings and the curbing of abuses."  *Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994).  As observed in *Garber v. Office of Commissioner of Baseball*,[8] Rule 11 mandates sanctions for any paper presented to the Court "for any improper purpose," such as "to extract fees from class counsel in exchange for the withdrawal of a meritless objection to the proposed class settlement."

Furman's "kitchen sink" objections in this case, as in many other cases, clearly meet this proscription and warrant judicial intervention.  His sole goal is to extort payment and line his own pockets, without benefitting his client, much less the class.  This is clearly an improper purpose:

> In the context of intervening in a class action settlement, extortion would mean intervening not to increase the value of the settlement, but in order to get paid to go away. [T]his would be an improper purpose for intervening.

---

[7] 721 F. Supp. 2d 210, 212, 215 (S.D.N.Y. 2010).  Pentz has elsewhere been recognized as a "professional and generally unsuccessful objector."  *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 386 (D. Md. 2006).

[8] No. 12-cv-03704 (VEC), 2017 WL 752183, at *4 (S.D.N.Y. Feb 27, 2017).

*Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003).  Courts have endorsed the imposition of sanctions on parties who pursue meritless claims delaying the administration of settlements.  *See In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991) ("The result has been that Objectors, constituting about two percent of their own class and an infinitesimal [sic] fraction of the classes as a whole, and pursuing weak claims, have injured all classes by this appeal.  Counsel contemplating similar actions in the future should be aware of Rule 11."); *In re NASDAQ Mkt.- Makers Antitrust Litig.*, 187 F.R.D. 124, 131 (S.D.N.Y. 1999) (imposing Rule 11 sanctions on objector whose personal agenda delayed administration of settlement to the detriment of class).

Here, anticipating the filing of this motion for sanctions, Furman dropped the majority of his frivolous objections but has not entirely capitulated his extortionist quest.  Furman seeks to hold the Settlement hostage on an issue that is not even ripe for adjudication: the designation of a *cy pres* beneficiary.  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 461-64, 466 (S.D.N.Y. 2013) (overruling objection that the plan of allocation was deficient for failing to specify the *cy pres* beneficiary because "there was no legal authority to support the argument; no Court in the Circuit has ever made identifying the organization to receive the residual funds a condition precedent to a Settlement approval.  'Of course,' as the Court in *Masters v. Wilhelmina Model Agency, Inc.* noted, 'it [is] not certain at the time [of] the Agreement . . . whether there [will] be [e]xcess [f]unds after all distributions are made pursuant to the Plan of Allocation.")); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (*cy pres* "becomes ripe only if the entire settlement fund is not distributed to class members . . . That trigger point has not been reached; no *cy pres* disbursement is imminent; and the fund in this case may well be depleted before *cy pres* kicks in.  We therefore decline to consider the propriety of *cy pres* at this time."); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1313 (9th Cir. 1990) ("it is possible that virtually

7

all of the funds will be distributed to those entitled to them. Throughout this litigation, plaintiffs said that was a reasonable possibility.  If so, the *cy pres* issue may become moot."); *Rosales v. El Rancho Farms*, No. 09-cv-00707, 2014 U.S. Dist. LEXIS 165711, at *15-*16 (E.D. Cal. Nov. 26, 2014) ("At this time, there is no way to know whether there will be funds remaining and, therefore, the Court declines to make the selection at this time."); *Arnett v. Bank of Am., N.A.*, No. 11-cv-1372, 2014 U.S. Dist. LEXIS 130903, at *25 (D. Or. Sept. 18, 2014) ("First, objections to any *cy pres* award are premature, because the entire Settlement Fund is to be distributed to the Settlement Class and only if there are checks returned as non-deliverable or checks that are otherwise not negotiated totaling less than $750,000, will the *cy pres* award be triggered.  This objection, therefore, is not ripe."); *see similarly Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 331 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015); *Tex. v. Organon USA Inc. (In re Remeron End-Payor Antitrust Litig.)*, No. 04-cv-5126, 2005 U.S. Dist. LEXIS 27011, at *59-*60 (D.N.J. Sept. 13, 2005).  In his brief opposing the settlement, Furman provided no case law whatsoever supporting his frivolous argument—he couldn't.  (ECF No. 803 at 4.)  Here, at this stage of the settlement, disbursement from the settlement fund is not imminent and the amount potentially remaining in the settlement fund, if any, is unknown.  Indeed, as a result of Furman's appeal, the Class cannot recover one penny despite suffering literally billions of dollars in losses.  Moreover, if there are ultimately *cy pres* monies available for distribution, Furman could have simply waited to object or appeal after the distribution of settlement funds, when Class Plaintiffs would be required to file a motion to distribute remaining proceeds to a *cy pres* recipient.

As explained above, the Court recognized the frivolous nature of Furman's *cy pres* argument during a conference call held with the parties and Mr. Furman on August 1, 2018.  At

that time, Furman doubled down on his position by claiming in a newly-minted argument[9] that an appeal in the Supreme Court, *In re Google Referrer Header Privacy Litigation*,[10] warrants rejection of the Settlement.   But *Google* is one of the rare cases involving ***"cy-pres-only" settlements*** where, unlike here, no class members receive any compensation and the sole recipients of net settlement funds are third-party recipients.   In their cert petition, the objectors argued that *cy-pres*-only settlements are categorically inadequate for Rule 23 purposes because they entail the release of class members' claims in exchange for no direct benefit to class members, while class counsel secure an attorney fee award.[11]   Accordingly, it cannot be clearer that *Google* has nothing whatsoever to do with the core issue *in this case*: whether designation of a *cy pres* beneficiary is ripe when a *cy pres* beneficiary may never need to be appointed.   Indeed, the Competitive Enterprise Institute ("CEI"), who claims to be a pioneer of protecting consumers and shareholders from abusive practices of *cy pres* and has objected to the class action *cy press* settlement in Google, is not pursing an appeal here, further underscoring the frivolous nature of Furman's position.   As the court is well-aware, CEI was one of the six objectors to the Settlement in the District Court and is represented by the same counsel in *Google* (Theodore Frank, Melissa Holyoak, and Anna St. John).   Rule 11 "require[s] Furman to 'stop-and-think' before initially making legal or factual

---

[9] In his brief opposing the Settlement, Furman never developed his boilerplate, bare-bones argument devoid of any caselaw—which did not even appear in the "Legal Argument" section of his brief (Dkt. 803 at 4)—thus waiving the *cy pres* objection. An appeal premised on waived issues lacks merit and may be subject to an appellate bond on that basis. *See Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal."); *In re Pharms. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274 (D. Mass. 2007) (imposing a $61,000 appeal bond and stating that the appeal was frivolous because the objections were not preserved for appeal).

[10] *Sub nom Frank v. Gaos*, No. 17-961 (U.S. 2017).

[11] Brief for Petitioners the Competitive Enterprise Institute, No. 17-961 (U.S. 2017).

contentions." *See* Notes of Advisory Committee on Rules – 1933 Amendment. Furman either repeatedly failed to "stop-and-think" or his "thinking" is entirely motivated by the perverse ambition to line his own pockets to the detriment of the Class. Either alternative is sanctionable.

## III.    SANCTIONS SHOULD BE IMPOSED UNDER 28 U.S.C. § 1927

The imposition of sanctions on Furman is also supported by 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.[12]

The statute's purpose is to "deter unnecessary delays in litigation." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). "Section 1927 authorizes the imposition of sanctions when there is a clear showing of bad faith on the part of the attorney." *Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*, No. 01-cv-10135, 2003 U.S. Dist. LEXIS 19086, at *29 (S.D.N.Y. Oct. 23, 2003) (internal quotation marks and citation omitted). Bad faith "can be inferred when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Vacco ex rel. People of State of N.Y. v. Operation Rescue Nat'l*, 80 F.3d 64, 72 (2d Cir. 1996); *see also Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (a suit is brought in "bad faith" if it is "motivated by improper purposes such as harassment or delay.")

---

[12] Similarly, the Court may also impose sanctions pursuant to its "'inherent power' to award attorneys' fees against the offending party and his attorney when it determines a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985). Section 1927 applies only to attorneys, while the court's inherent power permits courts to sanction "an attorney, a party, or both." *Oliveri*, 803 F.2d at 1273.

Under the statute, "[b]ad faith conduct may include pursuing frivolous contentions, frivolous motions, or intentionally dilatory conduct." *Arclightz*, 2003 U.S. Dist. LEXIS 19086, at *31 (internal quotations omitted). "Rarely will an offending party announce his bad faith," thus it must typically be inferred. *Reichman v. Neumann*, 553 F. Supp. 2d 307, 321 (S.D.N.Y. 2008). An attorney sanctioned under § 1927 may be required to pay the "excess costs, expenses, and attorneys' fees reasonably incurred" by the opposing party.  28 U.S.C. § 1927.

Courts have imposed Section 1927 sanctions on professional objectors whose purpose is to extort payments to the detriment of the Class, and this Court should do the same here. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 193 (3d Cir. 2002) (affirming § 1927 sanctions imposed on professional objectors); *In re Broadcom Corp. Sec. Litig.*, No. 01-cv-275, 2005 U.S. Dist. LEXIS 45656, at *16 (C.D. Cal. Dec. 5, 2005) (imposing § 1927 sanctions on professional objector who interposed objections for the purpose of delaying the administration of the settlement); *In re Polyurethane Foam Antitrust Litig.*, No. 17-3361, 2017 U.S. App. LEXIS 25352, at *3 (6th Cir. Dec. 14, 2017) (awarding sanctions under § 1927, equal to the interest that had been lost to the class, for preventing the disbursement of settlement monies through repetitive, frivolous challenges to appeal bond).  Furman'objections—both original and revised—are made for the sole purpose of delaying the administration of the Settlement and coercing a payment he is not entitled to receive.  Even if his objections were not legally and factually infirm, sanctions would still be appropriate.  His conduct is precisely what Section 1927 is intended to deter.

The vexatious nature of Furman's objection and appeal is apparent from: 1) his filing of an objection and appeal on the basis of at least five critiques of the Settlement, and upon being served with a Rule 11 Motion abandoning all but one issue; 2) his prior conduct as a professional objector

11

working in concert with other professional objectors; 3) his willingness to hold up a historic $3 billion Settlement without even showing the Court or the Class the courtesy to appear in person to defend his Objection; 4) his insistence on holding up the distribution of a $3 billion Settlement to hundreds of thousands of defrauded investors based on a contrived *cy pres* argument when there may not even be any residual monies available for *cy pres* distribution; and when he could easily raise an objection or appeal at the time when and if Class Plaintiffs seek to designate a *cy pres* recipient.

Furman's insistence on holding up an excellent recovery for investors on an issue that may never be ripe, coupled with his history of lodging appeals only to dismiss them for his own monetary gain without providing any benefit to class members, smacks of the vexatiousness that Section 1927 is meant to deter. Accordingly, sanctions against Furman are eminently appropriate.

## IV.      SIZE OF SANCTIONS

In this case, attorneys at Pomerantz incurred 206 hours preparing briefs responding to all six objections in this case. *See* Lieberman Decl. ¶ 2. It is conservatively estimated that at least 15% of this time, or approximately $23,000, was directed at Furman's ill-conceived objection. *Id.*

Moreover, Lead Plaintiff requests that Furman be sanctioned $20,000 for every month that distribution of the Net Settlement Fund is delayed due to his appeal of the Settlement. This is the amount that the Claims Administrator, Garden City Group, estimates at minimum would be the additional cost per month. *See* Lieberman Decl. ¶ 9 and Ex. D ¶ 5.

In addition, Lead Plaintiff requests an award of all reasonable costs and attorneys' fees incurred by Lead Counsel in responding to any appeal. Lead Counsel anticipates that it will spend approximately $1 million litigating Furman's appeal. *See* Lieberman Decl. ¶ 8.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court impose sanctions as set forth above on Furman for the frivolous and improperly motivated serial objections filed in this case, both to compensate for the time spent defending against the objections, and to deter any further misconduct designed to interfere with the benefits achieved for the Class.

Dated: August 10, 2018                    Respectfully submitted,

                                          **POMERANTZ LLP**


                                          Jeremy A. Lieberman
                                          Marc I. Gross
                                          Emma Gilmore
                                          John A. Kehoe
                                          Brenda Szydlo
                                          600 Third Avenue, 20th Floor
                                          New York, NY 10016
                                          Telephone: 212-6612-1100

                                          Patrick V. Dahlstrom
                                          **POMERANTZ LLP**
                                          10 North LaSalle
                                          Suite 3505
                                          Chicago, IL 60603
                                          Telephone: 312-377-1181

                                          Jennifer Pafiti
                                          **POMERANTZ LLP**
                                          468 North Camden Drive
                                          Beverly Hills, CA 90210
                                          Telephone: 310-285-5330

                                          Lead Counsel for Lead Plaintiff Universities
                                          Superannuation Scheme Limited

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2018, I caused a true and correct copy of the foregoing

to be served on counsel of record by electronically filing it with the Clerk of the Court using the

ECF system, which will send notification of such filing to the registered participants; and I caused

a true and correct copy of the foregoing to be served upon the following objectors by first class

mail:

Richard Gielata
Emelina Gielata
100 Westbury Drive
Coraopolis, PA 15108

And upon the following objectors by first class mail and e-mail:

Joseph Gielata
7811 Eads Avenue #207
La Jolla, CA 92037
gielata@gmail.com

Mathis B. Bishop
Catherine O. Bishop
204 East Oakview Place
San Antonio, Texas 78209
mbishop170@gmail.com

/s/ Jeremy A. Lieberman
Jeremy A. Lieberman