# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE PETROBRAS SECURITIES LITIGATION | Case No. 14-cv-9662 (JSR) **CLASS ACTION** |

# LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN APPEAL BOND

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................2

BACKGROUND ...................................................................................................................3

ARGUMENT ........................................................................................................................4

I.    THE COURT HAS AUTHORITY TO REQUIRE OBJECTORS TO FILE AN
      APPEAL BOND ...........................................................................................................4

      A.    Legal Standards..................................................................................................4

      B.    Application of Relevant Factors Supports an Appeal Bond Here ...........................5

            1.    The Gielatas Must Post a Bond Before Continuing Their Meritless
                  Appeal ......................................................................................................5

                  (a)    The Gielatas' Financial Ability Weighs in Favor of
                         Requiring Them to Post a Bond as Security ....................................5

                  (b)    The Risk that the Gielatas Would Not Pay Is High .........................6

                  (c)    The Court Has Already Rejected the Gielatas' Arguments.............8

                  (d)    The Appeal Is Vexatious and Was Filed in Bad Faith..................10

            2.    Bueno (Represented by Serial Objector Furman) Must Post a Bond
                  Before Continuing His Meritless Appeal...................................................12

                  (a)    Bueno's and Furman's Financial Abilities Weigh in Favor
                         of Requiring Them to Post a Bond as Security.............................13

                  (b)    The Risk that Bueno and Furman Would Not Pay Is High............13

                  (c)    The Court Has Already Rejected Bueno's and Furman's
                         Arguments.................................................................................13

                  (d)    The Appeal Is Vexatious and Was Filed in Bad Faith..................17

      C.    Costs Covered by the Appeal Bond ....................................................................18

            1.    The Court Should Require at Least a $50,000 Bond for the Taxable
                  Costs of the Appeal..................................................................................18

            2.    The Court Should Require a $1,980,000 Bond for the Incremental
                  Expenses of Administering the Settlement During the Appeal .................19

3.  The Court May Also Increase the Size of the Appeal Bond to Cover Likely Attorneys' Fees Objectors Would Pay for Frivolous Appeals ................................................................................................................22

4.  The Appeal Bond Should Include the Cost of Interest to Class Members from Withholding Their Settlement Proceeds During the Appeal ................................................................................................................24

CONCLUSION....................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adsani v. Miller,*
139 F.3d 67 (2d Cir. 1998)...................................................................................... *passim*

*Allapattah Services, Inc. v. Exxon Corp.*, No. 91-986,
2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) ..............................................................24

*Arnett v. Bank of Am., N.A.*, No. 11-cv-1372,
2014 U.S. Dist. LEXIS 130903 (D. Or. Sept. 18, 2014).........................................15

*Ashmore v. CGI Grp., Inc.,*
860 F.3d 80 (2d Cir. 2017).......................................................................................16

*Baker v. Urban Outfitters, Inc.*, No. 01-5440,
2006 WL 3635392 (S.D.N.Y. Dec. 12, 2006) .............................................6, 13, 19

*Barnes v. FleetBoston Fin. Corp.*, No. 01-10395,
2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006).......................................25

*Berry v. Deutsche Bank Trust Co. Am.*,
632 F. Supp. 2d 300 (S.D.N.Y. 2009) .....................................................................19

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015),
*aff'd*, 809 F.3d 78 (1st Cir. 2015) ...........................................................................15

*Chizmar v. ACCO Brands Corp.*, No. 14-2181,
2015 WL 4388326 (S.D.N.Y. July 17, 2015) ......................................................2, 4

*Conroy v. 3M Corp.*, No. 00-2810,
2006 U.S. Dist. LEXIS 96169 (N.D. Cal. Aug. 10, 2006)......................................25

*Frankel v. Cole,*
490 F. App'x 407 (2d Cir. 2013) .............................................................................11

*Gamelas v. Dannon Co., Inc.,*
2010 WL 3703811 (N.D. Oh. 2010)........................................................................23

*Google Buzz Privacy Litigation*, No. 11-16642,
(9th Cir. Nov. 18, 2011)...........................................................................................17

*Heekin v. Anthem, Inc.*,
  2013 WL 752637 (S.D. Ind. Feb. 27, 2013) ........................................................................2, 21

*In re 60 E. 80th St. Equities, Inc.*,
  218 F.3d 109 (2d Cir. 2000)..................................................................................................23

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  293 F.R.D. 459 (S.D.N.Y. 2013) ..........................................................................................14

*In re AOL Time Warner, Inc., Sec. & ERISA Litig.*, No. 02-5575,
  2007 WL 2741033 (S.D.N.Y. Sept. 20, 2007) ...................................................................6, 13

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
  772 F.3d 125 (2d Cir. 2014)..............................................................................................10, 11

*In re Bayer Corp. Combination Aspirin Prods. Marketing & Sales Practices Litig.*,
  No. 09-md-2023 (BMC), 2013 WL 4735641 (E.D.N.Y. Sept. 3, 2013) .............................5, 23

*In re Broadcom Corp. Sec. Litig.*, No. 01-275,
  2005 WL 8152912, 2005 U.S. Dist. LEXIS 45656 (C.D. Cal. Dec. 5, 2005) ...................21, 23

*In re Cardizem CD Antitrust Litig.*,
  391 F.3d 812 (6th Cir. 2004) .................................................................................................21

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2017 U.S. App. (9th Cir. Mar. 2, 2017) .................................................................................11

*In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476,
  2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016).........................................................................20

*In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476,
  2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016 .........................................................................23

*In re Currency Conversion Fee Antitrust Litig.*, No. 01-md-1409,
  2010 WL 1253741 (S.D.N.Y. Mar. 5, 2010) ................................................................5, 12, 19

*In re Gen. Elec.*,
  998 F. Supp. 2d at 153 ...........................................................................................................20

*In re Gen. Elec. Co. Sec. Litig.*,
  998 F. Supp. 2d 145 (S.D.N.Y. 2014)............................................................................ *passim*

*In re Gill*,
  770 N.Y.S.2d 71 (1st Dep't 2004)...........................................................................................8

*In re Initial Public Offering*,
  728 F. Supp. 3d at 293 .............................................................................................................5

*In re Initial Public Offering Sec. Litig.*,
  728 F. Supp. 2d 289 (S.D.N.Y. 2010)..............................................................................*passim*

*In re Merck & Co., Inc.*, No. 05-1151,
  2016 WL 4820620 (D.N.J. Sept. 14, 2016) ...........................................................................21

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 124 (S.D.N.Y. 1999) .........................................................................................5, 20

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ...................................................................................................17

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  520 F. Supp. 2d 274 (D. Mass. 2007)..................................................................................2, 15

*In re Uponor, Inc.*,
  2012 WL 3984542 (D. Minn. Sept. 11, 2012).........................................................................21

*In re Wal-mart Wage & Hour Emp. Practices Litig.*,
  2010 WL 786513 (D. Nev. Mar. 8, 2010) ...................................................................2, 21, 25

*J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*,
  936 F.2d 1474 (6th Cir. 1991) .................................................................................................15

*Justinian Capital SPC v. WestLB AG*,
  28 N.Y.3d 160 (N.Y. 2016) ......................................................................................................12

*Matter of Griffiths*,
  867 N.Y.S. 2d 713 (N.Y. App. Div. 3rd Dep. 2008) .................................................................8

*Morrison v. National Australia Bank*,
  561 U.S. 247 (2010)..............................................................................................................9, 19

*Pappas v. Naked Juice Co. of Glendora*, No. 14-55023,
  Doc. No. 12 (9th Cir. Apr. 21, 2014)........................................................................................17

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012) ....................................................................................................17

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ....................................................................................................14

*Sckolnick v. Harlow*,
  820 F.2d 13 (1st Cir. 1987)........................................................................................................23

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ..................................................................................................15

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
   592 F.3d 329 (2d Cir. 2010)......................................................................................................23

*Tex. v. Organon USA Inc. (In re Remeron End-Payor Antitrust Litig.)*, No. 04-cv-5126,
   2005 U.S. Dist. LEXIS 27011 (D.N.J. Sept. 13, 2005) ............................................................15

*U.S. v. Certain Funds on Deposit in Scudder Tax Free Inv. Account*,
   998 F.2d 129 (2d Cir. 1993).......................................................................................................12

*U.S. v. Scali*, No. 16-cr-466,
   2018 WL 461441 (S.D.N.Y. Jan. 18, 2018) ...............................................................................7

*Young v. New Process Steel, L.P.*,
   419 F.3d 1201 (11th Cir. 2005) .................................................................................................23

## Statutes

28 U.S.C. § 1920...............................................................................................................16, 18

N.Y. Judiciary Law Sec. 478 ......................................................................................................8

N.Y. Judiciary Law §485-a.....................................................................................................7, 8

N.Y. Judiciary Law § 486 ........................................................................................................7, 8

N.Y. Judiciary Law § 489(1) ......................................................................................................12

## Rules

Fed. R. App. P. 38...................................................................................................22, 23, 24

Federal Rule of Appellate Procedure 7 ................................................................................. *passim*

Federal Rule of Evidence 609(a) ................................................................................................7

Federal Rules of Appellate Procedure Rule 3 ...........................................................................11

Federal Rules of Appellate Rule 39 ..............................................................................18, 19, 24

New York Rule 5.5 ......................................................................................................................7

Rule 11 .......................................................................................................................................14

Rule 23 .......................................................................................................................................16

On July 30, 2018, Richard and Emelina Gielata – represented by their son, Joseph Gielata (a felon who is not an active member of any bar) before this Court and before the United States Court of Appeals for the Second Circuit, (collectively, the "Gielatas") – filed a Notice of Appeal (ECF No. 849) of this Court's June 22, 2018 Opinion and Order Granting Lead Plaintiff's Motions for Final Approval of Class Action Settlement and Plan of Allocation and for an Award of Attorneys' Fees and Expenses and Reimbursement of Litigation Expenses (the "Final Approval Order") (ECF No. 834).   Joseph Gielata appealed himself based on what appears to be a sham assignment after Lead Counsel exposed him for engaging in the unauthorized practice of law.  The next day, Spencer Bueno, represented by professional objector Joshua Furman (together with the Gielatas, the "Appellants") filed a Notice of Appeal of the same Order.  ECF No. 850.

*More than 250,000 retail and institutional investors have filed claims* seeking compensation for Defendants' misconduct.  Of those hundreds of thousands of Class members, *only two* filed appeals to this historic Settlement.[1]  Each of these appellants is a serial objector seeking to extort money from Class Counsel.  Hardly filed for the benefit of the Class, the appeals will cause substantial harm to the Class by precluding Class members from receiving any monies for potentially years on end.  These objectors are unlikely to stop their extortionist quest at the Second Circuit, and will likely persist until all appeals are exhausted.  Indeed, despite Class Counsel's repeated requests, the Gielatas have refused to agree on an expedited briefing schedule on their appeal, subjecting the distribution of settlement proceeds for the hundreds of thousands of aggrieved shareholders to years of delay.  Court-appointed Lead Plaintiff Universities

---

[1] While a Notice of Appeal was filed by Mathis B. Bishop and Catherine O. Bishop (the "Bishops") (ECF No. 842), on August 6, 2018, the Bishops informed the Clerk of the Court for the United States Court of Appeals for the Second Circuit of their withdrawal of the Notice of Appeal.  *See* Declaration of Jeremy A. Lieberman in Support of Plaintiff's Motion for an Appeal Bond ("Lieberman Decl.") at ¶10.

Superannuation Scheme Ltd., acting as sole corporate trustee of Universities Superannuation Scheme ("USS"), respectfully submits this memorandum of law in support of its motion for entry of an order requiring the Appellants to post a bond pursuant to Federal Rule of Appellate Procedure 7 ("Rule 7") before proceeding with their appeal.

## **PRELIMINARY STATEMENT**

Both Appellants are professional objectors, with Gielata being sanctioned as a felon by the Delaware State Bar. The sole reason for their respective appeals is to try to extract a payment from Class Counsel in exchange for discontinuing their meritless appeals. Their appeals will serve only to impose millions of dollars in additional costs on the Class while delaying the distribution of settlement funds to hundreds of thousands of Class Members. They are the very definition of vexatious conduct. Under these circumstances, Appellants must post appeal bonds under Rule 7 for the following reasons. First, there is reason to believe that Appellants have the financial resources to post the requested bonds. Second, there is a high risk that Appellants may not pay awarded costs after losing their appeals for reasons including, but not limited to, the fact that they and their attorneys are all located in different jurisdictions outside the Second Circuit. Third, this Court has thoroughly examined the Appellants' arguments and found them to lack merit. Finally, the Appellants' histories as professional objectors weigh strongly in favor of requiring appeal bonds. *See Chizmar v. ACCO Brands Corp.*, No. 14-2181, 2015 WL 4388326, at *3 (S.D.N.Y. July 17, 2015) (Castel, J.) (listing these four factors).[2]

---

[2] *Accord, In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) ("[T]he class is likely to be damaged if the appeal is rejected and there are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions."); *In re Wal-mart Wage & Hour Emp. Practices Litig.*, 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010) (holding that objections were meritless, and noting that attorneys were professional objectors; ordering each objector to file $500,000 appeal bond); *Heekin v. Anthem, Inc.*, 2013 WL 752637, at *2, 4 (S.D. Ind. Feb. 27, 2013) ("[a]ppeal bonds are often required on class action settlements or attorneys'

Accordingly, Lead Plaintiff respectfully requests that this Court require Appellants to post appeal bonds in the amount of *at least* $3,030,000 (plus interest).

## BACKGROUND

On February 1, 2018, the Parties signed a Stipulation of Settlement resolving the Class's claims for $3 billion – the largest securities class action settlement in a decade. ECF No. 767-1, Stipulation of Settlement and Release. More than one million copies of the Class Notice were mailed to potential class members and a summary notice, translated into 23 languages, was published in major news publications worldwide. *See* ECF No. 824, Lead Plaintiff's Reply Br. at 1. No institutional investor objected to the Settlement Agreement of Plan of Allocation, and on June 22, 2018, the Court entered an Order granting final approval to the Settlement. ECF No. 834.

As the Court observed at the June 4, 2018 fairness hearing, the primary objective of certain objectors was not how best to benefit the Class, but how to line their own pockets. June 4, 2018 Hearing Tr. at 55-56. The Gielatas are acting as professional objectors. Joseph Gielata – an attorney who is not an active member of any bar – is the son of objectors Richard and Emelina Gielata, who purchased 500 shares of Petrobras ADSs during the Class Period and have losses of approximately $660. Joseph Gielata initially purported to be a "retired" attorney who drafted his parents' objection (*see* ECF No. 813, Gielata Objection at 20). He now identifies himself as an objector and an appellant. (ECF No. 849). Neither parents nor son appeared at the June 4, 2018 Fairness Hearing. *See* June 4, 2018 Hearing Tr. With an anticipated recovery of $660, it is an economic impossibility for the Gielatas to recoup their investment of $505 in filing their appeal, even if they succeed on each issue raised, casting further suspicion on their motives. Joseph

---

fees awards because the appeal effectively stays the entry of final judgment, the claims[] process, and payment to all class members"; imposing $250,000 bond on each of two objectors).

Gielata previously represented his parents in a class action lawsuit against his previous law firm on behalf of members of the *Tyco* settlement class. That lawsuit was resolved ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ with no payment to class members. *See* Lieberman Decl. Ex. A. Thus, the Gielatas acted as professional objectors in the *Tyco* case.

Bueno objected to the Settlement, as well. His attorney, Joshua R. Furman, is an active professional objector, having filed objections on behalf of clients in at least four cases. Neither Bueno nor Furman attended the June 4 Fairness Hearing. *See* June 4, 2018 Hearing Tr.

## ARGUMENT

### I.  THE COURT HAS AUTHORITY TO REQUIRE OBJECTORS TO FILE AN APPEAL BOND

#### A.  Legal Standards

Pursuant to Federal Rule of Appellate Procedure 7, a "district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Rule 7's purpose is "to protect the rights of appellees brought into appeals courts" by an appellant who "poses a payment risk" should the appellee win the appeal. *Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998). "[I]t is discretionary with the district court whether to require a bond or other security for costs on appeal, and if there is a bond the amount also lies within the district court's discretion." Wright & Miller, 16A Fed. Prac. & Proc. Juris. § 3953 (4th ed.). In exercising this discretion, courts in this district "have typically considered the following factors: (1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct." *Chizmar*, 2015 WL 4388326, at *3; *In re Initial Public Offering Sec. Litig.*, 728 F. Supp. 2d 289, 292-93 (S.D.N.Y. 2010). Courts within the Second Circuit have imposed substantial appeal bonds on objectors appealing the approval of

-4-

a class action settlement, based on the estimated costs of the appeal (*see, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, No. 01-md-1409, 2010 WL 1253741 at \*2-3 (S.D.N.Y. Mar. 5, 2010) (Pauley, J.) (imposing appeal bond of $50,000)) as well as the expected expenses for administering the settlement during the appeal (*see, e.g., In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 157 (S.D.N.Y. 2014) (Cote, J.) (imposing appeal bond of $54,700)).

### B.   Application of Relevant Factors Supports an Appeal Bond Here

This Court has thoroughly examined the Appellants' arguments and has found them to be meritless. *See* ECF No. 834. "A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal." *Adsani*, 139 F.3d at 79 (reasoning that "prejudging the case's chances on appeal" is "part and parcel of Rule 7"); *see also In re Bayer Corp. Combination Aspirin Prods. Marketing & Sales Practices Litig.*, No. 09-md-2023 (BMC), 2013 WL 4735641, at \* 1 (E.D.N.Y. Sept. 3, 2013) ("[G]iven the fact that the Court reached its conclusion that the Settlement Agreement is fair, adequate and reasonable, after extensive evaluation of all aspects of the Settlement Agreement, the Court finds that the appeal is likely without merit"). The meritless nature of these appeals ***alone*** is sufficient to warrant imposition of the requested bonds.[3]

### 1.   The Gielatas Must Post a Bond Before Continuing Their Meritless Appeal

#### (a)   The Gielatas' Financial Ability Weighs in Favor of Requiring Them to Post a Bond as Security

There is nothing in the record to suggest that the Gielatas lack sufficient financial resources to post a bond. *See In re Initial Public Offering*, 728 F. Supp. 3d at 293 (presuming objectors'

---

[3] *See Adsani*, 139 F.3d at 79 ("A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal."); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128-29 (S.D.N.Y. 1999) (Sweet, J.) (same). But here, all four factors weigh in favor of imposing an appeal bond.

ability to pay in the absence of evidence demonstrating that they lack the ability to post a bond); *In re AOL Time Warner, Inc., Sec. & ERISA Litig.*, No. 02-5575, 2007 WL 2741033, at *2 (S.D.N.Y. Sept. 20, 2007) (Kram, J.) (objector "has submitted no financial information, so the Court concludes that it is not arguing that it lacks the financial ability to post a bond"); *Baker v. Urban Outfitters, Inc.*, No. 01-5440, 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006) (Preska, J.) (same). Notably, none of the appealing objectors is proceeding *in forma pauperis* in this case.

Indeed, the Gielatas' extraordinary history strongly suggests that they have the ability to pay. In 2010, on behalf of his father, Joseph Gielata filed a class action against Grant & Eisenhofer P.A. ("G&E"), a securities litigation firm, after G&E had secured a $3.2 billion settlement in *In re Tyco, Int'l, Ltd. Multidistrict Litigation* (D.N.H. Aug. 23, 2002). Joseph Gielata, who had been an associate at G&E, sued his former employers on behalf of all settlement class members for breach of fiduciary duty and breach of contract arising from the previously awarded attorneys' fee in the *Tyco* case. *See Gielata v. Eisenhofer*, No. 10-00648 (D. Del. Aug. 3, 2010). The case was eventually transferred to the District of New Hampshire, and on November 30, 2012, Richard Gielata filed a notice of voluntary dismissal with prejudice ██████████████████████████ Lieberman Decl. Ex. A; *see also Gielata v. Eisenhofer*, No. 11-442 (D.N.H. Nov. 30, 2012), ECF No. 92. ███████████████████████████████████████████. Furthermore, the Gielatas' Notice of Appeal affirmed that "Joseph Gielata guarantees, *qua* surety and assignee, any costs on appeal. . . ." ECF No. 849 at 1. Implicit within his guarantee is an affirmation of his ability to fulfill that guarantee. Accordingly, the Gielatas' ability to pay cannot reasonably be questioned.

### (b)    The Risk that the Gielatas Would Not Pay Is High

Despite the Gielatas' ability to pay for the requested bond, the Class cannot rest assured that the Gielatas would in fact pay the costs that their meritless appeal would generate. This

concern is particularly strong for Joseph Gielata, whose behavior demonstrates a serious and ongoing contempt for the law.  As described in Lead Plaintiff's Reply Brief, Joseph Gielata's checkered past includes criminal theft (by guilty plea) and violation of the Delaware Lawyers' Rules of Professional Conduct for engaging in a brazen scheme to defraud Paypal.  *See* ECF No. 824 at 11.  Equally troubling are the legal and ethical violations he has committed *before this very Court* in representing his parents (*e.g.* on conference calls) *without an active law license*.  *See* Lieberman Decl. ¶8.  In filing his parents' objections, Joseph Gielata (who was not a Class member) characterized himself as a "retired lawyer" (ECF No. 813 at 20).  More precisely, however, he is an "inactive" member of the Delaware Bar.  *See* Lieberman Decl. ¶8.  Despite lacking an active law license, he drafted objections, corresponded with the Court (*see* Lieberman Decl. ¶8), and filed a sur-reply, apparently acting as his parents' legal representative without an active license to do so.  He never sought admission *pro hac vice* (which could not have been granted due to his inactive status), nor did he affiliate with New York local counsel, as required by the ABA Rules of Practice 5.5 and New York Rule 5.5.

Further, Joseph Gielata's unauthorized practice of law is prohibited by the State of New York.  Under N.Y. Judiciary Law § 486, it is a misdemeanor to practice law when one "has been suspended from practice and has not been duly and regularly reinstated."  *See U.S. v. Scali*, No. 16-cr-466 2018 WL 461441, at *10 (S.D.N.Y. Jan. 18, 2018) (Roman, J.) (holding that the activity constituting unauthorized practice of law in violation of N.Y. Judiciary Law § 486 "encompasses a dishonest act or false statement" within the meaning of Federal Rule of Evidence 609(a)).

Additionally, under § 485-a of the same code, it is a class E felony if a person violates § 486 and both:

(1) falsely holds himself or herself out as a person licensed to practice law in this state, a person otherwise permitted to practice law in this state, or a person who can provide

services that only attorneys are authorized to provide; and (2) causes another person to suffer monetary loss or damages exceeding one thousand dollars or other material damage resulting from impairment of a legal right to which he or she is entitled.

N.Y. Judiciary Law §485-a.   While the full legal effect of Joseph Gielata's unauthorized and vexatious practice of law remains to be seen, it has already resulted in Lead Counsel suffering damages well in excess of $1,000 in time spent on the Gielatas' meritless objection – to say nothing of what their appeal will cost the Class.[4]   Joseph Gielata's de facto practice of law before this Court was also a violation of N.Y. Judiciary Law Sec. 478, which forbids "[p]racticing or appearing as attorney-at-law without being admitted and registered." *See*, *e.g.*, *Matter of Griffiths*, 867 N.Y.S. 2d 713, (N.Y. App. Div. 3rd Dep. 2008) (attorney suspended from practice in Pennsylvania for practicing law "after he was placed on inactive status.")

Accordingly, the risk that the Gielatas would not pay the costs of their appeal in the future is unusually high.[5]

### (c)   The Court Has Already Rejected the Gielatas' Arguments

The Gielatas' grounds for appeal are meritless, as this Court has already determined.  Their objections were scatter shot, consistent with the technique used by many professional objectors who focus on quantity of objections rather than quality.  For instance, the Gielatas attacked the Class Notice, insisting that it failed to disclose: (1) the percentage of the Settlement Fund apportioned to American Depository Shares ("ADS"); (2) an explanation of why a release was given to the underwriter defendants despite their failure to contribute to the Settlement Amount;

---

[4] At bottom, Joseph Gielata's practice of law with an inactive license is unlawful and could warrant immediate disbarment. *See In re Gill*, 770 N.Y.S.2d 71, 72 (1st Dep't 2004) ("Engaging in the practice of law while under a suspension order is unlawful (Judiciary Law § 486) and warrants immediate disbarment" (citation omitted)).

[5] As discussed in greater detail in Part I.B.2(b), *infra*, the risk that the Gielatas will not pay is exacerbated by the fact that they are located in different jurisdictions.  *See In re Initial Pub. Offering*, 728 F. Supp. 2d at 293 ("In the event the Objectors are unsuccessful on appeal, plaintiffs would need to institute collection actions in numerous jurisdictions to recover their costs.").

and (3) the compensation due to the claims administrator (while also challenging any compensation in excess of $30 million). ECF No. 813. The Court found these objections entirely baseless. Final Approval Order at 22-23. None of these issues involved close questions of law or fact. The Gielatas also objected that the Settlement Class definition was impermissibly broad, due to its including investors who purchased Petrobras Bonds cleared by the Depository Trust Corporation ("DTC"), and that such inclusion violated the "domesticity" test announced in *Morrison v. National Australia Bank*, 561 U.S. 247 (2010). The Court readily disposed of that argument, noting that ***defendants here have waived any domesticity requirement*** for the purposes of settlement. Final Approval Order at 12. The Court also noted that the number of class members who conceivably would be affected by this more expansive definition (which defendants demanded in order to obtain "global peace" – *id.* at 11), was *de minimis*, only about 2% of the Settlement Class. *Id.* at 18 n.11. With respect to any "intra-class" differences regarding apportionment of the Settlement – between DTC only and other class members (due to relative "strength" of the claims) – the Court noted that these paled when considering the substantial administrative costs of differentiating between the comparatively small number of DTC claimants and the overwhelming majority of domestic claimants. Final Approval Order at 18.

Finally, the Gielatas challenged the requested lodestar billing rates, and the overall attorneys' fee, breezily opining that the appropriate attorneys' fee should be $60 million, without providing any serious supportive analysis. But the Court carefully considered these arguments, dedicated a significant amount of time and thought to scrutinizing these very issues (and others), and determined that the attorneys' fees should be reduced from $284.4 million to $186.5 million. Final Approval Order at 32-33 ("In evaluating these and other objections, the Court has spent a considerable amount of time personally reviewing the billing documentation submitted by

plaintiffs' counsel, as well as the objections and responses pertaining thereto. The various reductions made below reflect not only that review, but also the Court's familiarity from various other cases with appropriate billing rates and time allocations."). As a result, the Court exercised its discretion to reduce the fee request by approximately 34% or $97 million (*see* Final Approval Order at 37), awarding Class Counsel substantially less than the amount requested based on *ex ante*, arm's-length negotiations between Lead Plaintiff and Class Counsel (*see* ECF No. 792, Fee Mem., at 19), which was also toward the bottom of the range of fee percentages awarded in class actions where the recovery exceeded $1 billion[6] (*see id.* at 4; ECF No. 788, Lieberman Decl. ¶354 & Ex. 15). Put simply, it is highly unlikely that the Second Circuit will conclude that Joseph Gielata's idea of appropriate (even lower) attorneys' fees should take precedence over this Court's.

Ultimately, class action settlements are reviewed on appeal for abuse of discretion. *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) ("We review a district court's approval of a settlement agreement for abuse of discretion."). Because the Gielatas cannot show any abuse of discretion in the Court's well-reasoned decision, their appeal is meritless.

### (d)    The Appeal Is Vexatious and Was Filed in Bad Faith

As an initial matter, Joseph Gielata has not presented any evidence of transactions in Petrobras securities during the Class Period. He therefore has no standing to proceed as an objector or appellant. In an attempt to remedy this, his Notice of Appeal includes a sham "assignment" executed on July 23, 2018 of "all associated rights . . . as to ONE (1) SHARE in the Class Action settlement," from his parents to him for the explicit purpose to "confer Article III standing on

---

[6] As a percentage, the Court's fee award represented the twenty-first largest out of the twenty-nine class actions where the recovery has exceeded $1 billion.

Joseph Gielata to prosecute any objection or appeal in the Class Action."   ECF No. 849 at 4 (emphasis added); *see also id.* (further providing that Joseph Gielata "may reassign the assigned claim . . . at any time"). Apart from the dubious validity of this executory and revocable assignment, it does not make Joseph Gielata a class member. *See Frankel v. Cole*, 490 F. App'x 407, 408 (2d Cir. 2013) (dismissing appeal of party who "lacked standing to object to the proposed settlement," "is plainly not a party to the litigation," and "is not a class member"); *see also Bank of Am. Corp. v. Pub. Pension Funds*, 772 F.3d 125, 129 n.4 (2d Cir. 2014) ("An objector-appellant must demonstrate his or her status as a class member in order to raise an objection in the district court and subsequently be considered a party for purposes of Rule 3 of the Federal Rules of Appellate Procedure"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 U.S. App. at \*23 (9th Cir. Mar. 2, 2017) (granting motion to dismiss appeal because appellant did not object before or at the fairness hearing and therefore could not appeal the district court's order approving the class action settlement). Joseph Gielata filed the appeal on his behalf based on a purported partial assignment from Richard and Emelina Gielata, and that assignment occurred after the Fairness Hearing. Even assuming the validity of the assignment (which it is not), because Joseph Gielata did not object on his own behalf at the Fairness Hearing, he cannot now appeal on his behalf this Court's order granting approval of the Settlement. Gielata concedes that without a valid assignment he would not have Article III standing to lodge an objection to the Settlement or pursue an appeal on his own behalf. *See* Surety Agreement for Appeal Costs and Partial Assignment of Claim, ECF. No. 849 ¶2 ("Whereas assigning a part of their claim would confer Article III standing on Joseph Gielata to prosecute any objection or appeal in the Class Action").

Moreover, the assignment is not valid because, by its own terms, Gielata's parents "retain the authority to act on behalf of Joseph Gielata in connection with their claim." *Id.* ¶3. *See U.S.*

*v. Certain Funds on Deposit in Scudder Tax Free Inv. Account*, 998 F.2d 129, 132-33 (2d Cir. 1993) (an assignment is not valid where the assignor retains control over the things purportedly assigned or any authority to collect or power to revoke). Finally, the assignment likely constitutes champerty under N.Y. Judiciary Law § 489(1), which prohibits the "assignment of a bond . . . or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon." *See Justinian Capital SPC v. WestLB AG*, 28 N.Y.3d 160, 166 (N.Y. 2016) ("[W]hen the purchase of a security was made for the very purpose of bringing such suit [on those securities,] that is champerty. . . ."). In any event, as explained herein, the Gielatas' ruse cannot permit a son without an active law license to act as an attorney on anyone else's interests, including his parents.

As this Court is well-aware, and as described more fully above, the Gielatas have previously attacked a securities class action settlement to obtain personal benefits that do not serve the Class. Furthermore, their above-described objections to the Settlement are not only meritless, but involve no close or reasonable questions of law or fact. Thus, there is evidence of bad faith and vexatious conduct by the Gielatas. *See In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d at 155-56 (evidence of bad faith included objector's own "history of vexatious conduct" and a "legal interest in the outcome of this proceeding" that is "*de minimis*"). Indeed, appeal bonds have been granted even where there is "little evidence of bad faith or vexatious conduct." *In re Currency Conversion*, 2010 WL 1253741, at *2. For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court order the Gielatas to post an appeal bond. As detailed in Part I.C, *infra*, the bond should be in the amount of *at least* $3,030,000 plus interest.

**2.    Bueno (Represented by Serial Objector Furman) Must Post a Bond Before Continuing His Meritless Appeal**

### (a)   Bueno's and Furman's Financial Abilities Weigh in Favor of Requiring Them to Post a Bond as Security

As with the Gielatas, there is nothing to suggest that Bueno (or his counsel, Furman) lack sufficient financial resources to post a bond. *See In re Initial Public Offering*, 728 F. Supp. 2d at 293 (presuming objectors' ability to pay based on no evidence demonstrating they lack the ability to post a bond); *In re AOL*, 2007 WL 2741033, at *2 (objector "has submitted no financial information, so the Court concludes that it is not arguing that it lacks the financial ability to post a bond"); *Baker*, 2006 WL 3635392, at *1 (same).

### (b)   The Risk that Bueno and Furman Would Not Pay Is High

Furman and Bueno are located in different jurisdictions – the Central District of California and Southern District of Florida, respectively.[7] *See* ECF No. 803-1, Bueno Decl. There is no record that Furman has guaranteed payment of costs that might be assessed against him on appeal. "[T]here is a significant risk of non-payment" where the "[o]bjectors are dispersed around the country and none has offered to guarantee payment of costs that might be assessed against them." *In re Initial Pub. Offering*, 728 F. Supp. 2d at 293; *see also id.* ("In the event the Objectors are unsuccessful on appeal, plaintiffs would need to institute collection actions in numerous jurisdictions to recover their costs."). Accordingly, this factor also weighs in favor of requiring Bueno to post a bond.

### (c)   The Court Has Already Rejected Bueno's and Furman's Arguments

Bueno's and Furman's grounds for appeal are meritless, as this Court has already determined. In its June 25, 2018 Order approving the settlement, the Court addressed Furman's "kitchen sink" objections to "at least a dozen aspects" of the proposed settlement. Final Approval

---

[7] They are also in different judicial districts than Joseph Gielata, in the Southern District of California, and his parents Richard and Emelina, in the Western District of Pennsylvania. *See* ECF No. 849.

Order at 24. Furman's objections included meritless challenges to the settlement's notice, size, plan of allocation, compensatory awards to class representatives; attorneys' fees and *cy pres* distribution; the Court rejected each of these objections, noting the lack of reasonable support for each. *See id.* at 23 n.15, 24 -26. Though Furman appealed the entire Final Approval Order (*see* ECF No. 850, Notice of Appeal) raising at least five objections to the Settlement, upon being served with a Rule 11 Motion, he subsequently dismissed his appeal with respect to all but one issue – essentially ***conceding*** that they were meritless (*see* ECF No. 853, Notice of Partial Withdrawal of Objections). Furman explicitly retained only his objections as to *cy pres*. *Id.* at 2.

**Cy Pres.** Furman objected to the *cy pres* designation in the proposed settlement. ECF No. 803 at 4. The Court did not rule on this issue, recognizing that the open question of who should receive any *cy pres* award is not "ripe for consideration." Final Approval Order at 23. Indeed, there may never be any *cy pres* distribution at all in this case – as the Court also acknowledged. *Id.* (deferring ruling until "further briefing on this issue, ***as appropriate, if*** and when the question becomes ripe"). The Court also retained jurisdiction on the *cy pres* determination. *Id.* Furman insists on holding the Settlement hostage on an issue that is not even ripe for adjudication: the designation of a *cy pres* beneficiary. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 461-64, 466 (S.D.N.Y. 2013) (overruling objection that the plan of allocation was deficient for failing to specify the *cy pres* beneficiary because "there was no legal authority to support the argument; no Court in the Circuit has ever made identifying the organization to receive the residual funds a condition precedent to a Settlement approval. 'Of course,' as the Court in *Masters v. Wilhelmina Model Agency, Inc.* noted, 'it [is] not certain at the time [of] the Agreement . . . whether there [will] be [e]xcess [f]unds' after all distributions are made pursuant to the Plan of Allocation."); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (*cy pres* "becomes ripe only if the entire

14

settlement fund is not distributed to class members. . . . That trigger point has not been reached; no *cy pres* disbursement is imminent; and the fund in this case may well be depleted before *cy pres* kicks in. We therefore decline to consider the propriety of *cy pres* at this time."); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1313 (9th Cir. 1990) ("it is possible that virtually all of the funds will be distributed to those entitled to them. Throughout this litigation, plaintiffs said that was a reasonable possibility. If so, the *cy pres* issue may become moot.").[8]  In his brief opposing the settlement, Furman provided no case law whatsoever supporting his frivolous argument—he couldn't. (ECF No. 803 at 4.)  Here, at this stage of the settlement, disbursement from the settlement fund is not imminent and the amount potentially remaining in the settlement fund, if any, is unknown. Indeed, as a result of Furman's appeal, distribution to Class members is likely to be delayed well more than a year, before it can be determined whether there are any residual monies available for *cy pres* receipt.

As explained above, the Court recognized the frivolous nature of Furman's *cy pres* argument during a conference call held with the parties and Furman on August 1, 2018. At that time, Furman doubled down on his frivolous position by claiming in a newly-minted argument[9]

---

[8] *See also Arnett v. Bank of Am., N.A.*, No. 11-cv-1372, 2014 U.S. Dist. LEXIS 130903, at *25 (D. Or. Sept. 18, 2014); ("First, objections to any *cy pres* award are premature, because the entire Settlement Fund is to be distributed to the Settlement Class and only if there are checks returned as non-deliverable or checks that are otherwise not negotiated totaling less than $750,000, will the *cy pres* award be triggered. This objection, therefore, is not ripe."); *see similarly Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 331 (D. Mass. 2015), aff'd, 809 F.3d 78 (1st Cir. 2015); *Tex. v. Organon USA Inc. (In re Remeron End-Payor Antitrust Litig.)*, No. 04-cv-5126, 2005 U.S. Dist. LEXIS 27011, at *59-*60 (D.N.J. Sept. 13, 2005).
[9] In his brief opposing the Settlement, Furman never developed his boilerplate, bare-bones argument devoid of any caselaw—which did not even appear in the "Legal Argument" section of his brief (Dkt. 803 at 4)—thus waiving the *cy pres* objection. An appeal premised on waived issues lacks merit and may be subject to an appellate bond on that basis. *See In re Pharms. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274 (D. Mass. 2007) (imposing a $61,000 appeal bond and stating that the appeal was frivolous because the objections were not preserved for appeal); *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir. 1991) ("Issues

that an appeal in the Supreme Court, *In re Google Referrer Header Privacy Litigation*,[10] warrants rejection of the Settlement. But *Google* is one of the rare cases involving ***"cy-pres-only" settlements*** where, unlike here, no class members receive any compensation and the sole recipients of net settlement funds are third-party recipients. In their cert petition, the objectors argued that *cy-pres*-only settlements are categorically inadequate for Rule 23 purposes because they entail the release of class members' claims in exchange for no direct benefit to class members, while class counsel secure an attorney fee award.[11] Accordingly, it cannot be clearer that *Google* has nothing whatsoever to do with the core issue in this case: whether designation of a *cy pres* beneficiary is ripe when a *cy pres* beneficiary may never need to be appointed. Indeed, the Competitive Enterprise Institute ("CEI"), who claims to be a pioneer of protecting consumers and shareholders from abusive practices of *cy pres* and has objected to the class action *cy press* settlement in Google, is not pursing an appeal here, further underscoring the frivolous nature of Furman's position. As the court is well-aware, CEI was one of the six objectors to the Settlement in the District Court and is represented by the same counsel in Google (Theodore Frank, Melissa Holyoak, and Anna St. John). Put simply, it is frivolous for Furman to appeal something that has not yet been decided, that need not be decided at this time, and on which the Court explicitly reserved judgment. "With only a limited number of exceptions, orders that allow the litigation to continue are not final for purposes of [28 U.S.C.] § 1291 and therefore are not immediately appealable." *Ashmore v. CGI Grp., Inc.*, 860 F.3d 80, 84 (2d Cir. 2017) (internal quotations omitted). Indeed, if Furman were truly concerned about his client and the Class, he could simply defer his objection or appeal until

_____

not presented to the district court but raised for the first time on appeal are not properly before the Court.")

[10] *Sub nom Frank v. Gaos*, No. 17-961 (U.S. 2017).

[11] Brief for Petitioners the Competitive Enterprise Institute, No. 17-961 (U.S. 2017).

such time as Class Plaintiffs seek to make a *cy pres* distribution.  Yet, such a posture would severely undercut his ability to extort legal fees, thus the present Appeal.

**(d)    The Appeal Is Vexatious and Was Filed in Bad Faith**

Additionally, there is evidence of bad faith or vexatious conduct by Furman, who is a well-known serial objector. *See In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d at 155 (evidence of bad faith included objector's association with an attorney "who has been repeatedly admonished for pursuing frivolous appeals of objections to class action settlements"); *In re Initial Pub. Offering*, 728 F. Supp. 2d at 294 (status as a "serial objector" "is evidence of bad faith or vexatious conduct").

As detailed in the prior section, Bueno's objections through his attorney Furman were cookie-cutter and generally divorced from the particulars of this case.  They are consistent with Furman's pattern of serially objecting to settlements with the hope of a personal financial benefit without any value to the Class.  Indeed, Furman has submitted similar objections in numerous class actions.  In virtually every one of these cases, the court overruled the objections and then Furman filed appeals that were either deemed meritless[12] or voluntarily dismissed.[13]  In one of these actions, Furman objected to a settlement on behalf of Jon Zimmerman (another attorney who regularly represents objectors) ████████████████████████████████████████████████ ████, yielding no benefit to the class.  *See* Lieberman Decl. Ex. C.  In another case, Furman and Zimmerman again collaborated to object to a settlement ██████████████████████████

---

[12] *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) (affirming district court's order overruling all of Furman's various objections); *Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012) (finding that objectors, represented by Furman, "did not confer any material benefit on the class though their appeals").

[13] *See, e.g.*, *Google Buzz Privacy Litigation*, No. 11-16642, Doc. No. 10 (9th Cir. Nov. 18, 2011); *Pappas v. Naked Juice Co. of Glendora*, No. 14-55023, Doc. No. 12 (9th Cir. Apr. 21, 2014).

███████████, again providing no class-wide benefit. *See* Lieberman Decl. Ex. D.   Further, Furman often associates with still other serial objectors.[14]   Particularly when viewed in combination with the general and meritless nature of Bueno's objections here, there is strong evidence that this appeal was taken in bad faith or with otherwise vexatious intent.

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court order Bueno to post an appeal bond.   As detailed in Part I.C, *infra*, the bond should be in the amount of at least $3,030,000, plus interest.

### C.   Costs Covered by the Appeal Bond

Lead Plaintiff seeks an appeal bond in the amount of ***at least*** $3,030,000, plus interest, which includes taxable costs of the appeal and costs related to the administration of the Settlement during the pendency of the appeal – a period during which Lead Plaintiff is precluded from distributing the Settlement proceeds to Class Members, but will necessarily, and needlessly, incur substantial administrative costs and interest.

### 1.   The Court Should Require at Least a $50,000 Bond for the Taxable Costs of the Appeal

The taxable costs on appeal subject to a bond under Appellate Rule 7 include those costs itemized in Rule 39 of the Federal Rules of Appellate Procedures and 28 U.S.C. § 1920. *See* Fed. R. App. P. 39(e) (listing costs taxable by district courts for the benefit of a prevailing party on appeal); 28 U.S.C. § 1920 (listing costs taxable by federal judges and clerks).   Courts have held that such costs include the high costs of printing and reproducing briefs, appendices, records, and court reporter transcripts. *See In re Initial Public Offering*, 728 F. Supp. 2d at 295 (noting the "significant costs, including copying costs for briefs and compilation of the voluminous record"

---

[14] A review of Furman's serial objections reveals close ties to other professional objectors including attorneys Edward Cochran and John Pentz. *See* ECF 824, Repl. Br, at 12-14 (detailing Furman's connections to serial objector attorneys).

on appeal); *In re Currency Conversion Fee*, 2010 WL 1253741, at \*2-3 (noting multiplication of costs where, as here, "[m]ultiple copies will be required because several appellants refuse to consent to consolidation of their appeals").

An appeal here will entail significant costs, including the costs of reproducing lengthy briefs and a supplemental appellate record.[15] Accordingly, Lead Plaintiff seeks *at least* a \$50,000 bond for these taxable costs. Other courts in this District have determined that \$50,000 was an appropriate amount for costs in appeal bonds. *See, e.g., In re Currency Conversion Fee*, 2010 WL 1253741, at \*2-3 (appellant ordered to post appeal bond of \$50,000 for appeal costs); *Berry v. Deutsche Bank Trust Co. Am.*, 632 F. Supp. 2d 300, 308 (S.D.N.Y. 2009) (Pauley, J.) (same); *Baker*, 2006 WL 3635392, at \*2 (same). Due to the extensive factual record and multiplicity of issues that Appellants raise, the appellate costs alone would likely equal – if not exceed – the costs in the above-cited cases. As such, estimating the amount of direct appellate costs at \$50,000 would be conservative.

### 2. The Court Should Require a \$1,980,000 Bond for the Incremental Expenses of Administering the Settlement During the Appeal

*Adsani* made it clear that costs to be considered in determining the cost of an appeal bond are not limited to Rule 39's explicit taxable costs. *Adsani*, 139 F.3d at 79 (holding that an appeal bond may also include, *e.g.*, attorneys' fees, when provided by statute).

Here, Lead Plaintiff requests that the appeal bond include \$1,980,000 in administrative costs that will be caused by Appellants' needless delay. Courts within this District have held that settlement administration expenses could be properly included in appeal bonds. *See, e.g., In re*

---

[15] Due to the issues Appellants raise, the record on appeal would include, at the very least, Class Counsel's fee submission and supporting papers, including lodestar reports; the extensive Class Notices and related papers; and the multitude of briefing, expert materials, and supporting documentation related to the domesticity issues of *Morrison v. National Australia Bank*, 561 U.S. 247 (2010).

*Gen. Elec.*, 998 F. Supp. 2d at 153 (awarding $49,000 in settlement administration expenses); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. at 129 (awarding $50,000 in settlement administration expenses); *accord In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476, 2016 WL 2731524, at *19 (S.D.N.Y. Apr. 26, 2016) (Cote, J.) (articulating, before objections were filed, what a Rule 7 bond may include, including that "'when an objector lodges a frivolous appeal to a class action settlement, a district court may impose a Rule 7 Bond in the amount of the ***additional administrative expenses*** that are reasonably anticipated from the pendency of the appeal.'" (quoting *In re Gen. Elec.*, 998 F. Supp. 2d at 153)).[16] Most recently, the court in *In re General Electric* held: "[W]here an objector lodges a frivolous appeal to a class action settlement, a district court may impose a Rule 7 Bond in the amount of the additional administrative expenses that are reasonably anticipated from the pendency of the appeal." 998 F. Supp. 2d at 153; *id.* at 150 (ordering objector to "to post an appeal bond in the amount of $54,700" covering both "ordinary appellate costs" and "the incremental expenses of administering this class action settlement for the additional period of time resulting from [objector]'s appeal").

For the reasons outlined above, both the Gielata and Bueno/Furman appeals would be needlessly vexatious and provide no benefit to the Class. Importantly, their appeals likely would cost the Class millions of dollars by delaying distribution of the Settlement Funds and incurring needless administration costs. As Judge Cote explained: "Such damages can . . . be included in a Rule 7 Bond. . . . The damages that an appellee class incurs when confronted with a frivolous appeal from a judgment entered pursuant to a class action settlement include those additional administrative costs that are associated with the delay in distribution of a settlement fund. Those

---

[16] *But see In re Initial Pub. Offering*, 728 F. Supp. 2d at 295 (granting $25,000 bond for ordinary costs, while rejecting administration costs).

costs decrease the amount of the settlement funds available for distribution to the class and represent a quantifiable amount of damages." *Id.* at 151.

While settlement administration costs may be difficult to quantify with precision, this does not prevent Courts from estimating such costs and requiring appellees to bond them. *See In re Wal-Mart Wage & Hour Emp't Practices Litig.*, No. 06-00225, 2010 WL 786513, at *2 (D.Nev. Mar. 8, 2010) (requiring a $500,000 appeal bond); *In re Broadcom Corp. Sec. Litig.*, No. 01-275, 2005 WL 8152912, at *3 (C.D. Cal. Dec. 5, 2005) (including costs of delay and disruption of settlement administration in appeal bond – estimated at $517,700 – resulting from, *inter alia*, "costs of updating addresses and other information needed to remain in contact with Class members, locating lost Class members, . . . paying monthly fees for maintaining the website created to inform Class members, and providing phone support to answer inquiries from the Class members").[17]

Here, the Class will needlessly incur high administrative expenses during the pendency of these appeals because Lead Plaintiff will be unable to distribute the Settlement proceeds during that time, and the infrastructure required for settlement administration will need to be kept in place for a longer period of time than would otherwise be required, at the expense of the Settlement Fund. These expenses include, but are not limited to, the costs of: processing additional claims, handling Class Member communications including responding to written and verbal inquiries,

---

[17] Numerous other courts outside this Circuit have also approved appeal bonds for costs incurred related to administration of the settlement pending an appeal. *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 815 (6th Cir. 2004) (affirming imposition of a $174,429 appeal bond that included $123,429 for "incremental administrative costs"); *In re Merck & Co., Inc.*, No. 05-1151, 2016 WL 4820620, at *2 (D.N.J. Sept. 14, 2016) ("The appeal bond shall include . . . an additional $50,000 bond to cover the administrative costs of the delay associated with an appeal."); *In re Uponor, Inc.*, 2012 WL 3984542, at *6 (D. Minn. Sept. 11, 2012) (imposing $170,000 appeal bond, of which $125,000 was earmarked for supplemental class notice); *Heekin v. Anthem*, 2013 WL 752637 at *2 (S.D. Ind. Feb. 27, 2013) (approving cost of supplemental notice as part of appeal bond, requiring appellants to post $250,000 appeal bond).

website and other IT system maintenance, telephone charges, and updating stale addresses. As the accompanying declaration by Niki L. Mendoza, Vice President of claims administrator Garden City Group, LLC shows, the additional administrative costs that will be approximately *$20,000 to $200,000 per month*, and will *average approximately $110,000 per month* based on their experience and in consideration of the anticipated volume and class size. *See* Lieberman Ex. E, Mendoza Decl. in Support of Lead Plaintiff's Motion for Appeal Bond, Ex. 1 ¶¶4-5, 7. Even with an expedited briefing schedule, Lead Counsel's recent experience is that it can take up to one and a half years for a decision to be issued in the Second Circuit. *See Strougo et al. v. Barclays PLC et al.*, No. 16-1912 (2nd Cir.). Of course, this delay does not include any additional appeals, including appeals en banc and petitions for a writ of certiorari. Using the estimate provided by the Claims administrator, an additional $110,000 per month over a conservative one-and-a-half year appeal would cost the Class an additional *$1,980,000 in administrative costs*. Because these are costs that the Appellants would force the Class to bear unnecessarily over the course of their appeals, Appellants should have to post a bond securing *at least* that amount to continue with their appeals.

### 3.   The Court May Also Increase the Size of the Appeal Bond to Cover Likely Attorneys' Fees Objectors Would Pay for Frivolous Appeals

Lead Plaintiff requests that the appeal bond include $1,000,000 for estimated attorneys' fees that will be generated in responding to these meritless appeals. *Adsani* held that the amount of an appeal bond may include attorneys' fees when such fees are provided by statute. *Adsani*, 139 F.3d at 79. Appellate Rule 38 provides: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and *single or double costs* to the appellee." Fed. R. App. P. 38 (emphasis added). An appeal is frivolous for the purpose of Rule 38 when it is "'totally

lacking in merit, framed with no relevant supporting law, conclusory in nature, and utterly unsupported by the evidence.'" *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d at 153 (quoting *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 341 (2d Cir. 2010)). "Rule 38 sanctions may include the granting of reasonable attorneys' fees to the party forced to defend the frivolous appeal." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 118–19 (2d Cir. 2000).

Because the Appellants' objections here are entirely meritless, the Court should require them to post a significantly larger bond due to the high likelihood that they will be financially responsible for the Class's attorneys' fees incurred as a result of litigating their frivolous appeals. "*A Rule 7 bond may also include attorneys' fees* where the district court concludes that the court of appeals might award attorneys' fees as costs under [Rule] 38 because the appeal *is frivolous*." *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at \*19 (articulating the standard *ex ante*, before objections were filed); *see In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.*, 2013 WL 4735641, at \*4 (E.D.N.Y. Sept. 3, 2013) (Cogan, J.) (granting attorneys' fees as part of the appeal bond); *see also Young v. New Process Steel, L.P.*, 419 F.3d 1201, 1202-03 (11th Cir. 2005) (holding appellate bond should include anticipated attorneys' fees "where the appeal is likely to be frivolous, unreasonable, or without foundation"); *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987) (affirming district court's order imposing a Rule 7 bond as "security for the costs, including attorneys' fees . . . pursuant to Fed. R. App. P. 38 and 39" where the district court "implied a view that the appeal might be frivolous and that an award of sanctions against [appellant] was a real possibility"); *Gamelas v. Dannon Co., Inc.*, 2010 WL 3703811, at \*1 (N.D. Oh. 2010) (ordering professional objector to pay a $275,000 appeal bond that included attorneys' fees because, *inter alia*, the appeal was "frivolous, unreasonable and groundless" and to discourage objection from holding up settlements); *In re Broadcom Corp. Sec.*

*Litig.*, No. 01-cv-275, 2005 U.S. Dist. LEXIS 45656, at *12-16 (C.D. Cal. Dec. 5, 2005) ("the bond shall include Lead Plaintiff's attorneys' fees likely to be awarded on appeal in the amount of $100,750.00.") Lead Counsel estimates that the anticipated cost of attorneys' fees on appeal will total at least $1 million, similar to the attorneys' fees spent on defending this Court's Class Certification Order at the Second Circuit. *See* Lieberman Decl. ¶13. Under Rule 38, Appellants will likely prevail on a motion for "damages and single or double costs," including attorneys' fees. *See* Fed. R. App. P. 38. "Inclusion of attorney's fees in a Rule 7 bond does not offend Rule 39 any more than inclusion of any other costs does." *Adsani*, 139 F.3d at 74-75.

Accordingly, Appellants should be required to post an additional $1,000,000 bond to proceed with their frivolous appeal.

**4.    The Appeal Bond Should Include the Cost of Interest to Class Members from Withholding Their Settlement Proceeds During the Appeal**

Lead Plaintiff requests that the appeal bond include interest to make Class Members whole for the months of needless delay before receiving their recoveries, caused by Appellants.    The Second Circuit has not yet determined whether the costs caused by an objector's appeal include the financial injury to class members from delaying their recovery.  However, an objector's appeal of a final approval order "stays . . . all claims in the Claims Administration Process and payment to all Class members." *Allapattah Services, Inc. v. Exxon Corp.*, No. 91-986, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006). Accordingly, several district courts have included post-judgment interest on class action settlements in calculating the appropriate size of a Rule 7 appeal bond. *E.g., id.* at *18 (objector to $1 billion class action settlement required to post $13.5 million bond in the event of appeal on behalf of the entire class "to cover the damages, costs *and interest* that the entire class will lose as a result of the appeal" and delay, where interest was calculated by a magistrate judge using the then-current T-bill rate) & ECF No. 2757, Report and

Recommendation, at 21 n.8 (magistrate judge "[a]ssum[ed] an interest rate of 4.81% (T-bill rate as of Apr. 3, 2006)"); *In re Checking Account Overdraft Litig.*, No. 09-cv-02036, Dkt. No. 2473, at 6 n.6 (S.D. Fla. Feb. 14, 2012) (requiring a bond in the amount of two years' compounded interest); *In re Wal-Mart Litig.*, 2010 WL 786513 (D. Nev. Mar. 8, 2010) (each of four objectors appealing from final approval of class action settlement required to post $500,000 bond to secure administrative costs *and interest* the class would lose as a result of the delay in compensation and injunctive relief due under the settlement agreement); *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) (objector appealing $12.5 million class action settlement required to post $645,111.60 bond, which included "*5.15% interest* on a settlement of $12.5 million . . . for one year"); *Conroy v. 3M Corp.*, No. 00-2810, 2006 U.S. Dist. LEXIS 96169, at *6, *11 (N.D. Cal. Aug. 10, 2006) (including in Rule 7 bond "$239,667 in anticipated *post-judgment interest* to compensate for the delayed distribution of the $4.1 million cash portion of the settlement").

## CONCLUSION

The Appellants' objections lack any proper purpose and are clearly intended to benefit themselves at the expense of the Class, as both the Gielatas, Bueno, and Furman have done before. Through their meritless appeals, the Objectors threaten to substantially delay the distribution of Settlement funds and cause the Class needless expense, which Lead Plaintiff may well have difficulty recovering after the Class prevails on the appeal. Accordingly, this Court should require at least a $3,030,000 appeal bond, plus interest, under Rule 7.

Dated: August 10, 2018

Respectfully submitted,

**POMERANTZ LLP**

Jeremy A. Lieberman
Marc I. Gross
Emma Gilmore
John A. Kehoe
Brenda Szydlo
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: 212-6612-1100

Patrick V. Dahlstrom
**POMERANTZ LLP**
10 North LaSalle
Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181

Jennifer Pafiti
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: 310-285-5330

Lead Counsel for Lead Plaintiff Universities
Superannuation Scheme Limited

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2018, I caused a true and correct copy of the foregoing to be served on counsel of record by electronically filing it with the Clerk of the Court using the ECF system, which will send notification of such filing to the registered participants; and I caused a true and correct copy of the foregoing to be served upon the following objectors by first class mail:

Richard Gielata
Emelina Gielata
100 Westbury Drive
Coraopolis, PA 15108

And upon the following objectors by first class mail and e-mail:

Joseph Gielata
7811 Eads Avenue #207
La Jolla, CA 92037
gielata@gmail.com

Mathis B. Bishop
Catherine O. Bishop
204 East Oakview Place
San Antonio, Texas 78209
mbishop170@gmail.com

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman