**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **IN RE PETROBRAS SECURITIES LITIGATION** | ) ) ) ) ) ) |

No. 14-cv-9662 (JSR)

ECF Case

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR SANCTIONS AGAINST JOSEPH GIELATA AND RICHARD GIELATA

**POMERANTZ LLP**
Jeremy A. Lieberman
Marc I. Gross
Emma Gilmore
John A. Kehoe
Brenda Szydlo
600 Third Avenue
New York, New York 10016
Tel: (212) 661-1100
jalieberman@pomlaw.com
migross@pomlaw.com
egilmore@pomlaw.com
jkehoe@pomlaw.com
bszydlo@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti
468 North Camden Drive
Beverly Hills, CA 90210
Tel: (310) 285-5330
jpafiti@pomlaw.com

**POMERANTZ LLP**
10 North LaSalle
Suite 3505
Chicago, IL 60603
Tel: (312) 377-1181

*Lead Plaintiff's Lead Counsel*

## TABLE OF CONTENTS

Page(s)

BACKGROUND ............................................................................................................ 1

ARGUMENT ............................................................................................................... 3

    1.    The Gielatas' Objections in this Case ................................................ 3

    2.    Rule 11 Sanctions Are Appropriate .................................................. 7

    3.    Joseph Gielata's Unauthorized Practice of Law in This Case Also
        Warrants Sanctions ........................................................................... 8

    4.    Sanctions Should Be Imposed Under 28 U.S.C. §1927 and the Court's
        Inherent Power ................................................................................ 13

    5.    Size of Sanctions ............................................................................. 15

CONCLUSION ........................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agee v. Paramount Commc'ns, Inc.*,
   114 F.3d 395 (2d Cir. 1997)............................................................................................13

*Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*,
   No. 01-cv-10135, 2003 U.S. Dist. LEXIS 19086 (S.D.N.Y. Oct. 23, 2003).....................13, 14

*Barnes v. FleetBoston Fin. Corp.*,
   No. 01-cv-10395, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) .............................................4

*Caisse Nationale de Credit Agricole-CNCA v.Valcorp, Inc.*,
   28 F.3d 259 (2d Cir. 1994).........................................................................................................8

*Dennis v. Kellogg Co.*,
   No. 09-cv-1786-L, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ...........................................4

*Dewey v. Volkswagen of Am.*,
   909 F. Supp. 2d 373 (D.N.J. 2012), aff'd, *Dewey v. Volkswagen*
   *Aktiengesellschaft*, 558 F. App'x 91 (3d Cir. 2014) ................................................................4

*Eisemann v. Greene*,
   204 F.3d 393 (2d Cir. 2000).....................................................................................................13

*Frankel v. Cole*,
   490 F. App'x 407 (2d Cir. 2013) .............................................................................................11

*Garber v. Office of Comm'r of Baseball*,
   No. 12-cv-03704 (VEC), 2017 WL 752183 (S.D.N.Y. Feb 27, 2017)......................................8

*Iannacconne v. Law*,
   142 F.3d 553 (2d Cir. 1998).......................................................................................................9

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
   772 F.3d 125 (2d Cir. 2014)................................................................................................7, 11

*In re Broadcom Corp. Sec. Litig.*,
   No. 01-cv-275, 2005 U.S. Dist. LEXIS 45656 (C.D. Cal. Dec. 5, 2005)................................14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2017 U.S. App. (9th Cir. Mar. 2, 2017) ..................................................................................11

*In re Gen. Elec. Co. Sec. Litig.*,
   998 F. Supp. 2d at 155-56 ..................................................................................................12

*In re Gielata*,
   933 A.2d 1249 (Del. 2007) ..................................................................................................2

*In re Initial Pub. Offering Sec. Litig.*,
   721 F. Supp. 2d 210 (S.D.N.Y. 2010)................................................................................4

*In re Polyurethane Foam Antitrust Litig.*,
   No. 17-3361, 2017 U.S. App. LEXIS 25352 (6th Cir. Dec. 14, 2017)..................................14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   278 F.3d 175 (3d Cir. 2002)...............................................................................................14

*In re Tyco, Int'l, Ltd. Multidistrict Litigation*
   (D.N.H. Aug. 23, 2007) ......................................................................................................3

*Justinian Capital SPC v. WestLB AG*,
   28 N.Y.3d 160 (N.Y. 2016) ...............................................................................................12

*Kropelnicki v. Siegel*,
   290 F.3d 118 (2d Cir. 2002)................................................................................................7

*Mandeville v. Wertheimer*,
   No. 01-cv-4469 (JSR)(DF), 2002 WL 432689, 2002 U.S. Dist. LEXIS 4628
   (S.D.N.Y. Mar. 19, 2002) ...................................................................................................9

*Matter of Griffiths*,
   867 N.Y.S. 2d 713 (N.Y. App. Div. 3rd Dep. 2008) ....................................................9, 10

*Morrison v. National Australia Bank*,
   561 U.S. 247 (2010)............................................................................................................5

*O'Brien v. Nat'l Prop. Analysts Partners*,
   739 F. Supp. 896 (S.D.N.Y. 1990) ....................................................................................5

*Oliveri v. Thompson*,
   803 F.2d 1265 (2d Cir. 1986).............................................................................................13

*Pridgen v. Andresen*,
   113 F.3d 391 (2d Cir. 1997)................................................................................................9

*Reichman v. Neumann*,
   553 F. Supp. 2d 307 (S.D.N.Y. 2008)...............................................................................14

*Salt Aire Trading LLC v. Sidley Austin Brown & Wood, LLP*,
   N.Y.S. 2d 222 (N.Y. App. Div. 1st Dep't 2012) ...............................................................9

*U.S. v. Certain Funds on Deposit in Scudder Tax Free Inv. Account,*
  998 F.2d 129 (2d Cir. 1993)..................................................................................................12

*U.S. v. Scali,*
  No. 16-cr-466 2018 WL 461441 (S.D.N.Y. Jan. 18, 2018).....................................................10

*Vacco ex rel. People of State of N.Y. v. Operation Rescue Nat'l,*
  80 F.3d 64 (2d Cir. 1996)......................................................................................................13

*Vollmer v. Selden,*
  350 F.3d 656 (7th Cir. 2003) ..................................................................................................8

**Statutes**

28 U.S.C. §1927.........................................................................................................13, 14

N.Y. Judiciary Law Sec. 478 .................................................................................................9, 10

N.Y. Judiciary Law §485-a..........................................................................................................10

N.Y. Judiciary Law § 486............................................................................................................10

N.Y. Judiciary Law § 489(1) .......................................................................................................12

**Rules**

ABA Rules of Practice §5.5...........................................................................................................8

Fed. R. Civ. P. 11 ............................................................................................................7, 8, 15

Federal Rule of Evidence 609(a) .................................................................................................10

Federal Rules of Appellate Procedure Rule 3 ..............................................................................11

**Other Authorities**

N.Y. JUD. L. §478...........................................................................................................................10

Lead Plaintiff Universities Superannuation Scheme Limited respectfully requests that the Court impose sanctions upon objector Richard Gielata ("R. Gielata") and his *de facto* counsel, Joseph Gielata ("J. Gielata"), for objecting to the hard fought $3 billion settlement of this complex litigation and for unabashedly continuing to advance their extortionist agenda in the Court of Appeals. The Gielatas' objections lacked any proper purpose and were clearly intended to benefit themselves at the expense of the Settlement Class. Moreover, J. Gielata's participation in these proceedings was both unethical and illegal. His license to practice law is "inactive," rendering him unable to appear in this or any other District Court.

Accordingly, Lead Plaintiff requests that the Court award the following sanctions against the Gielatas:

1. $46,890, representing the time spent by Lead Counsel attributable to the Gielatas' objections;

2. $20,000 per month, due to the costs for delaying the distribution of the Settlement to Class Members as a result of any appeal lodged by the Gielatas to the Settlement;

3. Reasonable attorneys' fees and expenses for work performed by Lead Counsel responding to the Gielatas' appeal;

4. $300,000 in punitive sanctions resulting from J. Gielata's unauthorized practice of law in this District;

5. Reference of this matter to the Delaware Bar Association for appropriate sanctions against J. Gielata, including suspension or revocation of his law license.

## BACKGROUND

Richard and Emalina Gielata purchased 500 Petrobras shares during the Class Period, and ***sustained losses of $660***. Their objection to the settlement, authored by their son J. Gielata, was docketed on May 18, 2018. Dkt. 813. Significantly, J. Gielata did not appear at the June 4, 2018 Settlement Hearing. His absence is not surprising given that it would have required him to defend

1

his conduct and intentions in this and other cases, as well as to secure a *pro hac vice* admission (which would have been denied given his inactive status).

J. Gielata characterizes himself as a "retired attorney." In fact, his legal career would be more charitably characterized as checkered. In 2005, J. Gielata was arrested on multiple counts of theft, including felony theft, and conspiracy in the second degree, a felony. The charges arose from his using sham transactions to attempt to illegally benefit from PayPal's money-back guarantees. On May 19, 2006, J. Gielata pled guilty to misdemeanor theft. Delaware's Board of Professional Responsibility subsequently charged that J. Gielata had "committed a criminal act that reflects adversely on his honesty and trustworthiness"; "engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation"; and "engaged in conduct that is prejudicial to the administration of justice, thereby violating Delaware Lawyers' Rules of Professional Conduct: Rule 8.4(b)-(d). For his criminal misconduct, J. Gielata was publicly reprimanded by Delaware's Supreme Court of Delaware. *In re Gielata*, 933 A.2d 1249 (Del. 2007).

Though J. Gielata is apparently still admitted to the Delaware Bar, his current status is "inactive," and has been since well before filing of his parents' Objection. *See* Declaration of Jeremy A. Lieberman ("Lieberman Decl."), Ex. A, and ¶¶ 2-3. Nonetheless, "retiree" J. Gielata (on his parents' behalf) saw fit to use his legal skills to draft objections, correspond with the court, and file a sur-reply. While the papers represented that they had been prepared by "lawyer Joseph Gielata (University of Chicago Law School, admitted in Delaware and the First Circuit)," J. Gielata failed to disclose the true status of his admission. Nor did J. Gielata seek admission to this Court *pro hac vice,* despite participating on several calls with counsel and the Court, and representing his father R. Gielata with respect to discovery requests and other matters. To the extent that J. Gielata falsely contends that he was only representing his own interests with respect to such

discovery requests, his father (R. Gielata) should be sanctioned for failing to participate in these conference calls.

J. Gielata's true purpose for resurfacing as a *de facto* counsel in this mega-case is apparent from the last time he and his father challenged a securities fraud class action settlement. In 2010, again on behalf of his father, J. Gielata filed a class action against Grant & Eisenhofer P.A. ("G&E"), which had secured a $3.2 billion settlement in *In re Tyco, Int'l, Ltd. Multidistrict Litigation* (D.N.H. Aug. 23, 2007). J. Gielata, who had been an associate at the firm, sued his former employees on behalf of all settlement class members for breach of fiduciary duty and contract arising from the previously awarded fee. In 2012, the case was voluntarily dismissed ████ ████████████████████ *Gielata v. Eisenhofer*, No. 11-cv-442-PB (D.N.H. Nov. 30, 2012), ECF No. 92. See Lieberman Decl., Ex. B.



## ARGUMENT

### 1.    The Gielatas' Objections in this Case

As the Court observed at the June 4, 2018 hearing, the primary objective of certain objectors is not how best to benefit the Class, but how much to line their own pockets:

> The third group of objectors, the ones to whom you were really referring to, the so-called professional objectors, are people who are seeking to extort monies on their own private behalf, not because they expect that their objections will receive any weight at the district court level but because they can delay the entire process, can delay the doing of justice, can delay the payment to victims of monies that in some cases they sorely need and that in any event they're entitled to, for months or even years on end.

Transcript at 55-56, Lieberman Decl. Ex. C. The Court made clear that it reserved on-going jurisdiction over such objectors:

> I have expressly retained jurisdiction in this case over the objectors even after I issue my final rulings on the matters before me today if I am convinced that some discovery is needed because of extortionate motivations on the part of any of those objectors.

Transcript at 56.[1] The Gielatas' Objections fit this mold. They were scatter shot – essentially attacking everything they could, presumably hoping they'd get lucky and hit something, thereby mimicking the technique used by many professional objectors. For instance, the Gielatas attacked the Class Notice, insisting that it failed to disclose: (1) the percentage of the Settlement Fund apportioned to American Depository Shares ("ADS"); (2) an explanation of why a release is given to the underwriter defendants despite their failure to contribute to the Settlement Amount; and (3) the compensation due to the claims administrator (while also challenging any compensation in excess of $30 million).

The Court found these objections entirely baseless:

---

[1] *See also In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) ("I concur with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients."); *Dennis v. Kellogg Co.*, No. 09-cv-1786-L (WMc), 2013 WL 6055326, at *4 n.2 (S.D. Cal. Nov. 14, 2013) ("[W]hen assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first.") (*quoting In re Law Office of Jonathan E. Fortman, LLC*, No. 13-mc-00042 AGF, 2013 WL 414476, at *5 (E.D. Mo. Feb. 1, 2013)); *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 396 n.24 (D.N.J. 2012) ("[C]ertain objectors are represented by attorneys who are in the profession of objecting to class action settlements, whether motivated by views of the law, ideology, or otherwise."), aff'd, *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 91 (3d Cir. 2014); see similarly *Barnes v. FleetBoston Fin. Corp.*, No. 01-cv-10395, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006).

**Settlement Apportionment**

[T]he Plan of Allocation discloses how that percentage will be calculated and Gielata cites no case law for the proposition that such notice is deficient where it does not include break-downs of expected payouts.

**Underwriter Contribution**

[T]here is no requirement that the Notice disclose the rationale behind the release. See *O'Brien v. Nat'l Prop. Analysts Partners*, 739 F. Supp. 896, 902 (S.D.N.Y. 1990). Moreover, it is permissible for an issuer to provide to the underwriters that it indemnifies a release in a settlement without requiring a contribution from those underwriters. And, as the Court knows from its familiarity with the underlying case, the plaintiffs' case against the underwriters was materially weaker than its case against the Petrobras Defendants and PwC Brazil.

**Claims Administrator**

[T]he Garden City Group, disclosed at the hearing (at the Court's direction) that it will in no event be paid 1% or more of the settlement fund and that its compensation is capped at $19 million. See Tr. at 22. Accordingly, the Court finds that the disclosure in this case was sufficient (and that the compensation of the claims administrator is reasonable).

Op. at 22-23. Dkt. 834.

The Gielatas also piled onto objections regarding the composition of the settlement class, the requested lodestar billing rates, and the fee. The Court readily disposed of the Gielatas' key objection (the sole focus of his Sur-Reply), which could have scuttled the entire settlement, and the benefits bestowed on the class, *i.e.*, that the Settlement Class definition was impermissibly broad since it included investors who purchased Petrobras Bonds cleared by the Depository Trust Corporation ("DTC") in Chicago, Illinois. The Gielatas asserted that such inclusion violated the "domesticity" test announced in *Morrison v. National Australia Bank*, 561 U.S. 247 (2010). As the Court noted:

But defendants here have waived any domesticity requirement for the purposes of settlement. See Def. Reply at 3. Accordingly, even though the Court previously found that the DTC claimants could not establish domesticity as a matter of law

(but not because they lacked Article III standing), Gielata is wrong that the DTC claimants cannot be part of the settlement class.

Op. 11. The Court also noted that the number of class members who conceivably would be affected by this more expansive definition (which defendants demanded in order to obtain "global peace" – Op. at 11), was *de minimus*, only about 2% according to Lead Counsel. Op. at 18.n.11. With respect to any "intra-class" differences regarding apportionment of the Settlement - between DTC only and other class members (due to relative "strength" of the claims) - the Court noted that these paled when considering:

> the substantial administrative costs of differentiating between the comparatively small number of DTC claimants and the overwhelming majority of domestic claimants. See Supplemental Declaration of Niki L. Mendoza ... (affirming that "it would be costly to require transaction-by-transaction determinations of whether" DTC claims otherwise complied with *Morrison* and that such analysis would be "time-consuming" and potentially "delay the administration of claims and distribution of funds").

Op. at 18.

The Gielatas also challenged the requested lodestar billing rates, and the overall attorneys' fee, breezily opining that the appropriate attorneys' fee should be $60 million, without providing any serious supportive analysis. But the Court carefully considered these arguments, dedicated a significant amount of time and thought to scrutinizing these very issues (and others), and determined that the attorneys' fees should be reduced from $284.4 million to $186.5 million. Final Approval Order at 32-33 ("In evaluating these and other objections, the Court has spent a considerable amount of time personally reviewing the billing documentation submitted by plaintiffs' counsel, as well as the objections and responses pertaining thereto. The various reductions made below reflect not only that review, but also the Court's familiarity from various other cases with appropriate billing rates and time allocations."). As a result, the Court exercised its discretion to reduce the fee request by approximately 34% or $97 million (*see* Final Approval

Order at 37), awarding Class Counsel substantially less than the amount requested based on ex ante, arm's-length negotiations between Lead Plaintiff and Class Counsel (*see* ECF No. 792, Fee Mem., at 19), which was also toward the bottom of the range of fee percentages awarded in class actions where the recovery exceeded $1 billion (see id. at 4; ECF No. 788, Lieberman Decl. ¶354 & Ex. 15). Put simply, it is highly unlikely that the Second Circuit will conclude that Joseph Gielata's idea of appropriate (even lower) attorneys' fees should take precedence over this Court's. Ultimately, class action settlements are reviewed on appeal for abuse of discretion. *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) ("We review a district court's approval of a settlement agreement for abuse of discretion."). Because the Gielatas cannot show any abuse of discretion in the Court's well-reasoned decision, their appeal is meritless.

### 2.    Rule 11 Sanctions Are Appropriate

In its Opinion approving the Settlement and awarding fees, the Court recognized the accusations of "improper motives including, in the case of … Gielata allegedly seeking to extort personal payments through the device of frivolous appeals," but deferred addressing that issue until the "allegations of extortion, if true, … become evident on appeal. Op. pg. 4, fn. 5. Judicial intervention now is warranted given Gielata's "record" of past misconduct; his personal payoffs in connection with past objections to class action settlements; and working as an attorney without proper admission in this Court. The Class will suffer considerable and unnecessary delay as a result of Gielata's appeal of the Settlement.

A pleading, motion, or other paper such as objections violate Rule 11 either when it "has been interposed for any improper purpose, or where after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002). The Rule is aimed at "deter[ing] baseless

filings and the curbing of abuses." *Caisse Nationale de Credit Agricole-CNCA v.Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994). As observed in *Garber v. Office of Comm'r of Baseball,*[2] Rule 11 mandates that any paper presented to the Court not be made "for any improper purpose," such as "to extract fees from class counsel in exchange for the withdrawal of a meritless objection to the proposed class settlement."

J. Gielata's past misconduct, and the scatter shot objections filed in this case, clearly meet this proscription and warrant judicial intervention. The Gielatas' sole goal is to extort payment to line their pockets, not only without benefitting the class, but delaying distribution of the settlement proceeds. This is clearly an improper purpose:

> In the context of intervening in a class action settlement, extortion would mean intervening not to increase the value of the settlement, but in order to get paid to go away. [T]his would be an improper purpose for intervening.

*Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003).

### 3. Joseph Gielata's Unauthorized Practice of Law in This Case Also Warrants Sanctions

Despite actively engaging in this proceeding, including preparing and filing papers with the Court, conferring with Lead Counsel on his parents' behalf, participating in a number of conference calls with the Court, and corresponding with the Court on his parents' behalf, J. Gielata's attorney status remained "inactive" throughout. He never sought admission *pro hac vice,* nor did he seek to affiliate with New York local counsel, as required by the ABA Rules of Practice 5.5 and New York Rule 5.5.

The failure to seek such *pro hac* admission was undoubtedly due to the fact that no such admission would have been granted. Though reprimanded by the Delaware Court for his criminal misconduct, J. Gielata was still technically "admitted," *but his status was "inactive."* Any *pro*

---

[2] No. 12-cv-03704 (VEC), 2017 WL 752183, at *4 (S.D.N.Y. Feb 27, 2017).

*hac vice* admission effort not only would likely have been denied, but would have triggered formal suspension by Delaware for unauthorized practice of the law.

J. Gielata's *de facto* practice of law before this Court was also a violation of N.Y. Judiciary Law Sec. 478, which forbids "Practicing or appearing as attorney-at-law without being admitted and registered." By definition, if an attorney is "inactive", they are not "registered." *See*, *e.g.*, *Matter of Griffiths*, 867 N.Y.S. 2d 713, (N.Y. App. Div. 3rd Dep. 2008) (attorney suspended from practice in Pennsylvania for practicing law after he was placed on inactive status; New York reciprocally suspended the attorney).

The issue of whether a daughter or son can act on behalf of a parent appearing "pro se" (as J. Gielata acted in this case) was addressed in *Mandeville v. Wertheimer*, No. 01-cv-4469 (JSR)(DF), 2002 WL 432689, 2002 U.S. Dist. LEXIS 4628 (S.D.N.Y. Mar. 19, 2002). Magistrate Judge Debra Freeman (to whom this Court had referred the matter), found that such representation was impermissible. As the court noted "because *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him." *Id.* at *4 (citing *Iannacconne v. Law*, 142 F.3d 553, 558 (2d Cir. 1998), *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997)). The court also noted that that "New York law 'prohibits the practice of law in this state on behalf of anyone other than himself or herself by a person who is not an admitted member of the bar, regardless of the authority purportedly conferred by execution of a power of attorney."

Also on point is *Salt Aire Trading LLC v. Sidley Austin Brown & Wood, LLP* N.Y.S. 2d 222, 222-23 (N.Y. App. Div. 1st Dep't 2012), where the court affirmed the dismissal of pleadings signed by two lawyers admitted in Washington State - but not New York - on behalf of a purported *pro se* plaintiff that gave them permission to sign on his behalf. The Appellate Division held that

the two out-of-state lawyers had violated N.Y. JUD. L. §478 by signing the pleading. *Id.* at 223. Although the *pro se* plaintiff had a right to represent himself, "generally an individual who exercises the right to act pro se cannot then appear through an attorney-in-fact or other person not authorized to practice law[.]" *Id.* (internal citation omitted).

Moreover, under N.Y. Judiciary Law § 486, it is a misdemeanor to practice law when one "has been suspended from practice and has not been duly and regularly reinstated." *See U.S. v. Scali*, No. 16-cr-466 2018 WL 461441, at *10 (S.D.N.Y. Jan. 18, 2018) (Roman, J.) (holding that the activity constituting unauthorized practice of law in violation of N.Y. Judiciary Law § 486 "encompasses a dishonest act or false statement" within the meaning of Federal Rule of Evidence 609(a)).

Additionally, under § 485-a of the same code, it is a class E felony if a person violates § 486 and both:

> (1) falsely holds himself or herself out as a person licensed to practice law in this state, a person otherwise permitted to practice law in this state, or a person who can provide services that only attorneys are authorized to provide; and (2) causes another person to suffer monetary loss or damages exceeding one thousand dollars or other material damage resulting from impairment of a legal right to which he or she is entitled.

N.Y. Judiciary Law §485-a. While the full legal effect of Joseph Gielata's unauthorized and vexatious practice of law remains to be seen, it has already resulted in Lead Counsel suffering damages well in excess of $1,000 in time spent on the Gielatas' meritless objection – to say nothing of what their appeal will cost the Class. Joseph Gielata's de facto practice of law before this Court was also a violation of N.Y. Judiciary Law Sec. 478, which forbids "[p]racticing or appearing as attorney-at-law without being admitted and registered." *See, e.g.*, *Matter of Griffiths*, 867 N.Y.S. 2d 713, (N.Y. App. Div. 3rd Dep. 2008) (attorney suspended from practice in Pennsylvania for practicing law "after he was placed on inactive status.")

10

***The sham assignment.***  Joseph Gielata has not presented any evidence of transactions in Petrobras securities during the Class Period.  He therefore has no standing to proceed as an objector or appellant.  In an attempt to remedy this, after being exposed by Lead Plaintiff for this unauthorized practice of law, his Notice of Appeal includes a sham "assignment" executed on July 23, 2018 of "all associated rights . . . as to ONE (1) SHARE in the Class Action settlement," from his parents to him for the explicit purpose to "confer Article III standing on Joseph Gielata to prosecute any objection or appeal in the Class Action."  ECF No. 849 at 4 (emphasis added); *see also id.* (further providing that Joseph Gielata "may reassign the assigned claim . . . at any time").

Apart from the dubious validity of this executory and revocable assignment, it does not make Joseph Gielata a class member.  *See Frankel v. Cole*, 490 F. App'x 407, 408 (2d Cir. 2013) (dismissing appeal of party who "lacked standing to object to the proposed settlement," "is plainly not a party to the litigation," and "is not a class member"); *see also Bank of Am. Corp. v. Pub. Pension Funds*, 772 F.3d 125, 129 n.4 (2d Cir. 2014) ("An objector-appellant must demonstrate his or her status as a class member in order to raise an objection in the district court and subsequently be considered a party for purposes of Rule 3 of the Federal Rules of Appellate Procedure*"); In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 U.S. App. at *23 (9th Cir. Mar. 2, 2017) (granting motion to dismiss appeal because appellant did not object before or at the fairness hearing and therefore could not appeal the district court's order approving the class action settlement).  Joseph Gielata filed the appeal on his behalf based on a purported partial assignment from Richard and Emelina Gielata, and that assignment occurred after the Fairness Hearing.  Even assuming the validity of the assignment (which it is not), because Joseph Gielata did not object on his own behalf at the Fairness Hearing, he cannot now appeal on his behalf this Court's order granting approval of the Settlement.  Gielata concedes that without a valid assignment he would

not have Article III standing to lodge an objection to the Settlement or pursue an appeal on his own behalf. See Surety Agreement for Appeal Costs and Partial Assignment of Claim, ECF. No. 849 ¶2 ("Whereas assigning a part of their claim would confer Article III standing on Joseph Gielata to prosecute any objection or appeal in the Class Action").

Moreover, the assignment is not valid because, by its own terms, Gielata's parents "retain the authority to act on behalf of Joseph Gielata in connection with their claim." Id. ¶3. *See U.S. v. Certain Funds on Deposit in Scudder Tax Free Inv. Account*, 998 F.2d 129, 132-33 (2d Cir. 1993) (an assignment is not valid where the assignor retains control over the things purportedly assigned or any authority to collect or power to revoke). Finally, the assignment likely constitutes champerty under N.Y. Judiciary Law § 489(1), which prohibits the "assignment of a bond . . . or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon." *See Justinian Capital SPC v. WestLB AG*, 28 N.Y.3d 160, 166 (N.Y. 2016) ("[W]hen the purchase of a security was made for the very purpose of bringing such suit [on those securities,] that is champerty. . . ."). In any event, as explained herein, the Gielatas' ruse cannot permit a son without an active law license to act as an attorney on anyone else's interests, including his parents.

As this Court is well-aware, and as described herein, the Gielatas have previously attacked a securities class action settlement to obtain personal benefits that do not serve the Class. Furthermore, their above-described objections to the Settlement are not only meritless, but involve no close or reasonable questions of law or fact. Thus, there is evidence of bad faith and vexatious conduct by the Gielatas. This evidence is compounded by the fact that the Gielatas are refusing to submit to an expedited briefing schedule on appeal—hardly a benefit to the Class. *See In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d at 155-56 (evidence of bad faith included objector's own

12

"history of vexatious conduct" and a "legal interest in the outcome of this proceeding" that is "de minimis").

### 4.     Sanctions Should Be Imposed Under 28 U.S.C. §1927 and the Court's Inherent Power

The imposition of sanctions on the Gielatas is also supported by 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.[3]  The statute's purpose is to "deter unnecessary delays in litigation." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). "Section 1927 authorizes the imposition of sanctions when there is a clear showing of bad faith on the part of the attorney. " *Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*, No. 01-cv-10135, 2003 U.S. Dist. LEXIS 19086, at *29 (S.D.N.Y. Oct. 23, 2003) (internal quotation marks and citation omitted). Bad faith "can be inferred when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Vacco ex rel. People of State of N.Y. v. Operation Rescue Nat'l*, 80 F.3d 64, 72 (2d Cir. 1996); *see also Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (a suit is brought in "bad faith" if it is "motivated by improper purposes such as harassment or delay.")

---

[3] Similarly, the Court may also impose sanctions pursuant to its "'inherent power' to award attorneys' fees against the offending party and his attorney when it determines a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997) (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985). Section 1927 applies only to attorneys, while the court's inherent power permits courts to sanction "an attorney, a party, or both." *Oliveri*, 803 F.2d at 1273.

13

Under the statute, "[b]ad faith conduct may include pursuing frivolous contentions, frivolous motions, or intentionally dilatory conduct." *Arclightz*, 2003 U.S. Dist. LEXIS 19086, at \*31 (internal quotations omitted). "Rarely will an offending party announce his bad faith," thus it must typically be inferred. *Reichman v. Neumann*, 553 F. Supp. 2d 307, 321 (S.D.N.Y. 2008). An attorney sanctioned under § 1927 may be required to pay the "excess costs, expenses, and attorneys' fees reasonably incurred" by the opposing party. 28 U.S.C. § 1927.

Courts have imposed Section 1927 sanctions on professional objectors whose purpose is to extort payments to the detriment of the Class, and this Court should do the same here. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 193 (3d Cir. 2002) (affirming § 1927 sanctions imposed on professional objectors); *In re Broadcom Corp. Sec. Litig.*, No. 01-cv-275, 2005 U.S. Dist. LEXIS 45656, at \*16 (C.D. Cal. Dec. 5, 2005) (imposing § 1927 sanctions on professional objector who interposed objections for the purpose of delaying the administration of the settlement); *In re Polyurethane Foam Antitrust Litig.*, No. 17-3361, 2017 U.S. App. LEXIS 25352, at \*3 (6th Cir. Dec. 14, 2017) (awarding sanctions under § 1927, equal to the interest that had been lost to the class, for preventing the disbursement of settlement monies through repetitive, frivolous challenges to appeal bond). Gielatas' objections are made for the sole purpose of delaying the administration of the Settlement and coercing a payment they are not entitled to receive. Even if their objections were not legally and factually infirm, sanctions would still be appropriate. Their conduct is precisely what Section 1927 is intended to deter.

The Gielatas' insistence on holding up an excellent recovery for investors on the basis of meritless objections, coupled with J. Gielatas' checkered history, smacks of the vexatiousness that Section 1927 is meant to deter. Accordingly, sanctions are eminently appropriate.

14

## 5.   Size of Sanctions

In this case, attorneys at Pomerantz incurred 206 hours and a lodestar of $156,305 preparing briefs responding to all six objections in this case. *See* Lieberman Decl. ¶4.  Using a conservative estimate, it is reasonable to estimate that at least 30% of this time, or $46,890, was attributable to responding to the Gielatas' objections.

Moreover, Lead Plaintiff requests that the Gielatas be sanctioned $20,000 for every month that distribution of the Settlement Fund is delayed due to their appeal of the Settlement. This is the amount that the Claims Administrator, Garden City Group, estimates at minimum would be the additional cost per month. See Lieberman Decl. Ex. D ¶4.

In addition, Lead Plaintiff requests an award of all reasonable costs and attorneys' fees incurred by Lead Counsel in responding to any appeal, and $300,000 in sanctions for Joseph Gielata's unauthorized practice of law in this District.

Finally, Rule 11 (c)(4) expressly authorizes "non-monetary" sanctions "to deter repetition of the conduct of comparable conduct by others similarly situated." Given J. Gielata's prior confession to misdemeanor theft, and the Delaware Supreme Court's reprimand, Lead Plaintiff requests that this matter be referred to the Delaware Bar Association for further investigation and appropriate sanctions, including J. Gielata's suspension or disbarment.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court impose sanctions in the amounts and manner as set forth above on Joseph and Richard Gielata for the frivolous and improperly motivated Objections filed in this case, the frivolous appeal, and Joseph Gielata's unauthorized practice of law.  This amount will compensate for the time spent defending against the objections, the harm to the Class caused by any delay in distribution of the Settlement, and to deter any further misconduct intended to interfere with the benefits achieved in this case

and others. Lead Plaintiff further requests that the Court refer Joseph Gielata's conduct to the Delaware Bar Association for appropriate disciplinary proceedings.

Dated: August 10, 2018

Respectfully submitted,

**POMERANTZ LLP**

Jeremy A. Lieberman
Marc I. Gross
Emma Gilmore
John A. Kehoe
Brenda Szydlo
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: 212-6612-1100

Patrick V. Dahlstrom
**POMERANTZ LLP**
10 North LaSalle
Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181

Jennifer Pafiti
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: 310-285-5330

Lead Counsel for Lead Plaintiff Universities
Superannuation Scheme Limited

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2018, I caused a true and correct copy of the foregoing to be served on counsel of record by electronically filing it with the Clerk of the Court using the ECF system, which will send notification of such filing to the registered participants; and I caused a true and correct copy of the foregoing to be served upon the following objectors by first class mail:

Richard Gielata
Emelina Gielata
100 Westbury Drive
Coraopolis, PA 15108

And upon the following objectors by first class mail and e-mail:

Joseph Gielata
7811 Eads Avenue #207
La Jolla, CA 92037
gielata@gmail.com

Mathis B. Bishop
Catherine O. Bishop
204 East Oakview Place
San Antonio, Texas 78209
mbishop170@gmail.com

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman