**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| IN RE PETROBRAS SECURITIES LITIGATION | : | Case No. 14-cv-9662 (JSR)<br><br>**CLASS ACTION** |
|---|---|---|

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR SANCTIONS AGAINST JOSHUA R. FURMAN**

**TABLE OF CONTENTS**

ARGUMENT ..... 1

I. This Court Expressly Retained Jurisdiction Over the Objectors' Actions ..... 1

A. Furman Should Be Sanctioned ..... 2

1. Sanctions are warranted under either Rule 11, 27 U.S.C. § 1927, or the Court's inherent power ..... 2

2. Furman's conduct is sanctionable ..... 5

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ATSI Communs., Inc. v. Shaar Fund, Ltd.*,
579 F.3d 143 (2d Cir. 2009)....................3

*Carr v. Tillery*,
591 F.3d 909 (7th Cir. 2010)....................9

*Cheng v. GAF Corp.*,
713 F.2d 886 (2d Cir. 1983)....................3

*Dennis v. Kellogg Co.*,
697 F.3d 858 (9th Cir. 2012)....................6

*Enmon v. Prospect Capital Corp.*,
675 F.3d 138 (2d Cir. 2012)....................4

*In re 60 E. 80th St. Equities*,
218 F.3d 109 (2d Cir. 2000)....................10

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
293 F.R.D. 459 (S.D.N.Y. 2013)....................6

*In re Polyurethane Foam Antitrust Litig.*,
168 F. Supp. 3d 985 (N.D. Ohio 2016)....................6

*In re SunPower Sec. Litig.*,
No. 09-cv-5473-RS (N.D. Cal.)....................7

*McConnell v. Critchlow*,
661 F.2d 116 (9th Cir. 1981)....................7

*Moore v. Time, Inc.*,
180 F.3d 463 (2d Cir. 1999) (per curiam)....................10

*Public Employees' Retirement System of Mississipi v. Merrill Lynch & Co.*
No. 08-cv-10841-JSR-JLC (S.D.N.Y.)....................7

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)....................6

*Schoenberg v. Shapolsky Publishers, Inc.*,
971 F.2d 926 (2d Cir. 1992)....................3, 4

*Simon & Flynn, Inc. v. Time, Inc.*,
513 F.2d 832 (2d Cir. 1975)....................7

*Ted Lapidus, S.A. v. Vann*,
112 F.3d 91 (2d Cir. 1997)....................3

*United States v. Blodgett*,
709 F.2d 608 (9th Cir. 1983) ....................4, 10

*Wham-O, Inc. v Sefchick*,
No. RG07329828, 2008 WL 6971631 (Cal. Super. Ct. Feb. 28, 2008)....................10

**Statutes**

27 U.S.C. § 1927.................... *passim*

**Rules**

Rule 11.................... *passim*

Lead Plaintiff respectfully submits this Reply Memorandum of Law in Further Support of Lead Plaintiff's ("Plaintiff") Motion for Sanctions Against Joshua R. Furman (Dkt. No. 856).

## ARGUMENT

Furman's Opposition is an utterly transparent attempt to extort a payment by frivolously delaying through a bogus appeal the distribution of a historic $3 billion dollar settlement approved by a highly-experienced federal judge after two hearings and multiple briefings (neither attended by Furman). To date, over 250,000 injured investors have filed claims to collect money and redress their injuries. Furman's Opposition *proves* the merits of Plaintiff's motion for sanctions because Furman *withdrew* four claims, effectively admitting they lacked any merit. Plaintiff's Rule 11 correspondence to Furman served exactly the purpose it intended, *i.e.*, to have meritless claims dropped by vexatious litigants so that federal courts are not burdened by frivolous litigation and due process is served. These considerations are particularly weighty here, in light of the enormity of the Settlement and the hundreds of thousands of aggrieved investors that will be denied relief as a result of Furman's machinations. The only claim Furman intends to pursue on appeal (regarding *cy pres*) is a fictional claim because even Furman, in his original objections to the Settlement, ***mentioned cy pres in passing in the introduction but not in the substantive argument section***, thereby acknowledging the frivolity of such a claim. Further underscoring the vexatious nature of his appeal, Furman has consistently refused to agree to the multiple proposals of the parties permitting Furman to preserve his appeal while allowing harmed shareholders to expeditiously receive their Settlement monies.

### I. This Court Expressly Retained Jurisdiction Over the Objectors' Actions

Furman's Opposition fails to acknowledge that the Court expressly retained jurisdiction over the actions of the Objectors. At the Final Approval Hearing held on June 4, 2018, this Court recognized that, in the context of big Settlements like the one here, there are "so-called professional

objectors . . . people who are seeking to extort monies on their own private behalf, not because they expect that their objections will receive any weight at the district court level ***but because they can delay the entire process***, ***can delay the doing of justice, can delay the payment to victims*** of monies that in some cases they sorely need and that, in any event, they're entitled to for months or even years on end." June 4, 2018, Hr'g Tr. at 55:23-56:6. Accordingly, the Court expressly retained jurisdiction over the objectors after a final ruling on the fairness and adequacy of the Settlement:

> ***I have expressly retained jurisdiction in this case over the objectors even after I issue my final rulings on the matters before me today*** if I am convinced that some discovery is needed because of extortionate motivations on the part of any of those objectors.

*Id*. at 56:7-11. That sentiment was echoed in the Court's Opinion and Order approving the Settlement: Class Plaintiffs have also accused certain objectors of having improper motives including, in the case of Bueno and Gielata, allegedly seeking to extort personal

> payments through the device of ***frivolous appeals.*** . . . As Class Plaintiffs do not currently seek any specific relief at the district court level, and the allegations of extortion, if true, will only become evident on appeal, the Court sees no need to reach these issues at this time.

Dkt. No. 834, at 4 n.5.

**A. Furman Should Be Sanctioned**

**1. Sanctions are warranted under either Rule 11, 27 U.S.C. § 1927, or the Court's inherent power**

Significantly, as explained above, the Court expressly retained jurisdiction over the Objectors' actions after the issuance of its Order and Judgment approving the Settlement. That is because the Court recognized the importance of the prompt administration of justice in the prompt distribution of the multi-billion-dollar Settlement Fund to hundreds of thousands of claimants. Therefore, because the Court specifically retained jurisdiction of this matter with respect to the

Rule 11 issues raised by Plaintiff, the Rule 11 Motion is not rendered untimely by issuance of the Final Order and Judgment. Moreover, the Court can *sua sponte* issue sanctions under Rule 11 pursuant to its retention of jurisdiction over the matter. *See* F.R.C.P. 11(c)(3); *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) ("When sanctions are initiated by a court *sua sponte* (under Rule 11(c)(3)), no []such safe harbor is afforded.").

Citing two decades-old cases without any recitation of the facts involved, Furman also argues that § 1927 sanctions are not available based on the filing of an appeal. (Opp. at 20.)[1] But, as the Second Circuit Court of Appeals recently reinforced, those cases stand for no such rigid rule, and they are readily distinguishable from the facts in this settled class action litigation, where Furman's goal is to thwart the distribution of the Settlement for a nefarious motive. *Cheng* concerned an individual employment action, where an appellant sought to disqualify the appellee's attorney. In reversing a sanctions award under Section 1927, the Second Circuit explicitly found that no delay was caused by appellant's appeal because the underlying litigation and discovery proceeded independently of the appeal. 713 F.2d at 890; *see also Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 95 (2d Cir. 1997) (noting that "[o]ur decision in *Cheng* might easily have been limited to its 'unusual facts.'" (citing *Schoenberg*)). *Schoenberg* concerned an author suing a publisher for copyright infringement. 971 F.2d at 928. Appellant appealed to the Second Circuit after the district court issued an order to show cause for why he failed to comply with the court's discovery order. *Id.* at 929-30. The district court also refused to address defendant's motion to dismiss until they responded to discovery requests. *Id.* Moreover, the non-party appellant (the former attorney of defendant) did not have an opportunity to be heard on the record concerning the sanctions

[1] Opp. at 20, citing *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 935 (2d Cir. 1992), citing *Cheng v. GAF Corp.*, 713 F.2d 886, 891-92 (2d Cir. 1983).

motion. *Id.* at 936. The Second Circuit overturned the sanctions order, finding that the district court abused its discretion by forbidding defendants to file their motion to dismiss and violated non-party appellant's due process rights by not allowing him to be heard concerning the sanctions motion. *Id.* at 935-36. Accordingly, neither *Chen* nor *Schoenberg* have any applicability here, where a federal judge recognized the importance of the prompt administration of justice in the timely distribution of a mega-settlement to hundreds of thousands of claimants, thereby expressly retaining jurisdiction over the Objectors' actions.

The Second Circuit more recently ruled that ***Cheng "never established a bright-line rule prohibiting"*** the district courts from imposing sanctions under § 1927 for frivolous appeals. *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 146 (2d Cir. 2012) (emphasis added).[2] In *Enmon*, the Second Circuit *affirmed the district court's imposition of sanctions* under its inherent powers and § 1927 for a voluntarily withdrawn frivolous appeal filed in bad faith with dilatory motive. *Id*. at 146-47 (finding that "the record supports the court's finding that Arnold & Itkin's voluntarily withdrawn appeals were taken purely for dilatory and resource-draining reasons relating to the district court litigation.").[3]

[2] Other Circuits agree. *See, e.g.*, *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) ("The district court's authority to sanction counsel [under § 1927 and its inherent powers in connection with filing a frivolous appeal] is undoubted.").

[3] The Second Circuit explained the "salutary effect overall" of a district court's ability to impose such sanctions. "First, appellees contesting frivolous appeals may be deterred from consenting to voluntary dismissal if it means surrendering the chance to recover attorneys' fees before the district court. Second, we have no jurisdiction once an appeal has been voluntarily dismissed, and it is then entirely in the hands of the district court to monitor a party's conduct. Prohibiting district courts from imposing sanctions in these unique circumstances might encourage the malicious law firm to manipulate the appeals process like a yo-yo." *Id*. at 147. These salutary concerns are particularly acute here, where Furman is delaying the distribution of the Settlement Fund based on a bogus claim.

### 2. Furman's conduct is sanctionable

Plaintiff's sanctions motion proved that Furman's main arguments contained in his opposition to the Settlement were meritless because Furman withdrew those claims, *i.e.*, attacks on the Class Notice, the Settlement Amount, the Plan of Allocation, and the Compensatory Awards. *See* Dkt. 857, at 2-4. Undeterred, on July 31, 2018, Furman filed a broad Notice of Appeal that included everything but the kitchen sink, appealing "from the Order and Final Judgement entered in this action on the 2d day of July 2018 [], and from all rulings and abstentions from ruling of the District Court that are merged into said order and judgment." (Dkt. 850, at 2.) Faced with the deadline for Rule 11's statutory safe harbor provision, on August 7, 2018, Furman filed a Notice of Partial Withdrawal of Objections to the Settlement, abandoning the meritless attacks on the Class Notice, the Settlement Amount, the Plan of Allocation, and the Compensatory Awards. (Dkt. No. 853.) But pressing on with the appeal, Furman concocted another patently unmeritorious argument: "Bueno does not withdraw his objection based on the identity of the *cy pres* recipient, the failure of the parties advocating for the settlement to identify the *cy pres* recipient, and his appeal pertaining to the Court's abstention from ruling on the identity of the *cy pres* recipient, as well as all issues reasonably related to the identity of the *cy pres* recipient and the *cy pres* distribution." *Id*. at 2. The *cy pres* argument is so frivolous that even Furman did not give it much weight when he initially opposed the Settlement. In that opposition, Furman noted *cy pres* in passing in the introduction section, without providing any legal support, and did not even argue *cy pres* in the substantive argument section of his brief. (Dkt. No. 803, at 4, 8-13.)[4]

[4] Furman claims that *cy pres* was not expressly mentioned in Plaintiff's safe harbor notice, but *cy pres* is a red herring that, clearly if Furman had included it in the substantive argument section of his opposition, it would have been expressly referenced by Plaintiff in their sanctions motion. Of course, no safe harbor applies to sanctions under § 1927, Rule 11(c)(3), or to the Court's inherent power to impose sanctions.

As explained in Plaintiff's opening brief supporting sanctions, the *cy pres* argument advanced by Furman is utterly frivolous. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 461-64, 466 (S.D.N.Y. 2013) ("there was no legal authority to support the argument; no Court in the Circuit has ever made identifying the organization to receive the residual funds a condition precedent to a Settlement approval. 'Of course,' as the Court in *Masters v. Wilhelmina Model Agency, Inc.* noted, 'it [is] not certain at the time [of] the Agreement . . . whether there [will] be [e]xcess [f]unds after all distributions are made pursuant to the Plan of Allocation."); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (*cy pres* "becomes ripe only if the entire settlement fund is not distributed to class members. ... That trigger point has not been reached"). *See also* Plaintiff's opening brief, Dkt. No. 857, at 8 (collecting cases). In its opening brief, Plaintiff also explained that ***the Court recognized the frivolous nature of Furman's cy pres argument*** during a conference call held with the parties and Furman on August 1, 2018. At that time, *for the first time Furman provided a purported legal basis* for his *cy pres* argument: an appeal in the Supreme Court, *In re Google Referrer Header Privacy Litigation*. After Plaintiff exposed the total inapplicability of that appeal, which involves a rare cy-pres-only settlement, in his Opposition Furman relegated the *Google* appeal to a footnote. (Dkt. 880, at 8 n.3 (*sub nom. Frank v. Goas*).) Instead, Furman now hangs his hat entirely on *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012), but *Dennis* has no application here. There, class counsel represented that approximately 70% of the common fund would be left over for *cy pres* distribution, and the settlement did not "set[] forth any limiting restriction on those [*cy pres*] recipients, other than characterizing them as charities that feed the indigent." *Id*. at 861; *see also In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1003 (N.D. Ohio 2016) (distinguishing *Dennis*). As the Second Circuit warns, "the decision to appeal should be a considered one, taking into account

what the district judge has said, not a knee-jerk-reaction to every unfavorable ruling." *Simon & Flynn, Inc. v. Time, Inc.*, 513 F.2d 832, 835 (2d Cir. 1975); *see similarly McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981) (attorney sanctioned for failure to exclude from appeal claims against individual defendants for which there was no basis for appeal).

In addition to being a *per se* immaterial part of the Settlement Agreement (Dkt. No. 761 ¶22), not only is a *cy pres* distribution far from certain, it is unlikely. The Stipulation of Settlement provides that the "Settlement Administrator will use its best efforts to administer and distribute the entirety of the Net Settlement Fund" to Class Members to the extent that it is economically feasible. (Dkt. No. 767-1 ¶ 34.) It further provides that if there is any balance remaining in the Settlement Fund it shall be redistributed to claimants that have already cashed checks that would be entitled to a redistribution of at least $10.00. *Id*. Within that framework, Class Plaintiffs have a number of means at their disposal to liquidate the Settlement Fund without making a *cy pres* distribution. First, Class Plaintiffs can request that the Court order distribution of any unclaimed monies to those Class members that filed late claims which were rejected. Indeed, in *Public Employees' Retirement System of Mississipi v. Merrill Lynch & Co.* No. 08-cv-10841-JSR-JLC (S.D.N.Y.), this Court authorized just such a proposal from plaintiffs in lieu of making a *cy pres* distribution, fully exhausting the Settlement Fund. *See* Declaration of Jeremy A. Lieberman in Further Support of Plaintiff's Motion for Sanctions Against Joshua R. Furman, Joseph Gielata, and Richard Gielata (Lieberman Decl.) Ex. A ¶3 and Ex. 1 thereto. In *In re SunPower Sec. Litig.*, No. 09-cv-5473-RS (N.D. Cal.), Judge Seaborg similarly authorized distribution to late claimants, fully exhausting the settlement fund. Ex. A ¶4 and Ex. 2 thereto. Other examples abound. Ex. A ¶5 and Exs. 3-5 thereto. Alternatively, Class Plaintiffs can simply request that this Court order that any remaining Settlement Funds be distributed to Class members that cashed their initial checks and who will

receive a distribution of more than $10.00. Either mechanism is within Class Plaintiffs' discretion to propose to the Court, ensuring that any remaining Settlement Funds revert to defrauded shareholders, and avoiding the *cy pres* issue altogether. Indeed, given the "controversy" triggered by the *cy pres* alternative, Class Plaintiffs intend to do just that. Accordingly, Furman's appeal is laid bare as a solution in search of a problem or, put more bluntly, an attorney in search of a fee.[5]

Furman's refusal to consider the multiple proposals advanced by the parties to allow the distribution of the Settlement to proceed while preserving his right to object or appeal any *cy pres* award demonstrates that his appeal has little to do with the merits, and everything to do with obstruction. While Furman has protested strenuously (only on appeal) the *cy pres* provision, he has failed to offer to either the Court or Class Plaintiffs his thoughts as to who the *cy pres* recipient should be. Indeed, on August 7, 2018, Mr. Lieberman asked Furman to make a proposal as to who he and his client believed were appropriate *cy pres* recipients. Furman replied that "he will consider the recipients that might be appropriate" and revert. Lieberman Decl. Ex. B. No suggestions from Furman or Bueno have been forthcoming in the more than three weeks since that correspondence. It is difficult to fathom how Furman can spend months trying to upend a historic $3 billion settlement on an issue which he fails to have even "considered."

Moreover, as noted in Defendants' Response to Class Plaintiffs' Motion for an Appeal Bond, on August 13, 2018, the Petrobras Defendants requested that Furman execute a Stipulation acknowledging that his appeal is limited to the Plan of Allocation and distribution of the Net Settlement Fund, and would not impact the finality of the Settlement or delay the distribution to Class Members. (Dkt. No. 879.) Grasping that such a Stipulation would preclude his ability to

[5] Furman has a history as a serial objector. *See* Dkt. No. 860 at 17-18; *see also* Lead Plaintiffs' Reply in Support of Its Motion for Appeal Bond at 5-6.

hold hostage the Settlement and attendant award of attorneys' fees, Furman flatly refused. In his Opposition, Furman argued that he could not enter into such a Stipulation and needed to raise this issue on appeal now as opposed to at the time Class Plaintiffs' made a *cy pres* motion because "[i]f objection to the identity of the *cy pres* recipient was raised later, class counsel would assuredly argue the matter was waived by failing to pursue it now." Both Class Plaintiffs and Defendants then offered to stipulate that the deferral of Furman's appeal until a *cy pres* motion was actually made is not a waiver. Lieberman Decl. Ex. C. Moreover, Class Plaintiffs further offered that they would withdraw their Motions for an Appeal Bond and Sanctions if such a stipulation were executed, thereby demonstrating that Furman was not simply trying to obstruct the Settlement. *See id*. True to form, Furman balked, now arguing that the offered Stipulation failed to provide a procedure for Class Members to object to the *cy pres* recipient. Trying yet again to satisfy Furman's latest gripe, Class Plaintiffs and Defendants offered a mechanism whereby Class Plaintiffs would file a motion requesting a *cy pres* distribution and recipient, and any Class Member could object (and ultimately appeal) said recipient. Lieberman Decl. Ex. D. Furman again refused. Lieberman Decl. Ex. E. Simply put, Furman will not agree to any mechanism whereby his *cy pres* issue can be deferred until such time that a motion is made, because that would allow the Settlement and distribution to proceed and deprive Furman of his chance to extort attorneys' fees. It is hard to fathom a more extreme example of vexatious conduct.

Under these circumstances, Furman should be sanctioned under either Rule 11, §1927, and/or the Court's inherent power, which a court can exercise *sua sponte*.[6] The imposition of

[6] *Carr v. Tillery*, 591 F.3d 909, 920 (7th Cir. 2010) ("We see no obstacle therefore to invoking the common law ground for sanctions for misconduct in litigation, especially since the common law principle, like its statutory counterpart, is as much concerned with protecting the courts from being overwhelmed by baseless litigation as with protecting litigants from harassment.").

sanctions under § 1927 requires a finding that counsel acted in bad faith, *In re 60 E. 80th St. Equities*, 218 F.3d 109, 115 (2d Cir. 2000), while those imposed under a court's inherent power require a finding that counsel's conduct "constituted or was tantamount to bad faith," *Roadway*, 447 U.S. at 767. "[B]ad faith may be inferred where the action is completely without merit." *80th St. Equities*, 218 F.3d at 116. The Second Circuit held that "an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that ***they must have been undertaken for some improper purpose such as delay***." *Id*. at 115 (citations omitted) (emphasis supplied); *accord*, *Blodgett*, 709 F.2d at 610 (a "district court ha[s] the power to sanction counsel for filing a frivolous appeal in bad faith, and that filing solely for purposes of delay constitutes bad faith."). The fact that an attorney was sanctioned in the past may also be considered in awarding sanctions. *See Moore v. Time, Inc.*, 180 F.3d 463, 463-64 (2d Cir. 1999) (per curiam) (sanctioning a *pro se* litigant for pursuing an appeal despite a magistrate judge's "strong admonition that his complaint presented no non-frivolous claims," the fact that his appellate brief had no merit to it, and since "this is not the first frivolous appeal Moore has brought to this court."). Here, while Furman claims that he was never sanctioned for pursuing discovery conduct (Opp. at 4), he has in fact been sanctioned for precisely that conduct. *See Wham-O, Inc. v Sefchick*, No. RG07329828, 2008 WL 6971631 (Cal. Super. Ct. Feb. 28, 2008). In sum, sanctions against Furman are particularly applicable in this extraordinary factual setting, where his vexatious conduct and frivolous appeal thwart the distribution to over two hundred thousand claimants ready to collect from the multi-billion-dollar Settlement Fund, which is well in excess of the recovery that the opt-outs secured on their own.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Sanctions should be granted.

Dated: August 30, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Marc I. Gross
Emma Gilmore
John A. Kehoe
Brenda Szydlo
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: 212-6612-1100
Facsimile: 917-463-1044

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 North LaSalle
Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile: 312-229-8811

**POMERANTZ LLP**
Jennifer Pafiti
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: 310-285-5330

Counsel for Class Representatives
Universities Superannuation Scheme Limited,
North Carolina Department of State
Treasurer, and the Settlement Class

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re Petrobras Securities Litigation | 14-CV-9662 (JSR) |
|---|---|

**CERTIFICATE OF SERVICE**

I, Jeremy A. Lieberman, hereby certify that on August 30, 2018 I caused a copy of the foregoing to be served upon all counsel by ECF and to be served upon the following by first class mail:

| | |
|---|---|
| Mathis B. Bishop<br>Catherine O. Bishop<br>204 East Oakview Place<br>San Antonio, Texas 78209 | Joseph Gielata<br>7811 Eads Avenue #207<br>La Jolla, CA 92037<br>Phone: 302-507-4400<br>Email: gielata@gmail.com |
| Richard and Emelina Gielata<br>100 Westbury Drive<br>Coraopolis, PA 15108 | Joshua R. Furman<br>JOSHUA R. FURMAN LAW CORP.<br>14724 Ventura Boulevard, Suite 509<br>Sherman Oaks, California 91403<br>Phone: 818-646-4300<br>Email: jrf@furmanlawyers.com<br><br>(attorney for Spencer R. Bueno) |

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: August 30, 2018
New York, New York

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Emma Gilmore
Brenda Szydlo
Jennifer Banner Sobers
600 Third Avenue

20th Floor
New York, New York 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
egilmore@pomlaw.com
bszydlo@pomlaw.com
jbsobers@pomlaw.com

***Counsel for Lead Plaintiff***