UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PETROBRAS SECURITIES LITIGATION | Case No. 14-cv-9662 (JSR)<br><br>CLASS ACTION |

**REDACTED**

**LEAD PLAINTIFF'S REPLY IN SUPPORT OF ITS<br>MOTION FOR APPEAL BONDS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT .......................................................................................................................1

I.     BUENO AND FURMAN MUST POST AN APPEAL BOND .........................................1

     A.     Bueno's and Furman's Financial Abilities Favor Imposing An Appeal Bond ...................................................................................................................1

     B.     The Risk that Bueno and Furman Would Not Pay Is High......................................3

     C.     Bueno's *Cy Pres* Objection Lacks Merit for Reasons Still Unrebutted...................3

     D.     Bueno's and Furman's Appeal Is Vexatious and Was Filed in Bad Faith...............5

II.     THE GIELATAS MUST POST AN APPEAL BOND .......................................................6

     A.     The Gielatas' Appeal Lacks Merit............................................................................6

     B.     The Gielatas' Appeal Is Vexatious and Was Filed in Bad Faith .............................9

III.     THE COURT HAS DISCRETION TO ORDER AN APPROPRIATE SIZED BOND ..................................................................................................................................9

CONCLUSION...................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adsani v. Miller*,
　139 F.3d 67 (2d Cir. 1998) ................................................................................................ 6, 7, 9

*In re AIG, Inc. Sec. Litig.*,
　689 F.3d 229 (2d Cir. 2012) ........................................................................................................ 7

*Ashmore v. CGI Grp., Inc.*,
　860 F.3d 80 (2d Cir. 2017) ......................................................................................................... 4

*Baker v. Urban Outfitters*,
　2006 WL 3635392 (S.D.N.Y. Dec. 12, 2006) ............................................................................ 2

*Berry v. Deutsche Bank Tr. Co. Am.*,
　632 F. Supp. 2d 300 (S.D.N.Y. 2009) .................................................................................... 2, 6

*Cody v. SoulCycle, Inc.*,
　2017 WL 8811115 (C.D. Cal. Dec. 7, 2017) ............................................................................. 2

*Dennis v. Kellogg Co.*,
　697 F.3d 858 (9th Cir. 2012) .................................................................................................. 3, 4

*In re Elec. Books Antitrust Litig.*,
　639 F. App'x 724 (2d Cir. 2016) ................................................................................................ 8

*Gemelas v. Dannon Co., Inc.*,
　2010 WL 3703811 (N.D. Ohio Aug. 31, 2010) ......................................................................... 2

*Gielata v. Eisenhofer*,
　No. 11-442 (D.N.H.) .................................................................................................................. 9

*Google Buzz Priv. Litig.*
　No. 11-16642 (9th Cir.) .............................................................................................................. 5

*In re I.P.O. Sec. Litig.*,
　728 F. Supp. 2d 289 (S.D.N.Y. 2010) .................................................................................... 2, 6

*Low v. Trump University, LLC*,
　2017 WL 2655300 (S.D. Cal. Jun. 19, 2017) ............................................................................. 2

*Morrison v. Nat'l Australia Bank Ltd.*,
　561 U.S. 247 (2010) ................................................................................................................... 7

*Pappas v. Naked Juice Co. of Glendora*,
    No. 14-55023 (9th Cir.) ..................................................................................................5

*Ransmeier v. Mariani*,
    718 F.3d 64 (2d Cir. 2013)............................................................................................2

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................................4

*Schlesinger v Ticketmaster*,
    2012 WL 4739283 (Cal. Super. Sep. 26, 2012).......................................................5

*In re Sony PS3 "Other OS" Litig.*,
    No. 10-1811 (N.D. Cal. 2017) ......................................................................................5

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)..........................................................................................7

*Wal-Mart Stores v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................................8

*Young v. Conway*,
    715 F.3d 79 (2d Cir. 2013)............................................................................................7

**Rules**

S.D.N.Y. Local Rule 1.5(5) ....................................................................................................9

**Other Authority**

Wright & Miller, 16A Fed. Prac. & Proc. § 3953 (4th ed.) ............................................10

Court-appointed Lead Plaintiff Universities Superannuation Scheme Ltd., acting as sole corporate trustee of Universities Superannuation Scheme ("Plaintiff" or "USS"), respectfully submits this Reply in support of its Motion for an Appeal Bond (ECF No. 860, "Bond Br.").

## PRELIMINARY STATEMENT

There are only two barriers to distributing this historic $3 billion Settlement to aggrieved Class members. One is a professional objector who abandoned his entire thirteen page objection except for one paragraph on a patently unripe – and immaterial – *cy pres* issue. The other has engaged in criminal conduct and made a mockery of ethics rules and this Court's Individual Rules. Neither had the respect to defend their objections at the Fairness Hearing. A $3,030,000 bond, plus interest, would provide appropriate security for their decisions to delay administration of a Settlement one thousand times that amount with meritless and obstructionist appeals.

Spencer Bueno's *cy pres* objection is neither legally supported, nor beneficial to the Class when compared to the recovery it will delay, nor even justiciable. ECF No. 881 ("Bueno Opp."). Bueno's attorney, Furman, is a professional objector whose defense of his practice leaves out more than it includes. They fail to justify delaying the Settlement rather than simply waiting for the Court's final order on *cy pres* and, if necessary, appealing then.

Richard and Emelina Gielata are objectors represented by their son, Joseph (not an active member of any bar), whose objections on adequacy and definition of the Settlement Class were fully addressed by this Court's Order. ECF No. 882 ("Gielata Opp." & "Gielata Decl.")

## ARGUMENT

I. **BUENO AND FURMAN MUST POST AN APPEAL BOND**

    A. **Bueno's and Furman's Financial Abilities Favor Imposing An Appeal Bond**

Bueno identifies approximately $3,000 of personal assets. ECF No. 881-1 ("Bueno Decl.") ¶¶ 3-7. However, he never states that these are *all* of his assets. For instance, he

mentions two trading accounts but no bank accounts. *Id.* Indeed, his declaration evidences that he has other, undisclosed assets when he affirmed: "I am willing and ***able to pay court costs*** of $2,000 ***to $5,000***" despite listing assets totaling no more than $3,000. Bueno Decl., ¶2. Nor is his account supported by any documentation (*see id.*), and the Court is not obligated to simply take Bueno at his word. *See Low v. Trump University, LLC*, 2017 WL 2655300, at *3 (S.D. Cal. Jun. 19, 2017) (objector failed to demonstrate inability to pay appeal bond, despite denying "her ability to pay"). Bueno has still not shown he cannot post an appropriate bond, and thus his ability to pay may be presumed. *In re I.P.O. Sec. Litig.*, 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010) (presuming objectors' ability to post bond absent evidence that they cannot post one); *Berry v. Deutsche Bank Tr. Co. Am.*, 632 F. Supp. 2d 300, 307–08 (S.D.N.Y. 2009) (appellant's unsubstantiated claim of no assets "d[id] not weigh in favor of denial of a bond").

Bueno's attorney Furman concedes ***his own*** ability to pay the appropriately sized appeal bond. That Furman is a professional objector – who will likely be personally liable for the Rule 38 sanctions and costs that the appeal bond is meant to secure – weighs in favor of finding he has the ability to bond their appeal. *See Gemelas v. Dannon Co., Inc.*, 2010 WL 3703811 (N.D. Ohio Aug. 31, 2010) (finding that being a serial class action objector evidenced a financial ability to pay appeal bond); *cf. Cody v. SoulCycle, Inc.*, 2017 WL 8811115, at *2 (C.D. Cal. Dec. 7, 2017) (objector's ability to pay appeal bond was supported by a "history of objecting to class action settlements, and then appealing"). Simply put, Furman's assets and income are just as relevant as Bueno's. *See Ransmeier v. Mariani*, 718 F.3d 64 (2d Cir. 2013) (imposing sanctions against both appellant and attorney under Rule 38, *inter alia*). Yet Furman has submitted no financial information, conceding his ability to pay. *See Baker v. Urban Outfitters*, 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006) (appellant "has submitted no financial information, and thus . . . not arguing that he does not have the financial ability to post a bond"). This factor

strongly favors requiring a bond before their delay strategy can continue.

### B. The Risk that Bueno and Furman Would Not Pay Is High

Bueno concedes his out-of-District domicile "support[s] a finding that there is a risk of non-payment." Bueno Opp. at 5. Furman resides outside the District, too. Bond Br. at 13. Bueno adds only a personal "guarantee that the costs on appeal will be paid," without specifying ***how***. *Id.* at 9; *but see* Bueno Decl. ¶¶ 3-7 & 11 (listing only $3,000 and no wages). Yet his willingness to pay extends just to "$2,000 to $5,000." *Id*. ¶2. Thus, Bueno has either promised to pay an amount he cannot afford, or is unwilling to pay even a court-ordered amount over $5,000. Either way, the risk Bueno would not pay is high and weighs in favor of requiring him to post a bond.

### C. Bueno's *Cy Pres* Objection Lacks Merit for Reasons Still Unrebutted

Despite filing a 13-page "kitchen sink" of objections, Bueno abandoned all but his one-paragraph *cy pres* objection, bereft of any legal citation, after facing a Rule 11 motion. ECF No. 803 at 4.[1] Bueno concedes his argument is based entirely on nonbinding "law under the Ninth Circuit's holding in *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) – simply to "avoid a circuit split." Bueno Opp. at 6. In fact, his *cy pres* objections are meritless.

*Dennis* is facially inapplicable and does not hold what Bueno claims. There, the Ninth Circuit examined a *cy pres* provision which was the largest consideration of the settlement: $5.5 million in defendant's products for an unnamed charity that was guaranteed to trigger – unlike the Settlement here, which sets nothing aside and of which the *cy pres* provision is an expressly immaterial term (ECF No. 767-1, ¶ 23). Moreover, what the Ninth Circuit found fatal was that any *cy pres* charity had to be one "that feeds the indigent," which was "divorced from the

---

[1] Bueno specifically disclaimed any appeal of this Court's determination regarding "Class counsel['s] . . . fee submission and domesticity issued [sic] under *Morrison,*" stating unequivocally: "These issues have nothing to do with Bueno's appeal." Bueno Opp. at 16-17 n.15.

concerns embodied in **consumer protection** laws" at issue in the case. *Dennis*, 697 F.3d at 866.[2] In stark contrast, the *cy pres* provision here was stipulated by the parties to be immaterial, necessarily involves only immaterial amounts that cannot be otherwise economically distributed, and may very well not trigger at all. Furman does not address these critical distinctions.

Indeed, the Ninth Circuit would also find Bueno's appeal nonjusticiable, belying any circuit split. It has precisely held that an objector's *cy pres* challenge "becomes ripe ***only if*** the entire settlement fund is not distributed to class members." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). *Rodriguez* found three facts dispositive for the lack of ripeness, ***all of which are present here***: the "trigger point [of full distribution] has not been reached; no *cy pres* disbursement is imminent; and the fund in this case may well be depleted before *cy pres* kicks in." *Id*. Bueno misunderstands his sole basis for his appeal, rendering it meritless.[3]

Importantly, the Court has not even ruled on *cy pres*, and may never need to. *See* ECF No. 834 ("Final Appr. Ord.") at 23 (reserving judgment on *cy pres* and retaining jurisdiction).[4] Bueno does not rebut Plaintiff's argument that, on *cy pres*, the Court's order was "'not final . . . and therefore [is] not immediately appealable.'" Bond Br. at 16 (quoting *Ashmore v. CGI Grp., Inc.*, 860 F.3d 80, 84 (2d Cir. 2017). Bueno has not explained why he does not simply wait until any *cy pres* issues ripen, to avoid delaying the Settlement and costing the Class, if his motives are so pure. As a result, the Court must question what his true motivation is.

---

[2] Bueno's contention that *Dennis* "held that the identity of the *cy pres* recipient must be determined" (Bueno Opp. at 18) is wildly inaccurate. Though *Dennis* did involve a similar "provision that the charities will be identified at a later date," ***that was not part of its holding***. *Dennis*, 697 F.3d at 867.

[3] Bueno and Furman cannot claim ignorance of *Rodriguez*. It is distinguished by the *Dennis* decision on which their appeal apparently hangs. *See Dennis*, 697 F.3d at 864 ("*Rodriguez* is distinguishable" because, in *Dennis*, the claim submission deadline was "long since past" leaving "almost $2 million in the settlement fund for *cy pres*"). Plaintiff also cited *Rodriguez* in its brief. Bond Br. at 14.

[4] Bueno was dismissive of "the Court's assurance that this issue may be litigated later" (Bueno Opp. at 19), but provides no reason why the Court's Order should not be sufficient.

### D. Bueno's and Furman's Appeal Is Vexatious and Was Filed in Bad Faith

Bueno's attorney Furman has a history as a serial objector, documented in Plaintiff's motion. Bond Br. at 17-18. This evidence of bad faith was confirmed (as set out more fully in Plaintiff's Reply in Support of Sanctions Against Bueno and Furman) when Bueno and Furman refused many offers to stipulate to preserve their future right to appeal if this one was dropped.

Their brief makes no effort to explain Furman's vexatious appeal in *Pappas v. Naked Juice Co. of Glendora*, which Plaintiff highlighted as one he voluntarily dismissed ▓▓▓▓▓▓▓▓▓▓ without benefit to the class. No. 14-55023, Doc. No. 12 (9th Cir. Apr. 21, 2014). Furman's voluntarily dismissed appeal in *Google Buzz Priv. Litig.* – also for ▓▓▓▓ and again without benefitting the class – is also revealing. No. 11-16642, Doc. No. 10 (9th Cir. Nov. 18, 2011). Furman defends it by touting: "the trial court changed the *cy pres* distribution in *In re Google Buzz* in line with the changes requested by Bueno's counsel." Bueno Opp. at 2. But if that were the case, ***why then appeal it?*** And why then voluntarily dismiss the same appeal for ▓▓▓▓▓▓▓▓▓▓? His brief does not address his troubling conduct.[5] Equally telling is Furman's description of his track record, which he calls "pristine," "never [having] been found to have filed a frivolous appeal or admonished for any litigation conduct, . . . or even discovery conduct." Bueno Opp. at 4 & 12. But ***Furman has been sanctioned*** for precisely such conduct. *See Wham-O, Inc. v Sefchick*, 2008 WL 6971631 (Cal. Super. Feb. 28, 2008) ("Plaintiff's request for monetary sanctions in connection with the motion [to compel] is GRANTED IN PART. . . . SLB and its ***counsel***

---

[5] Bueno's lack of prior objections (Bueno Opp. at 12) is irrelevant given ***Furman's*** history of bad faith. The cases Furman cited in defense, where he purports to have scuttled bad settlements (*id.* at 2 & n.1), are not exculpatory – neither ***even mentions*** his objections. *See Schlesinger v Ticketmaster*, 2012 WL 4739283 (Cal. Super. Sep. 26, 2012); *In re Sony PS3 "Other OS" Litig.*, No. 10-1811 (N.D. Cal. 2017), ECF No. 300.

***Joshua R. Furman shall pay sanctions*** to Plaintiff and its counsel in the total amount of $2,000.00."). Furman's history suggests that his appeal here was not taken in good faith, either.

## II.     THE GIELATAS MUST POST AN APPEAL BOND

Other than a conclusory statement that "hardly anyone would be capable of paying" the appropriate appeal bond in this case, the Gielatas do not dispute their financial ability to pay it. *See* Gielata Opp. at 15. Indeed, the Gielatas' stick-up of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Thus, this factor favors requiring them to post an appeal bond. *See In re I.P.O.*, 728 F. Supp. 3d at 293; *Berry*, 632 F. Supp. 2d at 307–08. Nor do the Gielatas dispute the high risk they would not pay given Joseph Gielata's criminal history. Because their arguments fail as to the other two factors, addressed below, all four factors weigh in favor of requiring them to post a bond.

### A.     The Gielatas' Appeal Lacks Merit

The Gielatas misunderstand this factor, confounding it with Class Counsel's cross-appeal regarding attorneys' fees. Gielata Opp. at 12 (arguing that "the Gielatas will [also] be defending this Court's fee decision on the consolidated appeal" and "expect to be the prevailing party. . . . Thus, even if the Gielatas lose their appeal, the most likely outcome is that each side would bear its own costs."). This is a distraction, as courts must consider "the likely outcome of the appeal" – not the likely outcome of cost awards or cross-appeals. *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998). Class Plaintiffs have stated consistently, on the record, that their appeal of attorneys' fees is a cross-appeal and will be immediately withdrawn once all other appeals are dismissed.

The gravamen of the Gielata appeal is that the Settlement places "all plaintiffs . . . on an equal footing" (Final Appr. Ord. at 17), but "the ADS subclass should not be placed on an equal footing with the non-ADS subclass." Gielata Opp. at 6. Specifically, they feel that Defendants

had a good defense that non-ADS claimants would need to show that their transactions were domestic under *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010). It is the "likely outcome" of ***this argument*** the Court must consider. *See Adsani*, 139 F.3d at 79.

The likely outcome on appeal is affirmation. Gielata neglects that Defendants, by the strict terms of the Settlement Agreement, have waived any defense under *Morrison*. *See* ECF No. 825, Defs. Reply at 3-4. "It is well-settled that non-jurisdictional arguments and defenses may be waived," and the Gielatas provide no contrary authority. *See Young v. Conway*, 715 F.3d 79, 85 (2d Cir. 2013) (concurring in denial of rehearing *en banc*). Because domesticity is not a jurisdictional bar, *see Morrison*, 561 U.S. at 254, it is waivable. Thus, the ADS and non-ADS claims ***should*** be on equal footing, as the Court correctly recognized in approving the Settlement. Final Appr. Ord. at 12 ("But defendants here have waived any domesticity requirement for the purposes of settlement."). "Defendants in class action suits are entitled to settle claims pending against them on a class-wide basis ***even if a court believes that those claims may be meritless***." *In re AIG, Inc. Sec. Litig.*, 689 F.3d 229, 243 (2d Cir. 2012); *accord Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310 (3d Cir. 2011) (certifying a settlement class even though some members lacked statutory standing, reasoning: "were we to mandate that a class include only those alleging 'colorable' claims, we would effectively rule out the ability of a defendant to achieve 'global peace' by obtaining releases from all those who might wish to assert claims, meritorious or not"). Because Gielata has made no response to this point, his appeal lacks merit.

Their appeal falters further because "DTC claimants make up about 2% of the class as defined in the stipulation," as the Court noted. Final Appr. Ord. at 18 n.11. This percentage was calculated by statistical sampling and other reliable techniques (*see* ECF No. 824, "Final Appr. Reply Br.," at 16; 6/4/18 Hrg. Tr. at 7-8), not "fabrication" as Gielata asserts without support (Gielata Opp. at 8). At the time, "objectors provide[d] no alternative calculations supporting

7

their contention that the percentage is higher than 2%." Final Appr. Ord. at 18 n.11. Gielata now attempts his own calculations, with inconsistent and unsupported results: "5 of 11" (Gielata Opp. at 9); "perhaps 20% or more" (Gielata Decl. ¶7); either "29.4%" or "30.7%" (*id.* ¶9); and "one third of half," *i.e.* under 17% (*id.* ¶10).[6] It is far too late for such unhelpful analysis, which the Second Circuit will deem waived. *See Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005) (where objector "failed to contest" an issue below, "waiver will bar raising the issue on appeal"); *In re Elec. Books Antitrust Litig.*, 639 F. App'x 724, 727 (2d Cir. 2016).

Finally, the Gielatas object that "there was no class representative with only ADS claims, nor was an attorney arguing for the ADS subclass." Gielata Opp. at 7. This is false. When the Settlement was negotiated, Lead Plaintiff USS only had ADS claims and did an unparalleled job representing those claims in achieving a $3 billion settlement. *See* Final Appr. Reply Br. at 16 ("It is unlikely that such a blockbuster settlement would have been reached if the DTC-settled claims were not released. Indeed, a settlement might not have been reached at all."); Final Appr. Ord. at 27 ("the Court is more than satisfied" with USS's representation).[7] Gielata presents nothing more than his own naive view of what the plan of allocation should be, where ADS holders simply never had to negotiate with Defendants.[8] Thus, his appeal lacks merit.

---

[6] Indeed, Gielata's 30% estimate is based on German fund Internationale Kapitalanlagegesellschaft mbH, 30% of whose bond purchases were dismissed under *Morrison.* Gielata Decl. ¶9. But this **proves Plaintiff's point**. Whereas 30% of a foreign class member's bond purchases might be dismissed under *Morrison*, virtually all of the 70% U.S.-based bondholders will qualify. Thus, as explained more fully elsewhere, only a small fraction of claims present *Morrison* issues. *See* Gielata Sanctions Reply; ECF No. 824, Final Appr. Reply Br. at 17-18; 6/4/18 Hrg. Tr. at 6-7.

[7] The Gielatas also dislike that § 11 claimants receive a 25% premium. Gielata Opp. at 6-7. This, too, was not among the Gielatas' objections (*see* ECF No. 813) and has been waived. *Wal-Mart*, 396 F.3d at 124 n.29. It also fails on the merits, as the § 11 premium was the product of "vigorously argued" negotiation between separately counseled class representatives. *See* 6/4/18 Hrg. Tr. at 18.

[8] His objection is also belied by his inexplicable offer, in a footnote, to go forward with distributing "2/3" of the Settlement according to the current plan of allocation. Gielata Opp. at 15 n.6. How

B.  **The Gielatas' Appeal Is Vexatious and Was Filed in Bad Faith**

As set out more completely in Plaintiff's Reply to the Motion for Sanctions, there is unusually strong evidence of Gielata's bad faith. He defends his unauthorized practice of law only by labeling himself a "retired lawyer," without evidence or analysis (Gielata Opp. at 20-22), and even questions – again, without analysis – whether New York ethical rules even apply to him. *Id.* at 21. They unequivocally do. *E.g.*, S.D.N.Y. Local Rule 1.5(5).[9]

The Gielatas also tout that they have not previously objected to a class action. Gielata Opp. at 24. This elides that they collaterally attacked the similarly historic settlement in *In re Tyco, Int'l, Ltd. MDL*, whereby ███████████████████████████ dismissing their suit with no benefit to the class. *Gielata v. Eisenhofer*, No. 11-442 (D.N.H. Nov. 30, 2012). Gielata does not even attempt to defend his actions in *Tyco* as anything other than vexatious.[10]

III.  **THE COURT HAS DISCRETION TO ORDER AN APPROPRIATE SIZED BOND**

Lead Plaintiff seeks an appeal bond of $3,030,000 – based on likely taxable costs, costs from delayed settlement administration, and attorneys' fees – plus interest. The Second Circuit has not decided what types of costs can be included in appeal bonds, but has already permitted attorneys' fees in some instances. *Adsani*, 139 F.3d at 79. Ample case law supports including all such costs. *See* Bond Br. at 19-25. Other courts take a more restrictive view, and objectors cite those opinions. But it is not disputed that "if there is a bond[,] *the amount also lies within*

---

Gielata came by this fraction is unexplained; it is also entirely inconsistent with his view that the plan of allocation should be renegotiated. And, it is belied by the clear terms of the Settlement Agreement, which precludes any distribution until the Settlement is final. ECF 767-1 ¶19.

[9] Further, their attempted fix – assigning Joseph one claim-share – constituted ***illegal champerty***. *See* Plaintiff's Reply in Support of Sanctions Against Gielatas (filed concurrently herewith).

[10] Finally, the Gielatas' "commit[ment] to seeking this Court's approval if they withdraw their appeal for any reason" does *not* "remov[e] any question as to their motives." Gielata Opp. at 1. It is neither binding nor in the Class's interest, whose recovery it may only further delay. Pointedly, they do not foreclose taking a payout in exchange for such a dismissal.

*the district court's discretion*." Wright & Miller, 16A Fed. Prac. & Proc. § 3953 (4th ed.).

**Taxable Costs**. The objectors dispute if $50,000 accurately estimates Rule 39 costs, and invent lower amounts. Bueno Opp. at 16; Gielata Opp. at 13-14. But $50,000 is a reasonable estimate based on similar complex, fully developed cases. *See* Bond Br. at 18-19 (citing cases).

**Administrative Costs and Attorneys' Fees.** Bueno *does not dispute* that $1,980,000 is a fair estimate of the added expense of administering the Settlement during appeal, or that $1,000,000 is a reasonable estimate of attorneys' fees for responding to the appeal – only that he should have to provide security for causing them. The Gielatas dispute the administrative cost amount, arguing that settlements take over a year to administer, so their appeal should not delay distribution.[11] Gielata Opp. at 15 & n.6. A former attorney like Gielata surely knows better – the Settlement Fund cannot be administered before his appeal ends, particularly as it challenges the plan of allocation for every type of claim.[12] He neglects the claims administrator's evidence that delay will cost the Class $110,000 per month. *See* ECF No. 861-5, Mendoza Decl. re: Class Action Admin'n ¶¶4-7. Accordingly, there is no serious dispute about the size of these costs.

**Interest**. Both objectors also argue that they should not have to cover the cost of interest, as interest will accrue on the settlement regardless of the delays they cause. Bueno Opp. at 14 n.12; Gielata Opp. at 15. But this is a *non-sequitur*. **Delaying claimants** from receiving their entitled recoveries imposes its own unique cost – a cost courts have held should be bonded under Rule 7, regardless of how much interest a settlement fund happens to accrue on its own.

## CONCLUSION

The objectors must bond $3,030,000, plus interest, to pursue their meritless appeals.

---

[11] Gielata is wrong. Class Plaintiffs intend to move for initial distribution by December absent appeal.

[12] His argument is also undermined by his inexplicable offer, in a footnote, to go forward and distribute "2/3" of the Settlement according to the current plan of allocation. Gielata Opp. at 15 n.6.

Dated: August 30, 2018

Respectfully submitted,

**POMERANTZ LLP**

_/s/ Jeremy A. Lieberman_
Jeremy A. Lieberman
Marc I. Gross
Emma Gilmore
Brenda Szydlo
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: 212-6612-1100

Patrick V. Dahlstrom
**POMERANTZ LLP**
10 North LaSalle
Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile: 312-229-8811

Jennifer Pafiti
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: 310-285-5330

Lead Counsel for Lead Plaintiff Universities Superannuation Scheme Limited

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Petrobras Securities Litigation | 14-CV-9662 (JSR) |
|---|---|

# CERTIFICATE OF SERVICE

I, Jeremy A. Lieberman, hereby certify that on August 30, 2018 I caused a copy of the foregoing to be served upon all counsel by ECF and to be served upon the following by first class mail:

| Mathis B. Bishop<br>Catherine O. Bishop<br>204 East Oakview Place<br>San Antonio, Texas 78209 | Joseph Gielata<br>7811 Eads Avenue #207<br>La Jolla, CA 92037<br>Phone: 302-507-4400<br>Email: gielata@gmail.com |
|---|---|
| Richard and Emelina Gielata<br>100 Westbury Drive<br>Coraopolis, PA 15108 | Joshua R. Furman<br>JOSHUA R. FURMAN LAW CORP.<br>14724 Ventura Boulevard, Suite 509<br>Sherman Oaks, California 91403<br>Phone: 818-646-4300<br>Email: jrf@furmanlawyers.com<br><br>(attorney for Spencer R. Bueno) |

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: August 30, 2018   **POMERANTZ LLP**
New York, New York

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Emma Gilmore
Brenda Szydlo
Jennifer Banner Sobers
600 Third Avenue

1

20th Floor
New York, New York 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
egilmore@pomlaw.com
bszydlo@pomlaw.com
jbsobers@pomlaw.com

*Counsel for Lead Plaintiff*