USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :     14-cv-9662 (JSR)
In re: PETROBRAS SECURITIES         :
LITIGATION                          :     OPINION & ORDER
                                    :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

Those who file objections to class action settlements may
themselves be pursuing widely varying objectives, ranging from
the useful to the self-serving. On the positive side, class
action "objectors" - i.e., members of the class who file
objections to proposed class action settlements prior to the
Court's determination of whether or not to finally approve the
settlement to which it has previously given preliminary approval
- may serve an important role in protecting class interests.
They can, for example, bring to light evidence that a settlement
was collusive or that class counsel's fee award was inflated.
See, e.g., White v. Auerbach, 500 F.2d 822, 828 (2d Cir. 1974)
("[I]t is well settled that objectors have a valuable and
important role to play in preventing collusive or otherwise
unfavorable settlements"). Moreover, if interested class
members, who, if not named plaintiffs, typically play no role in
settlement negotiations, were not given the opportunity to
express their views of the settlement, the entire class action
structure might not pass constitutional muster. See Amchem

1

Prods. v. Windsor, 521 U.S. 591 (1997) (emphasizing the importance of protecting absent class members).

In recent years, however, it has become obvious that some objectors seek to pervert the process by filing frivolous objections and appeals, not for the purpose of improving the settlement for the class, but of extorting personal payments in exchange for voluntarily dismissing their appeals. These extortionate efforts, which the Seventh Circuit recently termed "objector blackmail," have increasingly interfered with the prompt and fair resolution of class litigation at a direct cost to class members, who may thereby be prevented from collecting the settlement funds owed to them for months and even years unless they succumb to the blackmail. See Pearson v. Target Corp., 893 F.3d 980, 982 (7th Cir. 2018). See also In re Ivan F. Boesky Sec., 948 F.2d 1358, 1368 (2d Cir. 1991)(discussing how objectors "constituting...an infinitesimal fraction of the classes as a whole, and pursuing weak claims, have injured all classes by this appeal"); In re Initial Public Offering Sec. Litig., 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) ("concur[ring] with numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting

settlement in the hopes of extorting a greater share of the settlement for themselves and their clients").[1]

An amendment to Rule 23, Fed. R. Civ. P., requiring judicial approval of any monetary settlements to objectors, is scheduled to go into effect at the end of this year absent Congressional veto. The amendment may help to curb these abusive side deals in the future. See Proposed Amendments to the Federal Rules of Civil Procedure, Rules 5, 23, 62, and 65.1, Slip Order at *9-15 (U.S. Apr. 26, 2018,

https://www.supremecourt.gov/orders/courtorders/frcv18_5924.pdf. But in the meantime individual courts bear responsibility for striking a balance between facilitating legitimate objections and protecting class members from objector extortion.

Before the Court is the motion of Class Plaintiffs for sanctions against Joshua R. Furman, Esq. ("Furman"), attorney for objector Spencer Bueno ("Bueno"), and against objector Richard Gielata and his "de facto counsel," Joseph Gielata, Esq. (collectively, "the Gielatas").[2] Class Plaintiffs argue that

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

[2] The Gielata objections were filed on behalf of Richard and Emelina Gielata, but Class Plaintiffs do not seek sanctions or other relief with respect to Emelina. They do, however, seek sanctions and other relief with respect not only as to Richard Gielata, but also as to Joseph Gielata, who functioned as their quasi-counsel during the proceedings in this Court and who now has filed an appeal as their purported assignee.

3

sanctions are warranted pursuant to Federal Rule of Civil
Procedure 11 ("Rule 11"), 28 U.S.C. § 1927 ("Section 1927"),
and/or the Court's inherent authority. See Memorandum of Law in
Support of Lead Plaintiff's Motion for Sanctions Against Joshua
R. Furman ("Pl. Mem. F."), Dkt. 857; Memorandum of Law in
Support of Motion for Sanctions Against Joseph Gielata and
Richard Gielata ("Pl. Mem. G."), Dkt. 862. Class Plaintiffs also
argue that Bueno and the Gielatas should be ordered to post an
appeal bond. Lead Plaintiff's Memorandum of Law in Support of
Motion for an Order Requiring an Appeal Bond ("Pl. Mem. Bond"),
Dkt. 860. Furman, Bueno, and the Gielatas oppose, and have filed
cross-motions for sanctions against Class Plaintiffs. See
Opposition to Lead Counsel's motion for Sanctions Against Joshua
R. Furman, Request for Sanctions Against Jeremy A. Lieberman
Pursuant to Federal Rule of Civil Procedure 11(c)(2) ("Furman
Opp."), Dkt. 880; Bueno Opposition to Lead Plaintiff's Motion
for an Appeal Bond ("Bueno Bond Opp."), Dkt. 881; Richard,
Emelina and Joseph Gielata's Memorandum of Law in Opposition to
Lea Plaintiff's Motion for Sanctions and for an Appeal Bond and
Counter-Request for Sanctions Against Jeremy Lieberman and
Pomerantz LLP ("Gielata Opp."), Dkt. 882.

     For the reasons stated below, the Court imposes sanctions
against Furman in the amount of $10,000, to be paid by October
1, 2018(and without prejudice to Class Plaintiffs seeking

4

further sanctions subsequently) and orders Bueno to post an appeals bond of $5,000; denies the motion for sanctions against the Gielatas, but orders the Gielatas to post an appeal bond of $50,000; and denies in their entirety the objectors' motions to sanction Class Plaintiffs.

## I. Background

The Court here assumes full familiarity with the history of this large and lengthy litigation and with the underlying facts, which are more fully laid out in the Opinion and Order dated June 22, 2018 ("Op."), Dkt. 834. As here relevant, the Court, on June 22, 2018, approved a $3 billion settlement in the instant class action, one of the largest class action settlements in recent years. In doing so, the Court rejected, inter alia, objections filed by Bueno, represented by Furman, and by Richard and Emelina Gielata (and drafted by Joseph Gielata), but declined to reach Class Plaintiffs' allegations that Bueno and Richard and Emelina Gielata were acting with "improper motives including...seeking to extort personal payments through the device of frivolous appeals." Id. at 4 n.5. Instead, the Court expressly retained jurisdiction to address, even after entry of final judgment, any past or future objector efforts at extortion. See Order dated May 22, 2018, at 2, Dkt. 818 ("[O]bjectors were reminded that by filing their objections to the class settlement, they and their counsel were subject to the

5

continuing jurisdiction of the Court and that, if appropriate, the Court would retain jurisdiction to inquire into their compliance with Rule 11 and analogous provisions of federal law"); see also June 4, 2018 Hr'g Tr. at 55:23-56:6 ("I have expressly retained jurisdiction in this case over the objectors even after I issue my final rulings on the matters before me today"). Bueno and Richard, Emelina, and Joseph Gielata subsequently filed notices of appeal of the Court's final judgment. See Notice of Appeal, Dkt. 849; Notice of Appeal, Dkt. 850; Notice of Partial Withdrawal of Objections of Spencer R. Bueno to Class Action Settlement, Dkt. 853.[3] This motion practice followed.

## I.  Motions for Sanctions

Class Plaintiffs argue that Furman, representing Bueno, and Richard and Joseph Gielata filed their objections and subsequent appeals as part of an "extortionist agenda" to extract a monetary settlement in exchange for dismissing their appeals. Pl. Mem. G. at 1; Pl. Mem. F. at 1. Accordingly, they seek the imposition of sanctions on Furman and the Gielatas pursuant to Rule 11, Section 1927, and/or the Court's inherent authority.

---

[3] A third notice of appeal was filed by objectors Mathis and Catherine Bishop, see Dkt. 842, but, unlike Bueno and the Gielatas, the Bishops stipulated that their appeal pertained solely to the issue of attorneys' fees and expenses and, accordingly, did not preclude the settlement from becoming final. See Stipulation & Order Dated July 26, 2018, Dkt. 847.

6

## A. Legal Standard

"A federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices." Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 386 (2d Cir. 1981). The court's inherent power has been long-recognized to include the power "to discipline attorneys who appear before it." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (citing Ex Parte Burr, 22 U.S. 529 (1824)). While "the court should ordinarily rely on the Rules rather than the inherent power" to sanction bad-faith conduct, if "neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." Id. at 50. A court may issue sanctions pursuant to its inherent power "against an attorney, a party, or both." Olivieri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986).

Sanctions are justified pursuant to the court's inherent power where there is a "specific finding" of bad faith and "clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009). In determining whether bad-faith warrants sanctions, courts "focus on the purpose rather than the effect of the sanctioned attorney's activities." Enmon v. Prospect Capital Corp., 675 F.3d 138, 145 (2d Cir. 2012) (finding that "sanctions

7

may be warranted even where bad-faith conduct does not disrupt the litigation before the sanctioning court").

Section 1927 authorizes the imposition of sanctions against "any attorney...who so multiplies the proceedings in any case unreasonably and vexatiously" in the form of "excess costs, expenses and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The purpose of the statute is to "deter unnecessary delays in litigation." Olivieri, 803 F.2d at 1273. Much like sanctions imposed pursuant to the court's inherent power, section 1927 sanctions require "a clear showing of bad faith on the part of an attorney," which "may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Salovaara v. Eckert, 222 F.3d 19, 35 (2d Cir. 2000). See also Olivieri, 803 F.2d at 1273 ("[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is...that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.").

The Second Circuit has described the determination as to whether to impose sanctions as "one of the most difficult and unenviable tasks for a court." Schlaifer Nance & Co., Inc. v.

Estate of Warhol, 194 F.3d 323, 341 (2d Cir. 1999). "On the one hand, a court should discipline those who harass their opponents and waste judicial resources by abusing the legal process. On the other hand, in our adversarial system, we expect a litigant and his or her attorney to pursue a claim zealously within the boundaries of the law and ethical rules." Id. As noted above, achieving this balance is particularly difficult in class actions, where the Court must safeguard the ability of objectors to protect class members from abusive settlements while in turn protecting class members from being abused by the objectors themselves.

## B. Joshua R. Furman

Plaintiff argues that Furman should be sanctioned because the objections he made before this Court and the appeal that he has now filed on behalf of Bueno from this Court's denial of these objections lack any colorable merit and "are made for the sole purpose of delaying the administration of the Settlement," i.e., are made in bad faith. Pl. Mem. F. at 11. This Court largely agrees.

### i. Colorable Basis

"Conduct is entirely without color when it lacks any legal or factual basis." Wolters Kluwer, 564 F.3d at 114. In making this assessment, the Court must consider "whether a reasonable attorney...could have concluded that the facts supporting the

9

claim might be established, not whether such facts actually had been established." Schlaifer Nance, 194 F.3d at 337.

Representing Bueno, Furman filed as his objections to the proposed final settlement what this Court then described as "a kitchen-sink brief that purports to identify inequities relating to at least a dozen aspects of the proposed settlement," Op. at 24, none of which had the slightest merit. Indeed, some of Furman's arguments lacked even factual support, while the others lacked any legal basis.

For instance, the Court found no factual support for Furman's argument that the Plan of Allocation was not provided on the notice website, id. at 23 n.15. Or, again while Furman objected that plaintiffs had not provided a break-down of expenses necessary to calculate a reasonable fee award, the Court found that "each Representative has provided sworn statements detailing the work performed, the people who performed it, and the time expended." Id. at 27. As for Furman's legal arguments, they were often entirely lacking, or (as in the case of Furman's strange argument that the Plan was an "improper claimant fund-sharing scheme") were premised on purported authority that was, as the Court found, "entirely inapposite." Id. at 25.

The only objection raised by Furman that might even be considered conceivably colorable (though even that would be a

10

stretch) was the argument that the settlement "fail[ed] to address the issue of cy pres distributions" adequately because it did not identify a specific cy pres recipient, but instead provided for the later identification of a Brazilian entity "selected by the Petrobras Defendants and approved by Class Counsel, whose mission is to fight corruption and improve corporate governance in Brazil." Objections of Spencer R. Bueno to Class Action Settlement & Opposition to Motion for Attorneys' Fees and Incentive Payments to Class Representatives at 4, Dkt. 803. Furman argued that the specific identity of the cy pres recipient "must be determined by the Court...before the settlement can be approved," and that the settlement's cy pres provision would deprive class members of their "right to be heard on who the cy pres recipient will be." Id.

As presented in Furman's objection, these arguments lacked any legal support: Furman cited no case law in support of these assertions. Nonetheless, in approving the settlement, the Court deferred ruling on objections to cy pres as it was unclear at that point if there would be any funds left after distribution to the class and so the matter might be moot. See June 4, 2018 Tr. Instead, the Court specifically provided that it would "permit further briefing on this [cy pres] issue, as appropriate, if and when the question becomes ripe for

11

consideration, and the Court retains jurisdiction for that purpose." Op. at 23.

Entirely independent of the cy pres issue, the frivolous quality of Furman's other objections would well warrant sanctions under Section 1927. But since it is only the cy pres issue that Furman now raises on appeal, see Notice of Partial Withdrawal of Objections of Spencer R. Bueno to Class Action Settlement, Dkt. 853, and since the essence of Class Plaintiffs' motion is that Furman's notice of appeal was filed for purely extortionate purposes, it is worth noting how totally frivolous that appeal is. To begin with, there is no case law in the Second Circuit requiring the court to identify a specific cy pres recipient prior to approving a settlement. See In re Am. Int'l Group, Inc. Sec. Litig., 293 F.R.D. 459, 463 (S.D.N.Y. 2013) (rejecting objector's contention that settlement could not be approved as it failed to specify a cy pres beneficiary as "there was no legal authority to support the argument; no Court in the Circuit has ever made identifying the organization to receive the residual funds a condition precedent to a Settlement approval") (emphasis added); see also In re Citigroup Inc. Sec. Litig., 199 F. Supp. 3d 845, 851 (S.D.N.Y. 2016) (denying reconsideration of a court order approving cy pres designation after its approval of the settlement agreement, noting that "by the time cy pres designations are ripe, any remaining settlement

12

funds cannot be distributed further to the class"). Furman does not argue that Second Circuit law states otherwise. Instead, he now describes his contention that the court must designate a cy pres recipient prior to settlement approval as "based on persuasive Ninth Circuit authority and related cases," Furman Opp. at 7, and necessary to "avoid a circuit split," Bueno Opp. at 6.

In actuality, however, as Furman implicitly acknowledges in his most recent briefing, Furman Opp. at 7-8, Ninth Circuit precedent, like that of the Second Circuit, does not condition settlement approval on cy pres recipient identification. Rather, the Ninth Circuit has explicitly held that cy pres issues "become[] ripe only if the entire settlement fund is not distributed to class members." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009) (declining to address objectors' challenge to a class settlement's cy pres provision as "no cy pres disbursement in imminent") (emphasis added). The one Ninth Circuit case that Furman cites in purported support of his "circuit split" claim, Dennis v. Kellogg Co., 697 F.3d 858 (9th Cir. 2012), is, in fact, entirely consistent with the framework adopted by Rodriguez (and this Court): the Dennis court found objections to cy pres distribution "ripe for determination" in that case because at that point both the fact that funds were left for cy pres distribution and the amount of

13

those funds had been determined. Id. at 864-65. Furman himself notes that Dennis distinguishes Rodriguez on these grounds, see F. Opp. at 8, yet in the same paragraph asserts that Dennis's holding is that "the identity of the cy pres recipient must be determined in order to fulfill the trial court's obligation to absent class members under Rule 23," Furman Opp. at 7. This blatant mischaracterization is clearly insupportable.

Furthermore, given the Court's ruling that it would address the cy pres issue if and when (if ever) it became ripe, i.e., when there were any leftover funds to distribute (an unlikely circumstance in this case), Furman's appeal is itself unripe. While Furman asserts that "the same circumstances that required ruling on Dennis are present in this case," Furman Opp. at 8, the contrary is true; for in this case, unlike in Dennis, it is unclear if there will be any funds remaining for cy pres distribution. Op. at 23. Furman's personal speculation that funds will likely be left for cy pres distribution, Furman Opp. at 8, is not the legal equivalent of the statement by the claims administrator and class counsel specifying the amount of funds remaining for cy pres distribution that the Dennis court found made the cy pres issue ripe.[4]

---

[4] Furman also argues that approval of the settlement should be delayed pending the Supreme Court's decision in Frank v. Gao, No. 17-961 (U.S. 2017), which is currently scheduled for oral argument on October 31, 2018. Furman contends that the Supreme

Furman also objects generally to the structure of the cy pres provision in the final settlement, arguing that it provides insufficient Court supervision of the designation of the cy pres recipient and that the selected designee might be inappropriate. Furman Opp. at 9-10. Yet, as the Court stated clearly in its Opinion and was subsequently agreed to by the parties in a stipulation discussed below, see Stipulation & Order dated August 31, 2018, at 2, Dkt. 889, the structure of this provision is irrelevant, because the Court retains full authority to select, structure, and supervise designation of a cy pres recipient when and if the issue becomes ripe. Furman offers no explanation of why any objections he might have to the selection of the proposed cy pres recipient could not be sufficiently heard when, if ever, it is clear what amount of money, if any, is available for cy pres distribution.

In sum, Furman's objections in the district court and his projected appeal of one of them lack any colorable basis.

**ii. Bad Faith**

---

Court's ruling in that case "will almost certainly provide further guidance on what must be found for approval of any class action settlement including a cy pres distribution." Furman Opp. at 8 n.3. However, as Furman himself acknowledges, the question presented in Frank is "whether a cy pres-**only** distribution is ever fair, reasonable, and adequate[]." Id.; see Petition for Writ of Certiorari, Frank v. Gao, No. 17-961 (U.S. 2017). This is clearly irrelevant to the case at hand.

15

Bad faith may be inferred where "actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Salovaara v. Eckert, 222 F.3d 19, 35 (2d Cir. 2000). Moreover, "[m]isrepresentations, coupled with frivolous litigation, establish clear evidence of bad faith." Prospect Capital Corp. v. Enmon, No. 08 civ. 3721, 2010 U.S. Dist. LEXIS 23477, at *15 (S.D.N.Y. Mar. 9, 2010).

As discussed above, Furman's objections – not least the cy pres argument that he is using, through his appeal, to materially delay distribution of the settlement funds to the victim class – are frivolous, either on their face or upon inspection. Moreover, Furman, in his submissions to the Court, has made repeated misrepresentations of both the facts and the law. The only likely motive for this misconduct is Furman's attempt to extort a payment from the Class Plaintiffs in order that they may avoid costly delay, in other words, extortion. Any doubt that this is his bad faith motivation is erased by Furman's established history, detailed in Class Plaintiff's submissions, of filing appeals on behalf of objectors and then voluntarily dismissing them in exchange for payments. See Pl. Mem. F. at 4-5.[5] See, e.g., Initial Pub. Offering, 728 F. Supp.

---

[5] Furman disputes that his motivation in these other cases was extortionate, citing still other cases where, he claims, his

16

2d at 294 (considering objector's history of "serial" objections and efforts to extort fees in exchange for withdrawing appeals as evidence of bad faith).

Still further evidence of Furman's bad faith may be inferred from his recent conduct. After this Court rejected his objections as frivolous and approved the settlement, Furman initially appealed the entire Final Approval Order. See Notice of Appeal, Dkt. 850. Upon receipt of Class Plaintiff's proposed motion for sanctions, however, Furman withdrew all of his objections except for his objections related to the cy pres recipient. See Notice of Partial Withdrawal of Objections of Spencer R. Bueno to Class Action Settlement, Dkt. 853. To address Furman's concerns with regard to cy pres, Class Plaintiffs and Defendants prepared a stipulation, which has now been entered by the Court, clarifying that, "[p]rior to any distribution being paid to the cy pres recipient," Class Plaintiff and Defendants would file a motion setting forth their proposed designation, that any settlement class member could oppose the designation at that point, and that no distribution would be made to a cy pres recipient until the Court ruled upon

objections had a positive impact on the settlement, and arguing that his record in objecting to class actions is therefore "balanced in terms of outcomes, results, and settlement postures." Bueno Opp. at 1-2. But the fact that Furman may have sometimes hit on a legitimate objection in no way excuses the many instances in which his objections were palpably meritless.

the motion to designate a recipient "and until all appeals thereto have been exhausted." See Stipulation & Order dated August 31, 2018, at 2, Dkt. 889. Although this stipulation of the parties fully protected Furman's ability to object to any cy pres designation once the issue becomes ripe, Furman refused to go along with it or withdraw his remaining appeal. See Email from Joshua R. Furman to Class Plaintiffs dated Aug. 28, 2018, Declaration of Jeremy A. Lieberman in Further Support of Lead Plaintiff's Motions for Sanctions Against Joshua R. Furman, Joseph Gielata, and Richard Gielata, Dkt. 887-3. While, of course, Furman had no legal obligation to sign this stipulation, his refusal to do so when the stipulation directly addressed each of his concerns regarding the cy pres recipient (except for his clearly meritless contention that the cy pres recipient must be identified prior to settlement approval) and expressly preserved his right to later object regarding cy pres identification, strongly suggests that his appeal is not motivated by genuine concerns about the class's interests in cy pres.

The Court is left with no doubt whatsoever that Furman has been proceeding in bad faith.

### iii. **Appropriateness of Sanctions**

Furman contends that he cannot be subject to sanctions either for having filed frivolous objections in this Court or

18

for filing a frivolous appeal to the Second Circuit. As to the first contention, while it may be that Rule 11 sanctions do not apply in these circumstances, full authority remains in this Court to award sanctions for his bad faith filings under Section 1927 and the Court's inherent authority. See Chambers, 501 U.S. at 50; Enmon, 675 F.3d at 145; Olivieri, 803 F.2d at 1273. And, while the second contention has some superficial appeal, it obscures the fact that Furman's objections and appeal are inextricably linked together as two components of a single extortionate scheme.

To treat the filing of frivolous objections in the district court and the equally-frivolous appeal of the denial of one of those objections as two unconnected actions, as Furman would have it, would be to blind oneself to the reality of how the scheme of Furman and other extortionate objectors actually works. Such an objector has no expectation that his objections will prevail in either forum; but the combination creates the costly delay that leads class plaintiffs to buy him off.

In recognition of such situations, the Second Circuit, while expressing the usual "preference that district courts not sanction parties for filing frivolous appeals," has explicitly "decline[d]" to "establish[] a bright-line rule" when doing so would create a gap in oversight in situations where appeals are voluntarily withdrawn before the appellate court has had the

19

opportunity to consider sanctionable conduct. Enmon v. Prospect
Capital Corp., 675 F.3d 138, 146-47 (2d Cir. 2012) ("Prohibiting
district courts from imposing sanctions in these unique
circumstances might encourage the malicious law firm to
manipulate the appeals process like a yo-yo."). This analysis
perfectly describes the situation that extortionate objectors
present to courts, seeking to technically avoid both district
court and appellate court sanctions while costing the class
through delay of settlement fund distribution. While the
specific sanctions by the district court that the Second Circuit
affirmed in Enmon concerned an appeal that had already been
voluntarily dismissed, the same reasoning applies here, where
the extortionate appeal is equally "taken purely for dilatory
and resource-draining reasons relating to the district court
litigation." Id. at 147.

Given the ample indications of bad faith and lack of
colorability of Furman's actions throughout this litigation, the
Court finds sanctions appropriate, pursuant to both to Section
1927 and to its inherent power.

**iv. Amount of the Sanctions**

In terms of the amount of sanctions to be awarded, Class
Plaintiffs first suggest an award of $23,000, representing the
estimated time spent by Class Counsel in responding to Furman's

20

Case 1:14-cv-09662-JSR  Document 896  Filed 09/21/18  Page 21 of 31

objections. But they acknowledge that this figure is an estimate based on their total time spent responding to all objections of all objectors. See Declaration of Jeremy A. Lieberman, Esq., in Support of Lead Plaintiff's Motion for Sanctions Against Joshua R. Furman, Dkt. 858. Given the palpable lack of merit of Furman's filings, the Court infers that not that much of Class Plaintiffs' time was needed to refute them. The Court therefore finds sanctions of $10,000 to be more appropriate. This amount must be paid by Furman to Class Plaintiffs by no later than October 1, 2018.

However, Class Plaintiffs also seek additional sanctions in the form of $20,000 per month attributable to the costs for delaying distribution of the settlement to settlement class members as a result of Furman's appeal, and reasonable attorneys' fees and expenses for work performed by Class Counsel responding to Furman's appeal. Pl. Mem. at 1. While additional sanctions of this nature may well be warranted eventually, the Court believes the better approach is to limit the sanctions to $10,000 for now, without prejudice to Class Plaintiffs seeking further sanctions depending on what happens on appeal.

### C. Joseph and Richard Gielata

Class Plaintiffs also seek sanctions against objector Richard Gielata and against Joseph Gielata (whom they term "his de facto counsel") for filing frivolous objections and a

21

frivolous appeal of the settlement. Pl. Mem. G. at 1. Plaintiff
also argues that Joseph Gielata should be sanctioned for the
unauthorized practice of law in connection with his
participation in this case. Id. While the Court is deeply
troubled by some of the Gielatas' conduct, it concludes in the
end that the high burden for awarding sanctions has not been met
in their case.

### i.   Colorable Basis

Richard and Emelina Gielata filed an objection to the
settlement arguing, inter alia, that the class was overbroad and
failed to satisfy the Rule 23 requirement that diverse groups
and individuals in the class be adequately represented. See
Shareholder Objections to Proposed Settlement, Plan of
Allocation, Proof of Claim, Class Notice and Request for
Attorney's Fees ("G. Obj."), Dkt. 813. Specifically, they argued
that an interclass conflict existed between domestic claimants
and those non-domestic claimants whose purchases of Petrobras
securities were connected to the U.S. solely by the fact that
their transactions were cleared through the Depository Trust
Company ("DTC") in New York ("DTC claimants"). They argued that
DTC claimants should be excluded from the class entirely. Id.
The Court rejected this argument, finding that defendants had
waived any domesticity challenge for settlement purposes, that
"both the DTC claimants and domestic claimants in this case

22

suffered the same injury and are receiving the same relief," and that the parties had provided an adequate explanation of their treatment of claims of various strengths. See Op. at 9-20. Nonetheless, it cannot fairly be said that the Gielata's objection was frivolous.

The Gielatas also objected to the attorneys' fees requested on several grounds. While the Court chose to reduce the attorneys' fees on grounds different from those suggested by the Gielatas, the Court did specifically take note of the Gielatas' objections as supportive of the reduction. See Op. at 34.

The Gielatas are appealing the issue of adequate representation, reiterating their argument that the non-domestic claimants should not have been included in the class. Gielata Opp. at 4. While the Court, as detailed in its approval of the settlement, found their argument to be relatively lacking in merit and unsupported by case law, the issue, as noted, is not frivolous and not unlike the kind of argument the Court would expect from a serious objector motivated by concerns for class welfare. Further, the Court notes that the Gielatas have committed not to dismiss their appeal "without first seeking the approval of this Court," Gielata Opp. at 4, a step towards the type of oversight envisioned by the pending changes to Rule 23.

**ii. Bad Faith**

23

Despite the foregoing, however, some of the Gielatas'
behavior in this case and other cases casts more doubt on their
bona fides. In particular, in the case of Gielata v. Eisenhofer,
No. 11-cv-442-PB (D.N.H. Nov. 30, 2012), Joseph Gielata,
representing his father Robert Gielata, filed a class action on
behalf of all settlement class members for breach of fiduciary
duty against a law firm that had secured a $3.2 billion
settlement for the class, and subsequently voluntarily dismissed
the case in return for a $2 million private payment. See Pl.
Mem. G. at 3. While different in procedure, this was the
substantive equivalent of an extortionate objection, using a
class action as a vehicle to realize large personal profits
without benefitting the class.

Joseph Gielata's personal history also raises concerns. A
member of the Delaware bar, Joseph Gielata pled guilty to
misdemeanor theft in 2006 for arranging sham transactions to
profit from PayPal's money-back guarantee. See In re Gielata,
No. 373, 2007, 2007 Del. LEXIS 376, at *5 (Del. Aug. 28, 2007).
Although the charges were dismissed after he completed the
conditions of probation and made restitution, Joseph Gielata was
publically reprimanded by the Supreme Court of Delaware for
violating multiple Delaware Lawyers' Rules of Professional
Conduct. Id. at *6, *10-11.

24

In the instant action, Joseph Gielata, who is admitted to the Delaware bar but has not maintained active status, prepared the objection on behalf of his parents and attempted to participate as effectively their attorney in calls and correspondence with the Court, without seeking pro hac vice admission, entering an appearance, or otherwise seeking permission. Class Plaintiffs argue that Joseph Gielata should be sanctioned for unauthorized practice of law on these grounds. See Pl. Mem. G. at 9. Joseph Gielata argues that he was permissibly assisting his parents as a retired lawyer and attempting to represent himself, not his parents, on calls to the Court regarding discovery sought from him personally. The Court finds these contentions less than convincing. However, once the Court became aware of the situation, it directed Joseph Gielata not to represent his parents on further calls and he fully complied. Under these circumstances, the Court does not view sanctions as necessary or appropriate.

The Court retains the right to revisit this conclusion in the future. In this regard, the Court notes that the Gielatas' notice of appeal was filed on behalf of Richard, Emelina, and Joseph Gielata, and attached a notice of assignment, executed on July 23, 2018, purportedly assigning to Joseph Gielata "all associate rights...as to ONE (1) SHARE in the Class Action settlement." See Dkt. 849 at 4. The agreement explicitly states

that it is for the purpose of "confer[ring] Article III standing on Joseph Gielata to prosecute any objection or appeal in the Class Action" as "it is not economically feasible for the Shareholders to hire a lawyer to protect their rights in connection with the Class Action" and "Joseph Gielata possesses the resources and legal knowledge to prosecute an appeal." Id. Put differently, however, it would seem that the assignment was executed for the explicit purpose of circumventing pro hac vice admission requirements. Class Plaintiffs question whether an assignment under these circumstances is valid, See Pl. Mem. G. at 12, but this presumably would be a question for the Court of Appeals. Nonetheless, to the extent such "gamesmanship" impacts any further proceedings in this Court, the Court will continue to monitor the situation.

### iii. Appropriateness of Sanctions

Since, as indicated above, at least one or more of the objections raised by the Gielatas had an arguably colorable basis, and since their behavior in pursuing these objections, while less than ideal, did not exhibit total bad faith and has not materially prejudiced Class Plaintiffs, the Court declines to award sanctions against the Gielatas, on any of the various bases asserted by Class Plaintiffs.

The Gielatas, for their part, argue that Class Plaintiffs should be sanctioned for filing a frivolous Rule 11 motion "as a

bullying tactic to intimidate the Gielatas into not filing an appeal." Gielata Opp. at 22. However, while the Rule 11 prong of Class Plaintiffs' motion may have not been supportable, they raised legitimate concerns under Section 1927 and under the inherent power of the Court, and, accordingly, the Court denies the Gielatas' motion.

## II. Motion for an Appellate Bond

Class Plaintiffs also move to require Bueno and the Gielatas to post appeal bonds. Class Plaintiffs argue for the imposition of a bond in the total amount of $3,030,000, representing $50,000 for the taxable costs of the appeal, $1.98 million for the incremental expenses of administering the huge settlement fund during the appeal, and $1 million in estimated attorneys' fees for the costs of responding to the appeal. See Pl. Mem. Bond at 18-24.

Under Rule 7 of the Federal Rules of Appellate Procedure, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." To determine whether a bond is appropriate, courts consider the following factors: "(1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs

if the appeal loses, (3) the merits of the appeal,[6] and (4) whether the appellant has shown any bad faith or vexatious conduct." Stillman v. Inservice Am., Inc., 838 F.Supp.2d 138, 140 (S.D.N.Y. 2011).

First, as to financial ability, the Gielatas argue that they are not capable of paying Class Plaintiff's requested \$3 million bond, but they offer "no dispute" as to their financial ability to pay "normal costs," which they calculate as \$2,000. Gielata Opp. at 15. In actuality, however, the Gielatas have in none of their filings disputed their ability to pay the higher amount of costs calculated by Class Plaintiffs - \$50,000 - which the Court finds to be a reasonable calculation. Nor have the Gielatas submitted any financial information that would demonstrate their inability to pay these costs. Accordingly, they have effectively conceded their ability to pay the full requested taxable costs. See In re Currency Conversion Fee Antitrust Litig., No. 01 civ. 1409, 2010 WL 1253741, at *1 (S.D.N.Y. Mar. 5, 2010) (issue of ability to pay conceded where no evidence presented demonstrating inability to post bond); In re AOL Time Warner, Inc., Sec. & ERISA Litig., No. 02 civ. 5575, 2007 WL 2741033, at *2 (S.D.N.Y. Sept. 20, 2007) (same).

---

[6] Setting a Rule 7 bond therefore requires the district court to "prejudge[]" the merits of the appeal. Adsani v. Miller, 139 F.3d 67, 79 (2d Cir. 1998).

Bueno avers that he is able to pay court costs of up to $5,000, but no more. See Declaration of Spencer R. Bueno in Opposition to Lead Plaintiff's Motion for an Appeal Bond, Dkt. 881-1. He claims to have no income aside from the support of his girlfriend. Id. He identifies a few thousand dollars in investment accounts, although he does not assert that these are his only bank accounts, and his conceded ability to pay $5,000 suggest that he must have other assets. As Bueno does not provide adequate evidence substantiating his financial status, the Court finds his claimed inability to pay "does not weigh[] in favor of denial of a bond, [but] the Court will consider this fact in fixing the amount." Berry v. Deutsche Bank Trust Co. Ams., 632 F. Supp. 2d 300, 307 (S.D.N.Y. 2009).[7]

Second, as to risk of non-payment, appellants are located in different jurisdictions, which would require Class Plaintiffs to institute multiple collection actions to recover their costs. Courts have found that such geographic dispersion increases the

---

[7] Class Plaintiffs argue that the financial resources of Bueno's lawyer, Furman, should also be considered with regards to the ability to pay an appellate bond. See Lead Plaintiff's Reply in Support of its Motion for Appeal Bonds ("Bond Reply") at 2, Dkt. 886. However, Class Plaintiffs stated in their initial motion that they were requesting Bueno (not Furman) to post an appeal bond, and the only case that they cite in their reply to support consideration of Bueno's lawyer's assets in addition is inapposite, as it addresses Rule 38 sanctions awarded against both the appellant and the appellant's lawyer, not an appeal bond. See Bond Reply at 2, citing Ransmeier v. Mariani, 718 F.3d 64 (2d Cir. 2013).

risk of nonpayment. See Initial Pub. Offering, 728 F. Supp. 2d at 293; Currency Conversion, 2010 WL 1253741, at *2. Bueno and the Gielatas do offer personal guarantees that they would pay, see B. Opp. at 5 and G. Opp. at 16. However, Class Plaintiffs reasonably note that these guarantees are undercut by Bueno's claims regarding his inability to pay and Joseph Gielata's history of fraud.

Finally, and most critically, as discussed in detail above, while the Gielatas' appeal is slightly more colorable than Bueno's frivolous appeal, both appeals lack merit and both appellants have exhibited some bad faith conduct, albeit worse in Bueno's case than in the case of the Gielatas.

Based on its assessment of the relevant factors, the Court thus finds that an appeal bond is warranted as to both Bueno and the Gielatas.

As noted, the Court finds Class Plaintiffs' estimation of costs in the amount of $50,000 reasonable. See, e.g., Currency Conversion 2010 WL 1253741, at *3 (Finding an appeal bond of $50,000 appropriate to cover taxable costs); Berry, 632 F. Supp. 2d at 308 (same); Baker v. Urban Outfitters, Inc., No. 01 civ. 5440, 2006 WL 363592, at *1 (S.D.N.Y. Dec. 12, 2006) (same). However, it does appear that Bueno's resources are notably less than the Gielatas'. Accordingly, the Court directs that the Gielatas post an appeal bond in the amount of $50,000 and that

30

Bueno post an appeal bond in the amount of $5,000, both bonds to
be posted by October 1, 2018.

**III. Conclusion**

In conclusion, the Court hereby orders Joshua R. Furman to
pay Class Plaintiffs, by no later than October 1, 2018, the sum
of $10,000. This is without prejudice, however, to the
imposition of further sanctions against Furman. In all other
respects, the Court denies Class Plaintiffs' motion for
sanctions against Furman and against the Gielatas, and likewise
denies both Furman's and the Gielatas' cross-motions for
sanctions against Class Counsel. Further, Bueno is hereby
ordered to post an appeal bond in the amount of $5,000, and the
Gielatas are hereby ordered to post an appeal bond in the amount
of $50,000, both by October 1, 2018. The Clerk is instructed to
close docket numbers 856, 859, and 862.

SO ORDERED.

Dated:    New York, NY
          September 1, 2018          JED S. RAKOFF, U.S.D.J.

31