USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/30/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------x
                                      :
In re: PETROBRAS SECURITIES           :
LITIGATION                            :
                                      :
--------------------------------------x

14-cv-9662 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

Cornell University moves the Court to intervene in the securities fraud class action against Petróleo Brasiliero S.A. (Petrobras) and for an order under 28 U.S.C. § 1782 authorizing discovery for use in a foreign proceeding. Alternatively, Cornell moves the court for an order unsealing judicial documents. For the following reasons, the Court denies Cornell's motion to order discovery under § 1782 and finds it unnecessary to decide the motion to intervene, but grants in substantial part Cornell's motion to unseal documents.

## BACKGROUND

Petitioner Cornell University is a member of the class of plaintiffs suing Petrobras in the Southern District of New York over allegations that Petrobras violated U.S. securities laws by making materially misleading statements in connection with the sale of American Depository Receipts (ADRs) on the New York Stock Exchange. Pet'r's Mem. of Law at 1, ECF No. 922. On July 2, 2018, this Court entered a final judgment approving a settlement in this class action. ECF No. 838.

1

In addition to its ADRs, Cornell also purchased other Petrobras securities that trade on a Sao Paolo stock exchange called the Bovespa. Pet'r's Mem. of Law at 1. On July 30, 2015, this Court dismissed class members' claims arising from securities purchased on the Bovespa, holding that an arbitration clause in Petrobras' bylaws mandated that these claims be arbitrated in Brazil. 116 F. Supp. 3d 368 (S.D.N.Y. 2015).

Cornell is now proceeding against Petrobras before the Bovespa's Market Arbitration Chamber (the CAM), alleging that the same fraudulent misstatements underlying the U.S. class action also caused Cornell to incur losses on the Petrobras securities that Cornell purchased on the Bovespa. Pet'r's Mem. of Law at 1. Cornell believes that certain documents Petrobras produced during discovery in the U.S. action will strengthen its case before the CAM. But since the documents Cornell seeks were filed under seal pursuant to a protective order dated September 1, 2015, ECF No. 206, Cornell now moves this Court to grant access to those documents for use in the CAM arbitration proceeding. Cornell presents two alternative legal avenues through which this Court could grant it access to the documents it seeks: an order compelling discovery for use in a foreign proceeding under 28 U.S.C. § 1782, or an order unsealing the documents.

## DISCUSSION

2

For the reasons below, the Court denies Cornell's motion under
28 U.S.C. § 1782 and grants in part Cornell's motion for an
order unsealing judicial documents.

I.  **Motion for an Order Under 28 U.S.C. § 1782 Authorizing
    Discovery for Use in a Foreign Proceeding**

### A. Legal Framework

28 U.S.C. § 1782(a) authorizes "the district court of the
district in which a person resides or is found [to] order him to
give his testimony or statement or to produce a document or
other thing for use in a proceeding in a foreign or
international tribunal . . . ." 28 U.S.C. § 1782(a) (2018).
Either the foreign tribunal itself or "any interested person"
may move the court to compel discovery. Id. [1]

A district court's power under § 1782 is discretionary. The
statute "authorizes, but does not require, a federal district
court" to compel the discovery that the petitioner requests.
Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 255

---

[1] "[I]n an abundance of caution," Cornell also moves the Court to
intervene in the U.S. class action. Pet'r's Mem. of Law at 3. It
is not clear, however, what the legal significance of
intervention would be here. Because "any interested person" may
move a court to compel discovery under § 1782, district courts
may, and routinely do, grant § 1782 motions without formal
intervention. See, e.g., In re Gushlak, No. 11 MC 218, 2012 WL
1514824, at *3 n.4 (E.D.N.Y. Apr. 30, 2012) ("[C]ourts routinely
grant § 1782 applications ex parte . . . ."). Whether Cornell
intervenes in the class action is, accordingly, irrelevant to
its § 1782 motion, and the Court therefore declines to consider
Cornell's motion to intervene in this context.

(2004). Before deciding whether to exercise this discretion,
however, the district court must first conclude that the
petition satisfies three mandatory requirements found in the
language of the statute: first, the person from whom the
applicant seeks to compel discovery must "reside[] or [be]
found" in the district in which the court sits; second, the
discovery must be "for use in a foreign proceeding before a
foreign or international tribunal" (alteration omitted); and
third, the moving party must be the foreign or international
tribunal itself or "any interested person." 28 U.S.C. § 1782(a);
Mees v. Buiter, 793 F.3d 291, 297 (2d Cir. 2015). Only after
finding that the motion satisfies these three requirements may
the court proceed to its discretionary analysis.[2] Mees, 793 F.3d
at 297.

Cornell's motion fails to satisfy the first and second
requirements. Petrobras is not "found" in the Southern District

---

[2] In Intel, the Supreme Court enumerated four factors that the
district court must weigh when deciding whether to exercise its
discretion to compel discovery under the statute: first, whether
the party from whom the petitioner seeks discovery is a
participant in the foreign proceeding; second, "the nature of
the foreign tribunal, the character of the proceedings underway
abroad, and the receptivity of the foreign government or the
court or agency abroad to U.S. federal-court judicial
assistance;" third, whether the motion "conceals an attempt to
circumvent foreign proof-gathering restrictions or other
policies of a foreign country or the United States;" and fourth,
whether the discovery request is "unduly intrusive or
burdensome." Intel, 542 U.S. at 264-65.

4

of New York, and the CAM is not a "foreign or international tribunal."[3] The motion is therefore denied.

## B. Petrobras is not "Found" in the District

Petrobras argues that § 1782's "resides or is found" language means that a district court must have personal jurisdiction over the party from whom the petitioner seeks discovery. Petrobras reasons that — because it is a foreign corporation that does not maintain its principal place of business in New York — this Court lacks general personal jurisdiction under Daimler AG v. Bauman, 571 U.S. 117 (2014), and BNSF Railway Co. v. Tyrrell, 137 S. Ct. 1549 (2017). Opp'n Mem. of Law at 6-8, ECF No. 930. Further, Petrobras argues, this Court lacks specific personal jurisdiction with respect to the claims in the CAM arbitration because those claims arise from securities sold in Brazil. Opp'n Mem. of Law at 7 n.9; Surreply Mem. at 3, ECF No. 939.[4] Cornell's position seems to be that the

---

[3] The parties agree that Cornell satisfies the third statutory requirement because Cornell is an "interested person" in the CAM arbitration.

[4] Petrobras also argues that the "resides or is found" language means that the documents that the § 1782 petitioner seeks must be located inside the United States, Opp'n Mem. of Law at 8-9, and that the documents at issue here are in Brazil. Since this Court holds for Petrobras on the personal jurisdiction issue, it is not necessary to address this argument in detail. It is worth noting, however, that courts within this District have split on the issue. This Court has held that § 1782 does not authorize district courts to compel parties to produce documents located outside the United States, In re Godfrey, 526 F. Supp. 2d 417,

5

bar for being "found" in a district for the purposes of § 1782 is much lower than the bar for general personal jurisdiction under Daimler, see Pet'r's Mem. of Law at 5 (arguing that the company is found New York because it has offices and does business in Manhattan); or alternatively that this Court has specific or pendant personal jurisdiction over Petrobras. Reply Mem. at 2-3, ECF No. 936.

The threshold question for this Court to decide is whether the "resides or is found" language in § 1782 means that a court must have personal jurisdiction over the party from whom the movant seeks discovery. There is no binding precedent on this question. In re Sargeant, 278 F. Supp. 3d 814, 820 (S.D.N.Y. 2017) ("It is unclear whether § 1782's statutory prerequisite that a person or entity reside or be found in a district is

423 (S.D.N.Y. 2007) (Rakoff, J.), while other courts considering the issue more recently have decided otherwise, see, e.g., In re Accent Delight Int'l Ltd., No. 18 MC 50, 2018 WL 2849724 (S.D.N.Y. June 11, 2018), at *3-*4; Purolite Corp. v. Hitachi Am., Ltd., No. 17 Misc. 67, 2017 WL 1906905, at *2 (S.D.N.Y. May 9, 2017); In re Application of Kreke Immobilien KG, No. 13 Misc. 110, 2013 WL 5966916, at *4 (S.D.N.Y. Nov. 8, 2013). Insofar as legal arguments about whether the statute requires personal jurisdiction and whether the statute reaches documents located outside the United States both reflect a policy concern about "turn[ing] American courts into clearing houses for requests for information from courts and litigants all over the world," In re Godfrey, 526 F. Supp. 2d at 423 (internal quotation marks omitted), it may be the case that in the post-Daimler context, personal jurisdiction provides the simpler doctrinal tool to address this concern.

6

coextensive with whether a court has personal jurisdiction over that person or entity.").

Nevertheless, the great weight of authority suggests that "[a]t minimum . . . compelling an entity to provide discovery under § 1782 must comport with constitutional due process." Id. Indeed, most recent opinions in the Southern District of New York on this question have held as much. Id.; In re Del Valle Ruiz, 342 F. Supp. 3d 448, 453 (S.D.N.Y. 2018) ("Given that constitutional due process principles apply to an applicant's request for discovery, it follows that that district courts should employ the same analysis as when determining whether personal jurisdiction is present over a person."); In re Fornaciari, No. 17 MC 521, 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018) ("Although § 1782 does not define what it means to reside or be found in a district, courts in this District — including this one — have held that at minimum, compelling an entity to provide discovery under § 1782 must comport with constitutional due process.") (internal quotation marks omitted); Austl. and N.Z. Banking Grp. Ltd. v. APR Energy Holding Ltd., No. 17 MC 216, 2017 WL 3841874, at *3 (S.D.N.Y. Sept. 1, 2017) ("Regardless of what section 1782 requires, the Constitution's due process protections apply."); see also In re Godfrey, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (Rakoff, J.) ("[I]nsofar as the word 'found' is applied to corporations, 'it

7

may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence.'" (citations omitted)); In re Application of Thai-Lao Lignite (Thailand) Co., 821 F. Supp. 2d 289, 294 n.4 (D.D.C. 2011) (noting that the questions of whether a district court has personal jurisdiction over a person and whether that person is found in the district for purposes of § 1782 "[a]t minimum . . . overlap considerably").

It is true that the decisions of two Courts in this District could be read to suggest that a foreign person was "found" in the district for purposes of § 1782 based on business activities in New York that would not confer general personal jurisdiction under Daimler and BNSF. See Ayyash v. Crowe Horwath LLP, No. 17 MC 482, 2018 WL 1871087, at *2 (S.D.N.Y. Apr. 17, 2018) (stating that respondents "can be found in this district because they have offices here"); In re Ex Parte Application of Kleimar N.V., 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016) (respondent "found in" the district because it trades ADRs on the NYSE and has a wholly-owned subsidiary doing business in the United States). It appears, however, that the parties in these cases never raised arguments about personal jurisdiction, and in any event, the opinions do not discuss the issue, so they are of little weight as far as this issue is concerned.

Additionally, the Second Circuit's opinion in Gucci America
v. Weixing Li, 768 F.3d 122 (2d Cir. 2014), supports the
proposition that district courts should read the "resides or is
found" language in § 1782 to incorporate a personal jurisdiction
requirement. In Gucci America, the Second Circuit held that the
requirement of personal jurisdiction applies to at least some
discovery requests. Gucci America arose out of an intellectual
property dispute by makers of luxury bags against
counterfeiters. Seeking evidence for their claim, the bag
manufacturers subpoenaed documents concerning the defendants
from their bank, the Bank of China, which operated a branch in
New York City but was incorporated and had its principal place
of business in China. The Bank produced the documents located in
the New York branch but refused to produce the documents held in
China, arguing that the Court lacked general personal
jurisdiction over the bank and thus could not compel it to
produce those documents. The appellate court held that "[a]
district court . . . must have personal jurisdiction over a
nonparty in order to compel it to comply with a valid discovery
request under Federal Rule of Civil Procedure 45," and remanded
for the district court to consider whether personal jurisdiction
existed. Id. at 141. Although Gucci America discusses a subpoena
for documents under FRCP 45, not a motion to compel discovery
under 28 U.S.C. § 1782, nothing in the decision's reasoning

9

suggests that it would not also apply, mutatis mutandis, to a court's authority to compel discovery in other contexts as well.[5]

This Court therefore concludes that it should apply a personal jurisdiction analysis to determine whether Petrobras is "found" in the district for the purposes of the § 1782 motion.

## General Personal Jurisdiction

The parties do not argue that this Court has general personal jurisdiction over Petrobras, and the Court clearly does not. A corporation is subject to the general personal jurisdiction of the courts in the states of its incorporation and its principal place of business. Daimler AG v. Bauman, 571 U.S. 117, 137-38 (2014). In an "exceptional case," a corporation

_____

[5] The Second Circuit's opinion in In re Edelman, 295 F.3d 171 (2d Cir. 2002), is not inconsistent with this principle. In Edelman, the Court held that an individual who did not live in the district was "found in" the district for the purposes of § 1782 because he was served with the subpoena while physically present in the district. 295 F.3d at 179. The Edelman Court's reasoning relies on the idea of "tag jurisdiction," id., described by the Supreme Court in Burnham v. Superior Court of California, 495 U.S. 604 (1990). But after Daimler, this view of personal jurisdiction seems to apply only to individuals, rather than corporations. See Brown v. Lockheed Martin Corp., 814 F.3d 619 (2d Cir. 2016) (holding that Connecticut's business registration statute that required foreign corporations to appoint an in-state agent for service of process did not constitute consent by foreign corporations to the personal jurisdiction of Connecticut's courts). Since the § 1782 motion at issue in Edelman sought discovery from an individual, a French citizen, who was served with a subpoena for his deposition while he was in New York City, 295 F.3d at 174, the standard for personal jurisdiction in that case is different from the one here, which concerns a foreign corporation.

10

could become subject to the personal jurisdiction of the courts in an additional state if the corporation's contacts with that state are "so continuous and systematic as to render [it] essentially at home," Daimler, 571 U.S. at 138-39 & n.19 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (internal quotation marks omitted)). But even extensive business contacts such as significant physical infrastructure and thousands of employees in a particular state do not constitute such an exceptional case. See BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549 (2017).

Petrobras is incorporated and maintains its principal place of business in Brazil. While the company maintained an office in Manhattan at the time Cornell filed its motion, Reply Mem. at 2, and sells ADRs on the New York Stock Exchange, these business contacts are far from sufficient to subject Petrobras to the general personal jurisdiction of courts in New York.

## Specific Personal Jurisdiction

A closer question is whether this Court has specific personal jurisdiction over Petrobras with respect to this motion. Cornell argues that the Court does, because this Court undoubtedly has personal jurisdiction in the underlying securities fraud class action, and because Cornell "simply seeks access to the discovery that is already conducted in this case." Reply Mem. at 2. Petrobras retorts that "[p]ersonal jurisdiction

is determined claim by claim," Surreply Mem. at 3, and so even if this Court has personal jurisdiction over Petrobras vis-à-vis the U.S. class action (alleging fraud in connection with securities sold on the NYSE), this Court does *not* necessarily have personal jurisdiction over Petrobras vis-à-vis the § 1782 motion (which arises out of the CAM arbitration, alleging fraud in connection with securities sold in Brazil).

Courts in the Second Circuit employ a two-step analysis to determine whether they have specific jurisdiction over a claim. Gucci Am., 768 F.3d 122, 136 (2d Cir. 2014). "First, the court must decide if the defendant has 'purposefully directed his activities at . . . the forum and the litigation . . . arise[s] out of or relate[s] to those activities.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). Second, "once the court has established these minimum contacts, it 'determine[s] whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" Id. (quoting Burger King, 471 U.S. at 476).

The relevant facts here presented are somewhat different from the cases cited above in which courts in this District held that they lacked personal jurisdiction over a § 1782 respondent. Neither the discovery request in In re Sargeant, 278 F. Supp. 3d 814, nor that in In re Del Valle Ruiz, 342 F. Supp. 3d 448, for example, involved foreign corporations that were already the

12

defendants in a related U.S. action, as well as documents that the corporation had already produced in that action.

Nevertheless, Petrobras has the better argument. Cornell seeks discovery under § 1782 for use in the CAM arbitration, which alleges misconduct by Petrobras that occurred entirely in Brazil. The test for personal jurisdiction therefore fails at the first step, because Petrobras did not "purposefully direct[] [its] activities" relevant to the CAM arbitration at the forum. Gucci Am., 768 F.3d at 136.

Cornell makes several additional arguments, but all are unpersuasive. First, Cornell cites In re Fornaciari, No. 17 MC 521, 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018) for the proposition that due process is satisfied when the party subject to discovery under § 1782 "ha[s] sufficient contacts with the forum that relate to the requested discovery or from which the discovery order arises." Pet'r's Mem. of Law at 2. But this does not help Cornell's case. Petrobras's conduct "from which the discovery order arises" was the allegedly fraudulent sale of securities on the Bovespa, i.e., conduct that occurred entirely in Brazil.

Similarly, Cornell's protest that it "is a member of the Class and simply seeks access to the discovery that was already conducted in this case," Pet'r's Mem. of Law at 2, is unhelpful for the same reason. Petrobras produced this discovery in an

13

action in which this Court has specific personal jurisdiction, but it does not follow that the Court therefore has authority to order Petrobras to turn over this discovery for use in a foreign proceeding that arises from conduct entirely outside the forum.

Next, Cornell cites Dysart v. Marriott Corp., 103 F.R.D. 15, 18 (E.D. Pa. 1984) in which a district court in another circuit held that "[o]nce a third-party defendant has been properly brought within the jurisdiction of the court by an original defendant, personal jurisdiction need not be established independently by plaintiff." This case would be persuasive authority at best, but it is unpersuasive here because it long predates the dramatic shift in the doctrines of personal jurisdiction that culminated in Daimler and BNSF.

Finally, Cornell argues that this Court may exercise pendant personal jurisdiction over Petrobras. Reply Mem. at 3 (quoting IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056 (2d Cir. 1993)). But this last argument is no more persuasive than the others. IUE AFL-CIO held that "where a federal statute authorizes nationwide service of process, and the federal and state claims 'derive from a common nucleus of operative fact,' . . . the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available." Id.(quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). This doctrine,

14

however, does not apply to the current fact pattern.[6] IUE AFL-CIO
involved a situation where a plaintiff brought related federal
and state-law claims, and the state-law claims required joinder
of additional defendants. This case says nothing about the
authority of a court under § 1782 to compel a foreign defendant
to produce discovery for use in a foreign proceeding that only
concerns its actions outside the United States.

For these reasons, this Court holds that Petrobras is not
found in the District for the purposes of § 1782.

### C. The CAM is not a "Foreign or International Tribunal"

Petrobras also urges this Court to reject Cornell's § 1782
motion on the independent ground that the CAM is not a "foreign
or international tribunal." In Petrobras's view, the term in the
statute excludes arbitral bodies established by private parties.
Opp'n Mem of Law. at 9. Cornell does not dispute the fact that
the CAM is a private entity,[7] but argues for a broader reading of
the statutory language. Reply Mem. at 4-5.

---

[6] Petrobras also questions whether this doctrine is still good
law. Surreply Mem. at 3 & n.6. The Court declines to opine on
this question.

[7] See also Decl. of Marcelo Gandelman, ECF No. 929, at ¶ 7
("Neither the CAM nor the Tribunal have any ties to the
Brazilian (or any other) government."); id. at ¶ 10 ("No member
of the Tribunal is a government employee."). In re Application
of Hanwei Guo for an Order to Take Discovery for Use in a
Foreign Proceeding Pursuant to 28 U.S.C. § 1782, No. 18 MC 561,
2019 WL 917076 (S.D.N.Y. Feb. 25, 2019) sets out five criteria
for courts to use to distinguish between private and state-

15

Here, unlike the previous question, there is a Second
Circuit precedent directly on point. In NBC v. Bear Stearns, 165
F.3d 184, 191 (2d Cir. 1999), the Second Circuit held that "an
arbitral body established by private parties" was not a "foreign
tribunal" for the purposes of § 1782. NBC relied primarily on
the legislative history of § 1782, holding that Congress's 1964
revision to the statute – which added the phrase "foreign or
international tribunal" in place of the earlier phrase "judicial
proceeding" to § 1782 – broadened the scope of the statute only
to include administrative proceedings as well as proceedings
before non-governmental adjudicative bodies created by
governments or by intergovernmental agreements. 165 F.3d at 188-
90.

Cornell responds, however, that the Supreme Court
effectively abrogated NBC in Intel Corp. v. Advanced Micro
Devices, Inc., 542 U.S. 241 (2004). Reply Mem. at 4-5. In dicta,
Intel quotes a 1965 law review article by Professor Hans Smit
for the proposition that "[t]he term 'tribunal' . . . includes
investigating magistrates, administrative and arbitral
tribunals, and quasi-judicial agencies, as well as conventional
civil, commercial, criminal, and administrative courts." 542

affiliated arbitral bodies. But because Cornell and Petrobras do
not dispute this point, the Court need not consider these
factors here.

16

U.S. at 258 (emphasis added). According to Cornell, the Supreme
Court's reference to "arbitral tribunals" is enough to overturn
NBC's holding. And indeed, Cornell has some authorities on its
side. There have been three post-Intel cases in this District
examining the question of whether Intel overruled NBC's holding
that a private arbitral body is not a "foreign tribunal" for the
purposes of § 1782, and two of them held that it did. In re
Application of the Children's Inv. Fund Found. (UK), 363 F.
Supp. 3d 361, 364 (S.D.N.Y. 2019); In re Ex Parte Application of
Kleimar N.V., 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016). In the
most recent of these cases, however, the court held that NBC
remained good law. In re Application of Hanwei Guo for an Order
to Take Discovery for Use in a Foreign Proceeding Pursuant to 28
U.S.C. § 1782, No. 18 MC 561, 2019 WL 917076 (S.D.N.Y. Feb. 25,
2019).[8]

Upon consideration of these conflicting cases, as well as
the arguments of the parties, this Court concludes that NBC

---

[8] The Second Circuit has not revisited its holding in NBC since
Intel. The closest it got was in 2011, when a panel declined to
reach the question of whether an arbitration before the Hague
pursuant to the Bilateral Investment Treaty between the United
States and Ecuador and the United Nations Commission on
International Trade Law was a "foreign tribunal" for the
purposes of § 1782. Chevron Corp. v. Berlinger, 629 F.3d 297,
310 (2d Cir. 2011). This fact pattern would not have been
covered by NBC anyway, because the arbitral body was not
"established by private parties" and because the arbitration was
mandated by treaty, rather than chosen by the parties via a
contract. Id. at 303.

17

remains good law. To begin with, the Court is doubtful that a passing dictum in a Supreme Court opinion — taken, moreover, out of its context[9] — is sufficient to abrogate an extensively-reasoned and directly on-point Second Circuit precedent. See Monsanto v. United States, 348 F.3d 345, 351 (2d Cir. 2003) (stating that district courts are "required to follow" on-point Second Circuit precedent "unless and until that case is reconsidered by [the Second Circuit] sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision").

More importantly, it is far from clear that the quotation referencing arbitral tribunals in Intel even casts doubt on the holding of NBC. Recall that NBC held that arbitral bodies created by governments or intergovernmental agreements are "tribunals" for the purposes of § 1782, but that arbitral bodies created by private parties are not. 165 F.3d at 188-90. The quote in Intel from Professor Smit's 1965 article, 542 U.S. at 258, simply says that "arbitral tribunals" are within the scope of § 1782, not that private arbitral tribunals are. Professor Smit's explanation, therefore, is not inconsistent with NBC,

---

[9] The passage in which the Smit quote appears has nothing to do with arbitration. Rather, the Supreme Court quotes Professor Smit to support the (uncontroversial) proposition that the 1964 revision expanded the scope of the statute and to conclude that the European Commission — an entity created by intergovernmental agreement — is a "foreign or international tribunal" within the meaning of the statute. Intel, 542 U.S. at 257-58.

because the author may only have been referring to arbitral
tribunals created by governments and intergovernmental
agreements. This is not only a plausible reading of his words,
but is in fact probably what he meant, given his other writing
on the topic. Professor Smit's 1965 law review article that the
Supreme Court quotes in Intel was discussing the preceding
year's addition of the term "foreign or international tribunal"
to the statute. As the Second Circuit explains in NBC, Professor
Smit wrote another law review article in 1962, two years before
Congress revised the statute, in which he expressed the view
that "an international tribunal owes both its existence and its
powers to an international agreement." 165 F.3d at 190 (quoting
Hans Smit, Assistance Rendered by the United States in
Proceedings Before International Tribunals, 62 Colum. L. Rev.
1264, 1267 (1962)).[10] When he wrote the words that the Supreme
Court would later quote, Professor Smit seems to have believed
that § 1782 did not apply to private arbitral bodies. It is

_____

[10] NBC goes on to note that by the 1998, Professor Smit took the
view that the term "tribunal" in § 1782 should be read to
include private arbitral bodies. 165 F.3d at 190 n.6 (citing
Hans Smit, American Assistance to Litigation in Foreign and
International Tribunals, 25 Syracuse J. Int'l L. & Com. 1, 5,
(1998)). The NBC Court, however, viewed his contemporaneous
writings as more persuasive evidence of the meaning of the 1964
statute, 165 F.3d at 190 n.6, and this Court views Professor
Smit's 1962 writing as better evidence than his 1998 writing of
his views in 1965.

19

implausible, then, to read the Supreme Court's approving quotation of him as an endorsement of the opposite view.

This Court accordingly further denies Cornell's § 1782 motion on the independent ground that NBC remains good law and that the statutory term "foreign or international tribunal" does not include an arbitration chamber created by private parties.

## II. Motion for an Order Unsealing Judicial Documents

Cornell also moves the Court to unseal the summary judgment papers that the parties filed under seal in this action.[11] Pet'r's Mem. of Law at 12. For context, in September 2015, the parties jointly submitted, and the Court approved, a protective order in the Court's standard form that allowed the parties to keep confidential for purposes of this litigation certain discovery items that one side or the other believed contained secret or sensitive information of the kinds specified in the order. Further to that order, in July 2016, the Court issued a second protective order allowing the parties to file under seal the discovery materials utilized in the summary judgment motion practice that the parties had previously marked as confidential. See Protective Order Dated July 1, 2016, ECF No. 685.

_____

[11] Again, a party need not intervene to make a motion to unseal documents, so it is not necessary to consider Cornell's motion to intervene here.

20

However, none of this sealing was intended to be forever, and the parties knew as much. For example, the September 2015 order, issued on consent, recited in paragraph 9 that "[a]ll persons are hereby placed on notice that the Court is unlikely to seal or otherwise afford confidential treatment to any Discovery Material introduced in evidence at trial, even if such material has previously been sealed or designated as Confidential. The Court also retains unfettered discretion whether or not to afford confidential treatment to any Confidential Document or information contained in any Confidential Document submitted to the Court in connection with any motion, application, or proceeding that may result in an order and/or decision by the Court." Protective Order Dated Sept. 2, 2015, ECF No. 206.

The Court is of the view that most of the materials covered by the July 2016 order can now be unsealed. Since the documents related to this Court's ruling on summary judgment, they were judicial documents, and there is a strong presumption in favor of public disclosure of judicial documents. As the Second Circuit stated only days ago, summary judgment papers are "judicial documents" as a matter of law. Giuffre v. Maxwell, No. 18-2868, slip op. at 11 (2d Cir. July 3, 2019); see also, e.g., Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 121 (2d Cir. 2006). Accordingly, the presumption in favor of public access

attaches here. The Court's conclusion, three years ago, that a protective order was justified at that time is not sufficient in itself to rebut this presumption; indeed, since most of the documents date from several years prior to that, the conditions that once made them commercially sensitive are in many instances no longer relevant.

Nonetheless, a few of the documents – or, more likely, a few sentences within a few of the documents – may still contain "business information that might harm a litigant's competitive standing." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978); see also, e.g., New York v. Actavis, PLC, No. 14 Civ. 7473, 2014 WL 5353774 (S.D.N.Y. Oct. 21, 2014). In particular, in briefing on this motion, Petrobras has satisfied this Court that some of the sealed documents might still contain snippets of information that even the now much-reorganized Petrobras could reasonably claim were still commercially sensitive. See Letter Dated July 22, 2019, ECF No. 944. Likewise, class representatives also raised concerns about unsealing certain of the summary judgment documents that they produced. See Response Dated June 21, 2019, ECF No. 931.

Cornell's motion to unseal is therefore granted in part. Specifically, the parties must now review the sealed documents, and, mindful of the Court's doubt that confidentiality is still required in most cases, produce to Cornell by August 15, 2019 (a)

22

copies of all documents that in the view of the producing parties can now be unsealed, (b) redacted copies of documents that can be partially unsealed, and (c) a list of all documents that the producing party believes must still be kept entirely under seal. If, following such production, Cornell wishes to object to any remaining sealings, it will notify the court in writing of its objections by August 29, 2019, at which time the Court will review the remaining sealings in camera. The Court will then issue a final order of unsealing, and Cornell will then be free to use the unsealed documents as it sees fit.

SO ORDERED.

Dated:    New York, NY

July 29, 2019                          JED S. RAKOFF, U.S.D.J.