UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PETROBRAS SECURITIES LITIGATION | Case No. 14-cv-9662 (JSR)<br><br>**CLASS ACTION** |

**CORRECTED MEMORANDUM IN SUPPORT OF CLASS REPRESENTATIVES'
MOTION FOR AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUND**

**POMERANTZ LLP**
Jeremy A. Lieberman
Emma Gilmore
Brenda Szydlo
Jennifer B. Sobers
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
egilmore@pomlaw.com
bszydlo@pomlaw.com
jbsobers@pomlaw.com

*Counsel for Class Representatives and the Settlement Class*

**TABLE OF CONTENTS**

I. BACKGROUND ................................................................................................................ 1

II. CLAIMS ADMINISTRATION ....................................................................................... 2

III. DISTRIBUTION OF THE NET SETTLEMENT FUND .................................................. 8

IV. THE COURT SHOULD BAR CLAIMS AGAINST THE SETTLEMENT FUND
    AND THOSE ADMINISTERING THE SETTLEMENT ................................................ 11

V. CLASS COUNSEL'S EXPENSES ................................................................................ 12

VI. PAYMENTS TO THE CLAIMS ADMINISTRATOR AND EISNERAMPER ............. 12

VII. RECORD RETENTION AND DESTRUCTION ........................................................... 13

VIII. CONCLUSION ................................................................................................................ 13

Class Representatives Universities Superannuation Scheme Limited, Employees Retirement System of the State of Hawaii and North Carolina Department of State Treasurer respectfully submit this memorandum in support of their motion for entry of the Proposed Order Granting Authorization to Distribute Net Settlement Fund (the "Distribution Order") in the above-captioned action (the "Action").[1]  The proposed plan for distributing the Net Settlement Fund is set forth in the Declaration of the Claims Administrator in Support of Class Representatives' Motion for Approval of Distribution Plan (the "Amin-Giwner Declaration" or "Amin-Giwner Decl."), which is being submitted on behalf of the Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Claims Administrator").[2]

If entered by the Court, the Distribution Order will, among other things, (1) approve Epiq's recommendations accepting and rejecting Claims submitted in the Action; (2) direct the distribution of the Net Settlement Fund to Claimants whose Claims have been accepted as valid and approved by the Court; (3) approve reimbursement of Class Counsel's expenses incurred since its May 1, 2018 Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (Dkt. No. 731); and (4) approve Epiq's fees and expenses incurred in connection with the class certification and settlement phases of the Action.

I. **BACKGROUND**

The Stipulation and the Amended Stipulation entered into by Plaintiffs and Defendants sets forth the terms of the settlements reached in the Action (the "Settlements").  On July 2,

---

[1] Unless otherwise indicated herein, all terms with initial capitalization shall have the meanings ascribed to them in the concurrently filed Declaration of the Claims Administrator in Support of Class Representatives' Motion for Approval of Distribution Plan, the Stipulation of Settlement and Release, dated February 1, 2018 (Dkt. No. 767-1) (the "Stipulation"), or the Amended Stipulation and Agreement of Settlement, dated February 1, 2018 (Dkt. No. 767-10) (the "Amended Stipulation").

[2] Garden City Group, LLC ("GCG"), the Court-appointed Claims Administrator in this Action, was acquired by Epiq on June 15, 2018 and is now continuing operations as part of Epiq.

1

2018, the Court entered judgment (Dkt No. 838), granting final approval to the Settlements. Pursuant to the terms of the Settlements, a total of $2.016 billion was paid into the escrow for the benefit of the Settlement Class in 2018, with the remaining $984 million paid on January 15, 2019.

As detailed in the accompanying Amin-Giwner Declaration, Epiq has processed all Proofs of Claim received through January 31, 2019, in accordance with the terms of the Settlements and the Court-approved Plan of Allocation set forth in the Notice, and submits its administrative determinations accepting and rejecting the Claims in preparation for a distribution of the Net Settlement Fund to Authorized Claimants. Amin-Giwner Decl. ¶ 4.

## II.     CLAIMS ADMINISTRATION

Epiq has mailed 1,196,699 Notice Packets to potential Settlement Class Members or their nominees (*id.* ¶ 5); established and continues to maintain a website and telephone number dedicated to the Settlements to assist potential Settlement Class Members (*id.* ¶ 6); and caused the Summary Notice to be published in 99 international, national, and regional media in 31 languages and in 33 countries/regions (*id.* ¶7). Each Settlement Class Member who wished to be potentially eligible to receive a distribution from the Net Settlement Funds was required to complete and submit to Epiq a properly executed Proof of Claim postmarked no later than June 9, 2018 together with adequate supporting documentation for the transactions and holdings reported therein. Epiq has received 264,587 Proofs of Claim. *Id.* ¶ 8. Of those claims, 48,909 were paper Claims (*id.* ¶ 11), 4,396 were submitted online through the Settlement website (*id.* ¶ 15), and 211,282 were filed electronically (*id.* ¶ 16).

Epiq reviewed all Proofs of Claim to ensure that they were not submitted by, or on behalf of, persons or entities excluded from the Settlement Class by definition to the extent that the identities of such persons or entities were known to Epiq through the list of Defendants and other

2

excluded persons and entities set forth in the Stipulations and the Notice and through the Claimants' certifications on the Proofs of Claim. Epiq also reviewed all Proofs of Claim against the list of persons and entities who were excluded from the Settlement Class pursuant to requests for exclusion. *Id.* ¶ 22.

In addition to noting various complexities that were encountered in claims processing, Epiq also encountered a number of additional complexities because of the nature of the claims asserted and the issues in the Action. Examples of additional complexities faced in this administration include the number of differing types of securities (*id.* ¶ 24) and a multi-faceted, complex Plan of Allocation (*id.* ¶ 25). 253,801 Proofs of Claim were partially or wholly ineligible for one or more reasons and therefore were subject to additional processing, correspondence, and telephonic communications (*id.* ¶ 26). Additionally, there was an abundance of non-conforming Proofs of Claims which required significantly more work than standard Proofs of Claim (*id.* ¶ 27).

Many of the Proofs of Claims submitted were deficient in various ways. Much of Epiq's efforts in handling the administration involved Claimant communications so that all Claimants have sufficient opportunity to cure any deficiencies in their Proofs of Claim. The deficiency process involved letters and emails to Claimants and inbound and outbound calls to Claimants. *Id.* ¶ 28. As a result of this process, a significant number of Claimants are now recommended as eligible for participation in the Settlement. *Id.*

As of September 11, 2019, Epiq mailed (or emailed in the case of electronic claims) a "Notice of Rejection of Your Entire Claim" in connection with approximately 246,000 Proofs of Claim; and a "Notice of Rejection of Part of Your Claim" in connection with approximately 7,400 Proofs of Claim. *Id.* ¶¶ 29-30. Both letters advised Claimants that, if they disagreed with

Epiq's administrative determinations, they had the right to request the Court's review of their Proofs of Claim.  Each such letter also explained that this deficiency process was the Claimant's opportunity to cure the deficiencies in the Claim (to the extent that the deficiencies could be cured), and that a Claimant desiring to contest the administrative determination was required to submit a written statement to the claims administrator requesting review of his, her, or its Proof of Claim and setting forth the basis for the request within 20 days of the date of the letter.  *Id.* ¶ 32.  After responses to the "deficiency" letters were received and evaluated, and the Proofs of Claim updated, Epiq called Claimants with still-deficient Proofs of Claim to provide them with an opportunity to cure the deficiencies in their Claims.  *Id.* ¶ 33.

As of September 11, 2019, Epiq has received letters from 605 Claimants contesting the rejection of their Claims in whole or in part.  *Id.* ¶ 38.  A significant number of those Claimants simultaneously provided Epiq with documentation and/or information that was sufficient to cure the deficiencies in their Proofs of Claim. As a result, the letters requesting further review submitted by those Claimants are now moot and their Claims are being recommended by Epiq for payment.  *Id.*  Moreover, 391 requests for Court review have either been cured or the request for Court review has been retracted.  *Id.* ¶ 39.  There are 10 claims where the Claim is now in good standing, however, the request for Court review has not been withdrawn.  *Id.* ¶ 40.  Of the 605 Claimants that contested Epiq's determination to reject their Claims, 204 Claimants have outstanding requests for Court review.  *Id.* ¶ 41.  *See* Exhibit B attached to the Amin-Giwner Declaration.   Epiq recommends rejection of all of these Disputed Claims for the following reasons: (a) Disputed Claims 1-175 should be rejected because the Claims do not calculate to a Recognized Claim under the Plan of Allocation; (b) Disputed Claims 176-191 should be rejected because none of these Disputing Claimants adequately responded to the notice of rejection, and

thus the deficiency in the Claim was never remedied; and (c) Disputed Claims 192-204 should be rejected because none of these Disputing Claimants have documented Class Period purchases of eligible Petrobras securities. *Id.* ¶ 42.

Epiq also conducted a Quality Assurance review. *Id.* ¶ 43. Epiq's Quality Assurance personnel worked throughout the entire administration process to ensure that Proofs of Claim were processed properly; that deficiency and ineligibility message codes were properly applied to Proofs of Claim; that deficiency letters were mailed to the appropriate Claimants; and that Epiq's computer programs were operating properly. *Id.* ¶¶ 43-44.

Epiq's Quality Assurance team also performed a final project wrap-up on all of the Claims to determine whether deficiency letters were mailed and deficiency responses were reviewed and processed and to ensure the correctness and completeness of all of the Proofs of Claim. In connection with this Quality Assurance wrap-up, Epiq: (i) confirmed that valid Proofs of Claim have no messages denoting ineligibility; (ii) confirmed that Proofs of Claim that are ineligible have messages denoting ineligibility; (iii) confirmed that Proofs of Claim that contained purchases that occurred before or after the Class Period contain appropriate ineligibility messages; (iv) confirmed that Proof of Claim detail (transaction) messages appear only on Proof of Claim detail records; (v) confirmed that all Proofs of Claim requiring "deficiency" letters were sent such letters; (vi) performed a sample review of deficient Proofs of Claim; (vii) reviewed Proofs of Claim with large dollar losses; (viii) sampled Proofs of Claim that had been determined to be ineligible, including those with no calculated Recognized Claim under the Plan of Allocation, in order to verify that all transactions had been captured correctly; and (ix) retested the accuracy of the calculation program. *Id.* ¶ 45.

Epiq also used a variety of fraud protection controls throughout the administration process to identify potentially fraudulent Proofs of Claim. Duplicate Claim searches (by beneficial owner, last four digits of the tax identification number, and Recognized Claim amounts), duplicate transaction searches (which compared duplicate transactions within the same Proof of Claim and other Proofs of Claim), high value reviews, spot reviews, and other standard reviews that examined the information in a variety of ways, were used during the Proof of Claim review. Epiq reviewed and compared the entire database for the Settlements against the "watch list" of known potential fraudulent filers that Epiq has developed. Epiq will also perform searches on payments to payees whose names may appear on the federal government's restricted persons list or who reside in countries to which payments are prohibited in accordance with the regulations and guidelines of the U.S. Treasury Department, Office of Foreign Assets Control. *Id.* ¶¶ 46-47.

In consultation with Epiq, Class Counsel also engaged EisnerAmper LLP to perform an independent review of certain processed claims using procedures agreed upon by Class Counsel. *Id.* ¶ 48. The review commenced on or about November 1, 2018. *Id.* For each Claim that it reviewed, EisnerAmper verified the following details of each individual transaction in the Claim during the Class Period: (a) identify and eligibility of the Petrobras security, (b) number of Petrobras securities traded; (c) transaction date; (d) transaction price; and (e) total transaction amount and calculated the Recognized Claim amounts pursuant to the Plan of Allocation and agreed the Recognized Claim amounts to the Recognized Claim amounts as determined by Epiq. In addition, Eisner determined whether the documentation supported the transactions listed on the Claim and that those transactions "balance." EisnerAmper also examined Claims determined by Epiq to be deficient, and confirmed those determinations. *Id.* ¶ 49. In its Report on Applying

Agreed-Upon Procedures (*id.* Exhibit C), EisnerAmper reported to Class Counsel and Epiq that it had performed an independent calculation of the Recognized Claim amounts for 200 Claims with the largest Recognized Claims and agreed with those amounts. *Id.* ¶ 48.

The claims administration process is now complete. As of September 11, 2019, Epiq has completed the processing of 264,587 Proofs of Claim that were received in connection with the Settlements through January 31, 2019, and has determined that 62,182 are acceptable in whole or in part, and 202,405 should be wholly rejected because they are ineligible for payment from the Net Settlement Funds.[3]  *Id.* ¶ 50. The 202,405 wholly rejected Proofs of Claim are ineligible for the following reasons: (1) Claim did not result in a Recognized Claim;[4] (2) Claim did not fit the Class definition;[5] (3) Deficient Claim never cured; and (4) Duplicate Claim.[6]  *Id.* A list of the Claims received and their ultimate disposition is contained in the Administrator's Report (the "Report") attached to the Amin-Giwner Declaration as Exhibit D. Exhibit D-1, entitled "Timely Eligible Claims," lists all timely-filed provisionally accepted Claims and states their Recognized Claim. Exhibit D-2, entitled "Ineligible Claims," lists all wholly rejected Claims and states the reason for their ineligibility. For privacy reasons, Exhibit D provides only the Claimant's Claim number, and Recognized Claim or Reason for Ineligibility (no names, addresses, or social security or other taxpayer identification numbers are disclosed). *Id.* ¶ 51. The provisionally

---

[3] Pursuant to this Court's July 12, 2019 Order (Dkt. No. 942), all claims received after January 31, 2019 shall be null and void. Notwithstanding the July 12, 2019 Order, the Court directed Epiq to accept one additional claim for processing as if it were a timely claim (Dkt. No. 949).

[4] This includes Claim No. 1649103 that pursuant to the Court's September 10, 2019 Order (Dkt. No. 955), has been rejected. Amin-Giwner Decl. ¶ 50 n.10.

[5] Examples of these types of claims are claims that do not include any Class Period purchases, claims that do not include any purchases of eligible securities, claims that were withdrawn and claims that have been replaced with a consolidated claim by the beneficial owner.

[6] Epiq has confirmed that each of these duplicate claims is an exact match to a Claim that is included in the list of Authorized Claims or Rejected Claims.

accepted Claims represent a total of $8,635,548,734.71 in Recognized Claims calculated in accordance with the Court-approved Plan of Allocation. According to the Plan of Allocation, each Authorized Claimant with a Recognized Claim shall receive a *pro rata* share of the Net Settlement Fund, which shall be the Authorized Claimant's Recognized Claim divided by the sum total of the Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Funds. However, as set forth in the Court-approved Plan of Allocation, if an Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation and the Claimant will not receive any distribution. *Id.* ¶ 52.

## III.     DISTRIBUTION OF THE NET SETTLEMENT FUND

The Claims Administrator has now finished processing all claims. Class Representatives, though Class Counsel, respectfully requests that the Court approve Epiq's administrative recommendations to accept the 62,182 claims deemed acceptable in whole or in part listed in Exhibit D-1 to the Amin-Giwner Declaration, and to reject the 202,405 claims that Epiq has determined are ineligible listed in Exhibit D-2 to the Amin-Giwner Declaration. Id. ¶¶ 50-51.

Upon the issuance of the Court's order authorizing distribution:

(a)     Epiq will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Funds, after deducting all payments approved by the Court, and after payment of any estimated taxes, the cost of preparing appropriate tax returns, and any escrow fees, while maintaining a 15% reserve to address any contingencies that may arise, including if the Court disagrees with Epiq's determination regarding any of the Disputed Claims, as follows:

(1)     Epiq will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Funds were to be distributed now. Pursuant to the Court-approved Plan of Allocation, Epiq will calculate each Authorized Claimant's *pro rata* share of the Net Settlement

Funds based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants.

(2) Epiq will, pursuant to the terms of the Court-approved Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00. These Claimants will not receive any payment from the Net Settlement Funds.

(3) After eliminating Authorized Claimants who would have received less than $10.00, Epiq will recalculate the *pro rata* share of the Net Settlement Funds for Authorized Claimants who would have received $10.00 or more pursuant to the calculations described in sub paragraph (a)(1) above. This *pro rata* share is the Authorized Claimant's "Distribution Amount."

(4) Authorized Claimants whose Distribution Amount calculates to less than $500.00 pursuant to subparagraph (a)(3) above will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). These Authorized Claimants will get no additional funds in subsequent distributions.

(5) After deducting the payment to the Claims Paid in Full, 85% of the remaining balance of the Net Settlement Fund will be distributed to Authorized Claimants whose Distribution Amount calculates to $500.00 or more pursuant to subparagraph (a)(3) above, on a *pro rata* basis based on their Distribution Amounts. The remaining 15% of the Net Settlement Funds will be held in reserve (the "Reserve") to address any contingencies that may arise. To the extent the Reserve is not depleted, the remainder will be fully distributed in the "Final Distribution" described in subparagraph (c) below.

(b) In order to encourage Authorized Claimants to promptly deposit their payments, all Initial Distribution checks (and any other checks distributed to Authorized Claimants in this Action, unless otherwise stated herein or otherwise ordered) will bear the notation: "CASH PROMPTLY. VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY 90 DAYS AFTER ISSUE DATE."[7]

(c) Consistent with the Court-approved Plan of Allocation, 120 days after the Initial Distribution, Epiq will conduct the final distribution of the Reserve ("Final Distribution") to those Authorized Claimants whose Distribution Amounts calculates to $500.00 or more as described in subparagraph (a)(5) above. As noted above, Final Distribution checks will bear the notation: "CASH PROMPTLY. VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY 90 DAYS AFTER ISSUE DATE."

(d) Consistent with the Court-approved Plan of Allocation, Authorized Claimants who do not cash their Initial Distribution and/or Final Distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlements. To the extent such funds exist, these funds from stale-dated checks will be available to be redistributed to other Authorized Claimants who cashed their Initial and/or Final Distribution checks.

(e) As set forth in (d) above, after Epiq has made reasonable diligent efforts to have Authorized Claimants cash their Initial Distribution and Final Distribution checks, Epiq will

---

[7] For Authorized Claimants whose checks are returned as undeliverable, Epiq will endeavor to locate new addresses by running the undeliverable addresses through the USPS National Change of Address database. Where a new address is located, Epiq will update the database accordingly and re-issue a distribution check to the Authorized Claimant at the new address. In the event an Authorized Claimant loses or damages his, her, or its check, or otherwise requires a new check, Epiq will issue replacements. Distribution re-issues will be undertaken only upon written instructions from the Authorized Claimant, and provided that the Authorized Claimant returns the first check where appropriate. If a check is deemed lost, Epiq will void the initial payment check prior to re-issuing a payment. *Id.* ¶ 54 n.13

conduct a supplemental distribution of the Net Settlement Funds. Any amounts remaining in the Net Settlement Funds after the Final Distribution, after deducting Epiq's fees and expenses incurred in connection with administering the Settlements for which it has not yet been paid (including Epiq's estimated costs for the Final and any supplemental distributions), and after deducting the payment of any estimated taxes, the cost of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants who cashed their initial and Final Distribution checks and who would receive at least $10.00 from such distribution based on their *pro rata* share of the remaining funds. Additional distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter until no funds remain in the Net Settlement Funds. *Id.* ¶ 54.

## IV. THE COURT SHOULD BAR CLAIMS AGAINST THE SETTLEMENT FUND AND THOSE ADMINISTERING THE SETTLEMENT

It is also respectfully requested that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxations of the Net Settlement Fund, including Class Representatives, Class Counsel, other Class Representatives' counsel who performed work on the Action, the Settlement Administrator, the Escrow Agent or any other agent designated by Class Counsel, be released and discharged from any and all claims arising out of such involvement, and all Class Members be barred from making any further claim against the Net Settlement Fund or the Released Persons beyond the amount allocated to them. *See* Stipulation, ¶ 83.

## V. CLASS COUNSEL'S EXPENSES

Since Class Counsel's May 1, 2018 Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (Dkt. No. 731) which led to the Court's July 2, 2018 Order and Final Judgment (Dkt. No. 838), Class Counsel collectively worked a total of at least 3,102.75 hours over the last 14 months resulting in a lodestar of $2,084,200.50 performing tasks such as research, communicating with objectors/objectors' counsel, communicating with experts, district court and appellate briefing, preparing for and participating in oral argument in this Court and the Second Circuit; and has incurred $71,495.45 in additional expenses in connection with the Action. Class Counsel does not intend to seek any additional attorneys' fees for the work it has performed on behalf of the Class since May 1, 2018. However, it reserves its rights to do so in the event there is further significant delay or litigation regarding this matter, including but not limited to any appeals or disputes regarding this Motion. However, Class Counsel does respectfully request reimbursement of its out-of-pocket costs since May 1, 2018. Summaries of hours and expenses are attached as Exhibit A to the concurrently filed Declaration of Jeremy A. Lieberman. The expenses included appellate brief printing, clerk filing fees, computer research, database charges, expert and investigator fees, meals, photocopy charges, postage and overnight mail, process server fees, travel and lodging, local travel, clerical overtime and other miscellaneous charges incurred. Class Counsel requests reimbursement of such expenses.

## VI. PAYMENTS TO THE CLAIMS ADMINISTRATOR AND EISNERAMPER

As provided in the Stipulation, the Escrow Agent may transfer three million eight hundred thousand dollars ($3,800,000) from the Escrow Account to the Settlement Administration Account without prior approval of the Court in order to pay reasonable and necessary notice and administration costs related to the Settlement. Stipulation ¶ 19. Through August 31, 2019, Epiq has incurred $8,097,884.71 in fees and $4,348,869.67 in expenses in

connection with the class certification phase and the settlement phase, for a total of $12,446,754.38.[8] Amin-Giwner Decl. ¶ 53. To date, Epiq has received payment of its fees and expenses for a total of $4,579,643.57, which includes payment of the $3,800,000 described above and an additional $779,643.57 for its work with respect to issuing the Notice of Pendency after this Court issued its February 2, 2016 Class Certification Order (Dkt. No. 428). *Id.* Accordingly, there is an outstanding balance of $7,867,110.81 in fees and expenses payable to Epiq which it requests in payment for its services. *Id.* In addition, EisnerAmper incurred fees and expenses of $200,000.00 in connection with its work on this matter. *Id.*

## VII. RECORD RETENTION AND DESTRUCTION

Class Counsel additionally requests that Epiq be permitted to destroy paper copies of Claims one (1) year from the time the Settlement Fund is completely exhausted and electronic copies of the same three (3) years after the Settlement Fund is completely exhausted.

## VIII. CONCLUSION

For the foregoing reasons, Class Representatives respectfully request that the Court enter the Distribution Order submitted herewith.

Dated: New York, New York
    September 20, 2019

                                        Respectfully submitted,

                                        **POMERANTZ LLP**

                                        By: *Jeremy A. Lieberman*
                                        Jeremy A. Lieberman
                                        Emma Gilmore
                                        Brenda Szydlo
                                        Jennifer B. Sobers
                                        600 Third Avenue, 20th Floor
                                        New York, NY 10016
                                        Telephone: (212) 661-1100
                                        Facsimile: (917) 463-1044

---

[8] This is within the $19 million fee cap previously approved as reasonable by the Court (Dkt. No. 834 at 23), and includes a reduction pursuant to a call with the Court on April 30, 2018.

Email: jalieberman@pomlaw.com
egilmore@pomlaw.com
bszydlo@pomlaw.com
jbsobers@pomlaw.com

*Counsel for Class Representatives and the Settlement Class*