# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: PETROBRAS SECURITIES LITIGATION<br><br>This Document Applies To:<br><br>ALL CASES | 14-cv-9662 (JSR) |

**PETROBRAS DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

Pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Defendants Petróleo Brasileiro S.A. – Petrobras ("Petrobras") and Petrobras Global Finance B.V. (together, the "Petrobras Defendants") hereby submit this statement of material facts as to which there is no genuine issue to be tried.

**I.     PETROBRAS**

1.      Petrobras is one of the largest integrated oil and gas companies in the world.  See Petróleo Brasileiro S.A. – Petrobras, Annual Report (Form 20-F) (Apr. 27, 2016), at 37 ("2015 20-F") (Ex. 1).[1]

2.      Petrobras operates principally in Brazil, where it is the dominant participant in the oil and gas sector.  See id. at 38.

3.      During the period 2010 to 2015, Petrobras operated in as many as 24 countries outside Brazil.  See Petróleo Brasileiro S.A. – Petrobras, Annual Report (Form 20-F) (May 25, 2011), at 29 ("2010 20-F") (Ex. 2); Petróleo Brasileiro S.A. – Petrobras, Annual Report

---

[1]     Unless otherwise indicated, all documents cited in this statement are attached as exhibits to the Declaration of Ariel M. Fox In Support Of Defendants' Motion For Summary Judgment, dated June 27, 2016, and are cited in this statement as "Ex. __."

(Form 20-F) (Mar. 30, 2012), at 27 ("2011 20-F") (Ex. 3); Petróleo Brasileiro S.A. – Petrobras, Annual Report (Form 20-F) (Apr. 26, 2013), at 24 ("2012 20-F") (Ex. 4); Petróleo Brasileiro S.A. – Petrobras, Annual Report (Form 20-F) (Apr. 30, 2014), at 23 ("2013 20-F") (Ex. 5); Petróleo Brasileiro S.A. – Petrobras, Annual Report (Form 20-F) (May 15, 2015), at 34 ("2014 20-F") (Ex. 6); 2015 20-F, at 38 (Ex. 1).

4. Petrobras operates through five different business segments. See 2015 20-F, at 38-39 (Ex. 1).

5. During the period 2010 to 2015, Petrobras employed approximately 80,000 people. See id. at 129; 2012 20-F, at 107.

6. The Brazilian government owns the majority of Petrobras's voting shares. See 2015 20-F, at 37 (Ex. 1).

7. Petrobras disclosed that the Brazilian government was its controlling shareholder and therefore had the power to elect a majority of the members of the Board of Directors. See 2010 20-F, at 24 (Ex. 2); 2011 20-F, at 21 (Ex. 3); 2012 20-F, at 18 (Ex. 4); 2013 20-F, at 17 (Ex. 5); 2014 20-F, at 27 (Ex. 6); 2015 20-F, at 31 (Ex. 1).

8. Petrobras's common and preferred shares are listed on the Brazilian stock exchange, the BOVESPA, and it has ADSs listed on the NYSE. See 2015 20-F, at 138 (Ex. 1).

**II.   THE PAYMENT SCHEME**

9. In 2009, Brazilian federal prosecutors launched an investigation named Operation Lava Jato ("Lava Jato") aimed at Brazilian money launderers. See Consolidated Fourth Am. Class Action Compl. ¶ 4 (Nov. 30, 2015), ECF No. 342 ("FAC").

10. The investigation was conducted under the oversight of a federal court in Curitiba, the capital of Paraná (the "Paraná Court"). See 13$^a$ Vara Federal de Curitiba, Ação

2

Penal, Sentença [13th Federal Court of Curitiba, Criminal Action, Ruling] Nº 5036528-23.2015.4.04.7000/PR (Mar. 8, 2016) ("13th Federal Court March 8 Ruling") (Ex. 10).

11. In 2014, part of the investigation shifted to focus on irregularities involving certain Brazilian contractors and suppliers to Petrobras, including some of Brazil's largest construction and engineering firms. This investigation uncovered an unlawful cartel formed by companies that had contracted with Petrobras on certain large-scale projects, which had been operating in secret for nearly a decade. FAC ¶¶ 5, 7, 8, 54.

12. In March 2014, the Brazilian federal police arrested Alberto Youssef ("Youssef") in connection with Lava Jato. Youssef was responsible for money laundering schemes that distributed bribes to participating beneficiaries. Youssef set up shell companies to provide the appearance of legality. See See 13th Federal Court March 8 Ruling ¶ 1066 (Ex. 10).

13. In March 2014, the Brazilian federal police arrested a former Director of Supply of Petrobras, Paulo Roberta Costa ("Costa"), in connection with Lava Jato. See 2014 20-F, at F-10 (Ex. 6).

14. In August 2014, Costa entered a plea agreement with the Brazilian federal police. As part of his plea agreement, Costa cooperated on investigations and prosecutions pending before the Paraná Court for crimes including bribery, embezzlement, money laundering, cartelization and obstruction of the Lava Jato investigations. See Termo de Acordo de Colaboração Premiada de [Plea Agreement of] Paulo Roberto Costa (Aug. 27, 2014) (Ex. 8).

15. In September 2014, Youssef entered a plea agreement with the Brazilian federal police. As part of his plea agreement, Youssef cooperated on investigations and prosecutions pending before the Paraná Court for "crimes against the Administration, against the National Financial System and crimes of money laundering." See Termo de Colaboração

3

Premiada de [Plea Agreement of] Alberto Youssef (Sept. 24, 2014) (Ex. 9). On October 8, 2014, Costa and Youssef testified in the Paraná Court. See 2014 20-F, at F-11 (Ex. 6).

16. The testimony of Costa and Youssef was made public and revealed the existence of a payment scheme (the "Payment Scheme") that involved a group of 27 companies (the "Cartel") that, between 2004 and April 2012, colluded to rig bids and overcharge Petrobras on certain refinery construction projects in Brazil (primarily in the "Downstream" or "Supply" segment). The Cartel used the proceeds of this scheme to bribe Brazilian political parties, elected officials or other public officials, individual contractor personnel and certain former Petrobras executives who were involved in the scheme. See id. at F-10-F-11; see also 13th Federal Court March 8 Ruling ¶¶ 392, 395-396, 939 (Ex. 10).

17. Brazilian prosecutors have publicly stated their conclusion that Petrobras was a victim of the Payment Scheme. See Justiça Federal, Seção Judiciaria do Paraná [Federal Court, Judicial District of Paraná], 13ª Vara Federal de Curitiba, Termo de Audiencia nas Ações Penais [13th Federal Court of Curitiba, Record of Hearing in Criminal Actions] Nos. 5083258-29.2014.404.7000/PR, 5083351-89.2014.404.7000/PR, 5083360-51.2014.404.7000/PR, 5083376-05.2014.404.7000/PR, 5083401-18.2014.404.7000/PR] (Apr. 28, 2015) (Ex. 12).

18. Judge Moro of the Paraná Court, who is presiding over the public proceedings in Brazil, has also recognized that Petrobras was "the victim of unlawful acts." 13ª Vara Federal de Curitiba, Ação Penal, Despacho/Decição [13th Federal Court of Curitiba, Criminal Action, Order/Decision] Nº 5036528-23.2015.4.04.7000/PR ¶ 34 (Aug. 18, 2015) (Ex. 11).

19. Petrobras is cooperating with prosecutors and Judge Moro of the Paraná Court in their investigation of the wrongdoers, and is participating as an assistant to the Brazilian

4

prosecutors in proceedings seeking to recover damages from Cartel members.  See 13th Federal Court March 8 Ruling ¶ 34 (Ex. 10); see also Dos Santos Dep. 24:6-29:5, 39:19-43:10, 138:22-139:2, 143:18-24 (Ex. 13).

### III. CAUTIONARY STATEMENTS

20. The Company issued press releases on June 21, 2010, January 27, 2011, May 24, 2011, July 22, 2011, August 3, 2012, March 15, 2013, April 26, 2013 and February 25, 2014 containing cautionary statements.  These cautionary statements provided that the press release contained forward-looking statements that were "not based on historical facts" and were "not assurances of future results" and "reflect[ed] the current views of management" and were "subject to a number of risks and uncertainties," and thus there was "no guarantee that the expected events, trends or results will actually occur."  The cautionary statements further provided that "[a]ll forward-looking statements are expressly qualified in their entirety by this cautionary statement, and you should not place reliance on any forward-looking statement contained in this press release."  See Petróleo Brasileiro S.A. – Petrobras, Report of Foreign Private Issuer (Form 6-K), 2010-2014 Business Plan (June 21, 2010) (Ex. 14); Petróleo Brasileiro S.A. – Petrobras, Report of Foreign Private Issuer (Form 6-K), Petrobras Issues US$ 6 billion in Global Notes (Jan. 27, 2011) (Ex. 15); Petróleo Brasileiro S.A. – Petrobras, Report of Foreign Private Issuer (Form 6-K), Petrobras Announces First Quarter of 2011 Results (May 24, 2011) (Ex. 16); Petróleo Brasileiro S.A. – Petrobras, Report of Foreign Private Issuer (Form 6-K), New Board of Directors Member (July 22, 2011) (Ex. 17); Petróleo Brasileiro S.A. – Petrobras, Report of Foreign Private Issuer (Form 6-K), First Half of 2012 Results (Aug. 3, 2012) (Ex. 18); Petróleo Brasileiro S.A. – Petrobras, Report of Foreign Private Issuer (Form 6-K), 2013 – 2017 Business & Management Plan (Mar. 15, 2013) (Ex. 19); Petróleo Brasileiro S.A. – Petrobras, Report of Foreign Private Issuer (Form 6-K), First Quarter of 2013 Results

(Apr. 26, 2013) (Ex. 20); Petróleo Brasileiro S.A. – Petrobras, Report of Foreign Private Issuer (Form 6-K), Petrobras 2030 Strategic Plan and 2014 – 2018 Business and Management Plan (Feb. 25, 2014) (Ex. 21).

21. A cautionary statement was made at the beginning of the conference call on June 27, 2012. See Petróleo Brasileiro S.A. – Petrobras, Transcript of Conference Call, 2012–2016 Business and Management Plan, at 1 (June 27, 2012) (Ex. 22).

IV. **STATEMENTS CONCERNING PETROBRAS'S CODE OF ETHICS, CONDUCT GUIDE AND CORRUPTION PREVENTION PROGRAM MANUAL**

22. Item 16B of Form 20-F, as provided by the Securities and Exchange Commission, requires the registrant to "[d]isclose whether [it] has adopted a code of ethics," "[p]ost the text of such code of ethics on its Internet website and disclose, in its annual report, its Internet address." Securities and Exchange Commission, Form 20-F, at 51-52, https://www.sec.gov/about/forms/form20-f.pdf (Ex. 23).

23. Plaintiffs and their outside investment managers did not review, or could not recall reviewing, Petrobras's Code of Ethics, Conduct Guide or Corruption Prevention Program Manual. Audet Dep. 242:24-245:16 (Ex. 24); Barry Dep. 226:4-18 (Ex. 25); Batchman Dep. 216:13-17, 217:2-24 (Ex. 26); Bentsi Dep. 268:9-13 (Ex. 27); Bosner 230:19-231:3 (Ex. 28); Bottamini Dep. 106:2-10 (Ex. 29); Chi Dep. 301:18-303:2 (Ex. 30); Cortes Dep. 252:15-253:2 (Ex. 31); Diedenhofen Dep. 99:7-19 (Ex. 32); Duda Dep. 225:7-10, 227:8-14, 227:22-228:4 (Ex. 33); Gaba Dep. 175:6-18 (Ex. 34); Holley Dep. 246:15-19, 247:22-248:9 (Ex. 35); Hughes Dep. 135:24-136:4, 232:9-12 (Ex. 36); Johnson Dep. 306:25-307:15 (Ex. 37); Knutson Dep. 196:19-197:10 (Ex. 38); Lian Dep. 249:12-250:2 (Ex. 39); Lin Dep. 184:7-16 (Ex. 40); Luchsinger Dep. 160:10-24 (Ex. 41); Maris Dep. 165:2-13 (Ex. 42); Marvin Dep. 159:15-22 (Ex. 43); McCann Dep. 163:7-19 (Ex. 44); Moses Dep. 165:25-166:6 (Ex. 45); Nutt Dep. 207:16-23

(Ex. 46); O'Brien Dep. 103:7-19 (Ex. 47); Ogan Dep. 181:6-21 (Ex. 48); Ong Dep. 239:7-17 (Ex. 49); Pariseault Dep. 140:8-12, 17-21 (Ex. 50); Patlovich Dep. 176:9-21 (Ex. 51); Petryk Dep. 174:19-175:13, 175:22-25 (Ex. 52); Phadnis Dep. 197:6-16 (Ex. 53); Poag Dep. 117:13-118:15 (Ex. 54); Pope Dep. 150:22-151:14 (Ex. 55); Reynolds Dep. 148:5-9, 149:2-6 (Ex. 56); Robinson Dep. 230:21-231:3, 19-22 (Ex. 57); Rocha Dep. 187:8-188:3 (Ex. 58); Said Dep. 175:25-176:19 (Ex. 59); Salinas Dep. 211:15-212:4 (Ex. 60); Sanford Dep. 201:4-15 (Ex. 61); Schefer Dep. 186:22-187:13, 188:4-10 (Ex. 62); Schneider Dep. 214:2-11 (Ex. 63); Seto Dep. 76:10-16 (Ex. 64); Staudt Dep. 152:6-15 (Ex. 65); Stauffer 166:13-18 (Ex. 66); Sudol Dep. 238:21-239:11 (Ex. 67); Talgie Dep. 165:19-166:5, 166:9-13 (Ex. 68); Tishin Dep. 169:3-15 (Ex. 69); Tschudy Dep. 183:13-22 (Ex. 70); van den Bosch Dep. 275:3-14, 276:13-18 (Ex. 71); Velasquez Dep. 80:24-81:9 (Ex. 72); Weiner Dep. 254:15-22 (Ex. 73); Westhoff Dep. 239:8-17 (Ex. 74); Zerilli Dep. 207:17-208:17 (Ex. 75).

**V.   *FATOS E DADOS***

24.   Analyst reports published around the dates of the relevant *Fatos e Dados* blog posts make no mention of the posts. See Expert Report of René M. Stulz ¶ 141 (May 27, 2016) (Ex. 76).

25.   Bloomberg News articles published on the dates of the relevant *Fatos e Dados* blog posts make no mention of the posts. Id.

26.   Only one Bloomberg News article contained a single reference to information similar to that contained in a *Fatos e Dados* post. Id.

27.   The commercial press database Factiva contains no English-language articles referencing the *Fatos e Dados* blog posts. Id.

28.   Plaintiffs and their outside investment managers did not read, did not know whether others had read or had not heard of Petrobras's *Fatos e Dados* blog. See

7

Anderson Dep. 99:13-16 (Ex. 77); Audet Dep. 249:6-9 (Ex. 24); Barry Dep. 225:19-226:3 (Ex. 25); Batchman Dep. 215:17-23 (Ex. 26); Chi Dep. 271:20-272:7 (Ex. 30); Cooper Dep. 167:7-11 (Ex. 78); Cortes Dep. 237:20-25 (Ex. 31); Crimmins Dep. 220:16-221:7 (Ex. 79); Diedenhofen Dep. 99:4-6 (Ex. 32); Duda Dep. 229:5-8 (Ex. 33); Gaba Dep. 175:3-5 (Ex. 34); Gomez Dep. 140:22-24 (Ex. 80); Graves Dep. 118:5-9 (Ex. 81); Harrison Dep. 57:22-58:2 (Ex. 82); Herrmann Dep. 138:24-139:9 (Ex. 83); Holley Dep. 246:6-12 (Ex. 35); Hughes Dep. 231:19-232:6 (Ex. 36); Johnson Dep. 306:15-19 (Ex. 37); Kennett Dep. 160:9-14 (Ex. 84); Knutson Dep. 168:21-169:13 (Ex. 38); Lian Dep. 250:3-7 (Ex. 39); Lima Dep. 63:23-64:6 (Ex. 85); Luchsinger Dep. 160:25-161:11 (Ex. 41); Marvin Dep. 158:18-21 (Ex. 43); McCann Dep. 163:3-6 (Ex. 44); McGann Dep. 199:16-200:12 (Ex. 86); Moses Dep. 165:15-17 (Ex. 45); Nagle Dep. 56:4-6, 57:2-5 (Ex. 87); Nutt Dep. 206:6-11 (Ex. 46); Ogan Dep. 180:19-181:5 (Ex. 48); Petryk Dep. 174:10-18 (Ex. 52); Poag Dep. 119:2-10 (Ex. 54); Pope Dep. 151:23-25 (Ex. 55); Rahman Dep. 139:13-16 (Ex. 88); Robinson Dep. 208:20-209:13 (Ex. 57); Said Dep. 177:7-12 (Ex. 59); Saruwatari Dep. 155:10-23 (Ex. 89); Schefer Dep. 185:21-186:13 (Ex. 62); Schneider Dep. 213:23-25 (Ex. 63); Segovia Dep. 152:4-8 (Ex. 90); Seto Dep. 75:14-76:6 (Ex. 64); Shale Dep. 110:10-14 (Ex. 91); Smith Dep. 128:11-13 (Ex. 92); Søeberg Dep. 91:25-92:13 (Ex. 93); Staples Dep. 114:9-12, 18-22 (Ex. 94); Stauffer Dep. 166:19-24 (Ex. 66); Sudol Dep. 238:13-20 (Ex. 67); van den Bosch Dep. 276:19-22 (Ex. 71); Westhoff Dep. 238:25-239:7, 309:18-310:3 (Ex. 74); Xiao Dep. 230:22-231:6 (Ex. 95); Zerilli Dep. 206:25-207:11 (Ex. 75).

## VI. CORRECTIVE DISCLOSURES

29. Investors were aware that Petrobras was majority-owned by the Brazilian government and that the government could make policies that positively or negatively affected Petrobras. See, e.g., Anderson Dep. 94:8-15 (Ex. 77); Audet Dep. 70:20-71:3 (Ex. 24); Chi Dep. 201:5-11, 228:16-19, 239:25-240:3 (Ex. 30); Haendel Dep. 172:16-19 (Ex. 96); Lin Dep. 145:19-

22 (Ex. 40); McCann Dep. 102:20-103:3 (Ex. 44); Reynolds Dep. 80:7-17 (Ex. 56); Xiao Dep. 197:6-23 (Ex. 95).

30. Investors believed President Rousseff's administration had a negative impact on the value of Petrobras's securities. See, e.g., Anderson Dep. 139:8-11 (Ex. 77); Marvin Dep. 114:15-115:25 (Ex. 43); McCann Dep. 151:14-17 (Ex. 44); Moses Dep. 99:2-10, 100:8-17 (Ex. 45); Patlovich Dep. 122:11-123:8 (Ex. 51); Segovia Dep. 83:9-84:23 (Ex. 90); Shaw Dep. 40:6-10, 62:2-4 (Ex. 97); Xiao Dep. 244:11-19 (Ex. 95).

31. The price of Petrobras securities declined on news indicating that President Rousseff might be reelected. See, e.g., Audet Dep. 93:13-94:11 (Ex. 24); Moses Dep. 100:8-17 (Ex. 45); Sudol Dep. 223:15-18 (Ex. 67); Tishin Dep. 180:6-11 (Ex. 69); Xiao 244:11-19 (Ex. 95).

32. On October 16, 2014, Valor published an article with the headline "Bovespa falls sharply with electoral indecision and external tension." See Téo Takar, Bovespa tem forte queda com indefinição eleitoral e tensão externa [BOVESPA [Sao Paulo Stock Exchange] falls sharply with electoral indecision and external tension], Valor, Oct. 16, 2014. (Ex. 98).

33. On February 6, 2015, Petrobras filed a Form 6-K announcing the selection of Aldemir Bendine as CEO and Ivan de Souza Monteiro as CFO and Chief Investment Relations Officer to replace to replace Maria das Graças Foster and Almir Barbassa, respectively. See Petróleo Brasileiro S.A. – Petrobras, Report of Foreign Private Issuer (Form 6-K), New CEO and Executive Officers (Feb. 6, 2015) (Ex. 99); see also Bradesco, First Comments: Petrobras Officially Announces New CEO and Five Executives (Disappointing News) (Feb. 6, 2015) (Ex. 100); Itaú BBA, Aldemir Bendine Is the New CEO (Feb. 6, 2015)

9

(Ex. 101); Morgan Stanley, New CEO Appointed; But We Think Tenure Could be a Short One (Feb. 6, 2015) (Ex. 102).

34. Brazil's local content rules were perceived negatively by investors. See, e.g., Maris Dep. 54:12-17 (Ex. 42); McGann Dep. 124:12-125:16 (Ex. 86); Phadnis Dep. 44:13-45:22 (Ex. 53).

35. John D. Finnerty, an expert retained by plaintiffs in Discovery Glob. Citizens Master Fund, Ltd., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-9126 (JSR) (S.D.N.Y. June 20, 2016), excluded the date October 16, 2014 "from [his] calculation of economic harm" based on "other economically significant, negative confounding information" released on that day. Expert Report of John D. Finnerty ¶ 205 (May 6, 2016) (Ex. 142).

Dated: New York, New York
June 27, 2016

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
Lewis J. Liman
Roger A. Cooper
Luke A. Barefoot
Elizabeth Vicens
Jared Gerber

One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999

Attorneys for the Petrobras Defendants

11