ELECTRONICALLY FILED
DOC #:
9/24/19

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE PETROBRAS SECURITIES
LITIGATION

Case No. 14-cv-9662 (JSR)

**CLASS ACTION**

## [CORRECTED PROPOSED] ORDER GRANTING AUTHORIZATION TO
## DISTRIBUTE THE NET SETTLEMENT FUND

Class Representatives Universities Superannuation Scheme Limited, Employees Retirement System of the State of Hawaii and North Carolina Department of State Treasurer, through their Counsel, moved this Court for an order approving the Distribution Plan in the above-captioned class action (the "Action"). Having reviewed and considered all the materials and arguments submitted in support of the motion, including the Declaration of Stephanie Amin-Giwner in Support of Class Representatives' Motion for Approval of Distribution Plan (the "Amin-Giwner Declaration" or "Amin-Giwner Decl."):

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.      This Order incorporates by reference the definitions in the Stipulation of Settlement and Release, dated February 1, 2018 (Dkt. No. 767-1) (the "Stipulation"), and the Amended Stipulation and Agreement of Settlement, dated February 1, 2018 (Dkt. No. 767-10) (the "Amended Stipulation"). All terms used herein shall have the same meanings as set forth in the Stipulation, the Amended Stipulation, and the Amin-Giwner Declaration.

2.      This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Settlement Class Members.

3.      The proposed plan for distributing the Net Settlement Fund (the "Distribution Plan") as set forth in the Amin-Giwner Declaration is **APPROVED**. Accordingly:

(a)      The administrative recommendations of the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Claims Administrator"), to accept the Timely Eligible Claims set forth in Exhibit D-1 to the Amin-Giwner Declaration are adopted;

(b)      The Claims Administrator's administrative recommendations to reject wholly Ineligible Claims as set forth in Exhibit D-2 to the Amin-Giwner Declaration are adopted;

(c)      Epiq is directed to conduct an initial distribution (the "Initial Distribution") of the Net Settlement Funds, after deducting all payments approved by the Court, and after payment of any estimated taxes, the cost of preparing appropriate tax returns, and any escrow fees, while maintaining a 15% reserve to address any contingencies that may arise, including if the Court disagrees with Epiq's determination regarding any of the Disputed Claims, as follows:

(i)      Epiq will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Funds were to be distributed now. Pursuant to the Court-approved Plan of Allocation, Epiq will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Funds based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants.

(ii)      Epiq will, pursuant to the terms of the Court-approved Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share

calculates to less than $10.00. These Claimants will not receive any payment from the Net Settlement Funds.

(iii)    After eliminating Authorized Claimants who would have received less than $10.00, Epiq will recalculate the *pro rata* share of the Net Settlement Funds for Authorized Claimants who would have received $10.00 or more pursuant to the calculations described in sub paragraph (c)(i) above. This *pro rata* share is the Authorized Claimant's "Distribution Amount."

(iv)    Authorized Claimants whose Distribution Amount calculates to less than $500.00 pursuant to subparagraph (c)(iii) above will be paid their full distribution Amount in the Initial Distribution ("Claims Paid in Full"). These Authorized Claimants will get no additional funds in subsequent distributions.

(v)    After deducting the payment to the Claims Paid in Full, 85% of the remaining balance of the Net Settlement Fund will be distributed to Authorized Claimants whose Distribution Amount calculates to $500.00 or more pursuant to subparagraph (c)(iii) above, on a *pro rata* basis based on their Distribution Amounts. The remaining 15% of the Net Settlement Funds will be held in reserve (the "Reserve") to address any contingencies that may arise. To the extent the Reserve is not depleted, the remainder will be fully distributed in the "Final Distribution" described in subparagraph (e) below.

(d)    In order to encourage Authorized Claimants to promptly deposit their payments, all Initial Distribution checks (and any other checks distributed to Authorized Claimants in this Action, unless otherwise stated herein or otherwise ordered) will bear the notation: "CASH PROMPTLY. VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY 90 DAYS AFTER ISSUE DATE."

(e)     Consistent with the Court-approved Plan of Allocation, 120 days after the Initial Distribution, Epiq will conduct the distribution of the reserve ("Final Distribution") to those Authorized Claimants whose Distribution Amounts calculates to $500.00 or more as described in subparagraph (c)(v) above.  As noted above, Final Distribution checks will bear the notation: "CASH PROMPTLY.  VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY 90 DAYS AFTER ISSUE DATE."

(f)     Consistent with the Court-approved Plan of Allocation, Authorized Claimants who do not cash their Initial Distribution and/or Final Distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlements.  To the extent such funds exist, these funds from stale-dated checks will be available to be redistributed to other Authorized Claimants who cashed their Initial and/or Final Distribution checks.

(g)     As set forth in (f) above, after Epiq has made reasonable diligent efforts to have Authorized Claimants cash their Initial Distribution and Final Distribution checks, Epiq will conduct a supplemental distribution of the Net Settlement Funds.  Any amounts remaining in the Net Settlement Funds after the Final Distribution, after deducting Epiq's fees and expenses incurred in connection with administering the Settlements for which it has not yet been paid (including Epiq's estimated costs for the Final and any supplemental distributions), and after deducting the payment of any estimated taxes, the cost of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants who cashed their initial and final distribution checks and who would receive at least $10.00 from such distribution based on their *pro rata* share of the remaining funds.  Additional distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter until no funds remain in the Net Settlement Funds.

4

4.      All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxations of the Net Settlement Fund, including Class Representatives, Class Counsel, other Class Representatives' counsel who performed work on the Action, the Settlement Administrator, the Escrow Agent or any other agent designated by Class Counsel, be released and discharged from any and all claims arising out of such involvement, and all Class Members be barred from making any further claim against the Net Settlement Fund or the Released Persons beyond the amount allocated to them.

5.      Class Counsel's expenses in the amount of $71,495.45 incurred in connection with the Action since its May 1, 2018 Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (Dkt. No. 731) are approved and may be paid out of the Settlement Fund.

6.      All of the Claims Administrator's fees and expenses incurred in connection with the administration of the Settlement are approved, and Class Counsel is directed to pay the outstanding balance of $7,867,110.81 out of the Settlement Fund to Epiq.

7.      All of EisnerAmper's fees and expenses incurred in connection with its independent review of Epiq's claims processing are approved, and Class Counsel is directed to pay $200,000.00 out of the Settlement Fund to EisnerAmper.

8.      Unless otherwise directed by the Court, the Class Administrator shall destroy papers copies of Claims one year from time the Settlement Fund is completely exhausted and electronic copies of the same three years after the Settlement Fund is completely exhausted.

9.      This Court retains jurisdiction to consider any further applications concerning the administration of the Settlements, and such other and further relief as this Court deems appropriate.

IT IS SO ORDERED.

DATED: _____ 9/23/19 _____

_____

Hon. Jed S. Rakoff
United States District Judge

6