# EXHIBIT A
# (Part IV)

CONFIDENCIAL                                    NP3

insuficientes as justificativas para os pesos de 80% para a mão de obra, pois há incorreções de diversas rubricas utilizadas como mão de obra.


29) A quinta NÃO CONFORMIDADE é a falta de inclusão de empresas em novo processo licitatório, em descumprimento do Decreto 2.745/1998 (Consórcio Odebrecht/OAS, Consórcio CNCC e Consórcio Queiroz Galvão/IESA). Nos processos de contratação dos consórcios citados, após o cancelamento do 1º processo licitatório e homologação para um novo, não foi identificada a inclusão de novas empresas para participar do certame, contrariando o disposto no item 5.6.2 do Decreto 2.745/1998. A submissão desses processos de contratação à Diretoria Executiva foi efetuada pelos Srs. Pedro José Brusco, Francisco Pais e Luiz Alberto Gaspar Domingues e Sra. Venina Velosa Fonseca.


30) A sexta NÃO CONFORMIDADE trata da revisão de estimativas em função de processos licitatórios com preços excessivos (Consórcios Odebrecht/OAS, Camargo Correa/CNEC e Queiroz Galvão/IESA). A CIA identificou que houve reduções das estimativas prévias da Petrobras e das propostas, das primeiras licitações para as "relicitações". Pode-se observar que as propostas vencedoras das "relicitações"

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.

Confidential                                                                 PBRCG_01224979

CONFIDENCIAL                                    NP3

sempre apresentam valores próximos do limite máximo de 20% em relação às estimativas da Petrobras.


31) A sétima NÃO CONFORMIDADE é a autorização para início de três processos licitatórios em datas anteriores à aprovação pela Diretoria Executiva (Consórcio Odebrecht/OAS). Em três processos licitatórios do consórcio citado foram instaurados em datas anteriores às suas respectivas aprovações pelo então ex Diretor de Serviços, Sr. Renato de Souza Duque. A CIA considerou não adequada a prática do encaminhamento à Diretoria Executiva de atos "ad referendum", considerando a relevância dos valores envolvidos (UDA – R$1,9 bilhão e UCR – R$3,1 bilhões).


32) A oitava NÃO CONFORMIDADE se refere à falta de encaminhamento à Diretoria Executiva das alterações no modelo de contratação de EPC da RNEST (Consórcio Egesa/TKK, Consórcio Odebrecht/OAS, Consórcio Queiroz Galvão/IESA e Consórcio Camargo Correa/CNEC). O Sr. Carlos Alberto Carletto, Gerente de Integração da Gestão da ENGENHARIA/IERENEST, solicitou ao JURÍDICO a implementação de alterações na minuta de contratação de EPC da RNEST, tais como a exclusão de marcos prorrogáveis e improrrogáveis, inclusão de garantias dos quantitativos do FEED *(Front End Engineering Design)* e inclusão do

*Refinaria Abreu e Lima - RNEST – Relatório do Comitê de Auditoria para o CA*          *Página 11/16*

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.

Confidential                                                                    PBRCG_01224980

CONFIDENCIAL                                              NP3

ressarcimento dos custos decorrentes de chuvas. A CIA não encontrou evidências de aprovação pela Diretoria Executiva, conforme orientação do JURÍDICO.

33) A nona NÃO CONFORMIDADE trata da falta de emissão de parecer jurídico em quatro processos licitatórios (Orteng, Invensys, Engevix e Consórcio Enfil/Veolia). A CIA observou a ausência de parecer jurídico quanto aos resultados das licitações, conduzidas pelo Sr. Pedro José Barusco Filho e Sra. Venina Velosa Fonseca.

## CONCLUSÕES DA CIA INTERNA DE PURAÇÃO

7.1 - A CIA não obteve evidência de justificativa técnica ou empresarial para a elaboração do PAR, cujo objetivo seria inaugurar a refinaria em agosto/2010, ou seja, um ano antes do previsto.

7.2 - As licitações realizadas entre julho/2007 e maio/2011 tinham baixo grau de definição do projeto básico e pré-detalhamento (FEED).

7.3 - Em virtude do item anterior, houve necessidade de alterações de escopo, quantitativos e especificações técnicas durante as licitações.

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.

Confidential                                                                              PBRCG_01224981

CONFIDENCIAL                                              NP3

7.4 - Na execução do empreendimento, entre julho/2007 e julho/2014, em função das alterações citadas, houve necessidade de aditivos contratuais de prazo e escopo, acarretando um aumento da ordem de R$3,979 bilhões, até julho/2014, no valor do projeto.

7.5 - Dentre os 23 processos licitatórios analisados, em 4 deles houve fragilidade na seleção das empresas, devido à inclusão, durante o certame, de 13 licitantes que não atendiam aos critérios definidos.

7.6 - Não foram considerados os descontos negociados com a Alusa Engenharia, entre setembro e novembro/2008, da ordem de R$ 25 milhões, após a aprovação da Diretoria Executiva.

7.7 - Houve ausência de parecer jurídico sobre o resultado de 4 processos licitatórios da RNEST, quando do encaminhamento para a aprovação da Diretoria Executiva, contrariando a norma interna.

7.8 - O percentual histórico da Petrobras de 55% para a mão de obra, nas fórmulas de reajustes contratuais, foi alterado injustificadamente para 80%, acarretando oneração de R$ 353 milhões sobre o valor do projeto.

7.9 - As "relicitações" deram origem a contratos assinados no "topo" da estimativa, ou seja, perto de 20% acima do valor

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.
Confidential                                                                              PBRCG_01224982

CONFIDENCIAL                                    NP3

de referência das estimativas da ENGENHARIA. Isso indica a possibilidade de cartelização entre as empresas envolvidas, conforme declaração do ex Diretor Paulo Roberto Costa.

## RELAÇÃO DAS PESSOAS

O relatório da CIA relaciona 11 pessoas responsáveis pelas NÃO CONFORMIDADES citadas, conforme segue:

Páginas: 03, 05, 11, 13, 14, 15 e 17/28.



Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.

Confidential                                                           PBRCG_01224983

CONFIDENCIAL                                    NP3

## CONCLUSÕES E RECOMENDAÇÕES DO COMITÊ DE AUDITORIA

O relatório da CIA (Comissão Interna de Apuração) deixa evidenciado, de forma clara e objetiva, o descumprimento das normas e boas práticas de governança, a omissão de informações relevantes e, sobretudo, um conjunto de ações que resultaram em substanciais perdas para a Petrobras.

O Relatório também informa que a ausência de planejamento, a inexistência de projetos básicos de FEED em época própria contribuíram de forma relevante para o descumprimento de prazo, aumento de custos e termos aditivos de valores expressivos. Os responsáveis de implantação da RENEST relacionados no relatório da CIA tomaram decisões que foram levados a Diretoria Executiva "ad referendum", mesmo para contratos e aditivos de valores superiores a R$ 1 Bilhão.

1. *Este Comitê de Auditoria recomenda ao Conselho de Administração que providenciem a abertura de Processo civil contra as 11 pessoas relacionadas no relatório, (paginas 03, 05, 07, 11, 13, 14, 15 e 17 da CIA), enviando o Relatório da Comissão interna de Apuração e este Parecer do Comitê de Auditoria ao Ministério Público Federal, à CGU e ao TCU, para as devidas ações.*

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.
Confidential                                                                                  PBRCG_01224984

CONFIDENCIAL                                    NP3

Em relação às empresas, fornecedoras de equipamento, construção e montagem relacionadas no Relatório da CIA, recomendamos que sejam abertos processos investigatórios, com vistas à apuração de eventuais práticas de fraude, superfaturamento e corrupção de funcionários da Petrobras.

O Comitê de Auditoria, portanto encaminha suas conclusões e recomendações para deliberação do Conselho de Administração e solicita a inclusão em Ata, como anexo.


Rio de Janeiro, 12 de dezembro de 2014.


Sergio Franklin Quintella
Conselheiro de Administração
Presidente do Comitê de Auditoria


Miriam Aparecida Belchior          Luciano Galvão Coutinho
Conselheiros de Administração e Membros do Comitê de
Auditoria

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.
Confidential                                                                              PBRCG_01224985

CONFIDENCIAL                                                    NP3

# COMPERJ

## RELATÓRIO DO COMITÊ DE AUDITORIA
## PARA O CONSELHO DE ADMINISTRAÇÃO

O Relatório da Comissão Interna de Apuração (CIA) sobre os procedimentos de contratação e execução para a implantação do Complexo Petroquímico do Rio de Janeiro (COMPERJ) atendeu ao disposto   no DIP   DABAST   70/2014   – Confidencial, de 25/04/2014 e foi terminado em outubro de 2014 sob a coordenação do Sr. Pedro Aramis de Lima Arruda e mais seis funcionários da Petrobras.

Concebida para ser uma unidade Petroquímica/Refinaria, projetos de engenharia e de processos foram sendo alterados até a configuração atual que consiste de uma Refinaria e uma petroquímica dela separada e ainda em tratativas societárias ainda em processo de negociação, precificação da matéria-prima (gas) e dimensionamento final.

Em suas 66 páginas e inúmeros anexos, a CIA faz um conjunto de considerações:

A fixação de prazo inexequível e a insistência das Diretorias de Abastecimento e de Serviços para que um novo

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.
Confidential                                                                    PBRCG_01224986

**CONFIDENCIAL**                                                    **NP3**

cronograma fosse atendido, resultou em uma série de equívocos de planejamento, em especial, o início dos processos licitatórios sem projeto básico e FEEDS e a compra antecipada de equipamentos sem condições de transporte e problemas de meio ambiente e logística.

O Relatório da CIA aponta também diversas inobservâncias das normas de licitação tais como:

1- Contratações de empresas de porte econômico inadequado.

2- Contratação direta com justificativas frágeis, viabilizando condições para o direcionamento de contratos.

Como consequência, o COMPERJ acumula custos adicionais consideráveis para a Petrobras devido à hibernação de unidades, diversos aditivos com aumentos de custos, dilação de prazos e atrasos em face de cancelamentos de contratos já iniciados por falhas de execução.

Seguem as principais informações extraídas do Relatório da CIA que corroboram o resumo acima:

- Definições de prazos inexequíveis.

"Foram estabelecidos prazos irrealistas para a construção do COMPERJ. O ajuste de prazos de execução com base em

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.

Confidential                                                                    PBRCG_01224987

**CONFIDENCIAL**                                          **NP3**

planejamento regressivo comprometeu a qualidade das licitações e contratos" (pag. 4/66, 1º parágrafo).

"A data de partida foi estabelecida sem levar em conta critérios técnicos. Com isso, a Engenharia precisou fazer planejamento regressivo que acabou por introduzir uma série de desajustes nos prazos de execução dos diferentes contratos e o descolamento das contratações em relação ao cronograma da obra" (item 8.1.1, Pág. 12).

"Durante os trabalhos da CIA, logo atrairam a atenção, os relatos de pressões por prazo da Área de ENGENHARIA pelas Diretorias de Abastecimento (DABAST) e de Serviços (DSERV). Tal fato **levou a planejamento irrealista das contratações. Isso provocou o descolamento dessas contratações em relação ao cronograma da obra"** (pag. 2/66, 4º parágrafo).

- Planejamento deficiente, provocando atrasos e despesas adicionais:

"Fatores associados à localização e indefinições nos projetos extramuros impactaram o cronograma. Como resultado, contratos registraram aditivos para hibernar equipamentos e instalações" (pag. 4/66, 2º parágrafo).

"A antecipação da contratação das unidades de processo (UDAV, UCR, HCC e HDT de Médios) sem a definição do

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.

Confidential                                                                    PBRCG_01224988

CONFIDENCIAL                                      NP3

modelo de negócio que seria aplicado às Unidades de Utilidades e Geração de Hidrogênio causaram prejuízos à PETROBRAS pela necessidade de hibernação de equipamentos e das Unidades de Processo" (pag. 4/66, 3º parágrafo).

"Considerando um período de 12 (doze) meses, o custo das hibernações, somado ao replanejamento de contratos, gerou um prejuízo à PETROBRAS que excedeu o montante de R$ 1 bilhão" (item 8.5.2, pag. 17/66).

"Muitos contratos foram celebrados restando um elevado grau de incerteza, em consequência de projetos básicos e FEEDs ainda não concluídos" (item 8.11, pag. 27/66).

- Não conformidade dos processos de licitação e contratação, com pessoal pouco qualificado, manipulação de empresas participantes e justificativas fracas para a contratação direta de fornecedores:

"A CIA identificou a participação de diversos empregados com pouca ou nenhuma experiência profissional em Comissões de Licitação para contratações de valor expressivo" (item 8.7.4, pag. 19/66).

"Formação de Comissão de Licitação com membros sem a devida qualificação e experiência em contratações de grande porte" (pag. 4/66, 6º parágrafo).

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.
Confidential                                                                                                    PBRCG_01224989

**CONFIDENCIAL**                                              **NP3**

"Empregados ouvidos pela CIA caracterizam a retificação de filtros aplicados para inclusão de empresas. O objetivo seria acolher empresas que não atendiam os critérios estabelecidos" (item 8.7.2, pag. 18/66).

"Uma das justificativas mais recorrentes para inclusão de empresas foi o intuito de aumentar a competitividade do processo licitatório. No entanto, essa providência acabou por conduzir à contratação de empresas que não conseguiram cumprir o objeto contratual" (item 8.7.3, pag. 19/66).

"Inclusão de empresas nos processos licitatórios sem justificativas consistentes" (pag. 4/66, 5º parágrafo).

"Falta de evidências que confirmem as justificativas apresentadas para contratação direta, especificamente em relação à contratação por inexigibilidade do Consórcio TUC para a construção das Unidades de Geração de Vapor e Energia, Tratamento de Água e Efluentes" (pag. 4/66, 4º parágrafo).

"Aceitação de condicionantes de licenciamento ambiental abusivas, contrariando parecer jurídico, resultando na celebração de convênio com o Estado do Rio de Janeiro, representado pela Secretaria Estadual do Meio Ambiente, pelo Instituto Estadual do Ambiente e com a participação da Fundação Bio-Rio" (pag. 4/66, 9º parágrafo).

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.
Confidential                                                    PBRCG_01224990

**CONFIDENCIAL** NP3

- Revisões de estimativas de custos (após a abertura das propostas) com justificativas frágeis e que, em alguns casos, alteraram a classificação das propostas:

"Ocorreram, em 09 (nove) processos analisados, sucessivas revisões de estimativa de preços (após abertura das propostas), com justificativas inconsistentes. Tais estimativas, por vezes questionadas pelo responsável por sua elaboração, podem ter criado condições para direcionamento de contratos" (pag. 4/66, 8° parágrafo).

"Nos certames licitatórios analisados, a CIA identificou 09 (nove) ocorrências de revisões da estimativa após abertura das propostas. Em 06 (seis) casos, a revisão da estimativa ao alterar os limites de aceitabilidade, alterou a classificação das propostas" (item 8.7.6, pag. 20/66).

"A contratação do Consórcio TEC/AG no valor de R$ 1.938.191.350,00, amparada na alínea e, item 2.1 do Regulamento do Procedimento Licitatório Simplificado da PETROBRAS (Decreto n° 2.745/98), fica fragilizada devido à alteração substancial do objeto do contrato originalmente licitado" (item 8.6.1 (a), Pag.17/66).

"A contratação do consórcio TUC, no valor de R$ 3.824.500.000,00, baseado na alínea "k", subitem 2.3 do

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.

Case 1:14-cv-09662-JSR   Document 976-4   Filed 09/24/19   Page 15 of 22

referido regulamento, ampara-se em justificativa frágil diante do atraso no cronograma" (item 8.6.1 (b), Pag.17/66).

"Além desses contratos, para atendimento às condicionantes da licença ambiental, foram firmados 03 (três) convênios com a Fundação Bio-Rio. Registre-se a inexistência de vinculação entre o objeto do convênio (obra civil de construção de barragem) e os fins sociais previstos no contrato social da Fundação Bio-Rio (fundação do ramo de biotecnologia)" (item 8.6.2, Pag.18/66).

## CONCLUSÕES DA
## COMISSÃO INTERNA DE APURAÇÃO

12.1. "Com o término dos trabalhos desta CIA, os quais foram realizados dentro dos limites de sua competência e de acordo com a documentação levantada junto às áreas de negócio, bem como pela narrativa prestada por diversos empregados, ex- empregados e aposentados da PETROBRAS e empregados de empresas prestadores de serviços e representantes de empresas contratadas que de alguma forma participaram dos procedimentos de contratação."

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.

Confidential                                                              PBRCG_01224992

**CONFIDENCIAL**                                        **NP3**

"O item 8, PONTOS DE ATENÇÃO NOS PROCESSOS DE CONTRATAÇÃO E CONVÊNIOS detalha a presente conclusão. Diante do exposto, foi possível concluir o seguinte:"

12.1.1. "Foram estabelecidos prazos irrealistas para a construção do COMPERJ. O ajuste de prazos de execução com base em planejamento regressivo comprometeu a qualidade das licitações e contratos;"

12.1.2. "Indefinições nos projetos extramuros impactaram o cronograma. Como resultado, contratos necessitaram de aditivos para hibernar instalações e condicionar equipamentos;"

12.1.3. "A antecipação da contratação das unidades de processo (UDAV, UCR, HCC e HDT de Médios), sem a definição do modelo de negócio, que seria aplicado às Unidades de Utilidades e Geração de Hidrogênio, causou prejuízos à PETROBRAS pela necessidade de hibernação de equipamentos e das Unidades de Processo;"

12.1.4. "Falta de evidências que confirmem as justificativas apresentadas para contratação direta, especificamente em relação à contratação por inexigibilidade do Consórcio TUC para a construção das Unidades de Geração de Vapor e Energia, Tratamento de Água e Efluentes;"

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.
Confidential                                                  PBRCG_01224993

**CONFIDENCIAL**                                        **NP3**

12.1.5. "Inclusão de empresas nos processos licitatórios sem justificativas consistentes;"

12.1.6. "Formação de Comissão de Licitação com membros sem a devida qualificação e experiência em contratações de grande porte;"

12.1.7. "Os processos licitatórios da UDAV, UCR, HCC, entre outros, foram iniciados sem que os projetos básicos e os respectivos FEED estivessem concluídos. Essa situação trouxe maiores riscos para as licitantes, no que tange a incertezas de escopo, com consequente elevação dos custos. Também pode ter refletido negativamente no necessário nivelamento das propostas. Durante a execução das obras ensejou aditivos de prazo e valor;"

12.1.8. "Ocorreram, em 09 (nove) processos analisados, sucessivas revisões de estimativa de preços (após abertura das propostas), com justificativas inconsistentes. Tais estimativas, por vezes questionadas pelo responsável por sua elaboração, podem ter criado condições paradirecionamento de contratos;"

12.1.9. "Aceitação de condicionantes de licenciamento ambiental abusivas, contrariando parecer jurídico, resultando na celebração de convênio com o Estado do Rio de Janeiro, representado pela Secretaria Estadual do Meio Ambiente,

---

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.

Confidential                                                          PBRCG_01224994

**CONFIDENCIAL**                                                    **NP3**

pelo Instituto Estadual do Ambiente e com a participação da Fundação Bio-Rio;"

12.1.10. "As falhas de gestão, não conformidades, problemas de planejamento e de coordenação na execução do projeto podem ter contribuído para facilitar a ocorrência de eventuais ações criminosas sob a investigação pela Operação Lava Jato."

## RELAÇÃO DAS EMPRESAS

A Comissão Interna de Apuração selecionou 30 (trinta) contratos/convênios, representando 77% do total do investimento contratados pela Petrobras para a COMPERJ, de um total de cerca da ordem de 300 (trezentos) contratos/convênios.

O Relatório da Comissão Interna de Apuração (CIA) sobre o COMPERJ apresenta nas páginas 28/66 a 46/66 as 29 empresas participantes dos contratos selecionados, especificando as características da contratação de cada uma delas.

O Relatório da CIA informa que houve indícios de direcionamento para as empresas Delta, Toyo e Jaraguá

---

*Comperj – Relatório do Comitê de Auditoria ao CA*                    *Página 10/14*

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.

**CONFIDENCIAL**                                                          **NP3**

(Item 8.9, Pag. 24). Sob a alegação de aumentar a competitividade dos processos licitatórios, foram convidadas empresas de menor porte e/ou que não atendiam os pré-requisitos de fornecimento. Apesar de vencerem o certame, não concluíram as obras: Delta, TKK, Jaraguá (Item 8.8, Pag. 24).

## RELAÇÃO DAS PESSOAS

O Relatório da Comissão Interna de Apuração (CIA) sobre o COMPERJ relaciona nas páginas 47/66 a 63/66 o nome de 12 funcionários, diretores e ex-diretores da Petrobras que tiveram participação relevante nos diferentes processos contratuais analisados pela CIA.

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.

Confidential                                                              PBRCG_01224996

**CONFIDENCIAL**                                    **NP3**

## RECOMENDAÇÕES DA COMISSÃO
## INTERNA DE APURAÇÃO

Às páginas 64/66, item 13, a CIA faz as seguintes recomendações, que são integralmente adotadas por este Comitê de Auditoria.

13.1 – Adotar medidas eficazes para que a legislação, os padrões internos e as melhores práticas sejam obedecidos.

13.2 – Quantificar os possíveis prejuízos, gerados pelas falhas das contratações apuradas pela CIA, e considerar medidas necessárias ao ressarcimento à Petrobras.

13.3 – Avaliar e ouvir a posição de escritório criminalista, sobre a obrigação legal de encaminhar este relatório ao Ministério Público e outras autoridades públicas, tendo em vista a natureza dos fatos tratados neste relatório e seus anexos.

13.4 – Definir corporativamente procedimentos que estabeleçam os critérios objetivos para definição e uniformização dos filtros de seleção de empresas, de necessária observância em todas as contratações realizadas pela Petrobras, bem como diretrizes para as razões de justificativas para eventuais inclusões de empresas que não atendam a algum dos critérios estabelecidos.

13.5 – Avaliar a aplicação de sanções administrativas e trabalhistas aos empregados responsáveis pelas não conformidades identificadas.

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.

Confidential                                                                     PBRCG_01224997

CONFIDENCIAL                                          NP3

## CONCLUSÕES E RECOMENDAÇÕES DO
## COMITÊ DE AUDITORIA

O Relatório da Comissão Interna de Apuração (CIA) deixa evidenciado o descumprimento das normas de governança, descumprimento das normas de licitação e contratação bem como um conjunto de ações que resultaram em substanciais perdas financeiras para a Petrobras.

(Pagina 5/66, 1º parágrafo) "As falhas de gestão, não conformidades, problemas de planejamento e de coordenação na execução do projeto podem ter contribuído para facilitar a ocorrência de eventuais ações criminosas sob a investigação da denominada Operação Lava Jato".

Este Comitê de Auditoria recomenda ao Conselho de Administração da Petrobras que determine a abertura de Processo Civil contra as 12 pessoas relacionadas no Relatório da CIA nas páginas 47/66 a 63/66, enviando o Relatório da Comissão Interna de Apuração e este parecer do Comitê de Auditoria ao Ministério Público, à CGU e ao TCU para as medidas que julgarem cabíveis.

As empresas relacionadas no Relatório da CIA nas páginas 28/66 a 46/66 devem ser objeto de avaliação das

Para verificar as assinaturas, acesse www.tcu.gov.br/autenticidade, informando o código 53509351.
Confidential                                                          PBRCG_01224998

CONFIDENCIAL                    NP3

autoridades competentes para eventual ressarcimento à Petrobras.

O Comitê de Auditoria, portanto encaminha suas conclusões e recomendações para deliberação do Conselho de Administração e solicita inclusão em Ata, como anexo.

Rio de Janeiro, 12 de dezembro de 2014

Sergio Franklin Quintella
Conselheiro de Administração
Presidente do Comitê de Auditoria

Miriam Aparecida Belchior          Luciano Galvão Coutinho
Conselheiros de Administração e Membros do Comitê de Auditoria

Confidential                                        PBRCG_01224999