# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PETROBRAS SECURITIES LITIGATION | No. 14-cv-9662 (JSR) <br><br> **CLASS ACTION** |

### DECLARATION OF THE CLAIMS ADMINISTRATOR IN SUPPORT OF CLASS REPRESENTATIVES' MOTION TO ACCEPT AND PAY LATE CLAIMS AND LATE DEFICIENCY CURES

I, Stephanie Amin-Giwner, declare as follows:

1. I am a Director of Client Services for Epiq Class Action & Claims Solutions, Inc. ("Epiq").[1] The following statements are based on personal knowledge and information provided to me by other Epiq employees, and if called on to do so, I could and would testify competently thereto.

2. On July 2, 2018, the Court entered the Judgment (ECF No. 838), granting final approval to the settlements reached in the Action (the "Settlements"). Pursuant to the Settlements, $2.016 billion was paid into escrow for the benefit of the Settlement Class in 2018 and the remaining $984 million was paid into escrow on January 15, 2019.

### STATUS OF DISTRIBUTIONS OF NET SETTLEMENT FUND

3. On September 24, 2019, this Court issued its Order Granting Authorization to Distribute the Net Settlement Fund (ECF No. 975) (the "Distribution Order) approving the administrative determinations of Epiq accepting and rejecting claims filed in the settlement and

---

[1] Garden City Group, LLC ("GCG"), the court-appointed Claims Administrator in this action, was acquired by Epiq on June 15, 2018 and is now continuing operations as part of Epiq.

1

approved the distribution of the Net Settlement Fund.  Pursuant to the Distribution Order at ¶3(c)(v), on October 28, 2019 Epiq commenced the Initial Distribution of 85% of the Net Settlement Fund and issued 60,433 payments for a total of $2,394,667,323.51.

4. To ensure that the maximum number of Initial Distribution checks were cashed, Epiq performed extensive follow-up with many of the Authorized Claimants whose checks were initially uncashed, either because those checks were returned to Epiq as undeliverable or because the Authorized Claimant simply had not cashed the check. Epiq implemented calling campaigns to urge Authorized Claimants with uncashed checks in the Initial Distribution to cash their checks. Those claimants were informed that if they lost or damaged the check or otherwise required a new check, Epiq would reissue their check.

5. Pursuant to ¶3(e) of the Distribution Order, on February 25, 2020 (120 days after the Initial Distribution), Epiq conducted the Final Distribution to those Authorized Claimants whose Distribution Amounts calculated to $500.00 or more.  In the Final Distribution, Epiq issued 34,810 payments for a total of $432,530,651.66.  In addition, on February 28, 2020, Epiq also reissued all uncashed and undeliverable checks that were issued in the Initial Distribution.

6. Following the Final Distribution, Epiq monitored the status of distribution checks issued to Authorized Claimants. As with the follow-up efforts in the Initial Distribution described above in paragraph 4, Epiq undertook an extensive outreach campaign and made multiple attempts to locate the Authorized Claimants whose checks issued in the Initial and/or Final Distributions remained uncashed or were returned as undelivered by the postal service. Every Authorized Claimant with an uncashed or undeliverable check has received personalized emails, letters, and/or telephone calls in attempts to get their distribution checks cashed.

7. As of April 21, 2021, $9,946,093.92 or 2.29% of the total distribution amount remains in the Net Settlement Fund due to uncashed or undeliverable checks. Due to the Covid-19 pandemic and resulting delays at the U.S. Postal Service, Epiq is continuing to receive requests to reissue Initial and Final Distribution checks. In consultation with Class Counsel, Epiq recommends that we continue to honor reissue requests until such time as Epiq and Class Counsel determine it is no longer feasible to do so.

8. In addition, $66,749,652.57 has been returned to the Net Settlement Fund as unwanted funds ("Returned Funds"). Returned Funds are typically seen in cases like this in instances where the beneficial account closes after the claim was submitted, the filer was unable to identify the rightful owner or the beneficial owner request that the funds be returned. In many instances, the filer does not provide a basis for the return of the funds.

## LATE CLAIMS AND LATE DEFICIENCY CURES

9. Pursuant to the Court's Order dated July 12, 2019, the Court accepted and Epiq processed all claims received through January 31, 2019; and all claims received thereafter were deemed null and void. Since February 1, 2019, Epiq has received 985 late claims. Of these, 276 calculate to a total recognized loss of approximately $23 million. The 709 remaining claims are deficient and/or do not calculate to a recognized loss.[2]

10. In order to provide the Court with its final administrative determinations, after September 11, 2019, Epiq did not accept any late deficiency cures for claims that were received prior to January 31, 2019. Since that time, Epiq has received 9,270 late deficiency cures, of which 1,369 would be eligible for an additional total recognized loss of approximately $74 million. The remaining 7,901 late deficiency cures did not result in an increased recognized loss.

---

[2] Deficiency letters with an opportunity to cure have not been sent to late claims submitted after January 31, 2019.

11. Epiq supports the Class Representatives' request that this Court allow acceptance of the late claims and late deficiency cures described above; and use of the returned funds described in paragraph 8 to pay these claims. Using the same pro rata as used in the Initial Distribution, these claims would be entitled to total payments of approximately $32.3 million. The remaining returned funds would be included in any re-distributions to all Authorized Claimants who cashed their Initial and Final Distribution payments.

## CONCLUSION

12. Epiq respectfully requests that the Court enter an Order allowing acceptance of late claims received after January 31, 2019 and late deficiency cures received after September 11, 2019; and make payments to those eligible claims consistent with the Distribution Order.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 10th day of May, 2021, in Massapequa Park, New York.

*Stephanie Amin-Giwner*

Stephanie Amin-Giwner